MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ., CA Bar #66849
EDIE WALTERS, ESQ., CA Bar #262730
D. CLARKE SUGAR, ESQ., CA Bar #251681
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515

Attorneys for Clement C. and Ann Marie Carinalli, Debtors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>CLEMENT C. and ANN MARIE CARINALLI,<br><br>Debtors<br><br>S.S.Ns: XXXX-XX-8623 and<br>XXXX-XX-5690 | Case No. 09-12986<br><br>Under Chapter 11<br><br>Date: October 30, 2009<br>Time: 10:00 a.m.<br>Place: U.S. Bankruptcy Court<br>99 South "E" Street<br>Santa Rosa, California<br>Judge: The Honorable Alan Jaroslo |

**Affected Parties: Summit State Bank, NAI BT Commercial and KOR Commercial**

**DEBTORS' MOTION FOR APPROVAL OF
(A) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS
AND INTERESTS, AND (B) PAYMENT OF CLOSING ASSISTANCE FEE**
(2425 Mendocino Avenue, Santa Rosa)

CLEMENT C. CARINALLI and ANN MARIE CARINALLI, the debtors-in-possession herein (the "Debtors"), by and through their undersigned counsel, hereby move (this "Motion") the above-entitled Bankruptcy Court, pursuant to the provisions of Sections 327 *et seq*. and 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order approving (a) the sale of real property and improvements located at 2425 Mendocino Avenue, Santa Rosa, California, free and clear from certain liens and interests of Summit State Bank, NAI BT Commercial and KOR Commercial, for the purchase price of $2,750,000.00;

1

DEBTORS' MOTION FOR APPROVAL OF (A) SALE OF REAL PROPERTY FREE AND CLEAR
OF LIENS AND INTERESTS, AND (B) PAYMENT OF CLOSING ASSISTANCE FEE
24014/20044

Case: 09-12986    Doc# 21    Filed: 10/02/09    Entered: 10/02/09 19:25:42    Page 1 of 13

and (b) payment of a closing assistance fee to be paid to KOR Commercial in order to facilitate the closing of such sale, for the reasons set forth below.

## I. JURISDICTION AND VENUE

This Court has jurisdiction to hear and determine this Motion pursuant to 28 U.S.C. §§ 1334 and 157. The Court's consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of this proceeding is proper in this district under 28 U.S.C. §§ 1408 and 1409. The statutory authority for the Motion is Sections 327 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## II. STATEMENT OF FACTS

The record of the Bankruptcy Court, together with the declaration of Clement C. Carinalli (the "Carinalli Declaration") filed concurrently herewith, establish the following pertinent facts:

### A. The Debtors and the Chapter 11 Case

1. On September 14, 2009 (the "Petition Date"), three creditors (collectively, the "Petitioners") filed an involuntary petition (the "Petition") against the Mr. Carinalli, seeking commencement of a case under chapter 7 of the Bankruptcy Code.

2. Immediately upon receipt of the Petition, the Debtors, through counsel, contacted the Petitioners and proposed to stipulate to entry of an order for relief under chapter 11 of the Bankruptcy Code, and accordingly, pursuant to stipulation, on September 29, 2009, the Bankruptcy Court entered an *Order for Relief in Chapter 11* (the "Order for Relief"). The Order for Relief provided that both of the Debtors became joint debtors in possession under chapter 11 of the Bankruptcy Code.

3. The Debtors remain in possession of their estate and continue to operate and manage their business affairs. It is the Debtors' intent to propose a plan of reorganization for the treatment and disposition of all property and obligations within their estate.

4. The Debtors' estate contains numerous real property assets, interests in operating and real estate entities and other assets with substantial value that the Debtors intend to realize for the benefit of their secured and unsecured creditors, both during the chapter 11 process and through their reorganization plan.

