MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ., CA Bar #66849
EDIE WALTERS, ESQ., CA Bar #262730
D. CLARKE SUGAR, ESQ., CA Bar #251681
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515

Attorneys for Clement C. and Ann Marie Carinalli, Debtors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

In re

CLEMENT C. and ANN MARIE CARINALLI,

    Debtors

S.S.Ns: XXXX-XX-8623 and
        XXXX-XX-5690

Case No. 09-12986

Under Chapter 11

Date:    October 30, 2009
Time:   10:00 a.m.
Place:   U.S. Bankruptcy Court
          99 South "E" Street
          Santa Rosa, California
Judge:  The Honorable Alan Jaroslo[vsky]

## DECLARATION OF BOBBY DUTCHER IN SUPPORT OF DEBTORS' APPLICATION TO EMPLOY REAL ESTATE BROKERS

I, BOBBY DUTCHER, declare:

**Background**

1. I am currently employed as a real estate agent with Shore Line Realty, Inc. ("Shore Line"), and have been working as a sales professional in the real estate industry for many years, from which I have developed a particular expertise in facilitating the purchase and sale of real property.

2. I am over the age of 18 years and have personal knowledge of each of the facts stated herein, except as may be otherwise stated below, and would testify thereto if called upon to do so in a court of law.

**Services to be Rendered**

3. I was recently retained, subject to Bankruptcy Court approval, to represent the Debtors as a real estate listing agent regarding properties owned by the Debtors which they intend to sell. The scope of my representation is summarized in the attached residential listing agreements (collectively, the "Agreements"), and in the accompanying *Addendum to Agreements* (the "Addendum"), supplementing the Agreements. The Agreements concern the following real property:

- 18467, 19073, 19297 East Highway 20, Clearlake Oaks, California. A copy of the *Residential Listing Agreement* (the "Highway 20 Agreement") concerning these properties is attached hereto as **Exhibit "A;"** and

- Assessor Parcel Numbers 010-002-61, 010-002-62, 010-04-27, 010-004-28, 010-004-29, 010-004-30, 010-019-13 all located in Clearlake, California. A copy of the *Commercial, Residential Income And Vacant Land Listing Agreement* (the "Clearlake Agreement") concerning these properties is attached hereto as **Exhibit "B"**.

4. Pursuant to the terms and conditions of the Agreements and the Addendum, my compensation for providing professional sales services for the above-identified property, following Court approval, will be 6% of the purchase price. This compensation structure is reasonable, standard, and in accordance with real estate industry practices.

5. The Addendum, a copy of which is attached hereto as **Exhibit "C,"** sets forth additional terms and conditions regarding my engagement to provide professional sales services to the Debtors within the context of this bankruptcy proceeding.

**Other Professional Relationships**

6. To the best of my knowledge, information, and belief, neither Shore Line nor I are creditors or insiders of the Debtor. Moreover, neither Shore Line nor I hold any prepetition claims against the Debtors.

7. To the best of my knowledge, information, and belief, neither Shore Line nor I represent or hold any interest which is adverse to the Debtors or the bankruptcy estate with respect to the matters on which we are to be employed.

MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

8. To the best of my knowledge, information, and belief, except as set forth above, neither Shore Line nor I have any connections with the Debtors, creditors, or any other party in interests, their respective attorneys and accountants, or the United States trustee or any employee of the office of the United States trustee.

9. Based on my experience and expertise in the real estate industry, I am well qualified to represent the Debtors in connection with the matters set forth herein and as such my retention is in the Debtors' best interests, the best interest of the bankruptcy estate, and the Debtors' creditors.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on October 9th, 2009, at Lakeport, California.

