MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ., CA Bar #66849
EDIE WALTERS, ESQ., CA Bar #262730
D. CLARKE SUGAR, ESQ., CA Bar #251681
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515

Attorneys for Clement C. and Ann Marie Carinalli, Debtors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

In re

CLEMENT C. and ANN MARIE CARINALLI,

Debtors

S.S.Ns: XXXX-XX-8623 and
XXXX-XX-5690

Case No. 09-12986

Under Chapter 11

Date:   October 30, 2009
Time:   10:00 a.m.
Place:  U.S. Bankruptcy Court
        99 South "E" Street
        Santa Rosa, California
Judge:  The Honorable Alan Jaroslh

### DECLARATION OF PAUL SCHWARTZ IN SUPPORT OF DEBTORS' APPLICATION TO EMPLOY REAL ESTATE BROKERS

I, PAUL SCHWARTZ, declare:

**Background**

1. I am currently employed as a real estate agent with NAI BT Commercial ("NAI"), and have been working as a sales professional in the real estate industry for many years, from which I have developed a particular expertise in facilitating the purchase and sale of real property.

2. I am over the age of 18 years and have personal knowledge of each of the facts stated herein, except as may be otherwise stated below, and would testify thereto if called upon to do so in a court of law.

DECLARATION OF PAUL SCHWARTZ IN SUPPORT OF
DEBTORS' APPLICATION TO EMPLOY REAL ESTATE BROKERS
20044/241150

### Services to be Rendered

3. I was recently retained, subject to Bankruptcy Court approval, to represent the Debtors as a real estate listing agent regarding a property owned by the Debtors which they intend to sell. The scope of my representation is summarized in the *Exclusive Authorization To Sell Or Lease* (the "Agreement"), a copy of which is attached hereto as **Exhibit "A,"** and the accompanying *Addendum To Exclusive Authorization To Sell Or Lease* (the "Addendum"), a copy of which is attached hereto as **Exhibit "B,"** both pertaining to real property commonly known as 444 Tenth Street, Santa Rosa, California.

4. Pursuant to the terms and conditions of the Listing Agreement and Addendum, my compensation for providing professional sales services for the above-identified property, following Court approval, will be determined pursuant to the *Schedule Of Commissions* attached as part of the Agreement. This compensation structure is reasonable, standard, and in accordance with real estate industry practices.

5. The Addendum sets forth additional terms and conditions regarding my engagement to provide professional sales services to the Debtors within the context of this bankruptcy proceeding.

### Other Professional Relationships

6. Prior to the Petition Date, I, through NAI, was retained to represent the Debtors on the sale of real property commonly known as 2425 Mendocino Avenue, Santa Rosa, California. By virtue of this representation, NAI and I have an unsecured claim against the Debtors for prepetition commissions earned. Neither NAI nor I, however, view our status as unsecured claimants as a conflict that would disqualify us for employment under this Application.

7. To the best of my knowledge, information, and belief, neither NAI nor I represent or hold any interest which is adverse to the Debtors or the bankruptcy estate with respect to the matters on which we are to be employed.

8. To the best of my knowledge, information, and belief, except as set forth above, neither NAI nor I have any connections with the Debtors, creditors, or any other party in interests,

their respective attorneys and accountants, or the United States trustee or any employee of the office of the United States trustee.

9. Based on my experience and expertise in the real estate industry, I am well qualified to represent the Debtors in connection with the matters set forth herein and as such my retention is in the Debtors' best interests, the best interest of the bankruptcy estate, and the Debtors' creditors.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on October 9, 2009, at Santa Rosa, California.

