```
State Bar # 077632
RAY H. OLMSTEAD
Attorney at Law
P.O. Box 171
Santa Rosa, California 95402
(707) 539-5551

Attorney for KOR Commercial
Real Estate
```

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No.: 09-12986 |
| CLEMENT C. CARINALLI<br>ANN MARIE CARINALLI | Chapter 11 |
| Debtors_____/ | DATE: October 30, 2009<br>TIME: 10:00 a.m.<br>COURT: Santa Rosa |

**CONDITIONAL OPPOSITION TO DEBTORS' MOTION**

**TO SELL REAL ESTATE FREE AND CLEAR OF LIENS**

KOR Commercial Real Estate ("KOR") conditionally opposes the Debtors' motion to sell real property free and clear of liens to the extent that the motion seeks to avoid paying KOR the real estate commission to which it is entitled to receive under the terms of the purchase contract.

KOR does not oppose the sale of the real property.

This opposition is conditional because KOR has reluctantly agreed to accept payment of the $30,000 closing assistance fee, on the terms set forth in the motion, in the nature of a compromise of its claim to be paid the full commission at close of the sale. In the event that the court authorizes such payment, KOR does not

1

oppose the relief requested by the Debtors' motion.

In the event that the Debtors are not allowed to pay KOR the $30,000 closing assistance fee, then KOR opposes that portion of the motion that would deny it payment of its commission, on the grounds that Debtors' obligation to pay KOR its commission is an integral and non-severable covenant, by Debtors, in the sales agreement. The agreement cannot be assumed without assuming the obligation to pay KOR its commission.

## **DEBTORS ARE ASSUMING THE SALES CONTRACT**

While Debtors characterize the motion otherwise, in fact, the motion is their attempt to assume the executory sales contract under Section 365(a) of the Code. At the same time, Debtors are seeking to have the court determine that a portion of the contract, providing for payment of real estate commissions, is a separate contract that can be rejected. This is made clear by reference to principal case relied upon by Debtors, <u>In re Munple, LTD.</u> 868 F2d 1129 (CA9; 1989). In <u>Munple</u> the Debtor expressly sought to assume a pre-petition real estate sales contract. The Debtor also sought to reject that portion of the contract that provided for payment of a commission to its broker, which was the **seller's broker** in the transaction. The Ninth Circuit agreed with the Debtor, finding essentially that the Debtor's/Seller's agreement to pay its broker was a separate contract from the sales contract, and that the commission agreement was not executory. Under the commission agreement, the Seller's broker right to the commission had become vested upon the broker procuring the buyer. The Seller's broker had nothing further to do, and so the commission agreement was not executory. <u>Munple</u>, page 1131. Thus it could be rejected.

2

## **KOR IS THE BUYER'S BROKER**

The fact situation presented to the court in this case, involving KOR, is distinguishable from that in <u>Munple</u>. KOR is the Buyer's broker. KOR does not have a separate contract with the Debtors/Sellers. KOR is entitled to a commission under the sales contract to the same extent that the Buyer is entitled to receive performance from the Sellers/Debtors under that contract. However, Buyer is only entitled to benefit of the Sellers' performance if and when Buyer completes performance of its duties under the terms of the executory sales agreement. This is a bilateral contract, with mutuality of obligation by the parties. Both must perform. Significantly, for Buyer to complete its performance, Buyer requires the continuing services of KOR, the Buyer's broker.

KOR is not in the same position as the Sellers'/Debtors' broker in <u>Munple</u>, or in this case. The Sellers' broker had no further duties under the commission agreement once it procured a buyer. As stated in <u>Munple</u>: "By the time the purchase agreement was signed, M & M had completed all the performance necessary to earn its commission if and when the sale closed. M & M had procured a buyer, which was all it was required to do to earn a commission." <u>Munple</u>, p. 1130.

The Listing Agreement between Debtors and their (sellers') broker is attached to Debtors' motion as Exhibit B. As in <u>Munple</u> it obligates Debtors to pay a commission to their broker upon the procuring of a buyer.

