MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ., CA Bar #66849
EDIE WALTERS, ESQ., CA Bar #262730
D. CLARKE SUGAR, ESQ., CA Bar #251681
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515

Attorneys for Clement C. and Ann Marie Carinalli, Debtors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

In re

CLEMENT C. and ANN MARIE CARINALLI,

Debtors

S.S.Ns: XXXX-XX-8623 and
XXXX-XX-5690

Case No. 09-12986

Under Chapter 11

Date: October 30, 2009
Time: 10:00 a.m.
Place: U.S. Bankruptcy Court
99 South "E" Street
Santa Rosa, California
Judge: The Honorable Alan Jaroslo

## DEBTORS' REPLY TO OBJECTIONS TO DEBTOR'S MOTION FOR APPROVAL OF SALE OF REAL PROPERTY AND RELATED RELIEF
### (2425 Mendocino Avenue, Santa Rosa)

On October 2, 2009, CLEMENT C. CARINALLI and ANN MARIE CARINALLI, the debtors-in-possession herein (the "Debtors"), filed and served their *Debtors' Motion For Approval Of (A) Sale Of Real Property Free And Clear Of Liens And Interests, And (B) Payment Of Closing Assistance Fee (2425 Mendocino Avenue, Santa Rosa)* (the "Motion"), seeking an order approving (a) the sale of real property and improvements located at 2425 Mendocino Avenue, Santa Rosa, California (the "Subject Property"), free and clear from certain liens and interests of Summit State Bank ("Summit"), NAI BT Commercial ("NAI") and KOR Commercial ("KOR"), for the purchase price of $2,750,000.00; and (b) payment of a closing assistance fee to be paid to KOR in order to facilitate the closing of such sale.

Three responses to the Motion have been filed, by Summit, KOR and a group calling itself the

1

DEBTORS' REPLY TO OBJECTIONS TO DEBTOR'S MOTION FOR APPROVAL OF SALE OF REAL PROPERTY AND RELATED RELIEF
24228.DOC 20044

Case: 09-12986   Doc# 69   Filed: 10/23/09   Entered: 10/23/09 12:42:38   Page 1 of 5

"Petitioning Creditors." The latter group, based on their self-proclaimed title and counsel, are presumed to be Corrick and Norma Brown and others (collectively, the "Browns") who initiated this chapter 11 case by the filing of an involuntary petition. None of the responding parties opposes the essential relief sought in the Motion, *to wit*, sale of the Subject Property and payment of a closing assistance fee, but each responding party objects to a particular feature of the Motion, to which the Debtors respond below.

A. **Summit Partial Objection**

In the Motion, the Debtors seek to sell the Subject Property free and clear of Summit's second deed of trust, but not Summit's first deed of trust. As set forth in the Motion, the enforceability of the second deed of trust is a matter of bona fide dispute, as it was granted by the Debtors within 90 days prior to the Petition Date and was used in part to secure payments made upon unsecured obligations owing from the Debtors to Summit. In the Motion, the Debtors propose to hold in escrow sale proceeds in the amount of $110,000.00 pending final resolution of that dispute, with Summit's lien attaching to such retained funds to the same extent of priority, avoidability, enforceability and allowability as the existing lien holds as against the Subject Property.

Summit has objected on two apparent grounds: (a) that the Motion does not explicitly state that Summit's first deed of trust will be paid in full at closing, and (b) that the second deed of trust should be paid in full as well, unless the Debtors leave in escrow funds in an amount almost double the amount in dispute. The Debtors submit that neither ground is well-grounded.

First, there is no need to provide in the Motion or in any order arising therefrom for the full payment of the first deed of trust, because the Subject Property is not being sold free and clear of the first deed of trust – the Debtors have not requested any relief with respect to the first deed of trust, whether under Section 363(f) or otherwise. Therefore, when the closing occurs, the Debtors will either satisfy the first deed of trust from the sale proceeds, or they will not be able to transfer clear title to the Buyers.[1] There is simply no need for any protection beyond what Summit's deed of trust itself provides, and this Court should not put itself in the position of imposing unnecessary conditions and terms.

---

[1] All capitalized terms, unless otherwise defined herein, shall have the meanings ascribed to them in the Motion.

2

DEBTORS' REPLY TO OBJECTIONS TO DEBTOR'S MOTION FOR APPROVAL OF SALE OF REAL PROPERTY AND RELATED RELIEF
24228.DOC 20044

Case: 09-12986   Doc# 69   Filed: 10/23/09   Entered: 10/23/09 12:42:38   Page 2 of 5

Second, it is not reasonable to set aside $175,000 of sorely needed funds to protect the $107,000 second deed of trust in dispute. Presuming that Summit cooperates in a simple investigation, any dispute regarding preferential transfers should be quickly resolved without the necessity of litigation, and setting aside almost $70,000 for interest and attorneys' fees that might accrue during that period, even assuming such charges are properly owing to Summit, is clearly excessive.

Insofar as Summit implicitly concedes the avoidability of at least $11,000 of the disputed lien, holding $110,000 in escrow as the Debtors propose, at least $14,000 of which is cushion above the amount that Summit could recover, should be sufficient to protect Summit against the accrual of interest or other charges. Summit's partial objections should therefore be overruled.

B. **KOR Conditional Objection**

In the Motion, the Debtors point out that their listing agreement with their broker, NAI BT Commercial ("BT Commercial") is a prepetition contract that is no longer executory and that under applicable Ninth Circuit law, including *In re Munple, Ltd.*, 868 F.2d 1129 (9th Cir. 1989), the Debtors are precluded from paying commission thereunder to BT Commercial or to KOR, the Buyers' broker. The law is clear on this point, and notably, neither broker, BT Commercial or KOR, has disagreed with the Debtors' analysis of the listing agreement. BT Commercial, in particular, has filed no objection or comment with respect to the Motion.

