MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ., CA Bar #66849
EDIE WALTERS, ESQ., CA Bar #262730
D. CLARKE SUGAR, ESQ., CA Bar #251681
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515

Attorneys for Clement C. and Ann Marie Carinalli, Debtors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>CLEMENT C. and ANN MARIE CARINALLI,<br><br>Debtors<br><br>S.S.Ns: XXXX-XX-8623 and<br>XXXX-XX-5690 | Case No. 09-12986<br><br>Under Chapter 11<br><br>Date: December 11, 2009<br>Time: 10:00 a.m.<br>Place: U.S. Bankruptcy Court<br>        99 South "E" Street<br>        Santa Rosa, California<br>Judge: Honorable Alan Jaroslovsky |

**DEBTORS' MOTION FOR (A) APPROVAL OF
SALE OF REAL PROPERTY; (B) ALLOWANCE OF DUAL
REPRESENTATION; AND (C) PAYMENT OF BROKERAGE COMMISSION**
(1320 Lemmon Street, Vallejo, California)

    CLEMENT C. CARINALLI and ANN MARIE CARINALLI, the debtors-in-possession herein (the "Debtors"), by and through their undersigned counsel, hereby move (this "Motion") the above-entitled Bankruptcy Court, pursuant to the provisions of Sections 105, 327, 330, and 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order granting the following relief:

    (a)    approving the sale of real property and improvements located at 1320 Lemmon Street, Vallejo, California (the "Subject Property"), in which the Debtors hold a one third ownership interest, for the purchase price of $4,500,000;

1
DEBTORS' MOTION FOR (A) APPROVAL OF SALE OF REAL PROPERTY; (B) ALLOWANCE
OF DUAL REPRESENTATION; AND (C) PAYMENT OF BROKERAGE COMMISSIONS

(b) allowing Jason Allen ("Mr. Allen") and Bancap Self Storage Group, Inc. ("Bancap"), the real estate agent and brokerage firm, respectively, retained by the Debtors to represent both the Debtors and the Maher Family Trust of 1988, the prospective buyer, in the sale of the Subject Property; and

(c) authorizing payment to Mr. Allen and Bancap (collectively, the "Brokers") of a commission equal to 5% of the purchase price as compensation for brokering the sale of the Subject Property.

## I. JURISDICTION AND VENUE

This Court has jurisdiction to hear and determine this Motion pursuant to 28 U.S.C. §§ 1334 and 157. The Court's consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of this proceeding is proper in this district under 28 U.S.C. §§ 1408 and 1409. The statutory authority for the Motion is Sections 105, 327, 330 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

## II. STATEMENT OF FACTS

The record of the Bankruptcy Court, together with the declaration of Clement C. Carinalli (the "Carinalli Declaration") filed concurrently herewith, establish the following pertinent facts:

### A. The Debtors and the Chapter 11 Case

1. On September 14, 2009 (the "Petition Date"), three creditors (collectively, the "Petitioners") filed an involuntary petition (the "Petition") against Mr. Carinalli, seeking commencement of a case under chapter 7 of the Bankruptcy Code.

2. Pursuant to stipulation between the Debtors and the Petitioners, on September 29, 2009, the Bankruptcy Court entered an *Order for Relief in Chapter 11* (the "Order for Relief," Docket No. 9). The Order for Relief provided that both of the Debtors became joint debtors in possession under chapter 11 of the Bankruptcy Code.

3. The Debtors remain in possession of their estate and continue to operate and manage their business affairs. It is the Debtors' intent to propose a plan of reorganization for the treatment and disposition of all property and obligations within their estate.

4. The Debtors' estate contains numerous real property assets, interests in operating and

2
DEBTORS' MOTION FOR (A) APPROVAL OF SALE OF REAL PROPERTY; (B) ALLOWANCE OF DUAL REPRESENTATION; AND (C) PAYMENT OF BROKERAGE COMMISSIONS

Case: 09-12986   Doc# 118   Filed: 11/13/09   Entered: 11/13/09 16:16:12   Page 2 of 11

real estate entities and other assets with substantial value that the Debtors intend to realize for the benefit of their secured and unsecured creditors, both during the chapter 11 process and through their reorganization plan.

