1  KIBEL GREEN INC.
   Steven J. Green
2  2001 Wilshire Boulevard, Suite 420
   Santa Monica, CA 90403
3  Tel: (310) 829-0255
   Fax: (310) 453-6324
4
   Financial Advisors to the Official
5  Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>**CLEMENT C. CARINALLI AND ANN MARIE CARINALLI,**<br><br>Debtors. | Case No.: 09-12986<br><br>Chapter 11<br><br>**FIRST INTERIM APPLICATION OF KIBEL GREEN INC. AS FINANCIAL ADVISORS TO THE COMMITTEE FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD NOVEMBER 12, 2009 THROUGH FEBRUARY 26, 2010**<br><br>Date: April 30<br>Time: 10:30 AM<br>Place: 99 South E. Street<br>　　　　Santa Rosa, CA 95404<br>Judge: Honorable Alan Jaroslovsky |

Kibel Green Inc. ("KGI" or the "Firm") hereby submits its *First Interim Application for Allowance and Payment of Compensation and Reimbursement of Expenses for the Period November 12, 2009 Through February 26, 2010* (the "Application"), in connection with its services rendered as financial advisors to the Official Committee of Unsecured Creditors (the "Committee") for the above-captioned debtors (the "Debtors"). The Firm seeks interim approval of compensation totaling $310,203.10 which sum represents compensation for services rendered in the amount of $294,311.50 and reimbursement for expenses incurred in the amount of $15,891.60 for the period commencing on

November 12, 2009, and ending on February 26, 2010 (the "Application Period"). The Firm's charges by month are as follows:

| PERIOD | CONSULTING FEES | EXPENSES | TOTAL |
|---|---|---|---|
| November 2009 | $22,742.00 | $1,824.30 | $24,566.30 |
| December 2009 | $88,227.50 | $5,327.69 | $93,555.19 |
| January 2010 | $79,846.50 | $3,350.50 | $83,197.00 |
| February 2010 | $103,495.50 | $5,389.11 | $108,884.61 |
| TOTAL | $294,311.50 | $15,891.60 | $310,203.10 |

Summary charts detailing (i) the amount of fees charged and hours worked by each of the Firm's professionals, sub-contractor and paraprofessionals during the Application Period, and (ii) the amounts requested by the Firm for reimbursement of expenses incurred (by category) during the Application Period are annexed hereto as **Exhibit A**.

KGI submits this Application pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the *Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees* ("Northern District Guidelines"), and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, and the Local Bankruptcy Rules for the Northern District of California.

The Application is based upon the Application and the exhibits, including the declaration of Steven J. Green filed concurrently herewith, the pleadings, papers, and records on file in this case, and any evidence or argument that the Court may entertain at the time of the hearing on the Application.

# I.

# INTRODUCTION

A. **Background of the Debtor**

On September 14, 2009, petitioners Corrick and Norma Brown, L. Christine Healey, Naomi W. Reddert, Ryan C. Brown, and Walter Middletown O'Brien (collectively, the "Petitioners") filed an involuntary petition for relief under chapter 7 of the Bankruptcy Code against Mr. Carinalli, individually. On the same date, the Court issued a summons.

On September 29, 2009, Mr. Carinalli, through counsel, accepted service of the petition and summons. In addition, the Debtors, through counsel, stipulated with the Petitioners to convert the case to a case under chapter 11 of the Bankruptcy Code, with Mrs. Carinalli joining as a chapter 11 debtor. On the same date, the Court entered an order for relief under chapter 11 of the Bankruptcy Code.

On October 20, 2009, the United States Trustee appointed the Committee in the case pursuant to section 1102(a)(1) of the Bankruptcy Code. The Committee is presently comprised of the following seven members: (1) Robert W. Sinai and Rachel Sinai, (2) Five Star Bank, Attn: Eric Woodstrom, (3) Jon Ledyard, (4) Charles V. Cooper and Norma L. Cooper, c/o Michael Thomsen, (5) Robert M. O'Brien, c/o Margo O'Brien, Trustee, (6) George T. DeLong, and (7) Stephen Opperman, c/o Mark Opperman. The co-chairs of the Committee are: (a) Robert W. Sinai and (b) Five Star Bank, by and through Eric Woodstrom. To date, no other committees have been appointed in the Case.

