# EXHIBIT B

# KIBEL GREEN

Kibel Green Incorporated • www.kibelgreen.com

November 20, 2009

Robert W. Sinai
Carinalli Unsecured Creditors Committee Co-Chair
6485 Timber Springs Drive
Santa Rosa, CA 95409

Eric J. Woodstrom
Carinalli Unsecured Creditors Committee Co-Chair
Five Star Bank
358 Hartnell Avenue
Suite B
Redding, CA 96002

Dear Messrs. Sinai and Woodstrom:

The purpose of this letter is to confirm the understanding and agreement (the "Agreement") with the Official Committee of Unsecured Creditors (the "Committee") formed in connection with the Chapter 11 bankruptcy filing of Clement C. Carinalli and Ann Marie Carinalli (together, the "Debtor"), concerning the engagement of Kibel Green Inc. ("KGI") by the Committee.

1. **Engagement**: KGI is being retained to provide financial advisory services for the Committee in connection with the Debtor's restructuring of its indebtedness and disposition of its assets in its Chapter 11 case, including the analysis, consideration and development of a Chapter 11 plan of reorganization. Upon retention, KGI will work at the direction of the Committee and in conjunction with legal and other advisors retained by the Committee to:

(a) Review and analyze the financial position of the Debtor;

(b) Evaluate the assets and liabilities of the Debtor, including the individual real estate properties and related businesses;

(c) Review and analyze the Debtor's current and historical cash flow and financial projections;

(d) Develop such materials as may be necessary to assist the Committee to evaluate the issues presented;

Initialed _____
Kibel Green Inc.

Initialed _____
The Committee

**Los Angeles**
2001 Wilshire Boulevard, Suite 420
Santa Monica, CA 90403
310•829•0255   310•453•6324 fax

**San Francisco**
50 California Street, Suite 1500
San Francisco, CA 94111
415•392•0955   415•277•5421 fax

**Irvine**
One Park Plaza, Suite 600
Irvine, CA 92614
949•852•0150   949•852•0217 fax

(e) Evaluate the sales process (including timing) or other disposition of the Debtor's assets;

(f) Attend (telephonically as appropriate) Committee meetings and other meetings and court hearings as required

(g) Advise the Committee on tactics and strategies for negotiating with the Debtor;

(h) Render financial advice to the Committee and participate in meetings or negotiations with the Debtor and its advisors in connection with any asset dispositions or restructuring, modification or refinancing of the Debtor's existing debt obligations; and

(i) Provide the Committee with other appropriate general restructuring advice.

The advisory services and compensation arrangements set forth herein do not encompass raising capital or selling assets. If the Committee and KGI later determine to expand KGI's scope of services to include these activities, such future agreement will be the subject of a further and separate written agreement of the parties and Bankruptcy Court approval.

2. <u>Project Team</u>: The project leader will be Jay Maddox, Managing Director and Head of the Real Estate Practice. Steven Green, Co-founder and President, is the partner in charge, and Matt Covington, Managing Director and Head of Financial Restructuring, will provide services as required. KGI reserves the right to utilize other KGI Professionals not named here as required. In addition, KGI may use various other consultants or professionals ("Professionals") as appropriate. At the Committee's request, KGI may sub-contract with The Tuxhorn Company. The Tuxhorn Company's fees will be included in KGI's fee application, billed at KGI's cost plus a 10% administrative fee. KGI is not liable for the Tuxhorn Company's fees or work product.

3. The terms of our compensation are as follows:

a) <u>Guaranteed Fees</u>: – KGI will provide bills on a monthly basis for Guaranteed Fees and Expenses. Subject to the authorization of the Bankruptcy Court, KGI's invoices will be paid within 5 days of approval by the Bankruptcy Court out of the Debtor's estate. The hourly billing rates for those assigned to this project are as follows (provided that KGI will bill half-time for travel):

| | |
|---|---|
| Steven J. Green | $550 |
| Jay Maddox | $495 |
| Matt Covington | $495 |
| Senior Consultant | $250-$375 |
| Other Professionals | $90-$495 |

b) <u>Expenses</u>: Direct out-of-pocket expenses for travel, off-site printing and reproduction, transcription services, graphics, messenger services, overnight mail, shipping, and other

third party charges will be billed to the Company at KGI's cost. Additional expenses incurred on Company's behalf such as telephone, faxes, photocopies, supplies, postage, computer usage/supplies, administrative/clerical support services will be billed as an allocated cost of 3% of fees. All expenses are in addition to the professional fees and are due and payable upon presentation. By execution of this Agreement, the Committee authorizes KGI to advance such costs and make such out-of-pocket expenditures as may be reasonably necessary in connection with our services.