### B. The Subject Property and Existing Liens

5. One of the Debtors' real property assets is real property and improvements located at

2

DEBTORS' MOTION FOR APPROVAL OF (A) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS AND (B) PAYMENT OF CLOSING ASSISTANCE FEE
24014/20044

Case: 09-12986   Doc# 21   Filed: 10/02/09   Entered: 10/02/09 19:25:42   Page 2 of 13

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

2425 Mendocino Avenue, Santa Rosa, California, A.P.N. 180-030-005 in the Sonoma County records (the "Subject Property"). The Subject Property consists of a single story Class D commercial building, constructed in 1955 and containing approximately 13,000 square feet of gross building area, on a 1.65 acre lot. The building is presently fully occupied by a house of worship, pursuant to a lease expected to terminate in 2010. The Subject Property has recently been appraised as having a value of $2,750,000 on an "as is" basis.[1] Excerpts of that appraisal (the "Appraisal") are attached to the Carinalli Declaration as **Exhibit "A."**

6. The Subject Property is encumbered by two deeds of trust held by Summit State Bank ("Summit"), a first deed of trust recorded in August 1999 (the "First Deed Trust") in order secure a promissory note (the "First Note") in the original principal balance of $1,207,500.00, and a second deed of trust recorded on June 26, 2009 (the "Second Deed of Trust") in order to secure a promissory note (the "Second Note") in the amount of $500,000.00.

7. The First Note and the First Deed of Trust reflect longstanding obligations and the Debtors do not believe that the lien against the Subject Property created by the First Deed of Trust is avoidable in any respect. The current balance owing under those documents is approximately $1,030,000.

8. However, the Second Note and the Second Deed of Trust may be avoidable, at least in part. First, only a portion of the $500,000.00 original principal amount of the note has in fact been advanced to the Debtors, in the approximate, aggregate amount of $107,440.29, and thus the actual amount secured under the Second Deed of Trust is substantially less than its face amount. Second, the advances made under the Second Deed of Trust were paid by Summit to itself, solely for the purpose of satisfying the Debtors' obligations with respect to interest accruing under other loans made by Summit to the Debtors. A portion of that accrued interest paid to Summit as advances under the Second Note was an unsecured obligation of the Debtors, rather than a secured obligation.

9. Because the Second Deed of Trust was recorded within the ninety (90) days immediately preceding the Petition Date, the Debtors believe that an as-yet undetermined amount of

---

[1] The Appraisal indicates that in the event that certain deferred maintenance estimated to cost $170,000 is completed, the value of the Subject Property will be increased to $2,920,000. However, none of that deferred maintenance has been completed to date.

3

DEBTORS' MOTION FOR APPROVAL OF (A) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS AND (B) PAYMENT OF CLOSING ASSISTANCE FEE

Case: 09-12986   Doc# 21   Filed: 10/02/09   Entered: 10/02/09 19:25:42   Page 3 of 13
24014/20044

the advances under the Second Note and the Second Deed of Trust may constitute avoidable preferences under the provisions of Section 547(b) of the Bankruptcy Code, insofar as those advances were used in part to satisfy unsecured obligations of the Debtors. The lien created by the Second Deed of Trust is therefore subject to a bona fide dispute.

**C.     Marketing and Sale of the Subject Property**

10.     Beginning in July 2008, the Debtors engaged the services of NAI BT Commercial, real estate brokers ("BT Commercial"), to market and sell the Subject Property, pursuant to a listing agreement that is attached as **Exhibit "B"** to the Carinalli Declaration (the "Listing Agreement"). Under the terms of the Listing Agreement, the Debtors agreed to pay to BT Commercial a commission upon sale of the Subject Property equal to four percent (4%) of the purchase price.

11.     Since that initial engagement, BT Commercial and the Debtors have amended the listing several times, in order to reduce the asking price and extend the term of the engagement.

12.     On or about February 27, 2009, the Debtors entered into a Standard Commercial/Investment Purchase Agreement (as thereafter amended, the "Purchase Agreement") to sell the Subject Property to Gil Robello or his assignees (collectively, the "Buyers"). A copy of the Purchase Agreement is attached to the Carinalli Declaration as **Exhibit "C."**

13.     Under the terms of the Purchase Agreement, the Buyers will pay a cash purchase price of $2,750,000 and will acquire the Subject Property on an "as is, where is" basis. The Buyers' due diligence has been waived and their requisite financing has been obtained.