*Bobby Dutcher*
BOBBY DUTCHER
*Janice M. Maselek, Broker*
*Shore Line Realty Inc*

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DECLARATION OF BOBBY DUTCHER IN SUPPORT OF
DEBTORS' APPLICATION TO EMPLOY REAL ESTATE BROKERS
20044/24157

3

# Exhibit A



CALIFORNIA
ASSOCIATION
OF REALTORS®

# RESIDENTIAL LISTING AGREEMENT
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 4/07)

1. **EXCLUSIVE RIGHT TO SELL:** _CLEMENT CARINALLI, ANN MARIE CARINALLI_ ("Seller")
hereby employs and grants _SHORE LINE REALTY, INC._ ("Broker")
beginning (date) _October 6, 2009_ and ending at 11:59 P.M. on (date) _December 31, 2009_ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property in the City of _CLEARLAKE OAKS_,
County of _LAKE_, Assessor's Parcel No. _010-009-18,21 006-019-12_
California, described as: _18467, 19073, 19297 E. HWY 20_ ("Property").

2. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
ADDITIONAL ITEMS EXCLUDED: ___
ADDITIONAL ITEMS INCLUDED: ___
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

3. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _Nine Hundred Twenty-Five Thousand_ Dollars ($ _925,000.00_ ).
   B. Additional Terms: ___

4. **COMPENSATION TO BROKER:**
Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ _6.000_ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ ___
   AND ___, as follows:
      (1) If during the Listing Period, or any extension, Broker, Seller, cooperating broker, or any other person procures a buyer(s) who offers to purchase the Property on the above price and terms, or on any price and terms acceptable to Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period.)
   OR (2) If within _60_ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 4A(2) unless, not later than 3 calendar days after the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation due under paragraph 4A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: ___
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering MLS brokers either ☒ _3.000_ percent of the purchase price, or ☐ $ ___
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 4A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: ___
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: ___
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Seller acknowledges receipt of a copy of this page.
Seller's Initials ( _CC_ )( ___ )
Reviewed by _BD_  Date _9/30/09_

RLA REVISED 4/07 (PAGE 1 OF 3)
**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 3)**

Agent: BOBBY DUTCHER   Phone: (707) 263-4104   Fax: (707) 263-4168   Prepared using WINForms® software
Broker: Shore Line Realty, Inc.  375 S Main St   Lakeport   CA 95453

Property Address: _18467, 19073, 19297 E. HWY 20 CLEARLAKE OAKS,_ Date: _____

5. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows: _SALE SUBJECT TO COURT CONFIRMATION_

6. **MULTIPLE LISTING SERVICE:** All terms of the transaction, including financing, if applicable, will be provided to the selected MLS for publication, dissemination and use by persons and entities on terms approved by the MLS. Seller authorizes Broker to comply with all applicable MLS rules. MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 48 hours or some other period of time after all necessary signatures have been obtained on the listing agreement. However, Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS a form signed by Seller (C.A.R. Form SEL or the locally required form) instructing Broker to withhold the listing from the MLS. Information about this listing will be provided to the MLS of Broker's selection unless a form instructing Broker to withhold the listing from the MLS is attached to this listing Agreement.

7. **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

8. **BROKER'S AND SELLER'S DUTIES:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized to order reports and disclosures as appropriate or necessary and advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property. Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments and attorney fees arising from any incorrect information supplied by Seller, or from any material facts that Seller knows but fails to disclose.

9. **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

10. **AGENCY RELATIONSHIPS:**
    A. Disclosure: If the Property includes residential property with one-to-four dwelling units, Seller shall receive a "Disclosure Regarding Agency Relationships" form prior to entering into this Agreement.
    B. Seller Representation: Broker shall represent Seller in any resulting transaction, except as specified in paragraph 4F.
    C. Possible Dual Agency With Buyer: Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and such Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: (i) Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell the Property at a price less than the listing price; (ii) Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the offered price; and (iii) except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.
    D. Other Sellers: Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement.
    E. Confirmation: If the Property includes residential property with one-to-four dwelling units, Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

11. **SECURITY AND INSURANCE:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller.

12. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☒ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox.