_____
PAUL SCHWARTZ

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DECLARATION OF PAUL SCHWARTZ IN SUPPORT OF
DEBTORS' APPLICATION TO EMPLOY REAL ESTATE BROKERS
20044/24150

3



# EXCLUSIVE AUTHORIZATION TO SELL OR LEASE

1. **Basic Provisions:** The undersigned ("Owner") hereby grants to NAI BT COMMERCIAL ("Broker") the exclusive right, for a Term commencing on October 6, 2009, and ending at midnight on December 31, 2009 to sell or lease the Property described herein. The Property is located in the City of Santa Rosa, County of Sonoma, State of CA, with a street address of 444 Tenth Street and further described as a four story office building (the "Property"). In the event of a sale, the price shall be Two Million Ninety Five Thousand ($2,095,000) Dollars, to be paid all cash to Owner (or in the alternative, as follows: In the event of a lease, the monthly rent shall be Two Dollars per sf full service ($2.00), or such other price and terms as Owner may agree to.

2. **Commissions:** In consideration of this EXCLUSIVE AUTHORIZATION TO SELL OR LEASE ("Authorization") and Broker's agreement to pursue the procurement of a purchaser or tenant for the Property, Owner agrees to pay Broker a commission in accordance with the provisions of the SCHEDULE OF COMMISSIONS ("Schedule") attached hereto and fully incorporated by this reference.

   A. Owner shall pay the commission to Broker if, during the Term hereof: (a) the Property is sold to a purchaser or leased to a tenant, whether through Broker, or by Owner, or through anyone else; or (b) a contract for sale or lease is entered into for the Property, whether through Broker, Owner, or anyone else, or (c) a satisfactory purchaser or tenant is procured or introduced by Broker, Owner, or anyone else, who is ready, willing and able to purchase or lease the Property on the terms above stated or other terms acceptable to Owner; (d) any contract for the purchase or lease of the Property is made directly or indirectly by the Owner; or (e) Owner by its voluntary act removes the Property from the market, persistently fails to respond to offers or otherwise acts as if the Property is not available, renders the Property unmarketable, or materially changes the status of the Property's title, leases, agreements, condition or other aspects thereof, which such change adversely impacts the value, use, desirability or marketability of the Property.

   B. Owner further agrees that Owner shall pay Broker a commission in accordance with the Schedule if, within one hundred eighty (180) calendar days after the expiration or termination of this Authorization or any extension thereof, the Property is sold or leased to, or Owner enters into a contract to sell or lease the Property with, or negotiations continue, resume or commence and thereafter continue leading to a sale or lease of the Property to any person or entity (including his/her/its successors, assigns or affiliates) with whom Broker has negotiated (either directly or through another broker or agent) or to whom the Property has been submitted prior to the expiration or termination of this Authorization. Broker is authorized to continue negotiations with such persons or entities. Broker shall submit a list of such persons or entities ("Registration List") to Owner no later than thirty (30) calendar days following the expiration or termination of this Authorization, provided, however, that if a written offer has been submitted then it shall not be necessary to include the offeror's name on the Registration List. If, within one hundred eighty (180) days after the expiration of the Term hereof, Owner enters into another owner-agency or listing agreement with a broker other than Broker for any transaction concerning the Property, then Owner shall provide to Owner's new broker the names of all parties on the Registration List, and Owner shall provide in any such new agreement that the new broker shall not be entitled to receive any of the compensation payable to Broker hereunder for consummation of a transaction with such parties; provided, that Owner's failure to do so shall not affect Broker's rights hereunder.

3. **Owner's Duties; Broker's Rights.** Owner shall cooperate fully with Broker in effecting a sale or lease of the Property and shall immediately refer to Broker all inquiries of any party interested in the Property. All negotiations shall be conducted through Broker. Broker is authorized to accept a deposit from any prospective purchaser or tenant, and to advertise the Property, and has the exclusive right to place a sign(s) on the Property if, in Broker's opinion, such would facilitate the sale of said Property. Owner shall, within five (5) business days after the execution hereof, provide Broker with full and complete information regarding the Property, including its physical condition, leases and other agreements, and any other matter affecting its value or utility. Owner acknowledges that Owner and Broker have an obligation to disclose to a prospective purchaser whether the Property is located within certain Natural Hazard Zones, and Owner hereby authorizes Broker to secure, for the benefit of Owner and Broker, a Natural Hazards Report concerning the Property, the costs of which shall be deducted from Owner's proceeds in the event of a sale.