KOR, Buyer's broker, has no such contract entitling it to a commission upon the procurement of a buyer or upon execution of a

sales contract. KOR's right to its commission derives from the
purchase agreement, and payment to KOR is one of the
Debtors'/Sellers' promises that run to the benefit of the Buyer, as
well as to KOR. Buyer has utilized KOR's services and has a
continuing need for KOR's services up to time of closing. Debtors'
promise to compensate KOR directly benefits the Buyer, and cannot
be severed from Debtors/Sellers' other promises under the
agreement.

KOR has a continuing obligation to the Buyer, following the
execution of the sales agreement, to essentially hold the agreement
together, including significantly, holding together the commitment
of the lenders to finance the Buyer's purchase of the property, and
the subsequent financing of the Buyer's intended improvements to
the subject property.

Generally speaking, an executory contract must be assumed or
rejected in its entirety unless it is severable. In re Rovine Corp
6 B.R. 661, 666, (Bkrptcy. Tenn 1980); In re Stanton 248 B.R. 843,
830 (CA9 BAP; 2000) citing In re Pacific Express, Inc. 780 F2d
1482, 1486 (CA9; 1986). Whether multiple obligations in an
agreement are severable is a question of state law. In re Pollock
139 B.R. 938, 940 (CA9 BAP; 1992). The BAP went on to say that
under California law this is a question of fact. Pollack p. 940,
citing Keene v Harling, 61 Cal.2d 318, 320 (1964); Waybright v Meek
90 Cal App 13, 17 (1928).

The Declaration of Richard Schultz, KOR's agent, demonstrates
the nature and extent of the services that KOR continues to be
obligated to perform, for the Buyer, in order that the sales
contract will have a possibility of closing. Without KOR's

4

continuing services, contemplated by both the Debtors/Sellers and the Buyer, it is unlikely that the Buyer's financing will remain available to it, and thus it is unlikely that the sales agreement will lead to a closed transaction benefitting the bankruptcy estate.

## **KOR'S CONTINUING DUTIES**

The Declaration of Richard Schultze, KOR's agent for this transaction, shows that he is in continual contact with Westamerica Bank, which is the source of Buyer's purchase money. He is in daily contact with a representative of the Bank, for final modifications to the loan documents, some of which is necessitated by the delay in closing resulting from Debtors' bankruptcy filing.

Buyer, through KOR, has arranged for post-closing SBA financing that will supplement the financing from Westamerica Bank in providing additional funding to the Buyer needed for essential improvement to the subject property following closing. Mr. Schultze is in continual contact with a representative of the Bay Area Development Company, who is the Buyer's contact re the SBA loan. The SBA makes regular and on-going requests for additional and up-dated information. Without the assurance of the SBA post-closing financing, the Buyer's purchase money financing is in jeopardy.

Mr. Schultze maintains regular, nearly daily, contact with the attorney for the Buyer as well as the Buyer's representative. (Note that Buyer is a newly-formed LLC consisting of numerous individual investors.) KOR must keep the investors up-dated regarding the status of the purchase. Mr. Schultze is constantly called upon to keep them all motivated and prepared to close

despite the obstacles.  In the event that any one investor decides to pull out (understandable considering the delays), then Mr. Schultze must be prepared to work with the other investors to find a replacement.  This, of course, requires more work with the lenders, to obtain their acceptance of a change in the borrower.

Within the last couple of days a further hurdle has arisen that jeopardizes the sale, involving the intentions of the tenant that is presently in possession of the property.  This will require KOR to engage in further negotiations with the Debtors/Sellers to deal with this potentially significant problem.

**CONCLUSION**

In conclusion, KOR asks the Court to recognize that, in fact, the Debtors are seeking to assume the sales contract, while contending that the commission agreement with KOR, the Buyer's broker, is not part of that contract.  The foregoing argument, and Mr. Schultze's declaration, clearly shows that the agreement to pay a commission to KOR is part and parcel of the sales agreement, and as such, cannot be rejected while the sale portion of the agreement is assumed.  However, KOR's objection is conditional.  If the Court will allow KOR the $30,000 administrative claim, to be paid at closing, then KOR will not oppose the relief requested by the Debtors.  In essence, this would be a compromise of KOR's claims.

Dated: October 15, 2009

/s/ Ray H. Olmstead
Ray H. Olmstead, Attorney for KOR Commercial Real Estate