KOR, however, has filed a "conditional" objection, arguing that the Debtors cannot legally avoid payment of commissions to KOR because KOR's right to a commission allegedly arises from the sale contract itself, not from the listing agreement, and, according to KOR, the sale agreement is being assumed. KOR goes on to state that notwithstanding its right to a commission, it is willing to forgo it as a compromise, provided that it is paid the $30,000 closing assistance fee proposed by the Debtors.

KOR has it wrong on both counts. It is not entitled to payment of its commission, whether under the listing agreement or under the sale agreement, and the closing assistance fee is not intended as a compromise but rather as a fee for services to be rendered.

First, the sale contract is not executory and is not being assumed. The Debtors have not asked

3

the Court for authority to assume the contract under Section 365 of the Bankruptcy Code, but rather have asked for authority to sell the Subject Property under Section 363 of the Bankruptcy Code. In fact, the sale contract is no longer executory or enforceable, as the deadline for closing has passed, so there is nothing to be assumed. The Debtors believe that the Buyers are still desirous of completing a purchase of the Subject Property on the terms of the sale agreement, but they are not legally bound and they could not be compelled to do so by assumption of the sale agreement.

Second, any reference to commissions within the sale agreement are derivative of the listing agreement, which is no longer enforceable as an executory contract. This is precisely the set of circumstances that existed in *In re Munple, supra*, in which the Court of Appeals prohibited payment of commissions. Although KOR seeks to distinguish itself from that case because it is the buyers' broker, not the Debtors' broker, it is a difference without a distinction: Either way, any commission owing to KOR arises only as a sharing of commissions due to BT Commercial under the listing agreement, which the Court of Appeals has clearly determined to be non-assumable.

Third, the closing assistance fee is not proposed by the Debtors as a compromise, and if KOR views it as such, it should not be paid. Rather, it is intended as a fee for services to be rendered in facilitating the closing of the sale of the Subject Property.

In any event, KOR's objection is without merit and should be overruled.

C. **Browns' Partial Objection**

The Browns, as unsecured creditors, do not oppose any of the relief sought in the Motion, but argue that all sale proceeds should be held without use, more or less indefinitely. There is no legal or factual basis for this position. The Debtors, as debtors-in-possession, have full authority to expend estate funds in the ordinary course of business, subject to their fiduciary obligations to the estate. 11 U.S.C. § 1108; *John Fabick Tractor Co. v. Maun (In re Maun)*, 95 B.R. 94, 96 n.1 (Bankr. S.D. Ill. 1989) (concluding that the debtor had all the rights, powers and duties of a trustee and therefore could continue making payments to secured creditors). There has been no suggestion that the Debtors have acted improperly, nor have they done so, and there is no basis for such a radical departure from the normal operation of a chapter 11 case. *In re UNR Indus., Inc.*, 30 B.R. 609 (Bankr. N.D. Ill. 1983) (recognizing that "courts have no authority to interfere with the day-to-day business decisions" of a

4

DEBTORS' REPLY TO OBJECTIONS TO DEBTOR'S MOTION FOR APPROVAL OF SALE OF REAL PROPERTY AND RELATED RELIEF
24228.DOC 20044

debtor-in-possession).

In fact, there are many expenses that must be paid on a current basis by the Debtors, particularly debt service owing on secured debt, in order to avoid additional charges and inroads into the estate's equity in properties, and the Debtors' own personal expenses are modest and necessary as well. *Dzikowski v. Southtrust Bank of Florida (In re Family Health Food U.S.A., Inc.)*, 223 B.R. 250, 251 (Bankr. S.D. Fla. 1998) (holding that payments to secured creditors by a debtor-in-possession was "a proper exercise of the power to operate the business under section 1108."). If the Debtors fail to act or spend funds properly, then their reports will indicate any improper expenditures and the Browns can seek appropriate relief then, including a request for the appointment of a trustee. *In re UNR Indus., Inc.*, 30 B.R. at 612 (noting that if the trade creditors think the debtor is not capable of management of the business in accordance with section 1108 their recourse is to move for appointment of a trustee or examiner pursuant to section 1104).

In the meantime, however, where there is no evidence of any wrongdoing or reckless use of estate funds, and the rules of operation of the estate by the debtors-in-possession should not be turned on their head. *In re Thrifty Liquors, Inc.*, 26 B.R. 26, 28 (Bankr. D. Mass. 1982) ("The Court is loath to interfere with the Trustee's business decision in regard to the execution of this management agreement and the propriety of the proposed sale."). The Browns' objection should be overruled accordingly.

## CONCLUSION

Based on the foregoing, the Debtors respectfully submit that the Motion should be granted and all objections, conditional, limited or otherwise, should be overruled.

DATED: October 23, 2009

                MEYERS LAW GROUP, P.C.

                By:   /s/ Merle C. Meyers
                    Merle C. Meyers, Esq.
                Attorneys for Clement and Ann Marie Carinalli, Debtors

5

DEBTORS' REPLY TO OBJECTIONS TO DEBTOR'S MOTION FOR APPROVAL OF SALE OF REAL PROPERTY AND RELATED RELIEF
24228.DOC 20044

Case: 09-12986　　Doc# 69　　Filed: 10/23/09　　Entered: 10/23/09 12:42:38　　Page 5 of 5