**B.      The Subject Property and Existing Liens**

5.      The Subject Property, located at 1320 Lemmon Street, Vallejo, California, and further described by A.P.N. 0059-180-220 in the Solano County records, is a multiunit self storage facility, consisting of 483 units, constructed in 1980 and containing approximately 81,664 square feet of gross building area, on a 4.44 acre lot.  The Subject Property is owned by Five Star Investment Company, A Joint Venture (the "Owner"), which is, in turn, owned by (a) the Debtors, (b) Vernon L. and Glenda J. Upson, and (c) John V. and C. Aline Maher (collectively, the "Members"), in equal one-third interests.  Record title to the Subject Property is held by each of the Members, in fee title.

6.      The Subject Property's present occupancy percentage is 90%.  An appraisal (the "Appraisal") conducted in May 31, 2007 by Real Estate Valuation Services valued the Subject Property at approximately $4,450,000.  A copy of the summary portion of the Appraisal is attached to the Carinalli Declaration as **"Exhibit "A."**

7.      The Subject Property is currently encumbered by a deed of trust (the "Deed of Trust") granted on May 5, 2000 in favor of Sonoma National Bank (the "Bank") and recorded in the real property records of Solano County, California as Instrument No. 2000-00043494, in order secure a promissory note in favor of the Bank (the "Note") in the original principal balance of $500,000.

8.      The Note and the Deed of Trust reflect longstanding obligations of the Owner, and the Debtors do not believe that the lien against the Subject Property created by the Deed of Trust is avoidable in any respect.  The current balance owing under those documents is approximately $270,787.00.

**C.      Marketing and Sale of the Subject Property**

Beginning in September 9, 2009, the Owner, through its Members, engaged the services of the Brokers to market and sell the Subject Property pursuant to the *Exclusive Authorization To Sell* (the "Listing Agreement"), a copy of which is attached as **Exhibit "B"** to the Carinalli Declaration. Under the terms of the Listing Agreement, the Owner agreed to pay the Brokers a commission upon

3
DEBTORS' MOTION FOR (A) APPROVAL OF SALE OF REAL PROPERTY; (B) ALLOWANCE OF DUAL REPRESENTATION; AND (C) PAYMENT OF BROKERAGE COMMISSIONS

Case: 09-12986   Doc# 118   Filed: 11/13/09   Entered: 11/13/09 16:16:12   Page 3 of 11

sale of the Subject Property equal to 5% of the total consideration. Based upon the Debtors' considerable experience as investors in real estate, the Debtors' believe that such compensation is fair, reasonable and customary. In fact, the Debtors believe that it is below industry standards of 6% commissions. Based on the Debtors' investigation, the Debtors believe that both Mr. Allen and Bancap have relevant and valuable experience and a successful track record commensurate with demanding the industry standard brokerage fee, after having successfully brokered many similar sales in the past.

9. The Brokers successfully identified a buyer for the Subject Property, and on or about October 20, 2009, the Owner entered into a *Standard Offer, Agreement And Escrow Instructions For Purchase Of Real Estate* (the "Purchase Agreement") to sell the Subject Property to the Maher Family Trust of 1998 or its assignees (the "Buyer"). A copy of the Purchase Agreement is attached to the Carinalli Declaration as **Exhibit "C."**

10. Under the terms of the Purchase Agreement, subject to Bankruptcy Court approval, the Buyer will pay a cash purchase price of $4,500,000.00 and will acquire the Subject Property on an "as is, where is" basis. The sale is contingent upon completion of satisfactory due diligence, and the Buyer has received the due diligence information from the Owner. The Buyer is expected to release all contingencies prior to the hearing of this Motion.