**Employment of KGI**

By letter dated November 20, 2009, the Committee retained KGI as financial advisors, effective as of November 12, 2009. The order approving KGI's employment as financial advisors to the Committee was entered on January 7, 2010, a copy of which is attached hereto as **Exhibit B**. KGI retained, at the request of the Committee, The Tuxhorn Company ("Tuxhorn") as a sub-contractor, and the sub-contractor relationship with Tuxhorn was described in KGI's approved employment application. KGI has not made any prior requests for compensation in this case.

The Committee retained KGI to render the following types of professional services:

1. Review and analyze the financial position of the Debtors;
2. Evaluate the assets and liabilities of the Debtors, including the individual real estate properties and related businesses;
3. Review and analyze the Debtors' current and historical cash flow and financial projections;
4. Develop such materials as may be necessary to assist the Committee to evaluate the issues presented;
5. Evaluate the sales process (including timing) or other disposition of the Debtors' assets;
6. Attend (telephonically as appropriate) Committee meetings and other meetings and court hearings as required and advise the Committee on tactics and strategies for negotiating with the Debtors;
7. Render financial advice to the Committee and participate in meetings or negotiations with the Debtors and their advisors in connection with any asset dispositions or restructuring, modification or refinancing of the Debtors' existing debt obligations; and
8. Provide the Committee with other appropriate general restructuring advice.

## II.

## PROJECT BILLING AND NARRATIVE STATEMENT OF SERVICES RENDERED

In accordance with the Northern District Guidelines and the Local Rules, KGI classified all services performed for which compensation is sought into categories. KGI attempted to place the services performed in the category that best relates to the service provided. However, because certain services in the Debtor's chapter 11 case affected multiple categories, services pertaining to one category may occasionally be included in another category.

Pursuant to its normal billing practice in bankruptcy cases, and consistent with Northern District Guidelines, KGI has broken down its services into separate and distinct activity code categories, inclusive of services provided by sub-contractor Tuxhorn, as follows:

- Business Analysis
- Case Administration
- Employment and Fee Applications
- Meetings and Communications with Creditors
- Plan and Disclosure Statement

**Exhibit C** provides a detailed breakdown of the time entries and expenses incurred during the Application Period by KGI professional and activity code. KGI's normal billing practice is to bill clients in full for all services rendered plus out-of-pocket expenses incurred by KGI in providing services. KGI maintains records of hours expended by its professionals in rendering services to its clients. Time records are made extemporaneously with the rendering of these services by professionals, and are prepared by professionals who rendered these services. In matters such as this, time records are kept in 6 minute (0.10 hour) increments. Wherever possible, the bulk of work has been performed by lower cost consultants, including Tuxhorn, to control costs.

A.  **Business Analysis**

Time billed to this category primarily relates to issues related to the independent due diligence and analysis of the Debtors' assets, liabilities, operations and financial projections in order assist the Committee in responding to the Debtor's and third party proposals. Our major activities during the Application Period in support of the Committee included:

1. Review and evaluation of Debtor's recommended payment of property taxes due in December 2010.
2. Assimilation of thousands of pages of data, documents and information, including site inspections and independent investigation of more than 230 properties comprising the vast majority of the Debtor's assets including construction of an on line file sharing data base for ease of use by professionals and the Committee.
3. Detailed assessments of 25 selected properties comprising the "Top 25" of the Debtors' properties in terms of reported net equity value in excess of secured debt.
4. On-site due diligence meetings in Santa Rosa with the Debtor and its financial advisor to inspect properties, review property valuations and business plans, research

Debtors' affiliated mortgage and property management operations, and to develop and understanding of the Debtors' overall strategy for the plan of reorganization, which was anticipated to be delivered in January 2010.

5. Research of comparable sales, third party market studies and independent economic data and information to assist the Committee in independently evaluating key assumptions driving the Debtors' proposed liquidation strategies.

6. Evaluation of proposed sales, deed in lieu, or other transactions involving specific properties, including independent recommendations to the Committee.