4. <u>Term of Agreement</u>: This Agreement is effective as of November 12, 2009, upon its execution by both parties, and shall continue unless either party gives 5 days prior written notice of termination to the other party. The Committee and the Debtor agree to use their best efforts promptly to endorse this Agreement for approval of the court. KGI reserves the right to withdraw its services if (i) the court does not approve this Agreement, or (ii) the court does not review this Agreement within 30 days of the execution date, or (iii) in the judgment of KGI, the Debtor does not have the funding to pay in full for the services of KGI. Upon any termination, the provisions of Paragraph 3 (to the extent applicable) shall survive the termination of this Agreement to the extent such provisions relate to the payment of fees due on or before the effective date of termination and expenses incurred on or before the effective date of termination, and the provisions of Paragraphs 5, 6 and the Appendix shall survive the termination of this Agreement and shall remain in effect.

5. <u>Debtor Information</u>: The Committee recognizes and confirms that in rendering services hereunder, KGI will be using and relying on, and assuming the accuracy of, without any independent verification, data, material and other information (collectively, the "Information") furnished to KGI by or on behalf of the Committee, the Company or other third parties (including their agents, counsel, employees and representatives). The Committee understands and confirms that KGI will not be responsible for independently verifying the accuracy of the Information provided to KGI and shall not be liable for inaccuracies in any such Information. Unless required by subpoena or other valid legal process, and prior written notice is provided to Debtor so that it may challenge such disclosure, KGI will not disclose to any third party (other than our counsel) any portion of the information so provided by the Debtor which constitutes confidential, proprietary or trade secret information except in furtherance of our engagement hereunder. KGI will not use such confidential information for any purpose other than pursuant to our engagement hereunder.

6. <u>No Formal Appraisals</u>: KGI is not an appraisal firm, nor are its professionals licensed appraisers. As such, any representations as to asset values that KGI makes are not to be used or interpreted as appraisals. It is understood that should the Committee require a formal appraisal, licensed appraisers will be retained to provide it.

7. <u>No Known Conflicts</u>: As part of its diverse practice, KGI routinely appears in numerous cases, proceedings and transactions involving many different professionals, including Pachulski, Stang Ziehl & Jones LLP ("Pachulski") and other attorneys, accountants, investment bankers and financial consultants, some of which may represent claimants and

Initialed _____
Kibel Green Inc.

Initialed _____
The Committee

parties of interest in the bankruptcy filing of the Debtor. Further, KGI has in the past, and may in the future, be represented by Pachulski in other matters or any of several attorneys and law firms in the legal community, some of whom may be involved in these proceedings. In addition, KGI has in the past and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to these cases. Based on our current knowledge of the professionals involved, none of these business relations constitute interests materially adverse to the Committee respecting matters upon which KGI is to be employed.

8. <u>Indemnification</u>: Because KGI will be relying on information provided by the Debtor for the benefit of the Committee, the Debtor's estate will indemnify and exculpate KGI as provided in the Terms of Retention. Please read the attached Terms of Retention carefully in their entirety.

**Please sign and return to us the enclosed copy to confirm your agreement with this letter, as well as the attached Terms of Retention. We look forward to a mutually beneficial relationship.**

Sincerely,

**KIBEL GREEN INC.**

_____     _____
Steven J. Green                                          (date)
President


AGREED:

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF CLEMENT C. CARINALLI AND ANNE MARIE CARINALLI**


_____     _____
Robert W. Sinai                                           (date)
Co-Chair

_____     12-7-09
Eric J. Woodstrom, Five Star Bank     (date)
Co-Chair


Initialed _____                                         Initialed _____
Kibel Green Inc.                                           The Committee

# APPENDIX ONE

# TERMS OF RETENTION OF KIBEL GREEN INC.

Except as we both agree in writing, the following provisions apply to the relationship between Kibel Green Inc. ("**KGI**") and the Official Committee of Unsecured Creditors (the "Committee") formed in connection with the Chapter 11 bankruptcy filing of Clement C. Carinalli and Anne Marie Carinalli (together, the "Debtor").

**No Guarantees**. While KGI will use its professional judgment in assisting the Committee, KGI cannot guarantee any particular results. The Committee acknowledges that KGI's work effort, analysis and advice are inherently subjective and that reasonable professionals or individuals reviewing the same information could reach entirely different conclusions. KGI will act solely in an advisory and consulting capacity and cannot make decisions on the Committee's behalf. All final decisions will remain solely those of the Committee which may need to take into account factors unrelated to the specific analysis provided by KGI. Although KGI may furnish estimates of the time or cost to complete a project, unless specifically designated otherwise in writing, these estimates are not intended to be binding, are subject to unforeseen circumstances, and are by their nature inexact.

**Use of Advice**. KGI is being engaged to provide advice solely for the information and assistance of the Committee and no one else may rely on its engagement hereunder or any statements, advice, opinions or conduct by it. The Committee agrees to get KGI's written consent (not to be unreasonably withheld) before disclosing that KGI has given any particular advice or analysis (written or oral) to anyone, or otherwise making reference to KGI's role, whether orally or in writing, in press releases, offering materials, filings or otherwise.