14.     Other than by virtue of the Purchase Agreement, the Debtors have no relationship with the Buyers, and the Buyers are not insiders of the Debtors, as defined in Section 101(31) of the Bankruptcy Code. The Purchase Agreement is the product of good-faith, arms' length negotiations.

15.     The Debtors believe that the proposed sale of the Subject Property, upon the terms set forth in the Purchase Agreement, is in the best interests of their estate, for these reasons: First, the sale price is at full value, according to the Appraisal, and is made at a time when real property sales are not easily accomplished. Second, the proposed sale will produce much-needed cash for the Debtors' estate, with which the Debtors will be able to make debt service payments, and fund operating costs, essential to the preservation of other estate property with realizable equity value.

4

DEBTORS' MOTION FOR APPROVAL OF (A) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS AND (B) PAYMENT OF CLOSING ASSISTANCE FEE

Case: 09-12986    Doc# 21    Filed: 10/02/09    Entered: 10/02/09 19:25:42    Page 4 of 13

**D. Status of Listing Agreement and Closing Assistance Fee**

16. The Debtors are informed that the Buyers consist of a number of investors, and that a closing of the Purchase Agreement will entail substantial efforts in coordinating funding, payments and loan requirements. The Debtors therefore need the assistance of the Buyers' broker, KOR Commercial, in order to complete the closing as expeditiously as possible.

17. Under the terms of the Listing Agreement and subsequent arrangements made between the Debtors' broker, BT Commercial, and the Buyers' broker, KOR Commercial (collectively, the "Brokers"), the following commissions are due to the brokers upon closing of the Purchase Agreement: to BT Commercial, the amount of $54,000.00, and to KOR Commercial, the amount of $67,500.00.

18. The Debtors have advised the Brokers that because the Listing Agreement is no longer an assumable executory contract, under applicable Ninth Circuit law as set forth below, the agreed-upon commissions cannot be paid upon closing. Instead, the Debtors have proposed to the Brokers that those commissions remain in escrow for a limited period of time (60 days) in the event that either of the Brokers bring a motion seeking payment of such commissions within that time period. If such a motion is filed, the Debtors will oppose it, and if no such motion is filed, the escrowed funds will be disbursed to the Debtors' estate.

19. In the interim, the Debtors have need of assistance in closing the Purchase Agreement, as described above. Therefore, the Debtors have proposed to KOR Commercial that that firm provide all necessary assistance in exchange for the payment of $30,000.00 at closing. Such payment, once made, would reduce KOR Commercial's commission claim under the Listing Agreement.

### III. RELIEF REQUESTED

By this Motion, the Debtor seeks entry of an order, pursuant to Section 363 of the Bankruptcy Code, granting the following relief:

    A. Approving the Purchase Agreement and authorizing the Debtors to perform thereunder, pursuant to the provisions of Section 363(b) of the Bankruptcy Code;

    B. Authorizing such sale free and clear of the following interests, pursuant to the

5

DEBTORS' MOTION FOR APPROVAL OF (A) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS, AND (B) PAYMENT OF CLOSING ASSISTANCE FEE
Case: 09-12986  Doc# 21  Filed: 10/02/09  Entered: 10/02/09 19:25:42  Page 5 of 13
24014/20044

provisions of Section 363(f) of the Bankruptcy Code:

    (i)    any lien or other encumbrance created by the Second Note or the Second Deed of Trust; *provided* that the sum of $110,000.00 be retained in escrow pending final resolution of any dispute as to such lien or other encumbrance, with Summit's lien attaching to such retained funds to the same extent of priority, amount, extent, perfection, avoidability, enforceability and allowability as the existing lien holds as against the Subject Property.