13. **SIGN:** Seller does (or if checked ☒ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

14. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

15. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker regarding the obligation to pay compensation under this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

16. **ADDITIONAL TERMS:** _____

Seller acknowledges receipt of a copy of this page.
Seller's Initials ( _____ ) ( _____ )
Reviewed by ____ Date 1/30/09

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RLA REVISED 4/07 (PAGE 2 OF 3)

Property Address: 18467, 19073, 19297 E. HWY 20
CLEARLAKE OAKS, _____ Date: _____

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within 5 Days After its execution.
18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.
19. **DISPUTE RESOLUTION:**
    A. **MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action, subject to paragraph 19B(2) below. Paragraph 19B(2) below applies whether or not the arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
    B. **ARBITRATION OF DISPUTES:** (1) Seller and Broker agree that any dispute or claim in law or equity arising between them regarding the obligation to pay compensation under this Agreement, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraph 19B(2) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered in any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.
    (2) **EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims, or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

    "NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

    "WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

    Seller's Initials _____ / _____    Broker's Initials _____ / _____

20. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.

Seller _[signature]_
Address 520 MENDOCINO AVE #250    CLEMENT CARINALLI    Date 10-7-09
Telephone _____ Fax _____ City SANTA ROSA    E-mail _____    State CA    Zip 95401

Seller _____
Address 520 MENDOCINO AVE #250    ANN MARIE CARINALLI    Date _____
Telephone _____ Fax _____ City SANTA ROSA    E-mail _____    State CA    Zip 95401

Real Estate Broker (Firm) _[signature]_
By (Agent) _____    SHORE LINE REALTY, INC.    DRE Lic. # _____
   BOBBY DUTCHER DRE Lic. # 01370651    Date January 30, 2009
Address 2166 S MAIN    City LAKEPORT    State CA    Zip 95453
Telephone (707)489-4014    Fax (707)263-4168    E-mail bobby.dutcher@yahoo.com

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ___ Date 1/30/09

RLA REVISED 4/07 (PAGE 3 OF 3)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 3)**    CARINALLI



CALIFORNIA ASSOCIATION OF REALTORS®

## Seller's Advisory
(C.A.R. Form SA, Revised 10/01)

Property Address: 18467, 19073, 19297 E. HWY 20, CLEARLAKE OAKS _____ ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If the Property you are selling is a residence with one to four units, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units):
   (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
   (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets titled "The Homeowners Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
   (3) If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act.
   (4) If the TDS, NHD, or lead, military ordnance, commercial zone or Mello-Roos disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements. However, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death. However, California Civil Code Section 1710.2 provides that <u>you have no disclosure duty</u> "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property; or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowners' association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Seller acknowledges receipt of copy of this page.
Seller's Initials ( /M/ ) ( _____ )
Reviewed by Broker or Designee BD  Date 9/30/09

SA-11 REVISED 10/01 (PAGE 1 OF 2)

**SELLER'S ADVISORY (SA-11 PAGE 1 OF 2)**

| Agent: BOBBY DUTCHER | Phone: (707) 263-4104 | Fax: (707) 263-4168 | Prepared using WINForms® software |
| Broker: Shore Line Realty, Inc. 375 S Main St. | Lakeport | CA 95453 | |

Property Address: 18467, 19073, 19287 S. HWY 20, CLEARLAKE OAKS _____ Date: _____

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
    A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.
    B. **Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.
    C. **Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.
    D. **Government Retrofit Standards:** Unless exempt, you must comply with government retrofit standards, including, but not limited to, installing operable smoke detectors, bracing water heaters, and providing the buyer with corresponding written statements of compliance. Some city and county governments may impose additional retrofit standards, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine the retrofit standards for your Property, the extent to which your Property complies with such standards, and the costs, if any, of compliance.
    E. **Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

4. **MARKETING CONSIDERATIONS:**
    A. **Pre-Sale Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional home inspections prior to sale, both generally, and for wood destroying pests and organisms, such as termites. By doing this, you then have an opportunity to make repairs before your Property is offered for sale, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a pest control report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.
    B. **Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.
    C. **Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video-tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property against injury, theft, loss, vandalism, damage, and other harm.
    D. **Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