4. **Excluded Transactions.** If there are persons or entities registered with Owner by another broker under any previous authorization or listing agreement, Owner shall, within five (5) business days after the execution hereof, provide Broker a written list of the names of such parties and the type of transaction upon which such other broker may be entitled to compensation ("Excluded Transactions"). Broker's compensation on an Excluded Transaction shall be limited in the following circumstances: (a) if such Excluded Transaction is concluded within the first thirty (30) days of the Term hereof, Broker shall be reimbursed the reasonable out-of-pocket expenses incurred by Broker in marketing the Property prior to conclusion of such transaction; or, (b) if such Excluded Transaction is concluded after the first thirty (30) days and while such transaction is subject to compensation to the other broker, then Broker shall be entitled to a commission equal to one-half of the commission otherwise payable pursuant to the Schedule.

5. **Non-Discrimination.** It is understood that it is illegal for either Owner or Broker to refuse to show, sell or lease real property to any person because of race, color, religion, national origin, sex, marital status or physical disability.

6. **Authority.** Owner warrants that he or she is the owner of record of the Property and/or has full legal authority to execute this

Authorization, and that neither Owner nor the Property is the subject of a bankruptcy, insolvency, probate or conservatorship proceeding. Owner shall notify Broker immediately if Owner discovers that any of the above warranties is untrue.

7. **Consent to Dual Agency.** Owner understands and agrees that if Broker finds a prospective purchaser or tenant for the Property, Broker may also represent and act as the agent for such purchaser or tenant, and Owner authorizes and consents to such dual agency. Owner further understands and agrees that Broker may, during the ordinary and normal course of marketing the Property, respond to inquiries on the Property by showing and providing information on the Property as well as on competing properties and that such activities may result in the payment of a commission to Broker by a third party.

8. **Owner's Acknowledgments.** Owner acknowledges that it has been advised by Broker to consult with and retain experts to advise and represent it concerning the legal and tax effects of this Authorization and any transaction involving the Property, as well as the condition and/or legality of the Property, including, but not limited to, its environmental aspects. Broker shall have no obligation to investigate such matters unless expressly agreed to in a writing signed by Owner and Broker. Owner agrees that Broker is not providing, and under no circumstances shall provide, legal, financial, tax or accounting advice; Owner shall seek any such advice from other professionals and shall under no circumstances obtain or rely on such advice from Broker. Owner agrees that Broker is under no obligation to investigate any prospective purchaser or tenant or others, or to evaluate their financial condition or ability to close escrow or pay rent. Owner further acknowledges that in determining the financial soundness of any prospective purchaser or tenant, Owner will rely solely upon Owner's own investigation, notwithstanding Broker may have assisted in gathering such information.

9. **Miscellaneous.**

    A. This Authorization and the attached Schedule constitute the entire agreement between the parties. Any prior agreement or understanding is void and of no further force and effect. No amendments or alterations in the terms hereof or withdrawal of this Authorization shall be valid or binding unless made in writing and signed by both Owner and Broker. There are no statements, representations, inducements, warranties or promises made or relied upon by either party, except as expressly stated herein. In the event any provision or portion of a provision of this Authorization is found to be unenforceable, then the remaining provisions shall be given full force and effect.

    B. Owner agrees to defend, indemnify and hold Broker harmless from any liabilities, costs, damages and/or expenses, including without limitation attorney's fees and costs, arising from or connected with (a) any environmental claim; (b) any claim alleging a material omission, misrepresentation, or incorrect information supplied by Owner, (c) alleged discrimination or other acts or omissions of Owner, and (d) claims for injury or damage to any prospective tenant or purchaser, guest, or invitee occurring on the Property. Owner hereby releases and relieves Broker, and waives Owner's entire right of recovery against Broker, for direct or consequential loss or damage arising out of or incident to the perils covered by property or liability insurance carried by Owner, irrespective of any negligence on the part of Broker; provided, however, that the foregoing release shall not apply to claims for professional negligence based on the wrongful acts or omissions of Broker.