11. Billy C. Maher, trustee for the Buyer, is the brother of John V. Maher, one of the Members who, with his wife, holds one-third interest in the Subject Property. Notwithstanding this relationship, the Purchase Agreement is the product of good-faith, arms' length negotiations, as evidenced by the Appraisal as well as other offers received over the course of the listing period.

12. The Debtors believe that the proposed sale of the Subject Property, upon the terms set forth in the Purchase Agreement, is in the best interests of their estate, for each of the following reasons:

- The Buyer's offer actually exceeds the appraised value of the Subject Property, despite the fact that the Appraisal was conducted prior to the recent collapse of the real estate market;
- The Buyer's offer is greater than all other offers received by the Owner over the listing

- period, and many of those competing offers relied on Owner financing;
- Financing in the current economy is extremely difficult to obtain, and the Buyer has presented a cash offer that does not rely on third-party financing;
- The Debtors believe that the proposed purchase price reflects an approximate capitalization rate of 8.5%, whereas the general market for such property reflects capitalization rates above 10%, meaning that the price is higher than general market conditions would dictate;
- Sales of multi-unit self storage facilities in California have dramatically decreased from 28 in 2008 to only 9 in 2009; and
- The proposed sale will produce much-needed cash for the Debtors' estate, with which the Debtors will be able to make debt service payments, and fund operating costs, essential to the preservation of other estate property with realizable equity value.

**D.  Employment and Compensation of Brokers**

13. On October 9, 2009, the Debtors filed the *Debtors' Application To Employ Real Estate Brokers* (the "Application," Docket No. 38) with the Court, contemporaneously with supporting documents, including the *Declaration Of Jason Allen In Support Of Debtors' Application To Employ Real Estate Brokers* (the "Allen Declaration," Docket No. 38). The Application sought the entry of an order pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code, and Rules 2014(a) and 2016 of the Bankruptcy Rules, authorizing the Debtors to retain and employ certain real estate brokers, including the Brokers, during the pendency of the Debtors' chapter 11 case upon the terms and conditions summarized therein.

14. On October 28, 2009, in response to the United States Trustee's intended opposition to the employment of any real estate broker holding a claim against the Debtors, the Debtors filed the *Notice Of Withdrawal Of Debtors' Application To Employ Real Estate Brokers, And Accompanying Declarations In Support Thereof, To The Extent Application Seeks To Employ Cary Bertolone, Danny Jones, and Paul Schwartz As Real Estate Brokers* (the "Withdrawal Notice," Docket No. 76), withdrawing the Application to the extent that it sought the employment of certain brokers. The withdrawal did not affect the Debtors' request for retention of the Brokers, and as modified, the

5
DEBTORS' MOTION FOR (A) APPROVAL OF SALE OF REAL PROPERTY; (B) ALLOWANCE OF DUAL REPRESENTATION; AND (C) PAYMENT OF BROKERAGE COMMISSIONS

Case: 09-12986   Doc# 118   Filed: 11/13/09   Entered: 11/13/09 16:16:12   Page 5 of 11
20044/24289

Application was not opposed in any respect by the United States Trustee.

15. On November 6, 2009, pursuant to the Court's instructions, the Debtors submitted their proposed form of an *Order On Debtors' Application To Employ Real Estate Brokers* (the "Proposed Order"). On November 9, 2009, the Court entered its *Order On Debtors' Application To Employ Real Estate Brokers* (the "Broker Order," Docket No. 110), approving the employment of the Brokers subject to the following restrictions added by the Court:

- Compensation for real estate brokers shall be as the Court allows; and
- Brokers may represent the Debtors only, and may not also represent a buyer in connection with any sale of estate property.

16. The Debtors believe that these restrictions will make it significantly more difficult for the Debtors to retain the most knowledgeable and successful brokers to help liquidate their properties, resulting in a detriment to the Debtors' estate, for these reasons among others:

(a) First, it is common industry practice, particularly in more rural areas in which many estate properties exist, for brokers to have dual representations of both buyers and sellers, and restricting brokers to just representation of the Debtors as sellers will unduly constrict an already limited pool of available and highly competent real estate brokers who can be retained by the Debtors to assist in marketing many estate properties for sale.