7. Work interactively and extensively with the Debtors, their independent financial advisor and Tuxhorn to construct a comprehensive, consolidated multi-year financial model and cash flow projections for all 233 properties to support the liquidation plan, including rigorous testing of the Debtors' valuation, market and other operating assumptions to help provide assurance to the Committee that the Debtors' assumptions are well founded and provide a reasonable basis for supporting the Debtors' proposed liquidation plan. KGI prepared numerous scenarios and made several presentations to the Committee as part of the process of vetting the Debtors' proposed plan and developing viable alternatives to the plan that were suggested by the Committee.

8. Review Debtors' monthly operating report filings, monitor compliance with the cash collateral order, review Debtor's periodic filings of financial information with the Court, review Debtor's 90 day cash flow projections to monitor solvency of the estate; provide analysis and recommendations to the Committee regarding same.

9. Additionally, and at KGI's direction, Tuxhorn conducted inspections of virtually all of the Debtors' properties, extensive interviews with the Debtor, city and county agencies and others, reviewed the Debtor's valuations and plans, and developed independent evaluations and analysis of properties that was incorporated into KGI's reports to the Committee.

As a result of this substantial effort, KGI has been able advise the Committee on the Debtor's recently proposed reorganization plan. KGI's efforts will help to ensure that the Committee meets its duty to the unsecured creditor class to make a careful, independent assessment of the Debtor's business plans and proposals. Kibel Green is currently working diligently with the Debtor and its financial advisor to evaluate and respond to the Debtor's proposed Plan Term Sheet, and has developed an alternative approach and/or possible modification to the Debtor's proposal for consideration by the Committee that KGI believes may result in a better outcome for the unsecured creditors (note: below also includes 0.8 hours from Tuxhorn for asset analysis and disposition).

**991.7 Total Hours (including Tuxhorn) /Total Fees $228,483.50**

**B.** <u>**Case Administration**</u>

Time billed to this category primarily relates to coordination, planning and general management of KGI's and Tuxhorn's projects and activities with respect to its engagement by the Committee.

**69.9 Total Hours (including Tuxhorn)/Total Fees $17,214.50**

**C.** <u>**Employment and Fee Applications**</u>

Time billed to this category primarily relates to preparation of monthly invoices, employment and fee applications and motions to establish interim procedures for both KGI and Tuxhorn.

**31.3 Total Hours (including Tuxhorn)/Total Fees $9,065.00**

**D.** <u>**Meetings and Communications with Creditors**</u>

Time billed to this category primarily relates to preparing for and attending, in person or via telephone, conferences of creditors and/or creditors' meetings.

**102.8 Total Hours/Total Fees $37,733.50**

**E.** <u>**Plan and Disclosure Statement**</u>

Time billed to this category primarily relates to activities associated with formulation, presentation and confirmation of the Plan and Disclosure Statement. Also, activities associated with disbursement and case closing.

**4.6 Total Hours /Total Fees $1,815.00**

F.  **List of Expenses by Category**

KGI advanced costs, including certain in-house charges in connection with the performance of the services described in this Application. During the Application Period, KGI incurred a total of $14,858.02 in expenses and Tuxhorn incurred $1,033.58. Additionally, as noted above, at the request of the Committee KGI retained Tuxhorn as a sub-contractor. In accordance with KGI's engagement letter memorializing its engagement by the Committee, KGI has added a 10% administrative fee to Tuxhorn's fees, which are included at cost in this Application. KGI has made every effort throughout this case to keep the costs to a minimum. The charges are summarized in the Expense Summary Chart attached hereto as **Exhibit A.**

G.  **Hourly Rates**

The hourly rates of all professionals and paraprofessionals rendering services in this case are set forth in the Billing Summary Chart on **Exhibit A**, hereto.

H.  **Professionals and Paraprofessionals**

The biographies of the professionals who have worked on this matter and rendered services in this case during the Application Period are attached hereto as **Exhibit D**. KGI has no understanding, agreement, or arrangement of any kind to divide with or pay to anyone any of the fees to be awarded in these proceedings, except to be shared among members of the Firm.

I.  **Client Review of Billing Statements**

Pursuant to the Northern District Guidelines, a cover letter to the Application is being sent to the Committee concurrently with the filing of this Application. The letter invites the Committee to discuss with the Firm and/or the Office of the United States Trustee any objections, concerns, or questions the Committee may have with regard to the requested compensation and reimbursement set forth in the Application. A copy of the transmittal letter is attached hereto as **Exhibit E.**

J.  **Notice of Application and Hearing**

Counsel to the Debtors is providing notice of this Application and the hearing thereon to creditors consistent with Bankruptcy Rule 2002.