**No Reduction for Other Fees**. No fee payable to any other person either by Debtor or any other entity shall reduce or otherwise affect the fees payable hereunder to KGI.

**Potential Conflicts**. One of the strengths KGI brings to this assignment is its relationships with many other businesses. However, this strength could lead to certain conflicts of interest, since KGI may represent (in unrelated matters) potential persons who are Debtor's competitors or creditors, are potential investors, or whose interests otherwise conflict with the Committee. In addition, KGI may acquire information from other clients of interest to the Committee, but KGI will not have any obligation to disclose any unrelated representation or any information it learns in the course of any unrelated representation to the Committee or to use that information for the benefit of the Committee.

**Disputes**. All disputes arising under this Agreement shall be determined by the Bankruptcy Court.

**Indemnification**. Since KGI will be acting as the Committee's representative and will be relying on information provided by the Debtor, the Debtor's estate shall indemnify and hold harmless KGI and its affiliates, and its and their respective directors, officers, attorneys and other agents, stockholders, employees and controlling persons (each an "**Indemnified Person**"), to the full

Initialed _____
Kibel Green Inc.

Initialed *[signature]*
The Committee

extent lawful, from and against any losses, claims, damages, expenses or liabilities or actions ("**Losses**") from Committee or other third party claims related to or arising out of the Services, and will pay (or, if paid by an Indemnified Person, reimburse such Indemnified Person) for all fees and expenses (including, but not limited to, counsel fees and charges for the time of KGI's professional employees at their then current hourly rates) incurred by such Indemnified Person in connection with investigating, preparing or defending any such action or claim, whether or not in connection with pending or threatened litigation in which an Indemnified Person is a party. However, the Debtor's estate will not be responsible for any Losses which are determined by a final judgment of a court of competent jurisdiction to have resulted primarily and directly from the fraud, willful misconduct or gross negligence of an Indemnified Person. The Committee also agrees that no Indemnified Person will be liable to the Committee for or in connection with the Services, except for Losses incurred by the Committee or the Debtor's estate which are determined by a final judgment of a court of competent jurisdiction to have resulted primarily and directly from the fraud, willful misconduct or gross negligence of that Indemnified Person.

If any action or proceeding is brought against an Indemnified Person in respect of which indemnity may be sought against the Debtor's estate pursuant hereto (an "**Action**"), or if any Indemnified Person receives notice from any potential litigant of a claim which such Indemnified Person reasonably believes will result in the commencement of an Action, such Indemnified Person shall promptly notify Debtor and the Committee in writing. However, the failure to provide such notice shall not relieve the Debtor's estate from any obligation or liability which it may have to any Indemnified Person except to the extent of actual loss or damage. If an Action is brought against an Indemnified Person, the Debtor's estate may participate in that Action with a counsel chosen by it. In addition, the Debtor's estate may, upon written election (exercised promptly after notice of the Action), assume the defense of an Action, although each Indemnified Person shall have the right to employ separate counsel and to participate in the defense of the Action. The Debtor's estate will bear or promptly reimburse the reasonable fees, costs and expenses of such separate counsel only if (a) the use of counsel chosen by the Debtor's estate to represent such Indemnified Person would, in the reasonable judgment of the Indemnified Person, present such counsel with a conflict of interest; (b) the Debtor's estate did not within a reasonable time employ counsel reasonably satisfactory to that Indemnified Person to represent that Indemnified Person; or (c) the Debtor's estate authorized the Indemnified Person to employ separate counsel at its expense.

These indemnification provisions shall: (i) remain operative and in full force and effect regardless of any termination or completion of the assignment; (ii) inure to the benefit of the successors, assigns, heirs or personal representative of any Indemnified Person; (iii) be in addition to any other rights that any Indemnified Person may have at common law or otherwise, including, without limitation, any right to contribution; and (iv) apply to activities prior to this date and after any amendment, modification or future addition to the Agreement.

**Miscellaneous**. These Terms of Retention and the related letter (the "**Agreement**") contain all of the understandings between the parties hereto with reference to the subject matter hereof. No person can rely upon or be bound by any understanding or statement, oral or otherwise, not specifically in this Agreement. This Agreement cannot be modified or changed except by a

Initialed _____
Kibel Green Inc.

2

Initialed *[signature]*
The Committee

written instrument signed by each party hereto. This Agreement shall be governed by the law of California, without regard to any conflicts of law provisions.

Initialed _____
Kibel Green Inc.

3

Initialed *EBW*
The Committee

## WIRE TRANSFER INSTRUCTIONS

Please wire transfer funds to:

>Union Bank of California
>2001 Wilshire Boulevard
>Santa Monica, CA  90403
>Tel: 310-453-6132
>Kibel Green Inc. Account No. 1310057270
>ABA No. 1220-00496

**Note:** Please contact Paulette Rua at this office (310-829-0255 x126) upon completion of the wire transfer.