    (ii)    any lien or other interest of either of the Brokers for payment of commissions under the Listing Agreement; *provided* that the sum of $91,500.00 ($121,500.00 minus the $30,000.00 closing assistance fee described below) be retained in escrow pending final resolution of any dispute as to such lien or other interest, with the Broker's interest attaching to such retained funds to the same extent of priority, amount, extent, perfection, avoidability, enforceability and allowability as their existing interest holds as against the Subject Property; and *provided further* that if the Brokers do not file and serve in the Bankruptcy Court a motion seeking payment of such commissions within sixty (60) days following the closing of the Purchase Agreement, the escrow officer shall be directed to disburse such retained funds to the Debtors.

C.    Authorizing the Debtors to pay a closing assistance fee of $30,000.00 to KOR Commercial upon the closing of the Purchase Agreement, in consideration of KOR Commercial's assistance in obtaining such closing, *provided* that such payment, once made, shall reduce any claim that may be asserted by KOR Commercial for commissions under the Listing Agreement, on a dollar-for-dollar basis.

D.    Finding that the Debtors and the Buyers have acted in good faith in connection with the proposed sale under the Purchase Agreement, pursuant to Section 363(m) of the Bankruptcy Code.

E.    Waiving the 10-day stay imposed by the provisions of Rule 6004(h) of the Bankruptcy Rules.

6

DEBTORS' MOTION FOR APPROVAL OF (A) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS, AND (B) PAYMENT OF CLOSING ASSISTANCE FEE

Case: 09-12986   Doc# 21   Filed: 10/02/09   Entered: 10/02/09 19:25:42   Page 6 of 13

24014/20044

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

## IV. DISCUSSION

Section 363 of the Bankruptcy Code governs the sale of assets outside of the ordinary course of a Debtors' business. For the reasons set forth below, the relief sought in this Motion is warranted by the protégé of that statute.

### A. Sale of the Subject Property Under Section 363(b)

Section 363(b) of the Bankruptcy Code permits a debtor-in-possession to sell property of the estate other than in the ordinary course of business after notice and a hearing. 11 U.S.C. §363(b). Further, Section 105(a) of the Bankruptcy Code allows a bankruptcy court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's power to authorize a sale under Section 363(b) is to be exercised at the court's discretion. *In re WPRV-TV,* 983 F.2d 336, 340 (1st Cir. 1993), *New Haven Radio, Inc. v. Meister (In re Martin-Trigona),* 750 F.2d 1334, 1346 (2d Cir. 1985), *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983).

A number of courts have held that the sale of chapter 11 estate property in a manner outside of the ordinary course of business, and outside of the context of a confirmed plan, is appropriate if the debtor or trustee demonstrates a "sound business purpose" for doing so. *See*, *e.g.*, *In re American Devel. Corp.,* 95 B.R. 735, 739 (Bankr. C.D. Cal. 1989); *In re Walters*, 83 B.R. 14 (9th Cir. BAP 1988); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *In re Lionel Corp., supra; In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15 (E.D. Pa. 1987).

Courts have considered a number of factors in determining whether to approve a sale of assets under Section 363(b), including (1) whether a sound business reason exists for the proposed transaction; (2) whether fair and reasonable consideration is being provided; (3) whether the transaction has been proposed and negotiated in good faith; and (4) whether adequate and reasonable notice has been provided. *See*, *e.g.*, *In re Ewell,* 958 F.2d 275 (9th Cir. 1992) (declining to set aside or modify a sale pursuant to 11 U.S.C. § 363 because the price was fair and reasonable and the buyer

7

DEBTORS' MOTION FOR APPROVAL OF (A) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS AND (B) PAYMENT OF CLOSING ASSISTANCE FEE

Case: 09-12986    Doc# 21    Filed: 10/02/09    Entered: 10/02/09 19:25:42    Page 7 of 13
24014/20044

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

was a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code); *In re King-Wilson,* 1998 U.S. Dist. LEXIS 16595 at *11-12 (N.D. Cal. Oct. 13, 1998); *In re Canyon P'ship,* 55 B.R. 520 (Bankr. S.D. Cal. 1985).