5. **OTHER ITEMS:** _____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _____[signature]_____ Date 10/5/09
Print Name CLEMENT CARINALLI

Seller _____ Date _____
Print Name ANN MARIE CARINALLI

Real Estate Broker SHORE LINE REALTY, INC. By _____[signature]_____
(Agent) BOBBY DUTCHER

Address 2166 S MAIN City LAKEPORT State CA Zip 95453
Telephone (707) 489-4414 Fax (707) 263-4160 E-mail bobby.dutcher@yahoo.com

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by Broker or Designee ___ Date 9/30/09

SA-11 REVISED 10/01 (PAGE 2 OF 2)       SELLER'S ADVISORY (SA-11 PAGE 2 OF 2)       CARINALLI

# Exhibit B



**CALIFORNIA ASSOCIATION OF REALTORS**

# COMMERCIAL, RESIDENTIAL INCOME AND VACANT LAND LISTING AGREEMENT
(C.A.R. Form CLA, Revised 4/06)

1. **EXCLUSIVE AUTHORIZATION:**
   hereby employs and grants _CLEMENT CARINALLI, ANN MARIE CARINALLI_ ("Owner")
   beginning (date) _October 5, 2009_ _SHORE LINE REALTY, INC_ ("Broker")
   the exclusive and irrevocable right to [X] SELL, ☐ LEASE, ☐ EXCHANGE, ☐ OPTION, or ☐ OTHER _December 31, 2009_ ("Listing Period")
   the real property in the City of _CLEARLAKE_, County of _LAKE_,
   California, described as: _SEE PARAGRAPH 16_ ("Property").

2. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in an agreement between Owner and transferee, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded from the price.
   ADDITIONAL ITEMS EXCLUDED: ___
   ADDITIONAL ITEMS INCLUDED: ___
   Owner intends that the above items be excluded or included in listing the Property, but understands that: (i) the Agreement between Owner and transferee supersedes any intention expressed above and will ultimately determine which items are excluded and included in the transaction; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the Agreement between Owner and transferee.

3. **LISTING PRICE AND TERMS:**
   A. The listing price shall be _Two Million Five Hundred Thousand_
   B. Additional Terms: ___ Dollars ($ _2,500,000.00_ ).

4. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Owner and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Owner agrees to pay to Broker as compensation for services irrespective of agency relationship(s): [X] _6.000_ percent of the listing price (or if an agreement is entered into, of the contract price), ☐ $ ___, OR ☐ in accordance with Broker's attached schedule of compensation; as follows:
      (1) If during the Listing Period, or any extension, Broker, Owner, cooperating broker, or any other person, procures a buyer(s) who offers to acquire the Property on the above price and terms, or on any price and terms acceptable to Owner. (Broker shall be entitled to compensation whether any Escrow resulting from such offer closes or tenancy begins during or after the expiration of the Listing Period.)
      (2) If within _60_ calendar days after the end of the Listing Period or any extension, Owner enters into a contract to sell, lease, exchange, option, convey or otherwise transfer the Property to anyone ("Prospective Transferee") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period, or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Owner a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Owner, however, shall have no obligation to Broker under this paragraph 4A(2) unless, not later than 3 calendar days after the end of the Listing Period or any extension thereof, Broker has given Owner a written notice of the names of such Prospective Transferees.
      (3) If, without Broker's prior written consent, the Property is withdrawn from sale, lease, exchange, option or other, as specified in paragraph 1, or is sold, conveyed, leased, rented, exchanged, optioned or otherwise transferred, or made unmarketable by a voluntary act of Owner during the Listing Period, or any extension thereof.
   B. If completion of the transaction is prevented by a party to the transaction other than Owner, then compensation due under paragraph 4A shall be payable only if and when Owner collects damages by suit, arbitration, settlement, or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Owner agrees to pay Broker: ___
   D. (1) Broker is authorized to cooperate and compensate brokers participating through the multiple listing service(s) ("MLS"): (i) by offering MLS brokers either: [X] _3.000_ percent of the purchase price, or ☐ $ ___; OR (ii) (if checked) ☐ as per Broker's policy.
      (2) Broker is authorized to cooperate and compensate brokers operating outside the MLS as per Broker's policy.
   E. Owner hereby irrevocably assigns to Broker the above compensation from Owner's funds and proceeds in escrow. Broker may submit this Listing Agreement, as instructions to compensate Broker pursuant to paragraph 4A, to any escrow regarding the Property involving Owner and a buyer, transferee or Prospective Transferee.
   F. (1) Owner represents that Owner has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: ___
      (2) Owner warrants that Owner has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following Prospective Transferees: ___
      (3) If the Property is transferred to anyone listed above during the time Owner is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Listing Agreement; and (ii) Broker is not obligated to represent Owner in such transaction.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1997-2003, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
CLA REVISED 4/06 (PAGE 1 OF 4)