    C. In any action for a commission arising out of this Authorization and/or the attached Schedule, the prevailing party, whether in court, on appeal, or by use of alternative dispute resolution methods, shall be entitled to recover from the other its reasonable attorney's fees, court costs, expert witness fees and other costs of suit.

    D. Owner shall file any claim against Broker within one hundred and eighty (180) days of the earlier of: (i) any alleged breach by Broker, (ii) any damage to Owner, (iii) Owner's knowledge of such claim or a potential claim, or (iv) such time as Owner should have been aware of such claim. Subject to the foregoing, in no event will any action be brought by Owner more than one year after expiration of this Authorization. In no event shall Broker be responsible for any consequential damages.

    E. To the extent permitted by applicable law, Broker is authorized to deduct its commissions from any deposits, payments or other funds, including proceeds of sale or rental payments, paid by a purchaser or tenant in connection with a transaction contemplated by this Authorization. In the event of a sale, Owner hereby irrevocably assigns proceeds of escrow to Broker to the extent necessary to pay the commissions due hereunder. Broker is authorized to provide a copy of this Agreement to any escrow or closing agent working on such transaction, and such escrow or closing agent is hereby instructed by Owner to pay Broker's commissions from any such funds or proceeds available. Owner shall remain liable for the entire amount of said commissions regardless of whether Broker exercises its rights under this paragraph.

Dated: _10-9-09_  
OWNER:  
By: _[signature]_  
Address:  
Telephone:

Dated: _October 9, 2009_  
BROKER: NAI BT Commercial  
By: _[signature]_  
Paul Schwartz  
DRE License # 01111744  
Address:  
200 Fourth Street, Suite 200  
Santa Rosa, CA 95401  
Telephone:   (707) 360-1300



Commercial Real Estate Services, Worldwide.

# SCHEDULE OF COMMISSIONS

1.  **Standard Commission Schedule**

    A. **Sales & Exchanges**

    (1) Improved Property: 4% of the gross sales price.

    (2) Unimproved Property (acreage substantially lacking amenities necessary for urban development such as roads, utilities and zoning): 10% of the gross sales price.

    (3) Exchanges: The "sales price" upon which the commission is paid shall be the fair market value of the property or properties included in the exchange. The commission will be based upon the rates for Improved Property or Unimproved Property, as applicable.

    B. **Leases and Subleases**

    (1) Gross Lease (generally where Owner pays for all or base year portion of real estate taxes and fire and extended coverage insurance) or Full Service Office Lease (generally where Owner pays for all or base year portion of real estate taxes, maintenance, fire and extended coverage insurance and janitorial and utility services):

    6% of the rent for the first twelve months of rental payments, plus
    5% of the rent for the second twelve months of rental payments, plus
    5% of the rent for the third twelve months of rental payments, plus
    4% of the rent for the fourth twelve months of rental payments, plus
    4% of the rent for the fifth twelve months of rental payments, plus
    2.5% of the rent for the next sixty months of rental payments, plus
    2% of the rent for the balance of the term including any renewal(s).

    (2) All Other Leases, Including Net Lease (generally where Lessee is responsible for all of the real property taxes on the premises, to maintain the premises or any portion thereof, and for the cost of fire and extended coverage insurance):

    7% of the rent for the first twelve months of rental payments, plus
    6% of the rent for the second twelve months of rental payments, plus
    5% of the rent for the third twelve months of rental payments, plus
    5% of the rent for the fourth twelve months of rental payments, plus
    5% of the rent for the fifth twelve months of rental payments, plus
    3.5% of the rent for the next sixty months of rental payments, plus
    3% of the rent for the balance of the term including any renewal(s).