(b) Second, the Debtors believe that the Brokers have fully performed their duties in representing the Debtors as sellers, and do not believe that the Brokers' concurrent representation of the Buyer has affected that performance to any degree. This is reflected, in particular, in the purchase price that is higher than the Subject Property's 2007 appraised value and based on a capitalization rate in excess of current market standards.

(c) Third, with respect to the Subject Property in particular, the Brokers' niche-focus on brokering multi-unit self storage properties makes them uniquely adept at facilitating the Subject Property transaction, and it is the Debtors' understanding that the Brokers are one of only a few companies specializing in this area within Northern California.

6
DEBTORS' MOTION FOR (A) APPROVAL OF SALE OF REAL PROPERTY; (B) ALLOWANCE OF DUAL REPRESENTATION; AND (C) PAYMENT OF BROKERAGE COMMISSIONS

Case: 09-12986   Doc# 118   Filed: 11/13/09   Entered: 11/13/09 16:16:12   Page 6 of 11
20044/24289

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

As such, it is not uncommon for the Brokers to represent both sides of a transaction, nor does it present any actual conflict of interest. The Brokers are extremely knowledgeable and adept at facilitating transactions of this nature, and have developed a positive rapport with both the Owners and the Buyer.

(d) Fourth, the Debtors are sophisticated real estate investors, represented by able counsel, and are able to protect the estate's interests in this respect without prohibition of dual broker representations.

(e) Fifth, it is the Debtors' understanding that the Official Committee of Unsecured Creditors appointed in this case (the "Committee") concurs in the Debtors' view in this respect.

17. Accordingly, concurrently herewith the Debtors have filed a motion requesting the Court to reconsider the added restrictions of the Broker Order generally. By way of this Motion, the Debtors seek such relief as to the Brokers and the proposed sale of the Subject Property in particular.

## III. RELIEF REQUESTED

By this Motion, the Debtors seek entry of an order, pursuant to Section 105, 327, 330 and 363 of the Bankruptcy Code, granting the following relief:

A. Approving the Purchase Agreement and authorizing the Debtors to transfer their ownership interest in the Subject Property in accordance therewith, pursuant to the provisions of Section 363(b) of the Bankruptcy Code;

B. Authorizing the Debtors to pay a 5% commission to the Brokers, based on their aliquot share of the purchase price for the Subject Property, upon the closing of the Purchase Agreement, in consideration for the Brokers' assistance brokering the Subject Property;

C. Authorizing the Brokers' dual agency capacity, to enable them to represent both the Owner and the Buyer of the Subject Property, notwithstanding the terms of the Broker Order; and

D. Waiving the 10-day stay imposed by the provisions of Rule 6004(h) of the Bankruptcy Rules.

7
DEBTORS' MOTION FOR (A) APPROVAL OF SALE OF REAL PROPERTY; (B) ALLOWANCE OF DUAL REPRESENTATION; AND (C) PAYMENT OF BROKERAGE COMMISSIONS

Case: 09-12986   Doc# 118   Filed: 11/13/09   Entered: 11/13/09 16:16:12   Page 7 of 11

# IV. DISCUSSION

For the reasons set forth below, the Debtors respectfully submit that the relief sought by the Motion is fully warranted.

## A. Sale of the Subject Property Under Section 363(b)

Section 363(b) of the Bankruptcy Code permits a debtor-in-possession to sell property of the estate other than in the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b). Further, Section 105(a) of the Bankruptcy Code allows a bankruptcy court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's power to authorize a sale under Section 363(b) is to be exercised at the court's discretion. *In re WPRV-TV,* 983 F.2d 336, 340 (1st Cir. 1993), *New Haven Radio, Inc. v. Meister (In re Martin-Trigona),* 750 F.2d 1334, 1346 (2d Cir. 1985), *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983).