# III.

## **THE FEES AND EXPENSES REQUESTED SHOULD BE AWARDED BASED UPON APPLICABLE LAW**

The fees and expenses requested by this Application are an appropriate award for KGI's services in acting as counsel to the Committee.

### A. **Evaluation of Requests for Compensation**

Pursuant to Bankruptcy Code section 330, the Court may award to a professional person reasonable compensation for actual, necessary services rendered, and reimbursement for actual, necessary expenses incurred. Pursuant to Bankruptcy Code section 331, the Court may award interim compensation and reimbursement to a professional. As set forth above, the fees for which the Firm requests compensation and the costs incurred for which the Firm requests reimbursement are for actual and necessary services rendered and costs incurred.

In determining the amount of allowable fees under Bankruptcy Code section 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *Burgess v. Klenske* (*In re Manoa Finance Co., Inc.*), 853 F.2d 687, 691 (9th Cir. 1988).

In assessing the propriety of an award of attorneys' fees, twelve factors relevant to determining such fees were identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), a Title VII class action case under the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976): (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the service properly, (4) the preclusion of other employment by the professional due to acceptance of the case, (5) the customary fee, (6) whether fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the professionals, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *See American Benefit Life Ins. Co. v. Baddock* (*In re First Colonial Corp. of America*), 544 F.2d 1291 (5th Cir. 1977) (*Johnson* criteria applicable in

bankruptcy cases.).

The time for which compensation is sought is detailed in the Firm's professional fee statements contained in **Exhibit C** hereto. KGI's services and time expenditures are reasonable in light of the labor required in this case. The Firm's charges for its professional services are based upon the time, nature, extent, and value of such services and the cost of comparable services in the area, other than in a case under the Bankruptcy Code. The compensation the Firm seeks by way of this Application is the customary compensation sought by the Firm and other professionals representing trustees, committees, and debtors in similar circumstances.

B.    Section 330(a)(3) Factors

Bankruptcy Code section 330(a)(3) sets forth five (5) factors to be considered by the Court. 11 U.S.C. § 330 (a)(3). Although several of these factors (such as the time involved, the timeliness of KGI's performance, and the complexity of the case) were addressed above, KGI believes two of the five factors should be discussed separately again here.

First, Bankruptcy Code section 330(a)(3)(C) requires that the professional services be necessary to the administration of, or beneficial at the time at which the service was rendered toward completion of, the case. KGI believes the facts of this case make it evident that KGI's services were both necessary and beneficial. KGI's efforts were essential to the organization and function of the Committee, and, as stated above, KGI provided advice, counsel and direction to the Committee to assist it in serving an active and productive role in this case.

Second, Bankruptcy Code section 330(a)(3)(E) requires the compensation to be reasonable based on customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code. KGI believes its members are skilled and have performed well in this case, and that the fees charged by KGI are no less favorable than those customarily billed by KGI and generally accepted by the Firm's clients.

IV.

NOTICE OF APPLICATION AND HEARING

Counsel to the Committee is providing notice of this Application and the hearing thereon to creditors consistent with Bankruptcy Rule 2002.

## V.

## CONCLUSION

The compensation presently sought by KGI is interim. KGI believes that the services rendered for which compensation is sought in this Application have been beneficial to the estate, that the costs incurred have been necessary and proper, and that the sums requested for the services rendered and the costs incurred are fair and reasonable.

WHEREFORE, KGI respectfully requests that this Court (a) authorize allowance and direct payment of fees and costs, and (b) award interim compensation, as follows:

1. Allow interim compensation to the Firm in the amount of $310,203.10, inclusive of all fees and costs for the period from November 12, 2009, through February 26, 2010, consisting of $294,311.50 of fees and $15,891.60 of expenses;

2. Authorize and direct the Debtors to pay the Firm $310,203.10, which represents 100% of the fees and 100% of the costs incurred for the period from November 12, 2009, through February 26, 2010; and

3. Grant such other and further relief as may be appropriate under the circumstances.

Dated:

KIBEL GREEN INC.

By _____
Steven J. Green
President and Co-Founder
Kibel Green, Inc.

Financial Advisors to the Official
Committee of Unsecured Creditors