Courts within the Ninth Circuit have authorized sales of debtors' assets pursuant to Section 363(b) where there are good business reasons to do so. *See, e.g. In re American Development Corp., supra,* 95 B.R. at 739 (among the factors that determine whether a good business reason exists is whether the sale is in the best interests of the estate's creditors); *In re Photocopy & Supply, Inc.* 1994 WL 553065 at *1 (Bankr. D. Idaho 1994); *see also In re Lionel Corp., supra,* 722 F.2d at 1071 (setting forth the "sound business purpose" test).

In *Lionel*, which involved the sale of substantially all of the assets of the debtor, the Second Circuit Court of Appeals held that the standard for the proper exercise of the debtor's discretion is whether there is a good business reason for that exercise (*Id.* at 1071), and the Court adopted, in part, the following criteria for evaluating whether a good business reason exists for authorizing a sale of assets of a debtor:

A. the proportionate value of the asset to the estate as a whole;

B. the amount of elapsed time since the filing of the petition;

C. the likelihood that a plan will be proposed and confirmed in the near future;

D. the effect of the proposed disposition on future plans of reorganization; and

E. most importantly, whether the assets to be sold are decreasing or increasing in value.

*Id.*

In *Delaware & Hudson Ry. Co., supra,* the District Court noted that evidence supporting the proposed purchase price as being fair and reasonable included extensive solicitation of bids by the trustee, negotiations with several prospective purchasers, and the trustee's testimony that the accepted offer was the best offer received for the debtor's assets. *Id.* at 179.

Here, the proposed sale of the Subject Property upon the terms of the Purchase Agreement fit squarely within the parameters of the sound business judgment test articulated in all of the above-referenced authorities. First, the Debtors have demonstrated a sound business purpose for the

8

DEBTORS' MOTION FOR APPROVAL OF (A) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS AND (B) PAYMENT OF CLOSING ASSISTANCE FEE

Case: 09-12986    Doc# 21    Filed: 10/02/09    Entered: 10/02/09 19:25:42    Page 8 of 13
24014/20044

proposed sale, given the circumstances, including limited cash resources and the need for cash to preserve and maintain other estate property with realizable equity value. Second, as established by the Appraisal, the proposed purchase price is fair and reasonable, producing full value for the Subject Property in its present condition. Third, in the current economic climate, in which real property sales are few and far between, a sale that can realize the estate's equity value in the Subject Property is clearly in the best interests of the estate. Fourth, as the Subject Property was listed and marketed for more than a year preceding the Petition Date, it is evident that the proposed purchase price has been fully validated by the marketplace and is reflective of current market value, particularly in the present difficult commercial real estate market.

Accordingly, the proposed sale of the Subject Property should be approved.

**B.  Sale Free and Clear of Liens and Interests Under Section 363(f)**

Section 363(f) of the Bankruptcy Code authorizes sales of property of the estate "free and clear of any interest of any entity" if any one of the following conditions is satisfied:

(1) Applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) Such entity consents;

(3) Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) Such interest is in bona fide dispute; or

(5) Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). "The well established rule that sales within a bankruptcy proceeding occur free and clear of any interest is founded upon the principle that good faith purchasers receive clean title to the property and that any claims against the property attach to the proceeds." *In re Aneco Electrical Construc., Inc.* 377 B.R. 338, 342 (Bankr. M.D. Fl. 2006) (quoting *In re Eveleth Mines, LLC*, 312 B.R. 634, 649-50 (Bankr.D.Minn.2004)).

Here, the Debtors seek to sell free and clear of any liens or interests held by (a) Summit under its Second Note and Second Deed of Trust, or (b) the Brokers for commissions under the Listing Agreement. Each is warranted for the following reasons:

9

DEBTORS' MOTION FOR APPROVAL OF (A) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS AND (B) PAYMENT OF CLOSING ASSISTANCE FEE

Case: 09-12986    Doc# 21    Filed: 10/02/09    Entered: 10/02/09 19:25:42    Page 9 of 13
24014/20044

### 1. Summit's Second Deed of Trust

As stated, a portion of the advances made under the Second Note and Second Deed of Trust held by Summit may be preferential and avoidable under the provisions of Section 547(b) of the Bankruptcy Code. This is because those advances, at least in part, were used to pay unsecured obligations owing from the Debtors to Summit, thereby converting unsecured debt into secured debt. Moreover, those advances were made within 90 days immediately preceding the Petition Date, at a time at which the Debtors were presumed to be insolvent.