Owner acknowledges receipt of a copy of this page.
Owner's Initials ( ___ ) ( ___ )
Reviewed by ___ Date _9/30/09_

**COMMERCIAL, RESIDENTIAL INCOME AND VACANT LAND LISTING AGREEMENT (CLA PAGE 1 OF 4)**

Agent: BOBBY DUTCHER    Phone: (707) 263-4104    Fax: (707) 263-4165    Prepared using WINForms® software

*SEE PARAGRAPH 16*
Property Address: **CLEARLAKE,** _____ Date: _____

5. **OWNERSHIP, TITLE AND AUTHORITY:** Owner warrants that: (I) Owner is the owner of the Property; (II) no other persons or entities have title to the Property; and (III) Owner has the authority to both execute this Listing Agreement and transfer the Property. Exceptions to ownership, title and authority are as follows: *SALE SUBJECT TO COURT CONFIRMATION*

6. **MULTIPLE LISTING SERVICE:** Information about this listing will (or ☐ will not) be provided to the MLS of Broker's selection. All terms of the transaction, including financing, if applicable, will be provided to the selected MLS for publication, dissemination and use by persons and entities on terms approved by the MLS. Owner authorizes Broker to comply with all applicable MLS rules. MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary.

7. **OWNER REPRESENTATIONS:** Owner represents that, unless otherwise specified in writing, Owner is unaware of: (I) any Notice of Default recorded against the Property; (II) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (III) any bankruptcy, insolvency or similar proceeding affecting the Property; (IV) any litigation, arbitration, administrative action, government investigation, or other pending or threatened action that affects or may affect the Property or Owner's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Owner shall promptly notify Broker in writing if Owner becomes aware of any of these items during the Listing Period or any extension thereof.

8. **BROKER'S AND OWNER'S DUTIES:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Listing Agreement. Unless Owner gives Broker written instructions to the contrary, Broker is authorized to order reports and disclosures as appropriate or necessary, and advertise and market the Property in any method and medium, including the Internet, selected by Broker, and, to the extent permitted by these media, including MLS, control the dissemination of the information submitted to any medium. Owner agrees to consider offers presented by Broker, and to act in good faith toward accomplishing the transfer of the Property by, among other things, making the Property available for showing at reasonable times and referring to Broker all inquiries of any party interested in the Property. Owner agrees to provide Broker and transferee(s) all written disclosures, as required by law. Owner further agrees to immediately disclose in writing any condition known to Owner that affects the Property, including, but not limited to, any past or current generation, storage, release, threatened release, disposal, and presence and location of asbestos, PCB transformers, petroleum products, flammable explosives, underground storage tanks and other hazardous, toxic or contaminated substances or conditions in, on, or about the Property. Owner shall maintain public liability and property damage insurance on the Property during the Listing Period or any extension. Owner waives all subrogation rights under any insurance against Broker, cooperating brokers or employees. Owner is responsible for determining at what price to list and transfer the Property. Owner further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments and attorney's fees arising from any incorrect information supplied by Owner, or from any material facts that Owner knows but fails to disclose.
☐ (If checked) The attached property disclosure is part of this Listing Agreement and may be provided to Prospective Transferees.