    (3) Extension, Renewal, or Expansion: Should the lease term be extended, the lease renewed or a new lease entered into between Owner and Lessee upon expiration or termination of the original lease, or should the Lessee lease additional space from Owner, whether by way of option, right of first refusal, or otherwise, then the regular leasing commission as computed from this Schedule shall be paid to the Broker at the time of such extension, renewal, new lease, and/or expansion, using the commission rates applicable as if the initial term of the lease included such extension, renewal or new lease, or the subject property originally leased had included such additional space.

    (4) Subleases Where Rental Relief is Achieved: If Sublessee is relieved of liability for base rent and operating expenses (collectively, "Rent"), the foregoing schedule for Gross Leases shall be applied to the gross amount of Rent of which Sublessee is relieved.

    (5) Purchase by Lessee: Should the Lessee, his successor, nominee or assignee, purchase or enter into a contract or option to purchase the leased property or any portion thereof during the term of the lease, any renewals or extensions thereof or within one hundred and eighty (180) days after the expiration of the lease or of any renewals or extensions of the lease, then a sales commission shall be paid at such time as the purchase is consummated, in accordance with Section 1 above. Said sales commission shall be computed as set forth herein, less the amount of paid-up lease commissions relating to that portion of the lease extending beyond the consummation date of said purchase; provided, however, that there shall be no rebate in the event the sales commission is less than the paid up lease commission.

    (6) Cancellation Clause: Lease cancellation clauses shall not affect computation of rent.

    (7) Percentage Leases: If there is a minimum rent, then the commission shall initially be computed and paid based on the aggregate minimum rent set forth in the lease. If there is no minimum rent, the commission shall initially be computed and paid as if the lease contained a minimum rent equal to one-half (1/2) of Owner's asking price. Broker shall be deemed to have earned a commission thereon, calculated as if the percentage rental had been definitely known at the commencement of the lease term. Additional commission shall be paid at the end of each year during the lease term for which percentage rent is payable. Owner agrees to promptly notify Broker annually as to the amount of percentage rent

payable by lessee, if any, for the preceding year, and to provide access to books and records to verify such calculation and accounting.

(8) **Sale of Owner's Interest:** In the event of a sale or other conveyance or disposition of Owner's interest in the Property, Owner shall continue to be responsible to pay the commissions earned pursuant to this Schedule, and in addition, Owner shall obtain from the grantee/assignee of Owner's interest and deliver to BT Commercial a written agreement pursuant to which the grantee/assignee shall assume Owner's commission obligations under this schedule.

(9) **Month-to-Month Tenancy:** The commission shall be the greater of 50% of the first month's rent or $500.00. In the event Lessee remains for twelve (12) months, an additional amount of 50% of the thirteenth month's rental and 50% of the same calendar month's rental in each subsequent calendar year thereafter shall be payable.

(10) **Term in Excess of Twenty Years:** If the initial lease term of any lease covered herein is in excess of twenty years, then the commission for such initial term shall be calculated only upon the rental to be paid for the first twenty years of said initial term.

(11) **Minimum Commission:** The minimum commission is $500.

2. **Payment of Commissions**

    A. <u>Sales and Exchanges</u>:

Commissions shall be paid through escrow upon the closing thereof; absent an escrow, commissions shall be paid upon recordation of a deed; in the event of an installment sale contract, a commission shall be paid upon execution of the contract. Owner hereby irrevocably assigns to Broker from proceeds of sale an amount sufficient for the payment of the commission due hereunder.

    B. Leases:

Commissions shall be due and payable within five (5) days of the execution of a lease. Broker is hereby authorized to apply any funds held in its trust account for the payment of its commission(s) hereunder.

3. <u>Additional Provisions</u>

    A. The term "Owner" when used herein and in the attached Authorization or commission agreement shall be deemed to mean and include, where applicable, the owner of the Property, a lessor, or sublessor.