A number of courts have held that the sale of chapter 11 estate property in a manner outside of the ordinary course of business, and outside of the context of a confirmed plan, is appropriate if the debtor or trustee demonstrates a "sound business purpose" for doing so. *See*, *e.g.*, *In re American Devel. Corp.,* 95 B.R. 735, 739 (Bankr. C.D. Cal. 1989); *In re Walters*, 83 B.R. 14 (9th Cir. BAP 1988); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *In re Lionel Corp., supra; In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15 (E.D. Pa. 1987).

Courts have considered a number of factors in determining whether to approve a sale of assets under Section 363(b), including (1) whether a sound business reason exists for the proposed transaction; (2) whether fair and reasonable consideration is being provided; (3) whether the transaction has been proposed and negotiated in good faith; and (4) whether adequate and reasonable notice has been provided. *See*, *e.g.*, *In re Ewell,* 958 F.2d 275 (9th Cir. 1992) (declining to set aside or modify a sale pursuant to 11 U.S.C. § 363 because the price was fair and reasonable and the buyer was a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code); *In re King-Wilson,*

8
DEBTORS' MOTION FOR (A) APPROVAL OF SALE OF REAL PROPERTY; (B) ALLOWANCE
OF DUAL REPRESENTATION; AND (C) PAYMENT OF BROKERAGE COMMISSIONS

Case: 09-12986   Doc# 118   Filed: 11/13/09   Entered: 11/13/09 16:16:12   Page 8 of 11
20044/24289

1998 U.S. Dist. LEXIS 16595 at *11-12 (N.D. Cal. Oct. 13, 1998); *In re Canyon P'ship,* 55 B.R. 520 (Bankr. S.D. Cal. 1985).

Courts within the Ninth Circuit have authorized sales of debtors' assets pursuant to Section 363(b) where there are good business reasons to do so. *See, e.g., In re American Development Corp., supra,* 95 B.R. at 739 (among the factors that determine whether a good business reason exists is whether the sale is in the best interests of the estate's creditors); *In re Photocopy & Supply, Inc.* 1994 WL 553065 at *1 (Bankr. D. Idaho 1994); *see also In re Lionel Corp., supra*, 722 F.2d at 1071 (setting forth the "sound business purpose" test).

In *Lionel*, which involved the sale of substantially all of the assets of the debtor, the Second Circuit Court of Appeals held that the standard for the proper exercise of the debtor's discretion is whether there is a good business reason for that exercise (*Id.* at 1071), and the Court adopted, in part, the following criteria for evaluating whether a good business reason exists for authorizing a sale of assets of a debtor:

(a) the proportionate value of the asset to the estate as a whole;

(b) the amount of elapsed time since the filing of the petition;

(c) the likelihood that a plan will be proposed and confirmed in the near future;

(d) the effect of the proposed disposition on future plans of reorganization; and

(e) most importantly, whether the assets to be sold are decreasing or increasing in value.

*Id.*

In *Delaware & Hudson Ry. Co.*, *supra*, the District Court noted that evidence supporting the proposed purchase price as being fair and reasonable included extensive solicitation of bids by the trustee, negotiations with several prospective purchasers, and the trustee's testimony that the accepted offer was the best offer received for the debtor's assets. *Id.* at 179.

Here, the proposed sale of the Subject Property upon the terms of the Purchase Agreement fit squarely within the parameters of the sound business judgment test articulated in all of the above-referenced authorities. First, the Debtors have demonstrated a sound business purpose for the proposed sale, given the circumstances, including limited cash resources and the need for cash to

9
DEBTORS' MOTION FOR (A) APPROVAL OF SALE OF REAL PROPERTY; (B) ALLOWANCE OF DUAL REPRESENTATION; AND (C) PAYMENT OF BROKERAGE COMMISSIONS

Case: 09-12986   Doc# 118   Filed: 11/13/09   Entered: 11/13/09 16:16:12   Page 9 of 11

20044/24289

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

preserve and maintain other estate property with realizable equity value. Second, the offer is clearly in the best interests of the estate, as it exceeds the appraised value of the Subject Property, despite the Appraisal having been prepared prior to the recent economic and real estate downturn. Third, the present offer is greater than any competing offer received over the listing period, better than would result from current market-driven capitalization rates and not dependent on third-party financing.