Accordingly, at a minimum, the amount owing under the Second Note and Second Deed of Trust are a matter of bona fide dispute, and should not be paid at the time of closing of sale of the Subject Property. Instead, the amount owed under the Second Note and Second Deed of Trust should be held in escrow pending resolution of disputes about the avoidability of that amount.

Sale free and clear of the lien of the Second Deed of Trust is permitted by the provisions of Section 363(f)(4) of the Bankruptcy Code, because the lien is in bona fide dispute. It is also permitted under the provisions of Section 363(f)(3), because the proposed purchase price under the Purchase Agreement is greater than the aggregate amount of all liens encumbering the property. Lastly, the Debtors believe that Summit will consent to such treatment, and that sale free and clear of the lien is therefore also permitted under Section 363(f)(2). Adequate protection of the disputed lien, as required by the provisions of Section 363(e) of the Bankruptcy Code, will be provided by granting to Summit a replacement lien against funds retained in escrow up to the amount of $110,000.00, with such replacement lien having the same priority, amount, extent, perfection, avoidability, enforceability and allowability as Summit's existing lien under the Second Deed of Trust.

### 2. Brokers' Commission

The commissions owing to the Brokers under the Listing Agreement, though legally binding obligations of the Debtors, cannot be paid at this time under applicable Ninth Circuit authority, because they are neither secured nor appropriate cures of executory contracts.

In the published decision of *In re Munple, Ltd.*, 868 F.2d 1129 (9th Cir. 1989), the Ninth Circuit Court of Appeals found that a listing agreement had been fully performed, and was therefore no longer executory and subject to assumption, where the broker had already procured a ready,

10

DEBTORS' MOTION FOR APPROVAL OF (A) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS, AND (B) PAYMENT OF CLOSING ASSISTANCE FEE

Case: 09-12986    Doc# 21    Filed: 10/02/09    Entered: 10/02/09 19:25:42    Page 10 of 13

willing and able buyer prior to the commencement of bankruptcy.  As a result, even though the sale was completed with that same buyer after the commencement of bankruptcy, commissions owing under the listing agreement could not be paid and constituted nothing more than an unsecured claim.

The *Munple* decision has since been followed on several occasions, including in *In re 3DFX Interactive, Inc.*, 2009 WL 223266 (Bankr. N.D.CA 2009), and *In re R.J. Russell Associates, Inc.*, 1997 WL 33702298 (W.D.N.Y. 1997).  In both cases, based expressly on the ruling in the *Munple* decision, those courts ruled that contracts (in the *Russell* case, a listing agreement) substantially or entirely performed prior to the petition date could not be assumed and paid.

So it is with the Listing Agreement here:  The Brokers earned their commissions thereunder by finding the Buyers and the Purchase Agreement, all of which occurred prior to the Petition Date.  Whereas the commissions are not due until closing, they were earned upon signing of the Purchase Agreement, prior to the Petition Date.  Therefore, the commissions cannot be paid as cures under an assumed executory contract.  Nor did the Debtors grant to the Brokers any lien or other encumbrance that would entitle them to a secured claim for their commissions.  Accordingly, no payment of the commissions can be made at closing.

The Debtors are therefore entitled to sell the Subject Property free and clear of the interests or commissions of the Brokers, which are in bona fide dispute, under Sections 363(f)(2) and (4) of the Bankruptcy Code.  As adequate protection under Section 363(e), the Debtors propose to hold the amount of the commissions, less the closing assistance fee described above, for 60 days in the event that the Brokers wish to assert a right to payment.  If no motion to compel payment is filed and served within that 60-day period, the escrow officer will be instructed to disburse the withheld funds to the Debtors.

**C.     Closing Assistance Fee**

Ordinarily, the brokers who expect to earn and be paid a commission upon closing of a sale assist in obtaining that closing, although they are not legally obligated to do so.  Here, because the Debtors do not propose to pay the Brokers their commission, for the reasons set forth above, no such assistance can be expected.