9. **DEPOSIT:** Broker is authorized to accept and hold on Owner's behalf any deposits to be applied toward the contract price.

10. **AGENCY RELATIONSHIPS:**
   A. **Disclosure:** If the Property includes residential property with one to four dwelling units and this Listing Agreement is used to list the Property for sale, exchange or lease for a period of greater than one year, a "Disclosure Regarding Agency Relationships" form is required to be provided to Owner prior to entering into this Listing Agreement.
   B. **Owner Representation:** Broker shall represent Owner in any resulting transaction, except as specified in paragraph 4F.
   C. **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Owner and Buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Owner any election to act as a dual agent representing both Owner and Buyer. If a Buyer is procured directly by Broker or an associate licensee in Broker's firm, Owner hereby consents to Broker acting as a dual agent for Owner and such Buyer. In the event of an exchange, Owner hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Owner understands and agrees that: (I) Broker, without the prior written consent of Owner, will not disclose to Buyer that Owner is willing to transfer the Property at a price less than the listing price; (II) Broker, without the prior written consent of Buyer, will not disclose to Owner that Buyer is willing to pay a price greater than the offered price; and (III) except for (I) and (II) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.
   D. **Other Owners:** Owner understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or acquire through Broker, property the same as or similar to Owner's Property. Owner consents to Broker's representation of owners and buyers of other properties before, during, and after the end of this Listing Agreement.
   E. **Confirmation:** If the Property includes residential property with one to four dwelling units, Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Owner's execution of an agreement to sell.

11. **SECURITY AND INSURANCE:** Broker is not responsible for loss of or damage to personal or real property or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of the interior of the Property. Owner agrees: (I) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (II) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Owner.

12. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors and accompanying prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism, or damage attributed to the use of a keysafe/lockbox. Owner does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Owner does not occupy the Property, Owner shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox.

13. **SIGN:** Owner authorizes Broker to install a FOR SALE/SOLD/LEASE sign on the Property unless otherwise indicated in writing.

14. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state, and local anti-discrimination laws.

15. **ATTORNEY'S FEES:** In any action, proceeding, or arbitration between Owner and Broker regarding the obligation to pay compensation under this Listing Agreement, the prevailing Owner or Broker shall be entitled to reasonable attorney's fees and costs, except as provided in paragraph 19A.

Owner acknowledges receipt of a copy of this page.
Owner's Initials ( _CC_ ) ( _____ )
Reviewed by ___ Date 7/30/09

Copyright © 1997-2006, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**CLA REVISED 4/06 (PAGE 2 OF 4)**

**COMMERCIAL, RESIDENTIAL INCOME AND VACANT LAND LISTING AGREEMENT (CLA PAGE 2 OF 4)**

*SEE PARAGRAPH 16*
Property Address: CLEARLAKE, _____ Date: _____

**16. ADDITIONAL TERMS:** APN'S AND ADRESSES FOR SUBJECT PROPERTY ARE:

```
010-002-61  12760 SULPHUR BANK DR
010-002-62  12780 SULPHUR BANK DR
010-004-27  12710 SAN JOAQUIN AVE
010-004-28  12700 SAN JOAQUIN AVE
010-004-29  12740 SAN JOAQUIN AVE
010-004-30  12990 SAN JOAQUIN AVE
010-019-13  2501 SULPHUR BANK DR
```

**17. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Listing Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Listing Agreement, in writing, within 5 days after its execution.