By: _____

Address:

Telephone:

By: _____
Paul Schwartz
DRE License # 01111744

Address:
200 Fourth Street, Suite 200
Santa Rosa, CA 95401
Telephone: (707) 360-1300

**Bankruptcy Estate of Clement C. and Ann Marie Carinalli (Debtors-in-Possession) – Case No. 09-12986**

## ADDENDUM TO EXCLUSIVE AUTHORIZATION TO SELL OR LEASE

The undersigned parties (the "Parties"), having entered into the *Exclusive Authorization To Sell or Lease* (the "Agreement") on or about October 9th, 2009, pertaining to the following property:

- 444 Tenth Street, Santa Rosa, California (the "Property")

hereby stipulate to the following additional provisions:

1. If any provision of this Addendum conflicts with the terms of the Agreement, the terms of this Addendum shall prevail over the Agreement.

2. Paul Schwartz and NAI BT Commercial ("Broker"), hereby stipulate that the Agreement is being entered into with the Chapter 11 Bankruptcy Estate (the "Estate") of Clement C. and Ann Marie Carinalli (the "Debtors") (Bankruptcy Case No. 09-12986); and that nothing in the Agreement creates any personal liability with respect to the Debtors, or their successor or assigns.

3. Any provision in the Agreement that refers to the seller shall hereby be deemed to refer to the Estate.

4. The Agreement and any compensation is also subject to the approval of the United States Bankruptcy Court, for the Northern District of California, Santa Rosa Division (the "Bankruptcy Court.").

5. The Bankruptcy Court shall retain jurisdiction over this Agreement and any disputes that may arise.

6. Any sale is subject to Bankruptcy Court approval, and any sale may be subject to overbids and an auction at the hearing on any proposed sale ("Sale Hearing").

7. If during the course of the listing period, an offer is submitted by Broker which is accepted by the Debtors, or their successor or assigns, but the required noticing and subsequent approval by the Bankruptcy Court occurs after the expiration of the Agreement, the Agreement will be considered in full force with respect to the offer submitted even if court approval occurs after the expiration of the Agreement.

8. If, during the course of a Sale Hearing, whether during the listing period or as described in No. 6 above, an overbid is received by the Debtors, or their successors or assigns, and approved by the Bankruptcy Court, the Agreement with Broker will be considered in full force and Broker will be entitled to the commission set forth in the Agreement. However, if a successful over-bidder is represented by another broker, then the commission may be shared by the buyers' broker and Broker, as will be more fully set forth in the agreed procedures governing the sale (the "Sale Hearing Order") approved by the Bankruptcy Court. The Sale Hearing Order shall further state the procedures for submitting a bid, overbidding and payment, etc.

9. Broker understands and agrees to advise in writing all prospective buyers that:
    a. The Debtors, or their successors or assigns, are selling the Property on behalf of an estate currently in bankruptcy and may or may not have personal knowledge of the condition or history of the Property. In addition, the Debtors are making no representations directly or indirectly with respect to the condition or history of the Property;
    b. The purchase of the Property will be on the basis of a buyer's own investigation of (1) the physical condition of the Property, to include but not limited to subsurface conditions thereof and (2) the operative or proposed governmental laws and regulation affecting or applicable to the Property;

    c. A buyer will acquire the Property in an "AS IS" condition and that any information relied on in purchasing the Property should be as a result of the buyer's own due-diligence.

    d. Through the conclusion of the Sale Hearing, Broker may solicit, negotiate, submit, and recommend for approval, competing offers to purchase.

12. Broker shall advise the seller on values, leasing, liquidation and other issues pertaining to the Property.

13. Notwithstanding the expiration date of the Agreement, the Agreement shall nonetheless continue in full force and effect until terminated by either the Estate or the Broker giving either party at least 30 days written notice of such termination.

DATED: Oct 9, 2009

Paul Schwartz
NAI BT Commercial
Real Estate Broker

*/s/ Paul Schwartz*

DATED: _____

**Managing Broker**

DATED: 10-9-09

Bankruptcy Estate of
Clement C. and Ann Marie Carinalli

By */s/ Clement C. Carinalli*
Clement C. Carinalli

3
ADDENDUM TO EXCLUSIVE AUTHORIZATION TO SELL OR LEASE
200441/24151