Accordingly, is in the best interest of the Debtors' estate and the proposed sale of the Subject Property should be approved.

### B. Duel Representation

Contemporaneously herewith, the Debtors have filed the *Debtors' Motion For Reconsideration Of Order Approving Debtors' Application To Employ Real Estate Brokers* (the "Motion for Reconsideration"), pursuant to Bankruptcy Rule 60(b) and Section 105 of the Bankruptcy Code, asking the Court to reconsider the restrictions contained in the Broker Order to the extent that they preclude real estate brokers from representing the Debtors and potential buyers in a dual capacity. The Debtors, through their Motion for Reconsideration, argue (as here) that a prohibition against dual representation is unnecessary, burdensome, and ultimately detrimental to the Debtors' estate and creditors thereto. While the Motion for Reconsideration seeks such relief generally as to all brokers retained by the Debtors, the Debtors request that relief in this Motion as to the Brokers in particular, so that the Brokers can be fully paid for their full and successful performance of services with respect to the Subject Property.

Particularly with respect to this proposed sale of the Subject Property, the restriction against dual representation is detrimental, given the Brokers' unique focus upon multi-unit self storage properties such as the Subject Property and numerous clients, both buyers and sellers, that the Broker have within this specialized field. The Debtors are sophisticated investors and sellers of real property, and therefore do not require or benefit from having independent representation. Moreover, as a practical matter, the offer obtained by the Brokers, for which the Debtors seek an allowance for dual representation, is greater than any offer received independently, further ameliorating any concern that the Brokers are somehow offering a deal to the detriment of the Debtors' estate.

10
DEBTORS' MOTION FOR (A) APPROVAL OF SALE OF REAL PROPERTY; (B) ALLOWANCE OF DUAL REPRESENTATION; AND (C) PAYMENT OF BROKERAGE COMMISSIONS
20044/24289

Case: 09-12986   Doc# 118   Filed: 11/13/09   Entered: 11/13/09 16:16:12   Page 10 of 11

### C. Brokers' Commission

Pursuant to the Listing Agreement, the Brokers have agreed to list and market the Subject Property in consideration of a 5% commission based on the purchase price. Such compensation is fair, reasonable and customary and below market standards. Both Mr. Allen and Bancap have relevant and valuable experience and a successful track record commensurate with demanding the industry standard brokerage fee, after having successfully brokered many similar sales in the past. The reasonableness of the commission is bolstered by the Brokers' ability to find a buyer despite the anemic outlook in today's real estate market. The Debtors submit that the negotiated commission should therefore by approved and authorized by the Court.

### D. Waiver Of Rule 6004(h) Stay

Lastly, the Debtors request that the Court waive the ten (10) day stay imposed on orders authorizing the use, sale or lease of property, by Bankruptcy Rule 6004(h). There is no reason to stay the proposed sale of the Subject Property, and allowing the parties to close the proposed sale in an expeditious manner will benefit the Debtors' estate by ensuring a prompt closing of the sale.

## V. CONCLUSION

WHEREFORE, the Debtors respectfully submit that the best interests of creditors and all parties-in-interest will be served by allowing the Debtors to sell the Subject Property as proposed herein, and by granting such other relief as is set forth above, and that this Motion should therefore be granted.

DATED: November 13, 2009

    MEYERS LAW GROUP, P.C.

    By:   /s/ Merle C. Meyers
    Merle C. Meyers, Esq.
    Attorneys for Clement and Ann Marie Carinalli, Debtors

11
DEBTORS' MOTION FOR (A) APPROVAL OF SALE OF REAL PROPERTY; (B) ALLOWANCE OF DUAL REPRESENTATION; AND (C) PAYMENT OF BROKERAGE COMMISSIONS
20044/24289

Case: 09-12986   Doc# 118   Filed: 11/13/09   Entered: 11/13/09 16:16:12   Page 11 of 11