11

DEBTORS' MOTION FOR APPROVAL OF (A) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS, AND (B) PAYMENT OF CLOSING ASSISTANCE FEE

Case: 09-12986    Doc# 21    Filed: 10/02/09    Entered: 10/02/09 19:25:42    Page 11 of 13

Therefore, in order to obtain the necessary help in coordinating the funding and closing of the proposed sale, the Debtors propose to retain the services of KOR Commercial, the Buyers' broker, to assist in the closing, in exchange for a fee of $30,000.00. This will be deducted from any commission claimed by KOR Commercial. Under the authorities identified in earlier discussion above under Section 363(b), the Debtors believe that such a payment is fair and reasonable, and well within the parameters of their sound business judgment.

### D. Good Faith Determination Under Section 363(m)

In the event that the Court approves the proposed sale under the terms of the Purchase Agreement, the Debtors wish to ensure the finality and reliability of the sale of the Subject Property, by facilitating the consummation of the transaction even in the event of an appeal. To that end, the Debtors seek a finding of good faith under the provisions of Section 363(m) of the Bankruptcy Code, which provides as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

Although the Bankruptcy Code does not define term "good faith," the Court of Appeals for the Ninth Circuit has held that:

> "For purposes of § 363(m), a 'good faith purchaser' is one who buys 'in good faith' and 'for value.' This court has said that 'lack of good faith' is shown by 'fraud, collusion between the purchaser and the trustee, or an attempt to take grossly unfair advantage of other bidders.'

*In re Serzow*, 1994 U.S. App. LEXIS 16392, at 4-6 (9th Cir. June 1994) (citations omitted). *See also, In re Ewell,* 958 F.2d 276, 281 (9th Cir. 1992).

As set forth hereinabove and in the Carinalli Declaration, the terms of the Purchase Agreement were negotiated at arms' length and in good faith, without collusion or fraud. The Debtors negotiated the terms of the Purchase Agreement with the Buyers in order to obtain a feasible and beneficial sale of the Subject Property, and the Debtors have no information to suggest any lack of good faith on the part of the Buyers. The Debtors have no prior business relationship with the

12

DEBTORS' MOTION FOR APPROVAL OF (A) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS, AND (B) PAYMENT OF CLOSING ASSISTANCE FEE

Case: 09-12986   Doc# 21   Filed: 10/02/09   Entered: 10/02/09 19:25:42   Page 12 of 13

Buyers, and are not aware of any conflicting relationships between the Buyers and the Debtors or other parties in interest. The Debtors do not believe that any collusion has been involved in any of the Buyers' conduct in this matter, all of which conduct appears to the Debtors to have been fair and straightforward.

Under those circumstances, the Debtors submit that a finding of good faith, and a determination that the Buyer is a good faith purchaser, is appropriate in this case.

### E. Waiver Of Rule 6004(h) Stay

Lastly, the Debtors request that the Court waive the ten (10) day stay imposed on orders authorizing the use, sale, or lease of property, by Rule 6004(h) of the Bankruptcy Rules. There is no reason to stay the proposed sale of the Subject Property, and allowing the parties to close the proposed sale in an expeditious manner would benefit the Debtors' estate by ensuring a prompt closing to a sale that has been pending for many months.

### V. CONCLUSION

WHEREFORE, the Debtors respectfully submit that the best interests of creditors and all parties-in-interest will be served by allowing the Debtors to sell the Subject Property free and clear of certain liens and interests as set forth above, and by granting such other relief as is set forth in Section III above, and that this Motion should therefore be granted.

DATED: October 2, 2009

MEYERS LAW GROUP, P.C.

By: /s/ Merle C. Meyers
    Merle C. Meyers, Esq.
Attorneys for Clement and Ann Marie Carinalli, Debtors

13

DEBTORS' MOTION FOR APPROVAL OF (A) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS AND INTERESTS, AND (B) PAYMENT OF CLOSING ASSISTANCE FEE