**18. SUCCESSORS AND ASSIGNS:** This Listing Agreement shall be binding upon Owner and Owner's successors and assigns.

**19. DISPUTE RESOLUTION:**

A. **MEDIATION:** Owner and Broker agree to mediate any dispute or claim arising between them out of this Listing Agreement, or any resulting transaction, before resorting to arbitration or court action, subject to paragraph 19B(2) below. Paragraph 19B(2) below applies whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney's fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

B. **ARBITRATION OF DISPUTES:** (1) Owner and Broker agree that any dispute or claim in law or equity arising between them regarding the obligation to pay compensation under this Agreement, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraph 19B(2) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California law. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered in any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.

(2) **EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims, or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Owner's Initials _____/_____   Broker's Initials _____/_____

**20. ENTIRE CONTRACT:** All prior discussions, negotiations, and agreements between the parties concerning the subject matter of this Listing Agreement are superseded by this Listing Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Listing Agreement and any supplement, addendum, or modification, including any photocopy or facsimile, may be executed in counterparts.

Owner acknowledges receipt of a copy of this page.
Owner's Initials (____)(____)
Reviewed by ____ Date 7/30/07

Copyright © 1997-2006, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
CLA REVISED 4/06 (PAGE 3 OF 4)

**COMMERCIAL, RESIDENTIAL INCOME AND VACANT LAND LISTING AGREEMENT (CLA PAGE 3 OF 4)**

BORAX LAKE.sfx

*SEE PARAGRAPH 16*
Property Address: CLEARLAKE _____ Date: 10-9-09

By signing below, Owner acknowledges that Owner has read, understands, received a copy of and agrees to the terms of this Listing Agreement and any attached schedule of compensation.

Date _____[signature]_____ at _____[signature] Santa Rosa CA_____
Owner CLEMENT CARINALLI
By _____ Title _____
Address 520 MENDOCINO AVE #250  City SANTA ROSA  State CA  Zip 95401
Telephone (707)578-1302  Fax (707)578-1206  E-mail clemc@sonic.net

Date _____ at _____
Owner ANN MARIE CARINALLI
By _____ Title _____
Address 520 MENDOCINO AVE #250  City SANTA ROSA  State CA  Zip 95401
Telephone _____  Fax _____  E-mail _____

Date _____ at _____
Owner _____
By _____ Title _____
Address _____  City _____  State ____ Zip ____
Telephone _____ Fax _____ E-mail _____

Date _____ at _____
Owner _____
By _____ Title _____
Address _____  City _____  State ____ Zip ____
Telephone _____ Fax _____ E-mail _____

Real Estate Broker (Firm) SHORE LINE REALTY, INC. _____ DRE Lic. # _____
By (Agent) [signature] _____ BOBBY DUTCHER DRE Lic. # 01370651 _____ Date _____
Address 2166 S MAIN  City LAKEPORT  State CA  Zip 95453
Telephone (707)489-4414  Fax (707)263-4168  E-mail bobbyj.dutcher@yahoo.com

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ___ Date 7/30/09

CLA REVISED 4/06 (PAGE 4 OF 4)
**COMMERCIAL, RESIDENTIAL INCOME AND VACANT LAND LISTING AGREEMENT (CLA PAGE 4 OF 4)**
BORAX LAKE.zfx

# Exhibit C

# Bankruptcy Estate of Clement C. and Ann Marie Carinalli (Debtors-in-Possession) – Case No. 09-12986

## ADDENDUM TO AGREEMENTS

The undersigned parties (the "Parties"), having entered into two listing agreements, the *Residential Listing Agreement* and the *Commercial, Residential Income And Vacant Land Listing Agreement* (collectively, the "Agreements") on or about October 9th 2009, pertaining to the following property (collectively, the "Property"):

- 18467, 19073, 19297 East Highway 20, Clearlake Oaks, California; and

- Assessor Parcel Numbers 010-002-61, 010-002-62, 010-04-27, 010-004-28, 010-004-29, 010-004-30, 010-019-13 all located in Clearlake, California.

hereby stipulate to the following additional provisions:

1. If any provision of this Addendum conflicts with the terms of the Agreements, the terms of this Addendum shall prevail over the Agreements.

2. Bobby Dutcher and Shore Line Realty, Inc. ("Broker"), hereby stipulate that the Agreements are being entered into with the Chapter 11 Bankruptcy Estate (the "Estate") of Clement C. and Ann Marie Carinalli (the "Debtors") (Bankruptcy Case No. 09-12986); and that nothing in the Agreements creates any personal liability with respect to the Debtors, or their successor or assigns.

3. Any provision in the Agreements that refer to the seller shall hereby be deemed to refer to the Estate.

4. The Agreements and any compensation is also subject to the approval of the United States Bankruptcy Court, for the Northern District of California, Santa Rosa Division (the "Bankruptcy Court.").

1

ADDENDUM TO AGREEMENTS
20044/24158

5. The Bankruptcy Court shall retain jurisdiction over the Agreements and any disputes that may arise.

6. Any sale is subject to Bankruptcy Court approval, and any sale may be subject to overbids and an auction at the hearing on any proposed sale ("Sale Hearing").

7. If during the course of the listing period, an offer is submitted by Broker which is accepted by the Debtors, or their successor or assigns, but the required noticing and subsequent approval by the Bankruptcy Court occurs after the expiration of the Agreements, the Agreements will be considered in full force with respect to the offer submitted even if court approval occurs after the expiration of the Agreements.

8. If, during the course of a Sale Hearing, whether during the listing period or as described in No. 6 above, an overbid is received by the Debtors, or their successors or assigns, and approved by the Bankruptcy Court, the Agreements with Broker will be considered in full force and Broker will be entitled to the commission set forth in the Agreements. However, if a successful over-bidder is represented by another broker, then the commission may be shared by the buyers' broker and Broker, as will be more fully set forth in the agreed procedures governing the sale (the "Sale Hearing Order") approved by the Bankruptcy Court. The Sale Hearing Order shall further state the procedures for submitting a bid, overbidding and payment, etc.

9. Broker understands and agrees to advise in writing all prospective buyers that:

    a. The Debtors, or their successors or assigns, are selling the Property on behalf of an estate currently in bankruptcy and may or may not have personal knowledge of the condition or history of the Property. In addition, the Debtors are making no

2

ADDENDUM TO AGREEMENTS
20044/24158

representations directly or indirectly with respect to the condition or history of the Property;

b. The purchase of the Property will be on the basis of a buyer's own investigation of (1) the physical condition of the Property, to include but not limited to subsurface conditions thereof and (2) the operative or proposed governmental laws and regulation affecting or applicable to the Property;

c. A buyer will acquire the Property in an "AS IS" condition and that any information relied on in purchasing the Property should be as a result of the buyer's own due-diligence.

d. Through the conclusion of the Sale Hearing, Broker may solicit, negotiate, submit, and recommend for approval, competing offers to purchase.

12. Broker shall advise the seller on values, leasing, liquidation and other issues pertaining to the Property.

//

//

//

//

//

//

//

//

3

ADDENDUM TO AGREEMENTS
20044/24158

Case: 09-12986   Doc# 38-3   Filed: 10/09/09   Entered: 10/09/09 17:27:06   Page 18 of 19

13. Notwithstanding the expiration date of the Agreements, the Agreements shall nonetheless continue in full force and effect until terminated by either the Estate or the Broker giving either party at least 30 days written notice of such termination.

DATED: 10-9-09

Bobby Dutcher
Shore Line Realty, Inc.
Real Estate Broker

*[signature: Bobby Dutcher]*

DATED: 10-9-09

*[signature: Louise M Maschek]*
Managing Broker

DATED: 10-9-09

Bankruptcy Estate of
Clement C. and Ann Marie Carinalli

By *[signature]*
Clement C. Carinalli

ADDENDUM TO AGREEMENTS
20044/24158

4