1
2
3

# IN THE UNITED STATES BANKRUPTCY COURT

4

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

## SANTA ROSA DIVISION

6
7
8

In re:

9

CLEMENT C. and ANN MARIE CARINALLI,

10

Debtors

11

S.S.N.s:  XXXX-XX-8623 and
                XXXX-XX-5690

12
13

Debtors.

14

Case No.:  09-12986

Chapter 11

15
16

**DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION**
**(Dated August 17, 2010)**

17
18
19
20

MEYERS LAW GROUP, P.C.
A Professional Corporation
MERLE C. MEYERS, ESQ. CA Bar #66849
EDIE WALTERS, ESQ., CA Bar #262730
D. CLARKE SUGAR, ESQ., CA Bar #251681
44 Montgomery Street, Suite 1010
San Francisco, California 94104
Telephone: (415) 362-7500
Facsimile:  (415) 362-7515
Email: mmeyers@mlg-pc.com
            ewalters@mlg-pc.com
            csugar@mlg-pc.com

Attorneys for Clement C. Carinalli and Ann Marie Carinalli,
Debtors-in-Possession

21
22
23
24
25
26
27

PACHULSKI, STANG ZIEHL & JONES LLP
JOHN D. FIERO, ESQ. CA Bar #136557
MAXIM B. LITVAK, ESQ. CA Bar #215852
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone:  (415) 263-7000
Facsimile:  (415) 263-7010
Email:      jfiero@pszjlaw.com
            mlitvak@pszjlaw.com

Attorneys for Official Committee of Unsecured
Creditors

28

# TABLE OF CONTENTS

I.    DEFINITION AND CONSTRUCTION OF TERMS.................................................1
      1.1.   Definitions. ..........................................................................................1
      1.2.   Other Terms...........................................................................................1
      1.3.   Construction of Certain Terms. ..............................................................1
      1.4.   Action by Holders of Secured Claim........................................................2
      1.5.   Plan Controls. ........................................................................................2

II.   CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT ..............2
      2.1.   Classification. ........................................................................................2
             2.1.1.   Class A (Priority Claims).............................................................3
             2.1.2.   Class B (Secured Claims – Equity and Senior Liens) ....................3
             2.1.3.   Class C (Secured Claims – Junior Liens) ...................................11
             2.1.4.   Class D (Secured Claims – Overencumbered) ............................12
             2.1.5.   Class E (LBS Secured Claims)....................................................16
             2.1.6.   Class F (Other Secured Claims). ................................................18
             2.1.7.   Class G (Early Option Unsecured Claims).....................................19
             2.1.8.   Class H (General Unsecured Claims). ..........................................19
             2.1.9.   Class I (Interests). ....................................................................19
      2.2.   Impairment ...........................................................................................19

III.  TREATMENT OF NONCLASSIFIED PRIORITY CLAIMS .........................19
      3.1.   Generally..............................................................................................19
      3.2.   Administrative Claims. ..........................................................................19
      3.3.   Penalties and Interest..............................................................................20
      3.4.   Payment. ..............................................................................................20
             3.4.1.   Administrative Expense Claims. ..................................................20
             3.4.2.   Priority Tax Claims. ...................................................................20
             3.4.3.   Priority Gap Period Claims. ........................................................21

IV.   TREATMENT OF UNIMPAIRED CLASSES..................................................21
      4.1.   Class A (Priority Claims Other Than Nonclassified Priority Claims)...................21
      4.2.   Class F (Other Secured Claims). .............................................................21
             4.2.1.   Reinstatement. ..........................................................................22
             4.2.2.   Full Satisfaction. ......................................................................22
             4.2.3.   Return of Collateral. ..................................................................22

V.    TREATMENT OF IMPAIRED CLASSES......................................................23
      5.1.   Class B (Secured Claims – Equity and Senior Liens). ..............................23
      5.2.   Class C (Secured Claims – Junior Liens). ...............................................39
      5.3.   Class D (Secured Claims – Overencumbered). ........................................41
      5.4.   Class E (LBS Secured Claims). ..............................................................51
      5.5.   Class G (Early Option Unsecured Claims)................................................60
             5.5.1.   Timely Election..........................................................................60
             5.5.2.   Treatment. ................................................................................60
             5.5.3.   Over-Subscription. ....................................................................61
      5.6.   Class H (Unsecured Claims)...................................................................61

i

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

|  |  | 5.7. | Class I (Interests) | 62 |
| VI. | | | EXECUTORY CONTRACTS | 62 |
|  | 6.1. | | Generally | 62 |
|  | 6.2. | | Assumption and Rejection | 62 |
|  |  | 6.2.1. | Assumption Schedule | 62 |
|  |  | 6.2.2. | Rejection | 62 |
|  | 6.3. | | Cure Amounts | 63 |
|  |  | 6.3.1. | Objections | 63 |
|  |  | 6.3.2. | Resolution | 63 |
|  | 6.4. | | Payment of Cure | 63 |
|  | 6.5. | | Approval of Assumption or Rejection | 64 |
|  | 6.6. | | Bar Date for Rejection Claims | 64 |
|  | 6.7. | | Assignment of Assumed Contracts | 64 |
| VII. | | | MEANS FOR EXECUTION OF THE PLAN | 65 |
|  | 7.1. | | Plan Effectiveness | 65 |
|  | 7.2. | | Appointment and Qualification of Trustee | 65 |
|  | 7.3. | | Transfer of Assets to Creditors' Trust | 65 |
|  | 7.4. | | Purpose of Creditors' Trust | 66 |
|  | 7.5. | | Duties and Powers of Trustee | 66 |
|  |  | 7.5.1. | Directing Reorganized Debtors | 67 |
|  |  | 7.5.2. | Implementation | 67 |
|  |  | 7.5.3. | Claims | 67 |
|  |  | 7.5.4. | Distributions | 67 |
|  |  | 7.5.5. | Use of Funds | 67 |
|  |  | 7.5.6. | Assets | 67 |
|  |  | 7.5.7. | Co-Owned Assets | 68 |
|  |  | 7.5.8. | Bank Accounts | 68 |
|  |  | 7.5.9. | Retention of Professionals | 68 |
|  | 7.6. | | Plan Committee | 68 |
|  | 7.7. | | Carinalli's Post-Effective Date Duties | 69 |
|  | 7.8. | | Compensation for Assistance Efforts | 70 |
|  | 7.9. | | Revesting of Excluded Assets | 70 |
|  | 7.10. | | Reorganized Debtors' Assets Not Property of the Estate or Trust | 70 |
|  | 7.11. | | Creditors' Committee | 71 |
|  | 7.12. | | Professional Retention and Compensation | 71 |
|  |  | 7.12.1. Trustee's Professionals | 71 |
|  |  | 7.12.2. Plan Committee's Professionals | 71 |
|  |  | 7.12.3. Compensation | 71 |
|  | 7.13. | | Preservation of Causes of Action | 72 |
|  | 7.14. | | Tax Reporting Obligations | 72 |
|  | 7.15. | | Reserves | 72 |
|  |  | 7.15.1. Calculation | 72 |
|  |  | 7.15.2. Reserve Maintenance And Interest | 72 |
|  |  | 7.15.3. Release of Reserved Funds | 73 |
|  | 7.16. | | Unclaimed Distributions | 73 |
|  | 7.17. | | *De Minimis* Distributions | 73 |
|  | 7.18. | | Compliance With Tax Requirements | 73 |

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

7.19.  Quarterly Fees..............................................................................74
7.20.  Objections to Claims.....................................................................74
7.21.  Other Actions.................................................................................74
7.22.  Term of Injunctions and Stays.....................................................74
7.23.  Discharge of Reorganized Debtors..............................................74
7.24.  Permanent Satisfaction And Injunction......................................75
7.25.  Indemnification and Insurance..................................................76
7.26.  Estimation of Claims...................................................................76
7.27.  Postconfirmation Reports...........................................................76

VIII.  RETENTION OF JURISDICTION............................................................76
8.1.  Generally........................................................................................76

IX.  MISCELLANEOUS PROVISIONS..............................................................78
9.1.  Exemption from Transfer Taxes.....................................................78
9.2.  Binding Effect...................................................................................78
9.3.  Ratification........................................................................................78
9.4.  Notices..............................................................................................78
9.5.  Governing Law..................................................................................79
9.6.  Headings............................................................................................79
9.7.  Exhibits..............................................................................................79
9.8.  Closing Case......................................................................................80

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

Case: 09-12986    Doc# 510    Filed: 08/17/10    Entered: 08/17/10 16:05:58    Page 4 of
128

CLEMENT C. CARINALLI and ANN MARIE CARINALLI, the debtors-in-possession herein (collectively, the "Debtors"), and the OFFICIAL COMMITTEE OF UNSECURED CREDITORS appointed herein (the "Committee") hereby jointly propose this Debtors' And Committee's Amended Joint Plan Of Reorganization (as it may be amended or modified hereafter, the "Plan") in the within chapter 11 case, for reorganization under chapter 11 of the United States Bankruptcy Code, pursuant to the provisions of Section 1121(a) of title 11 of the United States Code.

## ARTICLE I

## DEFINITION AND CONSTRUCTION OF TERMS

1.1. <u>Definitions</u>. As used herein, capitalized terms shall have the meanings set forth in the schedule of definitions attached hereto and incorporated herein as **Exhibit "A."**

1.2. <u>Other Terms</u>. Any term used in the Plan that is not defined herein or in **Exhibit "A"** shall have the meaning ascribed to that term, if any, in the Bankruptcy Code. A term used in this Plan and not defined herein or in the Bankruptcy Code, but which is defined in the Bankruptcy Rules, shall have the meaning assigned to the term in the Bankruptcy Rules.

1.3. <u>Construction of Certain Terms</u>. In addition to the foregoing, the following shall apply:

1.3.1. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan, unless otherwise indicated.

1.3.2. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

1.3.3. Where the Plan expressly requires the "reasonable consent" or "reasonable approval" of a party as a condition to implementation of a transaction or other event, if such consent is requested and not provided, the requesting party shall be entitled to seek approval for such transaction or other event by the Bankruptcy Court, *provided* that such requesting party demonstrates, based on a preponderance of evidence, that the requested consent was

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

unreasonably withheld. Where the Plan does not expressly require that consent or approval be "reasonable," consent or approval shall be in the sole discretion of the party that is asked for such consent or approval, and the requesting party shall not be entitled to seek alternative approval by the Bankruptcy Court.

1.4.     Action by Holders of Secured Claim.  Where the Plan provides for notice, election or other action (other than acceptance or rejection of the Plan) by the holder(s) of a Secured Claim, in the event that more than one person holds such Secured Claim in undivided portions or percentages, such notice, election or other action shall be effective only if expressly undertaken by a majority of those portions or percentages.  For example, and as an illustration only, if a Secured Claim is held by seven holders of undivided interests, and if one such holder owns a 40% undivided interest and all other holders each hold a 10% undivided interest, then a notice by such holders shall be effective only if expressly given by all six holders of 10% interests, or by the holder of the 40% interest and two holders of 10% interests.  None of the foregoing shall affect the determination of acceptance or rejection of the Plan by a Class, which is governed by the provisions of Section 1126 of the Bankruptcy Code.

1.5.     Plan Controls.   To the extent of any inconsistencies between the Plan and the Disclosure Statement, the provisions of this Plan shall control and prevail.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT

2.1.     Classification.  The following is a designation of the Classes of Claims and Interests in the Plan.  Administrative Expense Claims and Priority Tax Claims (that is, the Nonclassified Priority Claims) have not been classified and are excluded from the following Classes, in accordance with the provisions of Section 1123(a)(1) of the Bankruptcy Code.   The treatment accorded Administrative Expense Claims and Priority Tax Claims is set forth in Article III herein.  Consistent with the provisions of Section 1122 of the Bankruptcy Code, a Claim or Interest shall be deemed classified by the Plan in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that the Claim or Interest qualifies within the description of that different Class.  A Claim or Interest

2

is in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that Class, as the case may be.  To the extent that property serving as collateral for a Secured Claim is no longer property of the Estate at any point in time prior to the Effective Date, whether as a result of foreclosure, voluntary sale or otherwise, the Class designated for such Secured Claim and property shall be deemed to no longer exist as of the date that such property ceases to be property of the Estate.

    2.1.1.  Class A (Priority Claims) consists of all Priority Claims, if any, other than Nonclassified Priority Claims.

    2.1.2.  Class B (Secured Claims – Equity and Senior Liens) consists of the following Secured Claims:

        2.1.2.1.  Class B1(A) (Anderson/3524 Mendocino Secured Claim) consists of the Secured Claim held by Anderson/Martin encumbering the 3524 Mendocino Property.

        2.1.2.2.  Class B1(B) (Burmeister/3524 Mendocino Secured Claim) consists of the Secured Claim held by Burmeister/Martin encumbering the 3524 Mendocino Property.

        2.1.2.3.  Class B2 (Chase/3990 Wallace Secured Claim) consists of the Secured Claim held by Chase encumbering the 3990 Wallace Property.

        2.1.2.4.  Class B3 (Sterling/7151 Bodega Secured Claim) consists of the Secured Claim held by Sterling Bank encumbering the 7151 Bodega Property.

        2.1.2.5.  Class B4 (BNYMellon/409 College Secured Claim) consists of the Secured Claim held by BNYMellon encumbering the 409 College Property.

        2.1.2.6.  Class B5 (Haskins/104 Shiloh Secured Claim) consists of the Secured Claim held by Haskins encumbering the 104 Shiloh Property.

        2.1.2.7.  Class B6 (Chase/170 Shiloh Secured Claim) consists of the Secured Claim held by Chase encumbering the 170 Shiloh Property.

        2.1.2.8.  Class B7 (Chase/180 Shiloh Secured Claim) consists of the Secured Claim held by Chase encumbering the 180 Shiloh Property.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

2.1.2.9.    <u>Class B8 (Chase/929 Kingwood Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 929 Kingwood Property.

2.1.2.10.    <u>Class B9 (Chase/510-A Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 510-A Property.

2.1.2.11.    <u>Class B10 (WFB/3130 Piner Secured Claim)</u> consists of the Secured Claim held by WFB encumbering the 3130 Piner Property.

2.1.2.12.    <u>Class B11 (Chase/972 Kingwood Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 972 Kingwood Property.

2.1.2.13.    <u>Class B12 (Chase/969 Kingwood Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 969 Kingwood Property.

2.1.2.14.    <u>Class B13 (Chase/913 Kingwood Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 913 Kingwood Property.

2.1.2.15.    <u>Class B14 (Chase/935 Kingwood Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 935 Kingwood Property.

2.1.2.16.    <u>Class B15 (Chase/829 Davis Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 829 Davis Property.

2.1.2.17.    <u>Class B16 (Westamerica/1064 Santa Rosa Secured Claim)</u> consists of the Secured Claim held by Westamerica Bank encumbering the 1064 Santa Rosa Property.

2.1.2.18.    <u>Class B17 (Chase/925 Kingwood Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 925 Kingwood Property.

2.1.2.19.    <u>Class B18 (Chase/961 Kingwood Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 961 Kingwood Property.

2.1.2.20.    <u>Class B19 (Sterling/1207 College Secured Claim)</u> consists of the Secured Claim held by Sterling Bank encumbering the 1207 College Property.

2.1.2.21.    <u>Class B20 (Chase/936 Kingwood Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 936 Kingwood Property.

2.1.2.22.    <u>Class B21 (Chase/7-10th Secured Claim)</u> consists of the Secured

4

Claim held by Chase encumbering the 7-10th Property.

    2.1.2.23.   [INTENTIONALLY OMITTED].

    2.1.2.24.   Class B23 (Chase/506 Morgan Secured Claim) consists of the Secured Claim held by Chase encumbering the 506 Morgan Property.

    2.1.2.25.   Class B24 (Chase/919 Kingwood Secured Claim) consists of the Secured Claim held by Chase encumbering the 919 Kingwood Property.

    2.1.2.26.   Class B25 (Chase/213 Willow Secured Claim) consists of the Secured Claim held by Chase encumbering the 213 Willow Property.

    2.1.2.27.   Class B26 (Westamerica/858 Fourth Secured Claim) consists of the Secured Claim held by Westamerica Bank encumbering the 858 Fourth Property.

    2.1.2.28.   Class B27 (Chase/3765 Lakeville Secured Claim) consists of the Secured Claim held by Chase encumbering the 3765 Lakeville Property.

    2.1.2.29.   Class B28 (Westamerica/629 Fourth Secured Claim) consists of the Secured Claim held by Westamerica Bank encumbering the 629 Fourth Property.

    2.1.2.30.   Class B29 (Chase/2804 Beth Secured Claim) consists of the Secured Claim held by Chase encumbering the 2804 Beth Property.

    2.1.2.31.   Class B30 (Chase/615 Maple Secured Claim) consists of the Secured Claim held by Chase encumbering the 615 Maple Property.

    2.1.2.32.   Class B31 (Johnson Sons/507-E Secured Claim) consists of the Secured Claim held by Johnson Sons encumbering the 507-E Property.

    2.1.2.33.   Class B32 (Chase/537-A Secured Claim) consists of the Secured Claim held by Chase encumbering the 537-A Property.

    2.1.2.34.   Class B33 (Chase/416 King Secured Claim) consists of the Secured Claim held by Chase encumbering the 416 King Property.

    2.1.2.35.   Class B34 (Chase/420 Brookwood Secured Claim) consists of the Secured Claim held by Chase encumbering the 420 Brookwood Property.

    2.1.2.36.   Class B35 (Birne/909 Saracen Secured Claim) consists of the Secured Claim held by Birne-Swanson encumbering the 909 Saracen Property.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

2.1.2.37.   <u>Class B36 (Chase/895 Yuba Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 895 Yuba Property.

2.1.2.38.   <u>Class B37 (Chase/521-A Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 521-A Property.

2.1.2.39.   <u>Class B38 (Oliver/4000 Wallace Secured Claim)</u> consists of the Secured Claim held by Robert Oliver encumbering the 4000 Wallace Property.

2.1.2.40.   <u>Class B39 (Chase/2728 Sonoma Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 2728 Sonoma Property.

2.1.2.41.   <u>Class B40 (Chase/948 Kingwood Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 948 Kingwood Property.

2.1.2.42.   <u>Class B41 (Chase/2136 Franklin Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 2136 Franklin Property.

2.1.2.43.   <u>Class B42 (Sterling/403 Chinn Secured Claim)</u> consists of the Secured Claim held by Sterling Bank encumbering the 403 Chinn Property.

2.1.2.44.   <u>Class B43 (Chase/7170 Burnett Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 7170 Burnett Property.

2.1.2.45.   <u>Class B44 (Sterling/542 College Secured Claim)</u> consists of the Secured Claim held by Sterling Bank encumbering the 542 College Property.

2.1.2.46.   <u>Class B45 (North Channel/820 Fifth Secured Claim)</u> consists of the Secured Claim held by North Channel encumbering the 820 Fifth Property.

2.1.2.47.   <u>Class B46 (North Channel/818 Fifth Secured Claim)</u> consists of the Secured Claim held by North Channel encumbering the 818 Fifth Property.

2.1.2.48.   <u>Class B47 (Keegan-Keegan/1120-15th Secured Claim)</u> consists of the Secured Claim held by Keegan-Keegan encumbering the 1120-15th Property.

2.1.2.49.   <u>Class B48 (Chase/525 Roseland Secured Claim)</u> consists of the Secured Claim held by Chase encumbering the 525 Roseland Property.

2.1.2.50.   <u>Class B49 (Sterling/849 Fifth Secured Claim)</u> consists of the Secured Claim held by Sterling Bank encumbering the 849 Fifth Property.

6

2.1.2.51.   Class B50 (North Coast/850 Fourth Secured Claim) consists of the Secured Claim held by North Coast encumbering the 850 Fourth Property.

2.1.2.52.   Class B51 (Chase/915 Yuba Secured Claim) consists of the Secured Claim held by Chase encumbering the 915 Yuba Property.

2.1.2.53.   Class B52 (Chase/416 Macklyn Secured Claim) consists of the Secured Claim held by Chase encumbering the 416 Macklyn Property.

2.1.2.54.   Class B53 (Chase/2036 Linwood Secured Claim) consists of the Secured Claim held by Chase encumbering the 2036 Linwood Property.

2.1.2.55.   Class B54 (Chase/925 Yuba Secured Claim) consists of the Secured Claim held by Chase encumbering the 925 Yuba Property.

2.1.2.56.   Class B55 (Chase/408 Calistoga Secured Claim) consists of the Secured Claim held by Chase encumbering the 408 Calistoga Property.

2.1.2.57.   Class B56 (Chase/7800 Hembree Secured Claim) consists of the Secured Claim held by Chase encumbering the 7800 Hembree Property.

2.1.2.58.   Class B57 (American AgCredit FLCA/Stony Point Alpha Secured Claim) consists of the Secured Claim held by American AgCredit FLCA encumbering the Stony Point Alpha Property.

2.1.2.59.   Class B58 (North Channel/2125 W. College Secured Claim) consists of the Secured Claim held by North Channel encumbering the 2125 W. College Property.

2.1.2.60.   Class B59 (Five Star/199 Calistoga Secured Claim) consists of the Secured Claim held by Five Star encumbering the 199 Calistoga Property.

2.1.2.61.   Class B60 (Palleschi-Brown/3131 Primrose Secured Claim) consists of the Secured Claim held by Palleschi-Brown encumbering the 3131 Primrose Property.

2.1.2.62.   Class B61 (Agnese Trust/Brooks Avenue Secured Claim) consists of the Secured Claim held by Agnese Trust encumbering the Brooks Avenue Property.

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

2.1.2.63.   Class B62 (Chase/438 Orchard Secured Claim) consists of the Secured Claim held by Chase encumbering the 438 Orchard Property.

2.1.2.64.   Class B63 (Exchange/3310 Santa Rosa Secured Claim) consists of the Secured Claim held by Exchange Bank encumbering the 3310 Santa Rosa Property.

2.1.2.65.   Class B64 (Barbieri-Opperman/3470 Santa Rosa Secured Claim) consists of the Secured Claim held by Barbieri-Opperman encumbering the 3470 Santa Rosa Property.

2.1.2.66.   Class B65 (Agnese Trust/3579 Brooks Secured Claim) consists of the Secured Claim held by Agnese Trust encumbering the 3579 Brooks Property.

2.1.2.67.   Class B66 (Chase/3917 Stony Point Secured Claim) consists of the Secured Claim held by Chase encumbering the 3917 Stony Point Property.

2.1.2.68.   Class B67 (Viviani Trust/19297 East Highway Secured Claim) consists of the Secured Claim held by Viviani Trust encumbering the 19297 East Highway Property.

2.1.2.69.   Class B68A (American AgCredit FLCA/5000 Llano Secured Claim) consists of the Secured Claim held by American AgCredit FLCA encumbering the 5000 Llano Property.

2.1.2.70.   Class B68B (American AgCredit PCA/5000 Llano Secured Claim) consists of the Secured Claim held by American AgCredit PCA encumbering the 5000 Llano Property.

2.1.2.71.   Class B69 (Hayward Trust/836 Ripley Secured Claim) consists of the Secured Claim held by Hayward Trust encumbering the 836 Ripley Property.

2.1.2.72.   Class B70 (Countrywide/1745 West Lake Secured Claim) consists of the Secured Claim held by Countrywide, as serviced by BAC, encumbering the 1745 West Lake Property.

2.1.2.73.   Class B71 (Ciraulo/28365 Old Redwood Secured Claim) consists of the Secured Claim held by Ciraulo encumbering the 28365 Old Redwood Property.

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

2.1.2.74. Class B72 (Sterling/801 Benton Secured Claim) consists of the Secured Claim held by Sterling Bank encumbering the 801 Benton Property.

2.1.2.75. Class B73 (Westamerica/411-E Secured Claim) consists of the Secured Claim held by Westamerica Bank encumbering the 411-E Property.

2.1.2.76. Class B74 (WFB/9810 Berry Secured Claim) consists of the Secured Claim held by WFB encumbering the 9810 Berry Property.

2.1.2.77. Class B75 (Exchange/1899 Mendocino Secured Claim) consists of the Secured Claim held by Exchange Bank encumbering the 1899 Mendocino Property.

2.1.2.78. Class B76 (North Valley/1615 Fulton Secured Claim) consists of the Secured Claim held by North Valley encumbering the 1615 Fulton Property.

2.1.2.79. Class B77 (Hunter/1550 Hearn Secured Claim) consists of the Secured Claim held by Hunter encumbering the 1550 Hearn Property.

2.1.2.80. Class B78 (Rubin/3548 Brooks Secured Claim) consists of the Secured Claim held by Rubin encumbering the 3548 Brooks Property.

2.1.2.81. Class B79 (Rankin/4407 Petaluma Secured Claim) consists of the Secured Claim held by Rankin encumbering the 4407 Petaluma Property.

2.1.2.82. Class B80 (Johnson-Henig/21837 Geyserville Secured Claim) consists of the Secured Claim held by Johnson-Henig encumbering the 21837 Geyserville Property.

2.1.2.83. Class B81 (Chase/3109 Montgomery Secured Claim) consists of the Secured Claim held by Chase encumbering the 3109 Montgomery Property.

2.1.2.84. Class B82 (WFB/3222 Piner Secured Claim) consists of the Secured Claim held by WFB encumbering the 3222 Piner Property.

2.1.2.85. Class B83 (Countrywide/600 College Secured Claim) consists of the Secured Claim held by Countrywide, as serviced by BAC, encumbering the 600 College Property.

2.1.2.86. Class B84 (Exchange/1701 Santa Rosa Secured Claim) consists of

DEBTORS AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

the Secured Claim held by Exchange Bank encumbering the 1701 Santa Rosa Property.

2.1.2.87. Class B85 (American AgCredit FLCA/Stony Point Beta Secured Claim) consists of the Secured Claim held by American AgCredit FLCA encumbering the Stony Point Beta Property.

2.1.2.88. Class B86 (Five Star/1375 West Secured Claim) consists of the Secured Claim held by Five Star encumbering the 1375 West Property.

2.1.2.89. Class B87 (American AgCredit FLCA/Stony Point Gamma Secured Claim) consists of the Secured Claim held by American AgCredit FLCA encumbering the Stony Point Gamma Property.

2.1.2.90. Class B88 (Chase/9828 Berry Secured Claim) consists of the Secured Claim held by WFB encumbering the 9828 Berry Property.

2.1.2.91. Class B89 (WFB/9850 Berry Secured Claim) consists of the Secured Claim held by WFB encumbering the 9850 Berry Property.

2.1.2.92. Class B90 (WFB/9870 Berry Secured Claim) consists of the Secured Claim held by WFB encumbering the 9870 Berry Property.

2.1.2.93. Class B91 (Sterling/840 Third Secured Claim) consists of the Secured Claim held by Sterling Bank encumbering the 840 Third Property.

2.1.2.94. Class B92 (Chase/904 Kingwood Secured Claim) consists of the Secured Claim held by Chase encumbering the 904 Kingwood Property.

2.1.2.95. Class B93 (Chase/905 Kingwood Secured Claim) consists of the Secured Claim held by Chase encumbering the 905 Kingwood Property.

2.1.2.96. Class B94 (Chase/906 Kingwood Secured Claim) consists of the Secured Claim held by Chase encumbering the 906 Kingwood Property.

2.1.2.97. Class B95 (Chase/914 Kingwood Secured Claim) consists of the Secured Claim held by Chase encumbering the 914 Kingwood Property.

2.1.2.98. Class B96 (Chase/918 Kingwood Secured Claim) consists of the Secured Claim held by Chase encumbering the 918 Kingwood Property.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

10

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

2.1.2.99.    Class B97 (Chase/920 Kingwood Secured Claim) consists of the Secured Claim held by Chase encumbering the 920 Kingwood Property.

2.1.2.100.  Class B98 (BNYMellon/838 Fifth Secured Claim) consists of the Secured Claim held by BNYMellon encumbering the 838 Fifth Property.

2.1.2.101.  Class B99 (Chase/840 Fifth Secured Claim) consists of the Secured Claim held by Chase encumbering the 840 Fifth Property.

2.1.2.102.  Class B100 (Chase/950 Kingwood Secured Claim) consists of the Secured Claim held by Chase encumbering the 950 Kingwood Property.

2.1.2.103.  Class B101 Countrywide/1002 Orchard Secured Claim) consists of the Secured Claim held by Countrywide, as serviced by BAC, encumbering the 1002 Orchard Property.

2.1.2.104.  Class B102 (Five Star/2863 West Steele Secured Claim) consists of the Secured Claim held by Five Star encumbering the 2863 West Steele Property.

2.1.2.105.  Class B103 (Polley/3130 Piner Secured Claim) consists of the Secured Claim held by Polley encumbering the 3130 Piner Property.

2.1.3.  Class C (Secured Claims – Junior Liens) consists of the following Secured Claims:

2.1.3.1.     Class C1 (Bertolone/3524 Mendocino Secured Claim) consists of the Secured Claim held by Bertolone/Huppert encumbering the 3524 Mendocino Property.

2.1.3.2.     Class C2 (Garaventa/3990 Wallace Secured Claim) consists of the Secured Claim held by Garaventa encumbering the 3990 Wallace Property.

2.1.3.3.     Class C3 (Keegan-Coppin/819 Fourth Street Secured Claim) consists of the Secured Claim held by Keegan-Coppin encumbering the 819 Fourth Property.

2.1.3.4.     [INTENTIONALLY OMITTED].

2.1.3.5.     Class C5(A) (R.W. Oliver Trust/104 Shiloh Secured Claim) consists of the Secured Claim held by R.W. Oliver Trust encumbering the 104 Shiloh

11

Property.

        2.1.3.6.    <u>Class C5(B) (Johnson-Schaal Trusts/104 Shiloh Secured Claim)</u> consists of the Secured Claim held by Johnson-Schaal Trusts encumbering the 104 Shiloh Property.

        2.1.3.7.    <u>Class C6(A) (R.W. Oliver Trust/170 Shiloh Secured Claim)</u> consists of the Secured Claim held by R.W. Oliver Trust encumbering the 170 Shiloh Property.

        2.1.3.8.    <u>Class C6(B) (Johnson-Schaal Trusts/170 Shiloh Secured Claim)</u> consists of the Secured Claim held by Johnson-Schaal Trusts encumbering the 170 Shiloh Property.

        2.1.3.9.    <u>Class C7(A) (R.W. Oliver Trust/180 Shiloh Secured Claim)</u> consists of the Secured Claim held by R.W. Oliver Trust encumbering the 180 Shiloh Property.

        2.1.3.10.    <u>Class C7(B) (Johnson-Schaal Trusts/180 Shiloh Secured Claim)</u> consists of the Secured Claim held by Johnson-Schaal Trusts encumbering the 180 Shiloh Property.

    2.1.4.  <u>Class D (Secured Claims – Overencumbered)</u> consists of the following Secured Claims:

        2.1.4.1.    <u>Class D1 (USBank/947 Yuba Secured Claim)</u> consists of the Secured Claim held by USBank encumbering the 947 Yuba Property.

        2.1.4.2.    <u>Class D2 (North Coast/2074 Armory Secured Claim)</u> consists of the Secured Claim held by North Coast encumbering the 2074 Armory Property.

        2.1.4.3.    <u>Class D3 (Barbosa Trust/13019 Crest Secured Claim)</u> consists of the Secured Claim held by Barbosa Trust encumbering the 13019 Crest Property.

        2.1.4.4.    <u>Class D4 (BNYMellon/4235 Miles Secured Claim)</u> consists of the Secured Claim held by BNYMellon encumbering the 4235 Miles Property.

        2.1.4.5.    <u>Class D5 (Hindley-Scheibel/6235 Dry Creek Secured Claim)</u> consists of the Secured Claim held by Hindley-Scheibel encumbering the 6235 Dry

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

12

Creek Property.

2.1.4.6.    Class D6 (North Valley/2727 Dutton Secured Claim) consists of the Secured Claim held by North Valley encumbering the 2727 Dutton Property.

2.1.4.7.    Class D7 (Acciari Trust/5327 Tewa Secured Claim) consists of the Secured Claim held by Acciari Trust encumbering the 5327 Tewa Property.

2.1.4.8.    Class D8 (Countrywide/8590 Alden Secured Claim) consists of the Secured Claim held by Countrywide, as serviced by BAC, encumbering the 8590 Alden Property.

2.1.4.9.    Class D9 (Countrywide/8602 Alden Secured Claim) consists of the Secured Claim held by Countrywide, as serviced by BAC, encumbering the 8602 Alden Property.

2.1.4.10.    Class D10 (Napa Community/707 Bellevue Secured Claim) consists of the Secured Claim held by Napa Community encumbering the 707 Bellevue Property.

2.1.4.11.    Class D11 (Henig PSP/3615 Vista Secured Claim) consists of the Secured Claim held by Henig PSP encumbering the 3615 Vista Property.

2.1.4.12.    Class D12 (Napa Community/2960 Stony Point Secured Claim) consists of the Secured Claim held by Napa Community encumbering the 2960 Stony Point Property.

2.1.4.13.    Class D13 (Brekke Pension/3136 Edgewood Secured Claim) consists of the Secured Claim held by Brekke Pension encumbering the 3136 Edgewood Property.

2.1.4.14.    Class D14 (USBank/9515 Graton Secured Claim) consists of the Secured Claim held by USBank encumbering the 9515 Graton Property.

2.1.4.15.    Class D15 (Savings Mendocino/3422 Santa Rosa Secured Claim) consists of the Secured Claim held by Savings Mendocino encumbering the 3422 Santa Rosa Property.

2.1.4.16.    Class D16 (BNYMellon/2225 Burbank Secured Claim) consists of

DEBTORS AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

the Secured Claim held by BNYMellon encumbering the 2225 Burbank Property.

2.1.4.17. Class D17 (Pensco-Opperman/120 Scenic Secured Claim) consists of the Secured Claim held by Pensco-Opperman encumbering the 120 Scenic Property.

2.1.4.18. Class D18 (Mead Clark PSP/Sage Creek Alpha Secured Claim) consists of the Secured Claim held by Mead Clark PSP encumbering the Sage Creek Alpha Property.

2.1.4.19. Class D19 (Smith-Johnson/Sage Creek Beta Secured Claim) consists of the Secured Claim held by Smith-Johnson encumbering the Sage Creek Beta Property.

2.1.4.20. Class D20 (Johnson PSP/2800 Francisco Secured Claim) consists of the Secured Claim held by Johnson PSP encumbering the 2800 Francisco Property.

2.1.4.21. Class D21 (Barbieri-Lindberg/Ciwa-Kakul Secured Claim) consists of the Secured Claim held by Barbieri-Lindberg encumbering the Ciwa-Kakul Property.

2.1.4.22. Class D22 (Summit/3771 Lakeville Secured Claim) consists of the Secured Claim held by Summit Bank encumbering the 3771 Lakeville Property.

2.1.4.23. Class D23 (Walraven Trust/2420 San Miguel Secured Claim) consists of the Secured Claim held by Walraven Trust encumbering the 2420 San Miguel Property.

2.1.4.24. [INTENTIONALLY OMITTED]

2.1.4.25. Class D25 (North Valley/5146 Old Redwood Secured Claim) consists of the Secured Claim held by North Valley encumbering the 5146 Old Redwood Property.

2.1.4.26. Class D26 (Hada PSP/11961 Bitney Springs Secured Claim) consists of the Secured Claim held by Hada PSP encumbering the 11961 Bitney Springs Property.

2.1.4.27. Class D27 (Corsi-Noonan/21000 Santa Clara Secured Claim)

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

consists of the Secured Claim held by Corsi-Noonan encumbering the 21000 Santa Clara Property.

2.1.4.28.　Class D28 (Noonan/12760 Sulphur Secured Claim) consists of the Secured Claim held by Noonan/Wand encumbering the 12760 Sulphur Property.

2.1.4.29.　Class D29 (Combs Trust/13193 Lakeshore Secured Claim) consists of the Secured Claim held by Combs Trust encumbering the 13193 Lakeshore Property.

2.1.4.30.　Class D30 (Johnson 1993 Trust/15825-23rd Secured Claim) consists of the Secured Claim held by Johnson 1993 Trust encumbering the 15825-23rd Property.

2.1.4.31.　Class D31 (Johnson PSP/15873-27th Secured Claim) consists of the Secured Claim held by Johnson PSP encumbering the 15873-27th Property.

2.1.4.32.　Class D32 (Rankin Trust/15883-27th Secured Claim) consists of the Secured Claim held by Rankin Trust encumbering the 15883-27th Property.

2.1.4.33.　Class D33 (Losee Trust/16214-33rd Secured Claim) consists of the Secured Claim held by Losee Trust encumbering the 16214-33rd Property.

2.1.4.34.　Class D34 (Palleschi PSP/3096-15th Secured Claim) consists of the Secured Claim held by Palleschi PSP encumbering the 3096-15th Property.

2.1.4.35.　Class D35 (Summit/8262 Peninsula Secured Claim) consists of the Secured Claim held by Summit Bank encumbering the 8262 Peninsula Property.

2.1.4.36.　Class D36 (Klemco/8262 Peninsula Secured Claim) consists of the Secured Claim held by Klemco encumbering the 8262 Peninsula Property.

2.1.4.37.　Class D37 (North Valley/2729 Stony Point Secured Claim) consists of the Secured Claim held by North Valley encumbering the 2729 Stony Point Property.

2.1.4.38.　Class D38 (Cooper Trust/2727 Dutton Meadow Secured Claim) consists of the Secured Claim held by Cooper Trust encumbering the 2727 Dutton Meadow Property.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

2.1.4.39.  Class D39 (Cooper Trust/2729 Stony Point Secured Claim) consists of the Secured Claim held by Cooper Trust encumbering the 2729 Stony Point Property.

2.1.4.40.  Class D40 (SSUAF/Arata Lane Secured Claim) consists of the Secured Claim held by SSUAF encumbering the Arata Lane Property.

2.1.4.41.  Class D41 (North Valley/2601 Francisco Secured Claim) consists of the Secured Claim held by North Valley encumbering the 2601 Francisco Property.

2.1.4.42.  Class D42 (American AgCredit FLCA/6215 Gold Dust Secured Claim) consists of the Secured Claim held by American AgCredit FLCA encumbering the 2615 Gold Dust Property.

2.1.4.43.  Class D43 (North Valley/2860 Stony Point Secured Claim) consists of the Secured Claim held by North Valley encumbering the 2860 Stony Point Property.

2.1.4.44.  Class D44 (Opperman Group/2860 Stony Point Secured Claim) consists of the Secured Claim held by Opperman Group encumbering the 2860 Stony Point Property.

2.1.4.45.  Class D45 (Hammond-Atlas/Sage Creek Secured Claim) consists of the Secured Claim held by Hammond-Atlas encumbering the Sage Creek Properties.

2.1.5.  Class E (LBS Secured Claims) consists of each Secured Claim held by LBS, as follows:

2.1.5.1.  Class E1 (LBS/5038 Sonoma Secured Claim) consists of the Secured Claim held by LBS encumbering the 5038 Sonoma Property.

2.1.5.2.  Class E2 (LBS/2633 Guerneville Secured Claim) consists of the Secured Claim held by LBS encumbering the 2633 Guerneville Property.

2.1.5.3.  Class E3 (LBS/2859 Linwood Secured Claim) consists of the Secured Claim held by LBS encumbering the 2859 Linwood Property.

2.1.5.4.  Class E4 (LBS/2621 Guerneville Secured Claim) consists of the

16

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Secured Claim held by LBS encumbering the 2621 Guerneville Property.

      2.1.5.5. <u>Class E5 (LBS/461 Todd Secured Claim)</u> consists of the Secured Claim held by LBS encumbering the 461 Todd Property.

      2.1.5.6. <u>Class E6 (LBS/1466 Hearn Secured Claim)</u> consists of the Secured Claim held by LBS encumbering the 1466 Hearn Property.

      2.1.5.7. <u>Class E7 (LBS/420 King Secured Claim)</u> consists of the Secured Claim held by LBS encumbering the 420 King Property.

      2.1.5.8. <u>Class E8 (LBS/2882 Stony Point Secured Claim)</u> consists of the Secured Claim held by LBS encumbering the 2882 Stony Point Property.

      2.1.5.9. <u>Class E9 (LBS/2137 Dennis Secured Claim)</u> consists of the Secured Claim held by LBS encumbering the 2137 Dennis Property.

      2.1.5.10. <u>Class E10 (LBS/950 Boyes Secured Claim)</u> consists of the Secured Claim held by LBS encumbering the 950 Boyes Property.

      2.1.5.11. <u>Class E11 (LBS/4728 Snyder Secured Claim)</u> consists of the Secured Claim held by LBS encumbering the 4728 Snyder Property.

      2.1.5.12. <u>Class E12 (LBS/4600 Todd Secured Claim)</u> consists of the Secured Claim held by LBS encumbering the 4600 Todd Property.

      2.1.5.13. <u>Class E13 (LBS/2967 Dutton Secured Claim)</u> consists of the Secured Claim held by LBS encumbering the 2967 Dutton Property.

      2.1.5.14. <u>Class E14 (LBS/2390 San Miguel Secured Claim)</u> consists of the Secured Claim held by LBS encumbering the 2390 San Miguel Property.

      2.1.5.15. <u>Class E15 (LBS/2957 Dutton Secured Claim)</u> consists of the Secured Claim held by LBS encumbering the 2957 Dutton Property.

      2.1.5.16. <u>Class E16 (LBS/2488 Fulton Secured Claim)</u> consists of the Secured Claim held by LBS encumbering the 2488 Fulton Property.

      2.1.5.17. <u>Class E17 (LBS/483 Scenic Secured Claim)</u> consists of the Secured Claim held by LBS encumbering the 483 Scenic Property.

      2.1.5.18. <u>Class E18 (LBS/2803 Dutton Secured Claim)</u> consists of the

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

Secured Claim held by LBS encumbering the 2803 Dutton Property.

    2.1.5.19.   Class E19 (LBS/4494 Todd Secured Claim) consists of the Secured Claim held by LBS encumbering the 4494 Todd Property.

    2.1.5.20.   Class E20 (LBS/2611 Fulton Secured Claim) consists of the Secured Claim held by LBS encumbering the 2611 Fulton Property.

    2.1.5.21.   Class E21 (LBS/819 Fourth Secured Claim) consists of the Secured Claim held by LBS encumbering the 819 Fourth Property.

    2.1.5.22.   Class E22 (LBS/841 Fifth Secured Claim) consists of the Secured Claim held by LBS encumbering the 841 Fifth Property.

    2.1.5.23.   Class E23 (LBS/5000 Highway 12 Secured Claim) consists of the Secured Claim held by LBS encumbering the 5000 Highway 12 Property.

    2.1.5.24.   Class E24 (LBS/3364 Coffey Secured Claim) consists of the Secured Claim held by LBS encumbering the 3364 Coffey Property.

    2.1.5.25.   Class E25 (LBS/3708 Barnes Secured Claim) consists of the Secured Claim held by LBS encumbering the 3708 Barnes Property.

    2.1.5.26.   Class E26 (LBS/2107 Wood Secured Claim) consists of the Secured Claim held by LBS encumbering the 2107 Wood Property.

    2.1.5.27.   Class E27 (LBS/812-3rd Secured Claim) consists of the Secured Claim held by LBS encumbering the 812-3rd Property.

    2.1.5.28.   Class E28 (LBS/816-3rd Secured Claim) consists of the Secured Claim held by LBS encumbering the 816-3rd Property.

    2.1.5.29.   Class E29 (LBS/830-3rd Secured Claim) consists of the Secured Claim held by LBS encumbering the 830-3rd Property.

    2.1.5.30.   Class E30 (LBS/1500 Hearn Secured Claim) consists of the Secured Claim held by LBS encumbering the 1500 Hearn Property.

    2.1.5.31.   Class E31 (LBS/518 Riley Secured Claim) consists of the Secured Claim held by LBS encumbering the 518 Riley Property.

    2.1.6.  Class F (Other Secured Claims) consists of each Secured Claim, if any, that is

18

not within Classes B, C, D or E.

2.1.7. <u>Class G (Early Option Unsecured Claims)</u> consists of all Early Option Unsecured Claims.

2.1.8. <u>Class H (General Unsecured Claims)</u> consists of all Unsecured Claims other than Priority Claims, Nonclassified Priority Claims and Early Option Unsecured Claims.

2.1.9. <u>Class I (Interests)</u> consists of all rights to, and interests in, property of the Estate held by the Debtors.

2.2. <u>Impairment</u>. Under the terms of the Plan, Allowed Claims within Classes A and F will not be impaired. Allowed Claims and Interests within all other Classes will be impaired under the terms of the Plan.

**ARTICLE III**

**TREATMENT OF NONCLASSIFIED PRIORITY CLAIMS**

3.1. <u>Generally</u>. Subject to the provisions of all other sections of this Article III, each holder of an Allowed Nonclassified Priority Claim shall receive on account of such Claim, Cash from the Creditors' Trust equal to the allowed amount of such Claim.

3.2. <u>Administrative Claims</u>. No Administrative Expense Claim, including without limitation Professional Fees, incurred before the Effective Date, other than ordinary course expenses incurred by the Debtors, shall become an Allowed Claim unless (a) a formal application, motion, request or proof therefor has been filed with the Court and served upon the Reorganized Debtors, the Trustee, the Plan Committee and the United States Trustee, within thirty (30) days following the Effective Date (the "Administrative Bar Date") or by such earlier deadline as may apply to such claim pursuant to an earlier order of the Court, and (b) such application, motion, request or proof has not been withdrawn, denied or dismissed. The Reorganized Debtors, the Trustee, the United States Trustee and any Claimant shall have the right to object to any such applications, motions, requests and proofs, and the Trustee shall schedule a hearing or hearings with respect to any such applications, motions, requests and proofs as to which any disputes exist or as to which Court approval is required by the Bankruptcy Rules and Local Rules, as soon as practicable following the Administrative Bar Date, and shall provide notice of such hearings and any objections to the

19

requesting claimants, the Reorganized Debtors, any objecting Claimant and the United States Trustee (except to the extent that such applications, motions, requests and proofs have been resolved prior thereto).

3.3.    Penalties and Interest.  Except as may be expressly set forth in the Plan or by an order of the Court, no holder of a Priority Tax Claim or an Administrative Expense Claim (other than such Claims as are held by governmental units and based upon tax liabilities arising after the Petition Date) shall be entitled to payment on account of any postpetition interest or penalties arising with respect to such Claim.

3.4.    Payment.  Payment of Allowed Nonclassified Priority Claims shall occur as follows:

3.4.1.    Administrative Expense Claims.  All payments required by the terms of this Plan on account of Allowed Administrative Expense Claims, unless made earlier by prior agreement or order of the Court, shall be made by the Trustee in Cash from the Creditors' Trust on the latest of the following dates:  (a) on, or as soon as practicable after, the Effective Date, or on such later date as to which the holder of such Claim may have consented; (b) on the date when such Claim becomes due according to contractual, statutory or other terms applicable thereto; or (c) as soon as practicable after entry of the order allowing such Claim, if the Claim is disputed or if applicable provisions of the Bankruptcy Code otherwise require Court approval.

3.4.2.    Priority Tax Claims.  All payments required by the terms of this Plan on account of Priority Tax Claims shall be made by the Trustee in Cash from the Creditors' Trust no later than the latest of the following:  (a) in four (4) equal, annual payments on each anniversary of the Effective Date until paid in full, together with interest at the nonbankruptcy rate applicable thereto as of the calendar month in which the Confirmation Date occurs, paid on each such anniversary and accruing from the Effective Date; (b) on the date when such Claim becomes due according to contractual, statutory or other terms applicable thereto, plus interest as described above; or (c) as soon as practicable after entry of the order allowing such Claim, if the Claim is disputed or if applicable provisions of the Bankruptcy Code require Court approval, plus interest as described above.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

3.4.3.  <u>Priority Gap Period Claims</u>.  Each holder of an Allowed Priority Gap Period Claim shall receive on account of such Claim Cash equal to the allowed amount of such Claim, unless such holder shall have agreed to a less favorable treatment of such Claim. Payment or payments on account of such Claims shall be made by the Trustee from the Creditors' Trust on or before the latest of the following dates:  (a) on, or as soon as practicable after, the Effective Date, or on such later date as to which such holder has consented; (b) on the date that such Claim becomes due pursuant to contractual, statutory or other terms applicable thereto; or (c) as to Disputed Claims, as soon as practicable after the order allowing the Claim has become a Final Order.

## **ARTICLE IV**

## **TREATMENT OF UNIMPAIRED CLASSES**

Classes of unimpaired Claims and Interests shall be treated as follows:

4.1.  <u>Class A (Priority Claims Other Than Nonclassified Priority Claims)</u>.  Each holder of an Allowed Claim within Class A shall receive on account of such Claim Cash equal to the allowed amount of such Claim, unless such holder shall have agreed to a less favorable treatment of such Claim.  Payment or payments on account of such Claims shall be made by the Trustee from the Creditors' Trust on or before the latest of the following dates:  (a) on, or as soon as practicable after, the Effective Date, or on such later date as to which such holder has consented; (b) on the date that such Claim becomes due pursuant to contractual, statutory or other terms applicable thereto; or (c) as to Disputed Claims, as soon as practicable after the order allowing the Claim has become a Final Order.

4.2.  <u>Class F (Other Secured Claims)</u>.  Each holder of an Allowed Secured Claim within Class F shall provide notice of such Secured Claim to the Trustee and the Reorganized Debtors on or before the Effective Date.  Unless such holder has agreed in writing with the Trustee to other treatment of such claim, such holder shall receive one of the following treatments of such claim, at the election of the Trustee (which election shall be deemed to be that which is described in Section 4.2.3 hereinbelow (Return of Collateral) unless otherwise stated by the Trustee in a writing served upon such holder on or before the tenth (10th) day after the Effective Date:

4.2.1. <u>Reinstatement</u>: Any and all defaults shall be Cured, and any and all damages compensated, by the Trustee from the Creditors' Trust, to the extent and in the manner required by the provisions of Section 1124(2) of the Bankruptcy Code, as soon as practicable after such defaults and damages, if any, have been determined by agreement among such holder and the Trustee, or by a Final Order if no such agreement is reached; the maturity and terms of such Claim, or such other terms as have been agreed upon between such holder and the Trustee, shall be reinstated pursuant to the provisions of Section 1124(2) of the Bankruptcy Code and shall be the obligation of the Creditors' Trust after the Effective Date.

4.2.2. <u>Full Satisfaction</u>: Such Allowed Secured Claim shall be paid in full by the Trustee, or in such lesser amount as may be agreed upon by the holder of such Claim and the Trustee, from the Creditors' Trust, as soon as practicable after such Claim becomes an Allowed Secured Claim, in exchange for which the holder of such Claim shall execute and deliver to the Trustee all appropriate documentation reasonably necessary to evidence and effectuate a full release and discharge of all liens, security interests and obligations arising from such Claim.

4.2.3. <u>Return of Collateral</u>. Such holder shall be permitted to remove, at its own cost and peril and without damage to any other property of the Creditors' Trust, and at a time mutually convenient to such holder and the Trustee, such property as to which it holds a perfected security interest, *provided* that in the event of any dispute between such holder and the Trustee as to the extent, priority, validity or enforceability of such security interest, such removal shall occur only after such dispute is resolved by a Final Order. Such holder may file and assert a Claim within Class H for any deficiency resulting from such abandonment and return of collateral, to the extent that such Claim is allowable and enforceable under applicable law, *provided* that a proof of claim therefor is filed with the Court and served upon the Trustee on or before the Deficiency Claim Deadline. If no such Claim is filed on or before the Deficiency Claim Deadline, then any such Claim shall be permanently and fully barred, and such holder shall have no Claim within Class G or H for a deficiency or guarantee, without regard to any Claim that has been filed or scheduled prior to the Effective

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Date.

# ARTICLE V

# TREATMENT OF IMPAIRED CLASSES

Classes of impaired Claims and Interests shall be treated as follows:

5.1.     Class B (Secured Claims – Equity and Senior Liens).  All Allowed Secured Claims within Class B shall be treated in accordance with the Class B Protocols (as defined in Exhibit "A" attached hereto), subject to the following:

5.1.1.     Class B1(A) (Anderson/3524 Mendocino Secured Claim).  The Plan Interest Rate for the Anderson/3524 Mendocino Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the third anniversary of the Effective Date, *provided, however*, that in the event that the holders of the Class C1 Claim elect the Foreclosure Option, as set forth in Section 5.2 below, then:  (a) the Estate shall provide written notice thereof to the holders of the Class B1(A) Claim; (b) neither the Estate nor the Trustee shall make any interest payments on account of the Class B1(A) Claim; (c) the holders of the Class B1(A) Claim shall retain their lien against the 3524 Mendocino Property; (d) title to the 3524 Mendocino Property shall be transferred from the Estate to the holders of the Class C1 Claim pursuant to Section 5.2 below, subject to the Class B1(A) Claim; and (e) the holders of the Class B1(A) Claim shall not hold or assert an Unsecured Claim against the Creditors' Trust or the Estate for any deficiency or guarantee claim related to such Allowed Secured Claim, regardless of whether applicable bankruptcy or non-bankruptcy law would otherwise permit or recognize such Claim.

5.1.2.     Class B1(B) (Burmeister/3524 Mendocino Secured Claim).     The Plan Interest Rate for the Burmeister/3524 Mendocino Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the third anniversary of the Effective Date, *provided, however*, that in the event that the holders of the Class C1 Claim elect the Foreclosure Option, as set forth in Section 5.2 below, then:  (a) the Estate shall provide written notice thereof to the holders of the Class B1(B) Claim; (b) neither the Estate nor the Trustee shall make any interest payments on account of the Class B1(B) Claim; (c) the

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

holders of the Class B1(B) Claim shall retain their lien against the 3524 Mendocino Property; (d) title to the 3524 Mendocino Property shall be transferred from the Estate to the holders of the Class C1 Claim pursuant to Section 5.2 below, subject to the Class B1(B) Claim; and (e) the holders of the Class B1(B) Claim shall not hold or assert an Unsecured Claim against the Creditors' Trust or the Estate for any deficiency or guarantee claim related to such Allowed Secured Claim, regardless of whether applicable bankruptcy or non-bankruptcy law would otherwise permit or recognize such Claim.

5.1.3.    Class B2 (Chase/3990 Wallace Secured Claim).  The Plan Interest Rate for the Chase/3990 Wallace Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the third anniversary of the Effective Date, *provided, however*, that in the event that the holders of the Class C2 Claim elect the Foreclosure Option, as set forth in Section 5.2 below, then:  (a) the Estate shall provide written notice thereof to the holders of the Class B2 Claim; (b) neither the Estate nor the Trustee shall make any interest payments on account of the Class B2 Claim; (c) the holders of the Class B2 Claim shall retain their lien against the 3990 Wallace Property; (d) title to the 3990 Wallace Property shall be transferred from the Estate to the holders of the Class C2 Claim pursuant to Section 5.2 below, subject to the Class B2 Claim; and (e) the holders of the Class B2 Claim shall not hold or assert an Unsecured Claim against the Creditors' Trust or the Estate for any deficiency or guarantee claim related to such Allowed Secured Claim, regardless of whether applicable bankruptcy or non-bankruptcy law would otherwise permit or recognize such Claim.

5.1.4.    Class B3 (Sterling/7151 Bodega Secured Claim).  The Plan Interest Rate for the Sterling/7151 Bodega Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.5.    Class B4 (BNYMellon/409 College Secured Claim).  The Plan Interest Rate for the BNYMellon/409 College Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the third anniversary of the Effective Date.

5.1.6.    Class B5 (Haskins/104 Shiloh Secured Claim).  The Plan Interest Rate for the Haskins/104 Shiloh Secured Claim shall be 4.00% per annum, and the Selling Period

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

shall terminate on the second anniversary of the Effective Date, *provided, however*, that in the event that the holders of the Class C5(A) Claim, Class C5(B) Claim, Class C6(A) Claim, Class C6(B) Claim, Class C7(A) Claim or Class C7(B) Claim elect the Foreclosure Option, as set forth in Section 5.2 below, then: (a) the Estate shall provide written notice thereof to the holders of the Class B5 Claim; (b) neither the Estate nor the Trustee shall make any interest payments on account of the Class B5 Claim; (c) the holders of the Class B5 Claim shall retain their lien against the 104 Shiloh Property; (d) title to the 104 Shiloh Property shall be transferred from the Estate to the holders of the Class C5(A) Claim, Class C5(B) Claim, Class C6(A) Claim, Class C6(B) Claim, Class C7(A) Claim or Class C7(B) Claim pursuant to Section 5.2 below, subject to the Class B5 Claim; and (e) the holders of the Class B5 Claim shall not hold or assert an Unsecured Claim against the Creditors' Trust or the Estate for any deficiency or guarantee claim related to such Allowed Secured Claim, regardless of whether applicable bankruptcy or non-bankruptcy law would otherwise permit or recognize such Claim.

      5.1.7.    <u>Class B6 (Chase/170 Shiloh Secured Claim)</u>. The Plan Interest Rate for the Chase/170 Shiloh Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the second anniversary of the Effective Date, *provided, however*, that in the event that the holders of the Class C5(A) Claim, Class C5(B) Claim, Class C6(A) Claim, Class C6(B) Claim, Class C7(A) Claim or Class C7(B) Claim elect the Foreclosure Option, as set forth in Section 5.2 below, then: (a) the Estate shall provide written notice thereof to the holders of the Class B6 Claim; (b) neither the Estate nor the Trustee shall make any interest payments on account of the Class B6 Claim; (c) the holders of the Class B6 Claim shall retain their lien against the 170 Shiloh Property; (d) title to the 170 Shiloh Property shall be transferred from the Estate to the holders of the Class C5(A) Claim, Class C5(B) Claim, Class C6(A) Claim, Class C6(B) Claim, Class C7(A) Claim or Class C7(B) Claim pursuant to Section 5.2 below, subject to the Class B6 Claim; and (e) the holders of the Class B6 Claim shall not hold or assert an Unsecured Claim against the Creditors' Trust or the Estate for any deficiency or guarantee claim related to such Allowed Secured Claim,

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES

MEYERS LAW GROUP, P.C.

44 MONTGOMERY STREET, SUITE 1010

SAN FRANCISCO, CALIFORNIA 94104

regardless of whether applicable bankruptcy or non-bankruptcy law would otherwise permit or recognize such Claim.

5.1.8.    Class B7 (Chase/180 Shiloh Secured Claim).  The Plan Interest Rate for the 180 Shiloh Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the second anniversary of the Effective Date, *provided, however*, that in the event that the holders of the Class C5(A) Claim, Class C5(B) Claim, Class C6(A) Claim, Class C6(B) Claim, Class C7(A) Claim or Class C7(B) Claim elect the Foreclosure Option, as set forth in Section 5.2 below, then:  (a) the Estate shall provide written notice thereof to the holders of the Class B7 Claim; (b) neither the Estate nor the Trustee shall make any interest payments on account of the Class B7 Claim; (c) the holders of the Class B7 Claim shall retain their lien against the 180 Shiloh Property; (d) title to the 180 Shiloh Property shall be transferred from the Estate to the holders of the Class C5(A) Claim, Class C5(B) Claim, Class C6(A) Claim, Class C6(B) Claim, Class C7(A) Claim or Class C7(B) Claim pursuant to Section 5.2 below, subject to the Class B7 Claim; and (e) the holders of the Class B7 Claim shall not hold or assert an Unsecured Claim against the Creditors' Trust or the Estate for any deficiency or guarantee claim related to such Allowed Secured Claim, regardless of whether applicable bankruptcy or non-bankruptcy law would otherwise permit or recognize such Claim.

5.1.9.    Class B8 (Chase/929 Kingwood Secured Claim).  The Plan Interest Rate for the Chase/929 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.10.    Class B9 (Chase/510-A Secured Claim).  The Plan Interest Rate for the Chase/510-A Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.11.    Class B10 (WFB/3130 Piner Secured Claim).  The Plan Interest Rate for the WFB/3130 Piner Secured Claim shall be as provided in the loan documents underlying said Claim, and the Class B Protocols shall be modified as to the WFB/3130 Piner Secured Claim in the following respects:

5.1.11.1.    Until timely exercise or expiration of the option granted by the

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Debtors to Cinque, an optionee of the 3130 Piner Property, all payments to WFB or to third parties (e.g., real property taxes and property insurance premiums) required under said loan documents or this Section 5.1.11 shall be made by Cinque, pursuant to Cinque's contractual obligations to the Trustee as successor in interest, and not by the Trustee except in her sole discretion;

5.1.11.2.   In the event that said option expires or is terminated without exercise prior to end of the Selling Period, the Trustee shall thereafter either (a) surrender the 3130 Piner Property to Polley, the junior lienholder, in accordance with the terms of subpart (a) of the Class B Protocols, or (b) make all payments required under said loan documents or this Section 5.1.11 (or, after the stated maturity date under said loan documents, interest-only payments at the Plan Interest Rate) until sale, surrender or expiration of the Selling Period; and in the event of such surrender to Polley, WFB will be entitled to foreclose upon the 3130 Piner Property in accordance with the terms of subpart (a) of the Class B Protocols, provided that in the event that neither WFB nor Polley has completed foreclosure within the 120-day period identified therein, the 3130 Piner Property shall be transferred by quitclaim to Polley, and not to WFB;

5.1.11.3.   None of the existing loan documents underlying the WFB/3130 Piner Secured Claim shall be deemed modified in any respect, including alternative dispute resolution provisions, except as expressly provided herein; and

5.1.11.4.   The Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.12.   Class B11 (Chase/972 Kingwood Secured Claim).  The Plan Interest Rate for the Chase/972 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.13.   Class B12 (Chase/969 Kingwood Secured Claim).  The Plan Interest Rate for the Chase/969 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

LAW OFFICES

MEYERS LAW GROUP, P.C.

44 MONTGOMERY STREET, SUITE 1010

SAN FRANCISCO, CALIFORNIA 94104

5.1.14.   <u>Class B13 (Chase/913 Kingwood Secured Claim)</u>.  The Plan Interest Rate for the Chase/913 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.15.   <u>Class B14 (Chase/935 Kingwood Secured Claim)</u>.  The Plan Interest Rate for the Chase/935 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.16.   <u>Class B15 (Chase/829 Davis Secured Claim)</u>.  The Plan Interest Rate for the Chase/829 Davis Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.17.   <u>Class B16 (Westamerica/1064 Santa Rosa Secured Claim)</u>.   The Plan Interest Rate for the Westamerica/1064 Santa Rosa Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.18.   <u>Class B17 (Chase/925 Kingwood Secured Claim)</u>.  The Plan Interest Rate for the Chase/925 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.19.   <u>Class B18 (Chase/961 Kingwood Secured Claim)</u>.  The Plan Interest Rate for the Chase/961 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.20.   <u>Class B19 (Sterling/1207 College Secured Claim)</u>.  The Plan Interest Rate for the Sterling/1207 College Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.21.   <u>Class B20 (Chase/936 Kingwood Secured Claim)</u>.  The Plan Interest Rate for the Chase/936 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.22.   <u>Class B21 (Chase/7-10th Secured Claim)</u>.  The Plan Interest Rate for the Chase/7-10th Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.23.   [INTENTIONALLY OMITTED].

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

5.1.24.  Class B23 (Chase/506 Morgan Secured Claim).  The Plan Interest Rate for the Chase/506 Morgan Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.25.  Class B24 (Chase/919 Kingwood Secured Claim).  The Plan Interest Rate for the Chase/919 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.26.  Class B25 (Chase/213 Willow Secured Claim).  The Plan Interest Rate for the Chase/213 Willow Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.27.  Class B26 (Westamerica/858 Fourth Secured Claim).  The Plan Interest Rate for the Westamerica/858 Fourth Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.28.  Class B27 (Chase/3765 Lakeville Secured Claim).  The Plan Interest Rate for the Chase/3765 Lakeville Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fourth anniversary of the Effective Date.

5.1.29.  Class B28 (Westamerica/629 Fourth Secured Claim).  The Plan Interest Rate for the Westamerica/629 Fourth Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.30.  Class B29 (Chase/2804 Beth Secured Claim).  The Plan Interest Rate for the Chase/2804 Beth Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.31.  Class B30 (Chase/615 Maple Secured Claim).  The Plan Interest Rate for the Chase/615 Maple Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.32.  Class B31 (Johnson Sons/507-E Secured Claim).  The Plan Interest Rate for the Johnson Sons/507-E Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.33.  Class B32 (Chase/537-A Secured Claim).  The Plan Interest Rate for the

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

Case 09:52986    Doc# 510    Filed: 08/17/10    Entered: 08/17/10 16:05:58    Page 33 of 128

Chase/537-A Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.34.  Class B33 (Chase/416 King Secured Claim).  The Plan Interest Rate for the Chase/416 King Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the third anniversary of the Effective Date.

5.1.35.  Class B34 (Chase/420 Brookwood Secured Claim).  The Plan Interest Rate for the Chase/420 Brookwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.36.  Class B35 (Birne/909 Saracen Secured Claim).  The Plan Interest Rate for the Birne/909 Saracen Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the third anniversary of the Effective Date.

5.1.37.  Class B36 (Chase/895 Yuba Secured Claim).  The Plan Interest Rate for the Chase/895 Yuba Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the third anniversary of the Effective Date.

5.1.38.  Class B37 (Chase/521-A Secured Claim).  The Plan Interest Rate for the Chase/521-A Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.39.  Class B38 (Oliver/4000 Wallace Secured Claim).  The Plan Interest Rate for the Oliver/4000 Wallace Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the first anniversary of the Effective Date.

5.1.40.  Class B39 (Chase/2728 Sonoma Secured Claim).  The Plan Interest Rate for the Chase/2728 Sonoma Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.41.  Class B40 (Chase/948 Kingwood Secured Claim).  The Plan Interest Rate for the Chase/948 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.42.  Class B41 (Chase/2136 Franklin Secured Claim).  The Plan Interest Rate for the Chase/2136 Franklin Secured Claim shall be 4.00% per annum, and the Selling Period

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

shall terminate on the fifth anniversary of the Effective Date.

5.1.43.   Class B42 (Sterling/403 Chinn Secured Claim).  The Plan Interest Rate for the Sterling/403 Chinn Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.44.   Class B43 (Chase/7170 Burnett Secured Claim).  The Plan Interest Rate for the Chase/7170 Burnett Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.45.   Class B44 (Sterling/542 College Secured Claim).  The Plan Interest Rate for the Sterling/542 College Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.46.   Class B45 (North Channel/820 Fifth Secured Claim).  The Plan Interest Rate for the North Channel/820 Fifth Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.47.   Class B46 (North Channel/818 Fifth Secured Claim).  The Plan Interest Rate for the North Channel/818 Fifth Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.48.   Class B47 (Keegan-Keegan/1120-15th Secured Claim).  The Plan Interest Rate for the Keegan-Keegan/1120-15th Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the second anniversary of the Effective Date.

5.1.49.   Class B48 (Chase/525 Roseland Secured Claim).  The Plan Interest Rate for the Chase/525 Roseland Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.50.   Class B49 (Sterling/849 Fifth Secured Claim).  The Plan Interest Rate for the Sterling/849 Fifth Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.51.   Class B50 (North Coast/850 Fourth Secured Claim).  The Plan Interest Rate for the North Coast/850 Fourth Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

5.1.52.   Class B51 (Chase/915 Yuba Secured Claim).  The Plan Interest Rate for the Chase/915 Yuba Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the third anniversary of the Effective Date.

5.1.53.   Class B52 (Chase/416 Macklyn Secured Claim).  The Plan Interest Rate for the Chase/416 Macklyn Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.54.   Class B53 (Chase/2036 Linwood Secured Claim).  The Plan Interest Rate for the Chase/2036 Linwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the third anniversary of the Effective Date.

5.1.55.   Class B54 (Chase/925 Yuba Secured Claim).  The Plan Interest Rate for the Chase/925 Yuba Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the second anniversary of the Effective Date.

5.1.56.   Class B55 (Chase/408 Calistoga Secured Claim).  The Plan Interest Rate for the Chase/408 Calistoga Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.57.   Class B56 (Chase/7800 Hembree Secured Claim).  The Plan Interest Rate for the Chase/7800 Hembree Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.58.   Class B57 (American AgCredit FLCA/Stony Point Alpha Secured Claim). The Plan Interest Rate for the American AgCredit FLCA/Stony Point Alpha Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the second anniversary of the Effective Date.

5.1.59.   Class B58 (North Channel/2125 W. College Secured Claim).  The Plan Interest Rate for the North Channel/2125 W. College Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the second anniversary of the Effective Date.

5.1.60.   Class B59 (Five Star/199 Calistoga Secured Claim).  The Plan Interest Rate for the Five Star/199 Calistoga Secured Claim shall be 4.00% per annum, and the Selling

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Period shall terminate on the third anniversary of the Effective Date.

5.1.61.    Class B60 (Palleschi-Brown/3131 Primrose Secured Claim).    The Plan Interest Rate for the Palleschi-Brown/3131 Primrose Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.62.    Class B61 (Agnese Trust/Brooks Avenue Secured Claim).  The Plan Interest Rate for the Agnese Trust/Brooks Avenue Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.63.    Class B62 (Chase/438 Orchard Secured Claim).  The Plan Interest Rate for the Chase/438 Orchard Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.64.    Class B63 (Exchange/3310 Santa Rosa Secured Claim).  The Plan Interest Rate for the Exchange/3310 Santa Rosa Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the third anniversary of the Effective Date.

5.1.65.    Class B64 (Barbieri-Opperman/3470 Santa Rosa Secured Claim).  The Plan Interest Rate for the Barbieri-Opperman/3470 Santa Rosa Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the second anniversary of the Effective Date.

5.1.66.    Class B65 (Agnese Trust/3579 Brooks Secured Claim).  The Plan Interest Rate for the Agnese Trust/3579 Brooks Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the second anniversary of the Effective Date.

5.1.67.    Class B66 (Chase/3917 Stony Point Secured Claim).  The Plan Interest Rate for the Chase/3917 Stony Point Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the second anniversary of the Effective Date.

5.1.68.    Class B67 (Viviani Trust/19297 East Highway Secured Claim).  The Plan Interest Rate for the Viviani Trust/19297 East Highway Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fourth anniversary of the Effective Date.

5.1.69.    Class B68A (American AgCredit FLCA/5000 Llano Secured Claim).  The Plan Interest Rate for the American AgCredit FLCA/5000 Llano Secured Claim shall be

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

33

4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.70.    Class B68B (American AgCredit PCA/5000 Llano Secured Claim).    The Plan Interest Rate for the American AgCredit PCA/5000 Llano Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.71.    Class B69 (Hayward Trust/836 Ripley Secured Claim).    The Plan Interest Rate for the Hayward Trust/836 Ripley Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.72.    Class B70 (Countrywide/1745 West Lake Secured Claim).    The Plan Interest Rate for the Countrywide/1745 West Lake Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the third anniversary of the Effective Date.

5.1.73.    Class B71 (Ciraulo/28365 Old Redwood Secured Claim).    The Plan Interest Rate for the Ciraulo/28365 Old Redwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the third anniversary of the Effective Date.

5.1.74.    Class B72 (Sterling/801 Benton Secured Claim).    The Plan Interest Rate for the Sterling/801 Benton Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.75.    Class B73 (Westamerica/411-E Secured Claim).    The Plan Interest Rate for the Westamerica/411-E Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.76.    Class B74 (WFB/9810 Berry Secured Claim).    The Plan Interest Rate for the WFB/9810 Berry Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.77.    Class B75 (Exchange/1899 Mendocino Secured Claim).    The Plan Interest Rate for the Exchange/1899 Mendocino Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.78.    Class B76 (North Valley/1615 Fulton Secured Claim).    The Plan Interest

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Rate for the North Valley/1615 Fulton Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fourth anniversary of the Effective Date.

5.1.79. Class B77 (Hunter/1550 Hearn Secured Claim). The Plan Interest Rate for the Hunter/1550 Hearn Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the second anniversary of the Effective Date.

5.1.80. Class B78 (Rubin/3548 Brooks Secured Claim). The Plan Interest Rate for the Rubin/3548 Brooks Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.81. Class B79 (Rankin/4407 Petaluma Secured Claim). The Plan Interest Rate for the Rankin/4407 Petaluma Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.82. Class B80 (Johnson-Henig/21837 Geyserville Secured Claim). The Plan Interest Rate for the Johnson-Henig/21837 Geyserville Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the third anniversary of the Effective Date.

5.1.83. Class B81 (Chase/3109 Montgomery Secured Claim). The Plan Interest Rate for the Chase/3109 Montgomery Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.84. Class B82 (WFB/3222 Piner Secured Claim). The Plan Interest Rate for the WFB/3222 Piner Secured Claim shall be as provided in the loan documents underlying said Claim, and the Class B Protocols shall be modified as to the WFB/3222 Piner Secured Claim in the following respects:

5.1.84.1. Until timely exercise or expiration of the option granted by the Debtors to Cinque, an optionee of the 3222 Piner Property, all payments to WFB or to third parties (e.g., real property taxes and property insurance premiums) required under said loan documents or this Section 5.1.84 shall be made by Cinque, pursuant to Cinque's contractual obligations to the Trustee as successor in interest, and not by the Trustee except in her sole discretion;

5.1.84.2. In the event that said option expires or is terminated without

Case 09-52996    Doc# 510    Filed: 08/17/10    Entered: 08/17/10 16:05:58    Page 39 of 128
DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

exercise prior to end of the Selling Period, the Trustee shall thereafter either (a) surrender the 3222 Piner Property to WFB, in accordance with the terms of subpart (a) of the Class B Protocols, or (b) make all payments required under said loan documents or this Section 5.1.84 (or, after the stated maturity date under said loan documents, interest-only payments at the Plan Interest Rate) until sale, surrender or expiration of the Selling Period;

      5.1.84.3.   None of the existing loan documents underlying the WFB/3222 Piner Secured Claim shall be deemed modified in any respect, including alternative dispute resolution provisions, except as expressly provided herein; and

      5.1.84.4.   The Selling Period shall terminate on the fifth anniversary of the Effective Date.

      5.1.85.   Class B83 (Countrywide/600 College Secured Claim).   The Plan Interest Rate for the Countrywide/600 College Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

      5.1.86.   Class B84 (Exchange/1701 Santa Rosa Secured Claim).   The Plan Interest Rate for the Exchange/1701 Santa Rosa Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

      5.1.87.   Class B85 (American AgCredit FLCA/Stony Point Beta Secured Claim). The Plan Interest Rate for the American AgCredit FLCA/ Stony Point Beta Property shall be 4.00% per annum, and the Selling Period shall terminate on the second anniversary of the Effective Date.

      5.1.88.   Class B86 (Five Star/1375 West Secured Claim).   The Plan Interest Rate for the Five Star/1375 West Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the third anniversary of the Effective Date.

      5.1.89.   Class B87 (American AgCredit FLCA/Stony Point Gamma Secured Claim). The Plan Interest Rate for the American AgCredit FLCA/ Stony Point Gamma Property shall be 4.00% per annum, and the Selling Period shall terminate on the second anniversary of the Effective Date.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

36

5.1.90.  Class B88 (Chase/9828 Berry Secured Claim).  The Plan Interest Rate for the Chase/9828 Berry Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.91.  Class B89 (WFB/9850 Berry Secured Claim).  The Plan Interest Rate for the WFB/9850 Berry Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.92.  Class B90 (WFB/9870 Berry Secured Claim).  The Plan Interest Rate for the WFB/9870 Berry Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.93.  Class B91 (Sterling/840 Third Secured Claim).  The Plan Interest Rate for the 840 Third Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.94.  Class B92 (Chase/904 Kingwood Secured Claim).  The Plan Interest Rate for the 904 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.95.  Class B93 (Chase/905 Kingwood Secured Claim).  The Plan Interest Rate for the 905 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.96.  Class B94 (Chase/906 Kingwood Secured Claim).  The Plan Interest Rate for the 906 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.97.  Class B95 (Chase/914 Kingwood Secured Claim).  The Plan Interest Rate for the 914 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.98.  Class B96 (Chase/918 Kingwood Secured Claim).  The Plan Interest Rate for the 918 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.99.  Class B97 (Chase/920 Kingwood Secured Claim).  The Plan Interest Rate

for the 920 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.100. Class B98 (BNYMellon/838 Fifth Secured Claim). The Plan Interest Rate for the 838 Fifth Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.101. Class B99 (Chase/840 Fifth Secured Claim). The Plan Interest Rate for the 840 Fifth Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.102. Class B100 (Chase/950 Kingwood Secured Claim). The Plan Interest Rate for the 950 Kingwood Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.103. Class B101 (Countrywide/1002 Orchard Secured Claim). The Plan Interest Rate for the 1002 Orchard Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.104. Class B102 (Five Star/2863 West Steele Secured Claim). The Plan Interest Rate for the 2863 West Steele Secured Claim shall be 4.00% per annum, and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.1.105. Class B103 (Polley/3130 Piner Secured Claim). The Plan Interest Rate for the Polley/3130 Piner Secured Claim shall be as provided in the loan documents underlying said Claim, and the Class B Protocols shall be modified as to the Polley/3130 Piner Secured Claim in the following respects:

5.1.105.1. Until timely exercise or expiration of the option granted by the Debtors to Cinque, an optionee of the 3130 Piner Property, all payments to Polley required under said loan documents or this Section 5.1.105 shall be made by Cinque, pursuant to Cinque's contractual obligations to the Trustee as successor in interest, and not by the Trustee except in her sole discretion;

5.1.105.2. In the event that said option expires or is terminated without exercise prior to end of the Selling Period, the Trustee shall thereafter either (a)

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

surrender the 3130 Piner Property to Polley, in accordance with the terms of subpart (a) of the Class B Protocols, or (b) make all payments required under said loan documents or this Section 5.1.105 until sale, surrender or expiration of the Selling Period; and

5.1.105.3. The Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.2. Class C (Secured Claims – Junior Liens). All Allowed Secured Claims within Class C shall be treated as follows: Subject to the provisions of each subsection below affecting a particular subclass, the holders of each Allowed Secured Claim within Class C shall provide written notice (the "Election Notice") to the Debtors made on the face of a signed and timely submitted Ballot, in accordance with instructions provided with the Disclosure Statement, of such holders' election to accept one of the following treatments, in accordance with the provisions of Section 1.4 of this Plan: (a) non-judicial foreclosure sale by such holders upon their collateral pursuant to valid and enforceable powers of sale and rights of foreclosure under applicable loan documentation, to be completed prior to the Effective Date (the "Foreclosure Option"); or (b) release and discharge of all liens and security interests of such holders in such collateral as of the Effective Date, and assertion of a general unsecured claim within Class H for the full amount of such holders' Claim (the "Release Option"); subject to each of the following provisos:

(i)     If as to a particular subclass (i.e., Class C1, Class C2, etc.) no Election Notice is effectively made, pursuant to the provisions of Section 1.4 of this Plan, then that subclass shall be deemed to have elected the Foreclosure Option;

(ii)    In the event that a subclass elects the Release Option, holders within such subclass may, as the case may be, timely file a proof of claim or amend a proof of claim timely filed in the Chapter 11 Case within Class H in order to account for any Claim to which such holders are entitled under enforceable and applicable law, *provided* that such proof of claim or amended proof of claim is filed with the Court and served upon the Trustee on or before the Deficiency Claim Deadline;

(iii)   In the event that a subclass timely elects, or is deemed hereunder to have

elected, the Foreclosure Option, but does not complete its foreclosure sale prior to the Effective Date, then the Estate shall quitclaim to the holders of Allowed Secured Claims in such subclass the collateral property encumbered by such Secured Claims as of the Effective Date, without representation or warranty, in which event such holders shall not hold or assert an Unsecured Claim against the Creditors' Trust or the Estate for any deficiency or guarantee claim related to such Allowed Secured Claim, regardless of whether applicable bankruptcy or non-bankruptcy law would otherwise permit or recognize such claim; and

(iv)　　The Debtors or the Trustee, as the case may be, may obtain orders of the Court deeming quitclaim transfers by the Estate or, as applicable, releases of liens in favor of the Creditors' Trust, valid and effective as of the Effective Date, upon five (5) Business Days' notice to affected holders of Allowed Secured Claims within this Class.

The foregoing shall apply to the following classes, as follows:

5.2.1.　<u>Class C1 (Bertolone/3524 Mendocino Secured Claim)</u>.　The terms of Section 5.2 above shall apply to the Bertolone/3524 Mendocino Secured Claim without modification.

5.2.2.　<u>Class C2 (Garaventa/3990 Wallace Secured Claim)</u>.　The terms of Section 5.2 above shall apply to the Garaventa/3990 Wallace Secured Claim without modification.

5.2.3.　<u>Class C3 (Keegan-Coppin/819 Fourth Secured Claim)</u>.　The terms of Section 5.2 above shall apply to the Keegan-Coppin/819 Fourth Secured Claim without modification.

5.2.4.　<u>[INTENTIONALLY OMITTED]</u>.

5.2.5.　<u>Classes C5(A) (R.W. Oliver Trust/104 Shiloh Secured Claim), C5(B) (Johnson-Schaal Trusts/104 Shiloh Secured Claim, Class C6(A) (R.W. Oliver Trust/170 Shiloh Secured Claim), Class C6(B) (Johnson-Schaal Trusts/170 Shiloh Secured Claim), Class C7(A) (R.W. Oliver Trust/180 Shiloh Secured Claim) and Class C7(B) (Johnson-Schaal Trusts/180 Shiloh Secured Claim)</u>.　The terms of Section 5.2 above shall apply to the Allowed Secured Claims within Classes C5(A), C5(B), C6(A), C6(B), C7(A) and C7(B) subject to the following:

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

5.2.5.1.    The holders of Allowed Secured Claims in all six such classes must elect the same option, in accordance with the provisions of Section 1.4 of this Plan, and if there is a conflict among such elections, then all six such classes shall be deemed to have elected the Foreclosure Option.

5.2.5.2.    Under the Foreclosure Option, if a foreclosure sale with respect to any of the three affected collateral properties, the 104 Shiloh Property, the 170 Shiloh Property or the 180 Shiloh Property, is not timely completed, then the quitclaim provided in Section 5.2(iii) above shall convey title to the holders of the junior-most liens encumbering such collateral property.

5.3.    Class D (Secured Claims – Overencumbered).  All Allowed Secured Claims within Class D shall be treated as follows:  Subject to the provisions of each subsection below affecting a particular subclass, the holders of each Allowed Secured Claim within Class D shall provide the Election Notice to the Debtors made on the face of a signed and timely submitted Ballot, in accordance with instructions provided with the Disclosure Statement, of such holders' election to accept one of the following treatments, in accordance with the provisions of Section 1.4 of this Plan: (a) a quitclaim by the Estate to the holders of Allowed Secured Claims in such subclass of the collateral property encumbered by such Secured Claims as of the Effective Date, without representation or warranty, in which event such holders shall not hold or assert an Unsecured Claim against the Creditors' Trust or the Estate for any deficiency or guarantee claim related to such Allowed Secured Claim, regardless of whether applicable bankruptcy or non-bankruptcy law would otherwise permit or recognize such claim (the "Transfer Option"); (b) the Foreclosure Option; (c) the Release Option; or (d) treatment under the Class D Protocols (as defined in Exhibit "A" attached hereto) (the "Protocols Option"); subject to each of the following provisos:

(i)    If as to a particular subclass (i.e., Class D1, Class D2, etc.) no Election Notice is effectively made, pursuant to the provisions of Section 1.4 of this Plan, then that subclass shall be deemed to have elected the Transfer Option;

(ii)    In the event that a subclass elects the Release Option, holders within such subclass may, as the case may be, timely file a proof of claim or amend a proof of claim

41

timely filed in the Chapter 11 Case within Class H in order to account for any Claim to which such holders are entitled under enforceable and applicable law, *provided* that such proof of claim or amended proof of claim is filed with the Court and served upon the Trustee on or before the Deficiency Claim Deadline;

(iii) In the event that a subclass timely elects the Foreclosure Option, but does not complete its foreclosure sale prior to the Effective Date, then the Estate shall quitclaim to the holders of Allowed Secured Claims in such subclass the collateral property encumbered by such Secured Claims as of the Effective Date, without representation or warranty, in which event such holders shall not hold or assert an Unsecured Claim against the Creditors' Trust or the Estate for any deficiency or guarantee claim related to such Allowed Secured Claim, regardless of whether applicable bankruptcy or non-bankruptcy law would otherwise permit or recognize such claim; and

(iv) The Debtors or the Trustee, as the case may be, may obtain orders of the Court deeming quitclaim transfers by the Estate or, as applicable, releases of liens in favor of the Creditors' Trust, valid and effective as of the Effective Date, upon five (5) Business Days' notice to affected holders of Allowed Secured Claims within this Class.

To the extent that a subclass elects the Protocols Option, then the Class D Protocols shall apply to the Secured Claim within such subclass, subject to the following:

5.3.1. <u>Class D1 (USBank/947 Yuba Secured Claim)</u>. The Release Price of the 947 Yuba Property shall be $400,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.2. <u>Class D2 (North Coast/2074 Armory Secured Claim)</u>. The Release of the 2074 Armory Property shall be $600,000 and the Selling Period shall terminate on the fifth anniversary of the Effective Date.

5.3.3. <u>Class D3 (Barbosa Trust/13019 Crest Secured Claim)</u> The Release Price of the 13019 Crest Property shall be $50,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC
Case 09-32786   Doc# 510   Filed: 08/17/10   Entered: 08/17/10 16:05:58   Page 46 of 128

Effective Date.

  5.3.4. <u>Class D4 (BNYMellon/4235 Miles Secured Claim)</u>.  The Release Price of the 4235 Miles Property shall be $200,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

  5.3.5. <u>Class D5 (Hindley-Scheibel/6235 Dry Creek Secured Claim)</u>  The Release Price of the 6235 Dry Creek Property shall be $150,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the fourth anniversary of the Effective Date.

  5.3.6. <u>Class D6 (North Valley/2727 Dutton Secured Claim)</u>.  North Valley shall be conclusively presumed to have elected the Foreclosure Option with respect to the North Valley/2727 Dutton Secured Claim.  Under the provisions of Section 5.3(iii), North Valley shall have until the one-hundred-twentieth (120th) day following the Effective Date, or such later date as the Court may approve upon motion brought by North Valley for good cause shown other than as may result from North Valley's own delayed action or inaction, in order to complete its foreclosure, absent which the Trustee shall quitclaim to North Valley the 2727 Dutton Property pursuant to the terms of said Section 5.3(iii).  The Foreclosure Option shall permit either non-judicial foreclosure or judicial foreclosure.  Notwithstanding any other provisions of the Plan, neither the Trustee nor the Creditors' Trust shall have any responsibility or obligation to manage, repair, preserve, insure or otherwise maintain the 2727 Dutton Property, or make any payments (including taxes) on account thereof, at any time on or after the Effective Date, regardless of the disposition of such property as a Transfer Asset.

  5.3.7. <u>Class D7 (Acciari Trust/5327 Tewa Secured Claim)</u>  The Release Price of the 5327 Tewa Property shall be $100,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the fifth anniversary of the Effective Date.

  5.3.8. <u>Class D8 (Countrywide/8590 Alden Secured Claim)</u>.  The Release Price of the

43

LAW OFFICES

**MEYERS LAW GROUP, P.C.**

44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

8590 Alden Property shall be $200,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.9. <u>Class D9 (Countrywide/8602 Alden Secured Claim)</u>. The Release Price of the 8602 Alden Property shall be $200,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.10. <u>Class D10 (Napa Community/707 Bellevue Secured Claim)</u>. Notwithstanding the foregoing, the terms of the settlement agreement between the Debtors, Napa Community and other persons, approved by the Bankruptcy Court by its order entered on May 26, 2010, is hereby incorporated into the Plan, and the Trustee and Napa Community shall be bound thereby. Notwithstanding any other provisions of the Plan, neither the Trustee nor the Creditors' Trust shall have any responsibility or obligation to manage, repair, preserve, insure or otherwise maintain the 707 Bellevue Property, or make any payments (including taxes) on account thereof, at any time on or after the Effective Date, regardless of the disposition of such property as a Transfer Asset.

5.3.11. <u>Class D11 (Henig PSP/3615 Vista Secured Claim)</u>  The Release Price of the 3615 Vista Property shall be $50,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the fifth anniversary of the Effective Date.

5.3.12. <u>Class D12 (Napa Community/2960 Stony Point Secured Claim)</u>. Notwithstanding the foregoing, the terms of the settlement agreement between the Debtors, Napa Community and other persons, approved by the Bankruptcy Court by its order entered on May 26, 2010, is hereby incorporated into the Plan, and the Trustee and Napa Community shall be bound thereby. Notwithstanding any other provisions of the Plan, neither the Trustee nor the Creditors' Trust shall have any responsibility or obligation to manage, repair, preserve, insure or otherwise maintain the 2960 Stony Point Property, or make any payments (including taxes) on account thereof, at any time on or after the Effective Date, regardless of

the disposition of such property as a Transfer Asset.

5.3.13. <u>Class D13 (Brekke Pension/3136 Edgewood Secured Claim)</u>  The Release Price of the 3136 Edgewood Property shall be $100, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.14. <u>Class D14 (USBank/9515 Graton Secured Claim)</u>.  The Release Price of the 9515 Graton Property shall be $400,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the third anniversary of the Effective Date.

5.3.15. <u>Class D15 (Savings Mendocino/3422 Santa Rosa Secured Claim)</u>.  The Release Price of the 3422 Santa Rosa Property shall be $1,200,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.16. <u>Class D16 (BNYMellon/2225 Burbank Secured Claim)</u>.  The Release Price of the 2225 Burbank Property shall be $300,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.17. <u>Class D17 (Pensco-Opperman/120 Scenic Secured Claim)</u>.  The Release Price of the 120 Scenic Property shall be $500,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.18. <u>Class D18 (Mead Clark PSP/Sage Creek Alpha Secured Claim)</u>. Notwithstanding the foregoing, the terms of the settlement agreement between the Debtors, and Mead Clark PSP, approved by the Bankruptcy Court by its order entered on June 21, 2010, is hereby incorporated into the Plan, and the Trustee and Mead Clark PSP shall be bound thereby.  Notwithstanding any other provisions of the Plan, neither the Trustee nor the Creditors' Trust shall have any responsibility or obligation to manage, repair, preserve, insure or otherwise maintain the Sage Creek Alpha Property, or make any payments (including

45

taxes) on account thereof, at any time on or after the Effective Date, regardless of the disposition of such property as a Transfer Asset.

5.3.19. Class D19 (Smith-Johnson/Sage Creek Beta Secured Claim).  The Release Price of the Sage Creek Beta Property shall be $1,150,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.20. Class D20(Johnson PSP/2800 Francisco Secured Claim).  The Release Price of the 2800 Francisco Property shall be $150,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the fourth anniversary of the Effective Date.

5.3.21. Class D21 (Barbieri-Lindberg/Ciwa-Kakul Secured Claim).  The Release Price of the Ciwa-Kakul Property shall be $150,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.22. Class D22 (Summit/3771 Lakeville Secured Claim).  The Release Price of the 3771 Lakeville Property shall be $1,600,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the fourth anniversary of the Effective Date; *provided* that in the event that Summit Bank elects the Foreclosure Option with respect to its Class D22 Claim, then (a) under the provisions of Section 5.3(iii), Summit Bank shall have until the one-hundred-twentieth (120th) day following the Effective Date, or such later date as the Court may approve upon motion brought by Summit for good cause shown other than as may result from Summit's own delayed action or inaction, in order to complete its foreclosure, absent which the Trustee shall quitclaim to Summit Bank the 3771 Lakeville Property pursuant to the terms of said Section 5.3(iii); and (b) the Foreclosure Option shall permit either non-judicial foreclosure or judicial foreclosure.  Notwithstanding any other provisions of the Plan, neither the Trustee nor the Creditors' Trust shall have any responsibility or obligation to manage, repair, preserve, insure or otherwise maintain the 3771 Lakeville Property, or make any payments (including taxes) on account thereof, at any

46

time on or after the Effective Date, regardless of the disposition of such property as a Transfer Asset.

5.3.23. Class D23 (Walraven Trust/2420 San Miguel Secured Claim).  The Release Price of the 2420 San Miguel Property shall be $50,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the fourth anniversary of the Effective Date.

5.3.24.  [INTENTIONALLY OMITTED]

5.3.25.  Class D25 (North Valley/5146 Old Redwood Secured Claim).  The Release Price of the 5146 Old Redwood Property shall be $850,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.26.  Class D26 (Hada PSP/11961 Bitney Springs Secured Claim).  The Release Price of the 11961 Bitney Springs Property shall be $250,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the fourth anniversary of the Effective Date.

5.3.27.  Class D27 (Corsi-Noonan/21000 Santa Clara Secured Claim).  The Release Price of the 21000 Santa Clara Property shall be $750,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.28.  Class D28 (Noonan/12760 Sulphur Secured Claim)  The Release Price of the 12760 Sulphur Property shall be $750,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.29.  Class D29 (Combs Trust/13193 Lakeshore Secured Claim)  The Release Price of the 13193 Lakeshore Property shall be $50,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.30.  Class D30 (Johnson 1993 Trust/15825-23rd Secured Claim)  The Release

Price of the 15825-23rd Property shall be $50,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.31.  Class D31 (Johnson PSP/15873-27th Secured Claim)  The Release Price of the 15873-27th Property shall be $100, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.32.  Class D32 (Rankin Trust/15883-27th Secured Claim)  The Release Price of the 15883-27th Property shall be $100, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.33.  Class D33 (Losee Trust/16214-33rd Secured Claim)  The Release Price of the 16214-33rd Property shall be $50,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.34.  Class D34 (Palleschi PSP/3096-15th Secured Claim)  The Release Price of the 3096-15th Property shall be $100, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the second anniversary of the Effective Date.

5.3.35.  Class D35 (Summit/8262 Peninsula Secured Claim).  The Release Price of the 8262 Peninsula Property shall be $500,000, the Plan Interest Rate shall be 4.00% per annum, and the Selling Period for such property shall terminate on the fifth anniversary of the Effective Date; *provided* that in the event that Summit Bank elects the Foreclosure Option with respect to its Class D35 Claim, then (a) under the provisions of Section 5.3(iii), Summit Bank shall have until the one-hundred-twentieth (120th) day following the Effective Date, or such later date as the Court may approve upon motion brought by Summit for good cause shown other than as may result from Summit's own delayed action or inaction, in order to complete its foreclosure, absent which the Trustee shall quitclaim to Summit Bank the

48

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

8262 Peninsula Property pursuant to the terms of said Section 5.3(iii); and (b) the Foreclosure Option shall permit either non-judicial foreclosure or judicial foreclosure. Notwithstanding any other provisions of the Plan, neither the Trustee nor the Creditors' Trust shall have any responsibility or obligation to manage, repair, preserve, insure or otherwise maintain the 8262 Peninsula Property, or make any payments (including taxes) on account thereof, at any time on or after the Effective Date, regardless of the disposition of such property as a Transfer Asset.

5.3.36.  Class D36 (Klemco/8262 Peninsula Secured Claim).  Klemco shall be conclusively presumed to have elected the Release Option with respect to the Klemco/8262 Peninsula Secured Claim.  Notwithstanding any other provisions of the Plan, neither the Trustee nor the Creditors' Trust shall have any responsibility or obligation to manage, repair, preserve, insure or otherwise maintain the 8262 Peninsula Property, or make any payments (including taxes) on account thereof, at any time on or after the Effective Date, regardless of the disposition of such property as a Transfer Asset.

5.3.37.  Class D37 (North Valley/2729 Stony Point Secured Claim).  North Valley shall be conclusively presumed to have elected the Foreclosure Option with respect to the North Valley/2729 Stony Point Secured Claim.  Under the provisions of Section 5.3(iii), North Valley shall have until the one-hundred-twentieth (120th) day following the Effective Date, or such later date as the Court may approve upon motion brought by North Valley for good cause shown other than as may result from North Valley's own delayed action or inaction, in order to complete its foreclosure, absent which the Trustee shall quitclaim to North Valley the 2729 Stony Point Property pursuant to the terms of said Section 5.3(iii). The Foreclosure Option shall permit either non-judicial foreclosure or judicial foreclosure. Notwithstanding any other provisions of the Plan, neither the Trustee nor the Creditors' Trust shall have any responsibility or obligation to manage, repair, preserve, insure or otherwise maintain the 2729 Stony Point Property, or make any payments (including taxes) on account thereof, at any time on or after the Effective Date, regardless of the disposition of such property as a Transfer Asset.

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

5.3.38.  Class D38 (Cooper Trust/2727 Dutton Meadow Secured Claim).  Cooper Trust shall be conclusively presumed to have elected the Release Option with respect to the 2727 Dutton Meadow Secured Claim.

5.3.39.  Class D39 (Cooper Trust/2729 Stony Point Secured Claim).  Cooper Trust shall be conclusively presumed to have elected the Release Option with respect to the 2729 Stony Point Secured Claim.

5.3.40.  Class D40 (SSUAF/Arata Lane Secured Claim).  SSUAF shall be conclusively presumed to have elected the Foreclosure Option with respect to the SSUAF/Arata Lane Secured Claim.

5.3.41.  Class D41 (North Valley/2601 Francisco Secured Claim).  North Valley shall be conclusively presumed to have elected the Foreclosure Option with respect to the North Valley/2601 Francisco Secured Claim.

5.3.42.  Class D42 (American AgCredit FLCA/6215 Gold Dust Secured Claim).  American AgCredit FLCA shall be conclusively presumed to have elected the Foreclosure Option with respect to the American AgCredit FLCA/6215 Gold Dust Secured Claim.

5.3.43.  Class D43 (North Valley/2860 Stony Point Secured Claim).  North Valley shall be conclusively presumed to have elected the Foreclosure Option with respect to the North Valley 2860 Stony Point Secured Claim.  Under the provisions of Section 5.3(iii), North Valley shall have until the one-hundred-twentieth (120th) day following the Effective Date, or such later date as the Court may approve upon motion brought by North Valley for good cause shown other than as may result from North Valley's own delayed action or inaction, in order to complete its foreclosure, absent which the Trustee shall quitclaim to North Valley the 2860 Stony Point Property pursuant to the terms of said Section 5.3(iii). The Foreclosure Option shall permit either non-judicial foreclosure or judicial foreclosure. Notwithstanding any other provisions of the Plan, neither the Trustee nor the Creditors' Trust shall have any responsibility or obligation to manage, repair, preserve, insure or otherwise maintain the 2860 Stony Point Property, or make any payments (including taxes) on account thereof, at any time on or after the Effective Date, regardless of the disposition of such

50

property as a Transfer Asset.

5.3.44. Class D44 (Opperman Group/2860 Stony Point Secured Claim). Opperman Group shall be conclusively presumed to have elected the Release Option with respect to the Opperman Group/2860 Stony Point Secured Claim.

5.3.45. Class D45 (Atlas-Hammond/Sage Creek Secured Claim). As of the Effective Date, Atlas-Hammond may enforce the Atlas-Hammond/Sage Creek Secured Claim pursuant to any state law rights they may have, as against the Sage Creek Alpha Properties, without restriction by the automatic stay of Section 362(a) of the Bankruptcy Code or the injunction set forth herein, but such enforcement shall be subject to existing secured debt to the extent senior to such Claim, and shall be subject to any and all defenses and offsets held by the Debtors or the Trustee as successor-in-interest to the Debtors. Nothing herein shall be deemed to allow any Claim within Classes G or H in favor of Atlas-Hammond.

5.4. Class E (LBS Secured Claims). All Allowed Secured Claims within Class E shall be treated as follows:

5.4.1. Class E1 (LBS/5038 Sonoma Secured Claim) LBS shall foreclose upon the 5038 Sonoma Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/5038 Sonoma Secured Claim.

5.4.2. Class E2 (LBS/2633 Guerneville Secured Claim) LBS shall foreclose upon the 2633 Guerneville Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/2633 Guerneville Secured Claim.

      5.4.3.   <u>Class E3 (LBS/2859 Linwood Secured Claim)</u> LBS shall foreclose upon the 2859 Linwood Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/2859 Linwood Secured Claim.

      5.4.4.   <u>Class E4 (LBS/2621 Guerneville Secured Claim)</u> LBS shall foreclose upon the 2621 Guerneville Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/2621 Guerneville Secured Claim.

      5.4.5.   <u>Class E5 (LBS/461 Todd Secured Claim)</u> LBS shall foreclose upon the 461 Todd Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/461 Todd Secured Claim.

      5.4.6.   <u>Class E6 (LBS/1466 Hearn Secured Claim)</u> LBS shall foreclose upon the 1466 Hearn Property in accordance with nonbankruptcy law and applicable loan documents,

prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/1466 Hearn Secured Claim.

       5.4.7.   Class E7 (LBS/420 King Secured Claim) LBS shall foreclose upon the 420 King Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/420 King Secured Claim.

       5.4.8.   Class E8 (LBS/2882 Stony Point Secured Claim) LBS shall foreclose upon the 2882 Stony Point Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/2882 Stony Point Secured Claim.

       5.4.9.   Class E9 (LBS/2137 Dennis Secured Claim) LBS shall foreclose upon the 2137 Dennis Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/2137 Dennis Secured Claim.

       5.4.10.   Class E10 (LBS/950 Boyes Secured Claim) LBS shall foreclose upon the

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

950 Boyes Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/950 Boyes Secured Claim.

5.4.11.   Class E11 (LBS/4728 Snyder Secured Claim)  LBS shall foreclose upon the 4728 Snyder Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/4728 Snyder Secured Claim.

5.4.12.   Class E12 (LBS/4600 Todd Secured Claim)  LBS shall foreclose upon the 4600 Todd Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/4600 Todd Secured Claim.

5.4.13.   Class E13 (LBS/2967 Dutton Secured Claim)  LBS shall foreclose upon the 2967 Dutton Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/2967 Dutton Secured Claim.

5.4.14.   Class E14 (LBS/2390 San Miguel Secured Claim)  LBS shall foreclose upon

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES

MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

the 2390 San Miguel Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/2390 San Miguel Secured Claim.

5.4.15.   Class E15 (LBS/2957 Dutton Secured Claim)  LBS shall foreclose upon the 2957 Dutton Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/2957 Dutton Secured Claim.

5.4.16.   Class E16 (LBS/2488 Fulton Secured Claim)  LBS shall foreclose upon the 2488 Fulton Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/2488 Fulton Secured Claim.

5.4.17.   Class E17 (LBS/483 Scenic Secured Claim)  LBS shall foreclose upon the 483 Scenic Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty. LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/483 Scenic Secured Claim.

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

5.4.18.   Class E18 (LBS/2803 Dutton Secured Claim)  LBS shall foreclose upon the 2803 Dutton Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty.  LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/2803 Dutton Secured Claim.

5.4.19.   Class E19 (LBS/4494 Todd Secured Claim)  LBS shall foreclose upon the 4494 Todd Property in accordance with nonbankruptcy law and applicable loan documents, prior to the Effective Date, absent which the Estate shall quitclaim to LBS such property as of the Effective Date, without representation or warranty.  LBS shall be deemed to have waived, released and discharged any Unsecured Claim against the Debtors, the Estate, the Trustee or the Creditors' Trust, whether for deficiency, guarantee or otherwise, arising from the loan or other transactions that are the basis of the LBS/4494 Todd Secured Claim.

5.4.20.   Class E20 (LBS/2611 Fulton Secured Claim)  The LBS/2611 Fulton Secured Claim shall be treated in accordance with the terms of the Class B Protocols, subject to the following:  (a) the Plan Interest Rate shall be three percent (3.0%) per annum in the first year following the Effective Date, four percent (4.0%) per annum in the second year following the Effective Date, five percent (5.0%) per annum in the third and fourth years following the Effective Date, and six percent (6.0%) per annum in the fifth year following the Effective Date; (b) the Selling Period shall terminate on the fifth anniversary of the Effective Date; and (c) the loan documents evidencing the LBS/2611 Fulton Secured Claim shall remain in full force and effect, subject to modification of the note and deed of trust as set forth in the LBS Additional Protocols.

5.4.21.   Class E21 (LBS/819 Fourth Secured Claim)  The LBS/819 Fourth Secured Claim shall be treated in accordance with the terms of the Class B Protocols, subject to the following:  (a) the Plan Interest Rate shall be three percent (3.0%) per annum in the first year following the Effective Date, four percent (4.0%) per annum in the second year following the

56

Effective Date, and five percent (5.0%) per annum in the third year following the Effective Date; (b) the Selling Period shall terminate on the third anniversary of the Effective Date; and (c) the loan documents evidencing the LBS/819 Fourth Secured Claim shall remain in full force and effect, subject to modification of the note and deed of trust as set forth in the LBS Additional Protocols.

5.4.22.  <u>Class E22 (LBS/841 Fifth Secured Claim)</u>  The LBS/841 Fifth Secured Claim shall be treated in accordance with the terms of the Class B Protocols, subject to the following:  (a) the Plan Interest Rate shall be three percent (3.0%) per annum in the first year following the Effective Date, four percent (4.0%) per annum in the second year following the Effective Date, and five percent (5.0%) per annum in the third year following the Effective Date; (b) the Selling Period shall terminate on the third anniversary of the Effective Date; and (c) the loan documents evidencing the LBS/841 Fifth Secured Claim shall remain in full force and effect, subject to modification of the note and deed of trust as set forth in the LBS Additional Protocols.

5.4.23.  <u>Class E23 (LBS/5000 Highway 12 Secured Claim)</u>  The LBS/5000 Highway 12 Secured Claim shall be treated in accordance with the Class E Protocols, as defined in Exhibit "A" attached to the Plan, subject to the following:  (a) the Plan Interest Rate shall be three percent (3.0%) per annum in the first year following the Effective Date, and four percent (4.0%) per annum in the second year following the Effective Date; (b) the Selling Period shall terminate on the second anniversary of the Effective Date; (c) the Release Price shall be $602,900; and (d) the loan documents evidencing the LBS/5000 Highway 12 Secured Claim shall remain in full force and effect, subject to modification of the note and deed of trust as set forth in the LBS Additional Protocols.

5.4.24.  <u>Class E24 (LBS/3364 Coffey Secured Claim)</u>  The LBS/3364 Coffey Secured Claim shall be treated in accordance with the Class E Protocols, as defined in Exhibit "A" attached to the Plan, subject to the following:  (a) the Plan Interest Rate shall be three percent (3.0%) per annum in the first year following the Effective Date, four percent (4.0%) per annum in the second year following the Effective Date, and five percent (5.0%)

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

57

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

per annum in the third and fourth years following the Effective Date; (b) the Selling Period shall terminate on the fourth anniversary of the Effective Date; (c) the Release Price shall be $400,000; and (d) the loan documents evidencing the LBS/3364 Coffey Secured Claim shall remain in full force and effect, subject to modification of the note and deed of trust as set forth in the LBS Additional Protocols.

5.4.25.   Class E25 (LBS/3708 Barnes Secured Claim)   The LBS/3708 Barnes Secured Claim shall be treated in accordance with the Class E Protocols, as defined in Exhibit "A" attached to the Plan, subject to the following:  (a) the Plan Interest Rate shall be three percent (3.0%) per annum in the first year following the Effective Date, four percent (4.0%) per annum in the second year following the Effective Date, and five percent (5.0%) per annum in the third and fourth years following the Effective Date; (b) the Selling Period shall terminate on the fourth anniversary of the Effective Date; (c) the Release Price shall be $330,000; and (d) the loan documents evidencing the LBS/3708 Barnes Secured Claim shall remain in full force and effect, subject to modification of the note and deed of trust as set forth in the LBS Additional Protocols.

5.4.26.   Class E26 (LBS/2107 Wood Secured Claim)   The LBS/2107 Wood Secured Claim shall be treated in accordance with the Class E Protocols, as defined in Exhibit "A" attached to the Plan, subject to the following:  (a) the Plan Interest Rate shall be three percent (3.0%) per annum in the first year following the Effective Date, four percent (4.0%) per annum in the second year following the Effective Date, and five percent (5.0%) per annum in the third and fourth years following the Effective Date; (b) the Selling Period shall terminate on the fourth anniversary of the Effective Date; (c) the Release Price shall be $1,100,000; and (d) the loan documents evidencing the LBS/2107 Wood Secured Claim shall remain in full force and effect, subject to modification of the note and deed of trust as set forth in the LBS Additional Protocols.

5.4.27.   Class E27 (LBS/812-3rd Secured Claim)   The LBS/812-3rd Secured Claim shall be treated in accordance with the Class E Protocols, as defined in Exhibit "A" attached to the Plan, subject to the following:  (a) the Plan Interest Rate shall be three percent (3.0%)

per annum in the first year following the Effective Date, and four percent (4.0%) per annum in the second year following the Effective Date; (b) the Selling Period shall terminate on the second anniversary of the Effective Date; (c) the Release Price shall be $277,000; and (d) the loan documents evidencing the LBS/812-3rd Secured Claim shall remain in full force and effect, subject to modification of the note and deed of trust as set forth in the LBS Additional Protocols.

5.4.28.  Class E28 (LBS/816-3rd Secured Claim)  The LBS/816-3rd Secured Claim shall be treated in accordance with the Class E Protocols, as defined in Exhibit "A" attached to the Plan, subject to the following:  (a) the Plan Interest Rate shall be three percent (3.0%) per annum in the first year following the Effective Date, and four percent (4.0%) per annum in the second year following the Effective Date; (b) the Selling Period shall terminate on the second anniversary of the Effective Date; (c) the Release Price shall be $275,000; and (d) the loan documents evidencing the LBS/816-3rd Secured Claim shall remain in full force and effect, subject to modification of the note and deed of trust as set forth in the LBS Additional Protocols.

5.4.29.  Class E29 (LBS/830-3rd Secured Claim)  The LBS/830-3rd Secured Claim shall be treated in accordance with the Class E Protocols, as defined in Exhibit "A" attached to the Plan, subject to the following:  (a) the Plan Interest Rate shall be three percent (3.0%) per annum in the first year following the Effective Date, and four percent (4.0%) per annum in the second year following the Effective Date; (b) the Selling Period shall terminate on the second anniversary of the Effective Date; (c) the Release Price shall be $290,000; and (d) the loan documents evidencing the LBS/830-3rd Secured Claim shall remain in full force and effect, subject to modification of the note and deed of trust as set forth in the LBS Additional Protocols.

5.4.30.  Class E30 (LBS/1500 Hearn Secured Claim)  The LBS/1500 Hearn Secured Claim shall be treated in accordance with the Class E Protocols, as defined in Exhibit "A" attached to the Plan, subject to the following:  (a) the Plan Interest Rate shall be three percent (3.0%) per annum in the first year following the Effective Date, and four percent (4.0%) per

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

annum in the second year following the Effective Date; (b) the Selling Period shall terminate on the second anniversary of the Effective Date; (c) the Release Price shall be $405,000; and (d) the loan documents evidencing the LBS/1500 Hearn Secured Claim shall remain in full force and effect, subject to modification of the note and deed of trust as set forth in the LBS Additional Protocols.

      5.4.31.  <u>Class E31 (LBS/518 Riley Secured Claim)</u>  The LBS/518 Riley Secured Claim shall be treated in accordance with the Class E Protocols, as defined in Exhibit "A" attached to the Plan, subject to the following: (a) the Plan Interest Rate shall be three percent (3.0%) per annum in the first year following the Effective Date, and four percent (4.0%) per annum in the second year following the Effective Date; (b) the Selling Period shall terminate on the second anniversary of the Effective Date; (c) the Release Price shall be $398,300; and (d) the loan documents evidencing the LBS/518 Riley Secured Claim shall remain in full force and effect, subject to modification of the note and deed of trust as set forth in the LBS Additional Protocols.

    5.5.  <u>Class G (Early Option Unsecured Claims)</u>.  In lieu of treatment within Class H (General Unsecured Claims), and in full satisfaction and discharge of all Allowed Claims within Class G, each holder of an Allowed Unsecured Claim may elect treatment as an Early Option Unsecured Claim, as follows:

      5.5.1.  <u>Timely Election</u>.  In order to elect treatment as an Early Option Unsecured Claim within Class G, the holder of an Unsecured Claim must, by written election made on the face of a signed and timely submitted Ballot, in accordance with instructions provided with the Disclosure Statement, state such holder's intention to be treated within Class G. Such election and Ballot must be received by the Debtors' counsel on or prior to the deadline for submission of Ballots.

      5.5.2.  <u>Treatment</u>.  Subject to the provisions of Section 5.5.3 below, in the event of such timely election, the holder of an Allowed Unsecured Claim within Class G will receive no distribution as part of Class H, and will instead receive the following: On or before the end of the eighteenth (18th) full calendar month occurring after the Effective Date, or as soon

LAW OFFICES

**MEYERS LAW GROUP, P.C.**

44 MONTGOMERY STREET, SUITE 1010

SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

thereafter as is practicable, the Trustee shall pay to each holder of an Allowed Claim within Class G, from funds of the Creditors' Trust, a Cash payment equal to ten percent (10%) of the full amount of such Allowed Claim. Such payment shall be made in full satisfaction of such Allowed Claim, and such holder shall not be entitled to payment of interest or any additional disbursement on account of such Allowed Claim, except that to the extent that Allowed Claims in Class H receive full payment, including interest that accrues as set forth in the Plan, any excess funds or assets in the Creditors' Trust shall be distributed to holders of Allowed Claims in Class G until such claims have been paid in full, together with interest accruing after the Petition Date at the rate of five percent (5%) per annum.

5.5.3. <u>Over-Subscription</u>. In the event that timely elections are made pursuant to Section 5.5.1 above for qualifying Unsecured Claims in an aggregate amount in excess of $30,000,000, then the Trustee shall ratably reduce each such Unsecured Claim so that the total amount of Allowed Claims within Class G equals $30,000,000, and all remaining portions of such claims in excess of $30,000,000 in the aggregate shall be treated as Claims within Class H. Such determination and reduction shall be made once all Claims within Class G have been resolved by allowance or disallowance, or by estimation for such purposes.

5.6. <u>Class H (Unsecured Claims)</u>. In full satisfaction and discharge of all Allowed Claims within Class H, part or all of the amounts of all Allowed Claims within Class H shall be paid by the Trustee as follows: From and after the date when the holders of Allowed Class G Claims (Early Option Unsecured Claims) have received distributions equal to ten percent (10%) of the full amount of such Allowed Claims consistent with the treatment of Class G set forth in Section 5.5.2 above, each holder of an Allowed Claim within Class H shall receive payments on account of such Allowed Claim by the Trustee from the net funds of the Creditors' Trust on a *pro rata* basis, from time to time as the Trustee shall determine appropriate and to the extent of available funds after taking into account the costs and expenses of administering the Creditors' Trust and making the payments otherwise required of the Trustee under the Plan, until the earlier of (a) payment in full of such Allowed Class H Claim, together with interest accruing after the Petition Date at the rate of five

Case 09:52986    Doc# 510    Filed: 08/17/10    Entered: 08/17/10 16:05:58    Page 65 of 128

percent (5%) per annum; or (b) exhaustion of funds and assets of material value within the Creditors' Trust. In the event that holders of Allowed Claims within Class H are paid in full, together with interest to the extent set forth herein, any excess funds and assets shall be distributed to holders of Allowed Claims in Class G until such claims have been paid in full, together with interest. Thereafter, to the extent any additional funds or assets remain, the Trustee shall pay such additional funds, or transfer such additional assets, to the Reorganized Debtors.

5.7. <u>Class I (Interests)</u>. As of the Effective Date, each of the Excluded Assets shall be deemed revested in the Reorganized Debtors, free and clear of all claims, liens, charges or other rights of creditors of the Estate, except as expressly set forth in the Plan.

**ARTICLE VI**

**EXECUTORY CONTRACTS**

6.1. <u>Generally</u>. Unexpired executory contracts, including without limitation unexpired leases, entered into by either of the Debtors prior to the Petition Date, shall be treated in the manner set forth in this Article VI.

6.2. <u>Assumption and Rejection</u>. The assumption and rejection of executory contracts shall be determined as follows:

6.2.1. <u>Assumption Schedule</u>. Prior to the Effective Date, the Debtors and the Committee shall jointly file with the Bankruptcy Court, and serve upon the United States Trustee, all parties requesting special notice and each party to a contract identified therein, a schedule ("Schedule 6.2.1") identifying each executory contract to be assumed by the Trustee, on behalf of the Creditors' Trust, as of the Effective Date, *provided* that if no such contracts are to be assumed as of the Effective Date, no such schedule need be filed or served. Each executory contract identified on Schedule 6.2.1 shall be deemed assumed as of the Effective Date.

6.2.2. <u>Rejection</u>. Except as otherwise provided elsewhere in the Plan or by the terms of the Confirmation Order, as of the Effective Date, all executory contracts shall be deemed rejected as of the Effective Date, except for any executory contract (i) which is listed on Schedule 6.2.1 to be assumed, (ii) which has been assumed by the Debtors pursuant to an

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

order of the Court granting a motion filed by the Debtors prior to the Effective Date, or (iii) which has been rejected pursuant to an order of the Bankruptcy Court or by applicable law prior to the Effective Date.

6.3.    Cure Amounts.    Schedule 6.2.1 shall also identify (a) the Cure amount that the Debtors and the Committee believe is owing pursuant to Section 365(b)(1) of the Bankruptcy Code for each executory contract to be assumed by the Trustee as of the Effective Date, and (b) the adequate assurance of future performance to be provided with respect to such executory contract, *provided* that such Schedule 6.2.1 need not identify contracts for which the Debtors and the Committee believe that no Cure amount is owing.

6.3.1.    Objections.    Within ten (10) days following the Effective Date, any party to an executory contract to be assumed as of the Effective Date may file, and serve upon the Trustee, an objection to Schedule 6.2.1 (or the absence of Schedule 6.2.1) to the extent that such party disputes the Cure amount stated for a particular contract, or disputes the adequacy of proffered assurance of future performance.    The Trustee shall schedule hearings and briefing before the Bankruptcy Court with respect to any such disputes not consensually resolved, as soon as practicable after the Effective Date and in accordance with applicable Bankruptcy Rules.

6.3.2.    Resolution.    The amounts set forth in Schedule 6.2.1 shall be conclusively presumed to be the amounts of Cure, if any, for each contract identified therein, and it shall be conclusively presumed that no Cure amounts are owed other than those (if any) identified in Schedule 6.2.1, unless, and except to the extent that, an objection is timely filed and served in accordance with the provisions of Section 6.3.1.    Any amount of Cure in excess of those set forth in the Schedule 6.2.1 or such amounts as determined by the Bankruptcy Court in resolution of timely filed objections, shall be fully discharged and barred, and shall not be a liability of the Trustee, the Creditors' Trust, the Estate or the Reorganized Debtors to any extent.

6.4.    Payment of Cure.    Any and all Cash payments necessary to Cure a default existing under an executory contract assumed pursuant to the provisions of Section 6.2 herein shall be paid

by the Trustee, with funds of the Creditors' Trust, on or before the latest of the following dates: (a) within twenty-one (21) days following the Effective Date, or on such later date as to which the holder of the right to such Cure may have consented; (b) on the date that any disputes regarding assumption or the Cure amount have been resolved by a Final Order; or (c) on the date when such Cure of defaults becomes due according to contractual, statutory or other terms applicable thereto.

6.5. <u>Approval of Assumption or Rejection</u>. Entry of the Confirmation Order shall constitute (i) the approval, pursuant to the provisions of Section 365(a) of the Bankruptcy Code, of the assumption of the executory contracts assumed pursuant to the provisions of Section 6.2 hereinabove; (ii) the extension of time pursuant to the provisions of Section 365(d)(4) of the Bankruptcy Code, to the extent necessary, within which the Debtors may assume or reject the executory contracts specified in Section 6.2 hereinabove through the Effective Date; and (iii) the approval, pursuant to the provisions of Section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts rejected pursuant to the provisions of Section 6.2 hereinabove.

6.6. <u>Bar Date for Rejection Claims</u>. Except to the extent that the Bankruptcy Court, the Bankruptcy Code or the Bankruptcy Rules may establish an earlier deadline with regard to the rejection of executory contracts, any Claims arising out of the rejection of executory contracts pursuant to the provisions of Section 6.2 herein must be filed with the Bankruptcy Court and served upon the Trustee no later than thirty (30) days after the Effective Date. Any Claims not filed within such time will be forever barred from assertion. Any Claims arising from the rejection of executory contracts (a) may be asserted only to the extent permitted by Section 365(g) of the Bankruptcy Code; and (b) shall be classified and treated within Class H.

6.7. <u>Assignment of Assumed Contracts</u>. Any executory contracts assumed by the Trustee pursuant to the provisions of this Article VI, or by other orders of the Court, may be assigned to another party by the Trustee pursuant to the provisions of Section 365 of the Bankruptcy Code at any time after the Effective Date, upon notice and opportunity for hearing provided by the Trustee to the other party to such contract, *provided* that no such notice or opportunity for hearing shall be required for an assignment consistent with the terms of the executory contract or with the consent of the other parties to the contract.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

MEYERS LAW GROUP, P.C.

LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

# ARTICLE VII

## MEANS FOR EXECUTION OF THE PLAN

7.1.    <u>Plan Effectiveness</u>.  The Plan shall become fully effective and binding upon all parties on the Effective Date.

7.2.    <u>Appointment and Qualification of Trustee</u>.  The Trustee shall be Andrea Wirum, *provided* that at any time after the Effective Date, the Trustee may be removed and replaced by an order of the Bankruptcy Court upon the motion of the Plan Committee and a showing of good cause, or as otherwise set forth in the Creditors' Trust Agreement.  The Trustee shall obtain a fidelity bond for his or her services under the Plan, at the expense of the Creditors' Trust, and shall be independent and have sufficient business experience to make knowledgeable business judgments related to the implementation of the Plan.   The Trustee shall be compensated for all of her services in implementation of the Plan pursuant to terms set forth in the Disclosure Statement.

7.3.    <u>Transfer of Assets to Creditors' Trust</u>.  On the Effective Date, the Debtors shall take any and all actions as may be necessary or appropriate to establish the Creditors' Trust and to transfer all Transfer Assets to the Creditors' Trust, which shall thereupon constitute assets of the Creditors' Trust.  The term "Transfer Assets" shall mean all assets of the Estate as of the Effective Date other than:  (a) the Excluded Assets, (b) those assets that are encumbered by liens securing Allowed Secured Claims within such subclasses in Classes C and D as have elected, or have been deemed to have elected, the Foreclosure Option or the Transfer Option, as applicable, in accordance with the provisions of Sections 5.2 and 5.3 of the Plan (except for the properties encumbered by liens securing Allowed Secured Claims within Classes D6, D10, D12, D18, D22, D35, D36, D37 and D43, which shall constitute Transfer Assets), and (c) those properties that are encumbered by liens securing Allowed Secured Claims within Classes E1 through E19.  The sole beneficiaries of the Creditors' Trust shall be the holders of Allowed Claims within Class G and Class H of the Plan.  For federal income tax purposes, the beneficiaries of the Creditors' Trust shall be treated as the grantors of the Creditors' Trust and shall be deemed to be the owners of the assets of the Creditors' Trust, and the Debtors shall treat the transfer of the Transfer Assets to the Creditors' Trust as a deemed transfer to such beneficiaries followed by a deemed transfer by such beneficiaries to the Creditors' Trust.  As

MEYERS LAW GROUP, P.C.

LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

of the Effective Date, the value of the Transfer Assets deemed transferred and conveyed into the Creditors' Trust shall be fixed at the amount of the Transfer Price. The Transfer Price shall be deemed paid and satisfied by the Creditors' Trust's assumption of liabilities of the Estate in accordance with, and to the extent set forth in, the provisions of this Plan. All assets transferred to the Creditors' Trust shall be free and clear of any and all claims, interests, liens, security interests and obligations other than those that are expressly created or preserved by the provisions of this Plan or the Confirmation Order. Any and all of such assets may be sold, transferred, compromised or otherwise disposed of by the Trustee on behalf of the Creditors' Trust on or after the Effective Date in accordance with the terms of the Plan, subject to the effect of any liens or security interests encumbering such assets to the extent expressly created or preserved under the terms of this Plan.

7.4.    Purpose of Creditors' Trust. As of the Effective Date and consistent with the terms of the Creditors' Trust Agreement, the Creditors' Trust shall be established for the purposes of (a) addressing the Claims of holders of Allowed Administrative Expense Claims, Allowed Priority Claims and Allowed Secured Claims to the extent contemplated by the Plan; and (b) liquidating and distributing the assets of the Creditors' Trust for the benefit of holders of Allowed Claims within Classes G and H under the Plan. The Creditors' Trust shall have no objective to continue or engage in the conduct of a trade or business except as necessary consistent with the liquidating purpose of the Creditors' Trust, and shall not be deemed to be a successor-in-interest of the Debtors or of the Estate for any purpose other than as specifically set forth herein. For the avoidance of doubt, the Creditors' Trust's obligations to holders of Allowed Administrative Expense Claims, Allowed Priority Claims and Allowed Secured Claims under the Plan shall be contractual in nature and limited to the express requirements set forth in the Plan. The Creditors' Trust shall owe no fiduciary duty to the holders of Allowed Administrative Expense Claims, Allowed Priority Claims, or Allowed Secured Claims.

7.5.    Duties and Powers of Trustee. Unless otherwise ordered by the Bankruptcy Court, the Trustee shall commence services as of the Effective Date, and shall continue to perform her duties until completion of the final distribution to be made in implementation of the Plan or the Creditors' Trust Agreement, or until removed pursuant to the terms of the Plan. Subject to the

oversight of the Plan Committee, the Trustee shall be responsible for the management of the Creditors' Trust and the implementation of the Plan, and shall have the following duties, powers and authorities in order to do so:

7.5.1. <u>Directing Reorganized Debtors</u>. The Trustee shall monitor and direct the efforts of Carinalli, who will, to the extent reasonably requested by the Trustee and consistent with the terms of the Plan, assist the Trustee in implementation of the Plan.

7.5.2. <u>Implementation</u>. The Trustee shall take any and all actions reasonably necessary or appropriate in order to implement and administer the Creditors' Trust, including without limitation negotiating for and entering into settlements, forbearance agreements and compromises, negotiating and closing asset sales, and generally taking actions consistent with the terms of the Plan, all in accordance with the terms of the Plan. The Trustee shall keep the Plan Committee reasonably apprised of her actions on behalf of the Creditors' Trust.

7.5.3. <u>Claims</u>. The Trustee may file and prosecute estate actions, including avoidance claims, and objections to Claims, and requested estimations of Claims, in accordance with the terms of the Plan and may settle, compromise or otherwise dispose of such actions or objections to Claims without need for notice to Creditors or approval of the Bankruptcy Court, *provided* that the Trustee may settle, compromise, or otherwise dispose of such actions or objections to Claims above the monetary threshold set forth in Section 7.6.2 of the Plan only with the consent of the Plan Committee or with the approval of the Bankruptcy Court.

7.5.4. <u>Distributions</u>. The Trustee shall make distributions to creditors from time to time in accordance with the terms of the Plan.

7.5.5. <u>Use of Funds</u>. The Trustee shall manage all funds of the Creditors' Trust and shall use such funds, as appropriate, to obtain and pay for appropriate insurance coverages and indemnification of the Trustee, members of the Plan Committee, and their respective professionals, and to pay administrative costs of Plan implementation, all in accordance with the terms of the Plan.

7.5.6. <u>Assets</u>. The Trustee shall collect, receive, manage and dispose of all assets

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

of the Creditors' Trust without the necessity of notice to Creditors or approval of the Bankruptcy Court (but shall not abandon assets to the Debtors or Reorganized Debtors at any time), *provided* that the Trustee may compromise, surrender, sell, lease or otherwise dispose of assets of the Creditors' Trust above the monetary threshold set forth in Section 7.6.1 of the Plan only with the consent of the Plan Committee or with the approval of the Bankruptcy Court.

7.5.7.  <u>Co-Owned Assets</u>.  The Trustee may sell both the interests of the Creditors' Trust and the interests of co-owners, of assets in which the Creditors' Trust holds a partial interest, in accordance with the requirements and provisions of Section 363(h) of the Bankruptcy Code or with the consent of all co-owners.

7.5.8.  <u>Bank Accounts</u>.  The Trustee shall open and maintain bank accounts for the benefit of the Creditors' Trust in accordance with the terms of the Plan and the Creditors' Trust Agreement.

7.5.9.  <u>Retention of Professionals</u>.  The Trustee may retain, without the necessity of Bankruptcy Court approval, counsel and other professionals for the purpose of advising the Trustee and representing the Trustee with respect to the implementation of the Plan, including professionals who formerly represented the Debtors, or presently represent the Reorganized Debtors, or formerly represented the Committee, *provided* that retention of former or present counsel for the Debtors, the Reorganized Debtors or the Committee may be employed by the Trustee only with the consent of the Plan Committee or with the approval of the Bankruptcy Court.

7.6.  <u>Plan Committee</u>.  The Plan Committee shall be comprised of no more than seven (7) unsecured creditors selected by the Committee in its sole discretion and approved by the Court.  The Plan Committee shall operate pursuant to the provisions of the Creditors' Trust Agreement, which shall provide for, among other things, the resignation and replacement of members of the Plan Committee and the reimbursement of expenses of such members.  Members of the Plan Committee shall not be entitled to any compensation for time or efforts spent as members.  The Plan Committee shall monitor the actions and decisions of the Trustee, specifically including the right and duty to:

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

7.6.1.   Approve any sale or other disposition of an asset of the Creditors' Trust if the sale price exceeds $250,000 (*provided* that the Plan Committee shall be deemed to have approved any such sale or disposition if it fails to object thereto in a writing received by the Trustee within five (5) Business Days following written notification to the Plan Committee by the Trustee of the intended sale or disposition);

7.6.2.   Approve any compromise or settlement of litigation or controverted matter proposed by the Trustee involving claims in excess of $500,000 (*provided* that the Plan Committee shall be deemed to have approved any such compromise or settlement if it fails to object thereto in a writing received by the Trustee within five (5) Business Days following written notification to the Plan Committee by the Trustee of the intended compromise or settlement); and

7.6.3.   Approve the retention by the Trustee of professionals who formerly represented the Debtors, presently represent the Reorganized Debtors or formerly represented the Committee (*provided* that the Plan Committee shall be deemed to have approved such retention if it fails to object thereto in a writing received by the Trustee within five (5) Business Days following written notification to the Plan Committee by the Trustee of the intended engagement).

7.7.   <u>Carinalli's Post-Effective Date Duties</u>.  On and after the Effective Date, and until the end of the Assistance Period, Carinalli shall have the following duties with respect to the Creditors' Trust (collectively, the "Assistance Efforts"): (a) assist the Trustee in the liquidation of the Creditors' Trust assets, to the extent directed by the Trustee, and at the Trustee's discretion; (b) assist the Trustee in the review, reconciliation or litigation of claims against the Creditors' Trust; (c) assist the Trustee in the analysis and, if appropriate, prosecution of any available claims and/or causes of action against third parties; and (d) assist the Trustee with any other tasks that may be required in order to effectuate the terms of the Plan.  The "Assistance Period" shall mean the first twelve (12) months following the Effective Date, or such longer period as may be agreed upon in writing by the Trustee and Carinalli, each in their sole discretion.  Without limiting the foregoing, the Assistance Efforts shall include the following:  (a) prior to the Effective Date, the Debtors shall

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

provide to the Trustee all reasonably obtainable, detailed information regarding the Transfer Assets that will enable the Trustee to prepare a beginning balance sheet for the Creditors' Trust; and (b) notwithstanding the expiration of the Assistance Period, Carinalli shall (i) cooperate with the Trustee to the same extent, and in the same manner, as would be legally incumbent upon a chapter 7 debtor in responding to reasonable requests for information made by a chapter 7 trustee; and (ii) appear as a witness at deposition or trial as reasonably requested by the Trustee without the necessity of subpoena or service of process, at no cost to Carinalli or the Trustee.

      7.8.    <u>Compensation for Assistance Efforts</u>.  Carinalli shall be compensated from the Creditors' Trust assets for the Assistance Efforts as follows:

      7.8.1.  During the initial twelve (12) months of the Assistance Period, at a flat monthly rate of $15,000, during which Carinalli shall commit his full time and efforts on a reasonable basis to the Assistance Efforts and shall not (except with the written approval of the Trustee and the Plan Committee in their sole discretions) obtain employment in any other capacity or become involved in any real estate investments outside of the Assistance Efforts or otherwise compete with the tasks of the Trustee or the Creditors' Trust under the Plan;

      7.8.2.  For any period after the initial twelve months of the Assistance Period, at such monthly or hourly rate and such other terms as may be agreed upon in writing between the Trustee and Carinalli, each in their sole discretion; and

      7.8.3.  Provided that Carinalli has fulfilled his obligations to provide the Assistance Efforts, an incentive-based fee (the "Incentive Fee") equal to the following:  (a) for every $100.00 distributed by the Trustee on account of Allowed Claims within Class H between 40.00% and 75.00% of the allowed amounts of such claims, Carinalli shall receive $2.00; and (b) for every $100.00 distributed by the Trustee on account of Allowed Claims within Class H in excess of 75.00% of the allowed amounts of such claims, Carinalli shall receive $5.00.

      7.9.    <u>Revesting of Excluded Assets</u>.  As of the Effective Date, full title and ownership of each of the Excluded Assets shall be revested in the Reorganized Debtors.

      7.10.   <u>Reorganized Debtors' Assets Not Property of the Estate or Trust</u>.  Notwithstanding any other provision of the Plan or order of the Bankruptcy Court, each and every right, title, interest

Case 09-12986    Doc# 510    Filed 08/17/10    Entered 08/17/10 16:05:58    Page 74 of 128

or asset acquired by the Reorganized Debtors on or after the Effective Date, including without limitation the Excluded Assets and all proceeds, profits, income and revenue arising from personal services or investments rendered or made on or after the Effective Date, shall be owned and acquired by the Reorganized Debtors on their own accounts, and shall not be property of the Estate or the Creditors' Trust for any purpose. All such rights, title, interests and assets shall be free and clear of any Claims against the Estate or the Creditors' Trust, and any claims or obligations of any kind arising prior to the Effective Date, but shall be subject to any valid and enforceable liens specifically encumbering the Excluded Assets existing as of the Effective Date.

7.11. <u>Creditors' Committee</u>. The Committee shall be dissolved and terminated as of the Effective Date.

7.12. <u>Professional Retention and Compensation</u>. Post-Effective Date retention and compensation of professionals shall be governed by the following provisions:

7.12.1. <u>Trustee's Professionals</u>. Subject to the provisions of Section 7.6.3 of the Plan, the Trustee shall be entitled to employ and retain professionals without the necessity of notice to Creditors or approval by the Bankruptcy Court.

7.12.2. <u>Plan Committee's Professionals</u>. The Plan Committee shall be entitled to employ and retain professionals without the necessity of notice to Creditors or approval by the Bankruptcy Court, in the event of a dispute with the Trustee or a request to remove the Trustee.

7.12.3. <u>Compensation</u>. The Trustee shall pay compensation and expense reimbursements requested by all such professionals retained by the Plan Committee and the Trustee, as well as her own requested compensation and expense reimbursements, for all services rendered by the Trustee or any of such professionals in the implementation of the Plan, only upon (a) five (5) Business Days' notice by such professionals or the Trustee to the Trustee, the Reorganized Debtors, the United States Trustee and the Plan Committee, or (b) if a written objection is received from the Trustee, the Reorganized Debtors, the United States Trustee or the Plan Committee within such five (5) Business Days' period, an order of the Bankruptcy Court following no less than fourteen (14) days' notice and opportunity for

hearing to such parties.

7.13.   Preservation of Causes of Action.  Each and every claim, right, cause of action, claim for relief and other entitlement held by the Estate as of the Effective Date, whether arising under Sections 502, 506, 510, 541, 542, 543, 544, 545, 550, 551, 552 or 553 of the Bankruptcy Code or arising otherwise (including without limitation claims arising prior to the Petition Date), other than those waived or released by the express terms of the Plan or the Confirmation Order, shall be deemed fully preserved and transferred to the Creditors' Trust, and such claims and causes of action shall be administered by the Trustee.  As of the Effective Date, the Trustee shall be deemed to have been appointed as the representative of the Estate by the Bankruptcy Court, pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, for purposes of any and all of the foregoing claims, rights, causes of actions, claims for relief and any other entitlement held by the Estate.

7.14.   Tax Reporting Obligations.  The Trustee shall make reports to appropriate taxing authorities and to holders of Allowed and Disputed Claims within Classes G and H as required by applicable law.

7.15.   Reserves.  Prior to making a *pro rata* distribution (the "Triggering Distribution") upon Allowed Claims within a Class, the Trustee shall establish a reserve for Claims within that Class to the extent that such Claims are Disputed Claims or are Claims for which payments are to be deferred in accordance with the terms of the Plan, as follows:

7.15.1.   Calculation.  The amount reserved for each such Claim shall be on the same *pro rata* basis as the Triggering Distribution, based upon the lesser of (a) the amount asserted by the holder of the Claim to be owing and (b) such amount as the Bankruptcy Court may estimate for all distribution purposes upon motion of the Trustee, which motion may be made initially or from time to time.

7.15.2.   Reserve Maintenance And Interest.  Such reserves may be established and maintained by the Trustee as accounting entries, without the necessity of transfers of funds out of the Creditors' Trust's general accounts, *provided* that sufficient funds are maintained in such general accounts to support the accounting entries.  Any interest earned upon such reserved funds shall be earned for the account of, and retained by, the Creditors' Trust for its

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

general purposes, and not for the benefit of the holder of the Disputed or unmatured Claim.

        7.15.3.    Release of Reserved Funds. Reserved funds shall be released as Disputed Claims are resolved by a Final Order or as unmatured Claims mature, as the case may be, as follows: (a) a payment to the holder of such Claim, calculated on the same *pro rata* basis as the Triggering Distribution, based upon the portion, if any, of the Claim that has become a matured Allowed Claim, by virtue of a Final Order; and (b) retention by the Creditors' Trust, for its general purposes, of all other funds reserved for such Claim.

        7.16.   Unclaimed Distributions. If any holder of a Claim fails to deposit or accept a distribution tendered by the Trustee to such holder with respect to such Claim within ninety (90) days following the date of such distribution, then the distribution with respect to such holder shall be cancelled, such Claim shall be deemed fully released, waived and discharged, and there shall be no further distributions required with respect to such Claim.

        7.17.   *De Minimis* Distributions. The Trustee shall not be required to make any payment of less than $50.00 on account of an Allowed Claim, unless it is the final payment to be made on account of such Allowed Claim under the terms of the Plan. In the event that a *pro rata* distribution with respect to such an Allowed Claim would otherwise require such a payment of less than $50.00, the Trustee may withhold such payment and aggregate it with a subsequent payment upon such Allowed Claim.

        7.18.   Compliance With Tax Requirements. In connection with the Plan, to the extent applicable, the Trustee shall comply with all tax withholding and reporting requirements imposed on the Trustee or the Creditors' Trust by any governmental unit, and all distributions made pursuant to the Plan shall be subject to, and reduced by, such withholding and reporting requirements. The Trustee shall be deemed to be authorized to take any actions that may be necessary or appropriate in order to comply with such withholding and reporting requirements, including but not limited to requiring recipients to fund the payment of such withholding as a condition to delivery. Notwithstanding any other provision of the Plan, each person or entity receiving a distribution of Cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on him, her or it by any governmental unit on account of

such distribution, including income withholding and other tax obligations.

7.19.   Quarterly Fees.  At all times on and after the Effective Date, the Trustee shall pay from funds of the Creditors' Trust, for deposit into the United States Treasury, the quarterly fees owing to the United States Trustee pursuant to the provisions of Section 1930(a)(6) of Title 28 of the United States Code, for each calendar quarter (including any fraction thereof) until the Chapter 11 Case has been closed by the entry of a final decree, converted or dismissed.

7.20.   Objections to Claims.  On and after the Effective Date, only the Trustee may file, serve, prosecute or compromise objections to any Claim, or request estimations of Claims.

7.21.   Other Actions.  On and after the Effective Date, the Trustee, the Reorganized Debtors, the Plan Committee, and other parties, as appropriate, shall execute and deliver such documents, and take such actions, as reasonably necessary to complete and evidence the transactions contemplated and described in this Plan, *provided* that if any such party fails to so act, the Trustee and the Reorganized Debtors shall be authorized to so act on such party's behalf, pursuant to an order of the Court issued on no less than fourteen (14) days' notice under the provisions of Section 1142(b) of the Bankruptcy Code.

7.22.   Term of Injunctions and Stays.  Unless otherwise provided herein or by an order of the Court, any injunctions or stays issued or effective as of the Confirmation Date in the Chapter 11 Case, whether under the provisions of Sections 105 or 362 of the Bankruptcy Code or otherwise, shall remain in full force and effect until the Effective Date.

7.23.   Discharge of Reorganized Debtors.  Notwithstanding any other provision of the Plan or of the Bankruptcy Code and except as to valid and enforceable liens specifically encumbering the Excluded Assets as of the Effective Date, each of the Reorganized Debtors shall be discharged of (a) all Claims, liens, obligations and charges of any kind existing or arising prior to the Effective Date (other than Allowed Unsecured Claims) as of the Effective Date, and (b) all Allowed Unsecured Claims as of the date when any and all rights, claims or causes of action of the Estate, the Trustee and the Creditors' Trust against or involving an insider (as that term is defined by Section 101 of the Bankruptcy Code, but specifically including for purposes herein, the Debtors' children, Dennis Hunter, James Ratto and any affiliates thereof) are closed, settled or otherwise resolved (whether

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

74

consensually or otherwise) by the entry of Final Orders or consummation of settlements and in no event later than any period under applicable nonbankruptcy law or this Plan, Sections 108 or 546 of the Bankruptcy Code, or by agreement of the applicable parties, within which the Estate, the Trustee or the Creditors' Trust may commence an action or an objection to Claim against or involving an insider. The Debtors may obtain an order of the Court establishing the passing of that date upon request, upon notice to the Trustee. There shall be no right of any party in interest to seek to delay such discharge beyond the timing contemplated hereby. Without limiting the generality of the foregoing, neither of the Reorganized Debtors shall be liable for any claims or obligations of the Estate or the Creditors' Trust arising after the Effective Date to any extent. The contents of this Section 7.23 shall also be contained in the Confirmation Order, and the confirmation process and notice of the Confirmation Hearing shall serve as adequate notice and hearing in order to satisfy the requirements of Section 1141(d)(5)(A) of the Bankruptcy Code, to the extent applicable, for the inclusion of such contents in the Confirmation Order.

7.24. <u>Permanent Satisfaction And Injunction</u>. Except as to valid and enforceable liens specifically encumbering the Excluded Assets as of the Effective Date, and subject to the provisions of Section 7.23 above, the rights afforded herein, and the treatment of all Claims and Interests set forth herein, shall be in full exchange for, and in complete satisfaction, discharge and release of, all Claims and Interests of any kind or nature whatsoever, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising or accruing, whether or not yet due, prior to the Effective Date, including without limitation any Claims, or interest on Claims, accruing on or after the Petition Date, against either of the Debtors, the Estate, or any assets or property of any of the foregoing persons. Except as, and to the extent, expressly provided in the Plan, (a) all such Claims against the Debtors, the Estate or any assets or property of either of the foregoing persons, shall be deemed fully and finally satisfied, discharged and released; and (b) all persons shall be fully and finally barred, enjoined and precluded from asserting against any of the Reorganized Debtors, the Trustee, the Creditors' Trust or any of their respective assets, any such Claims or Interests, or any other claims or interests based upon any act or omission, transaction, agreement, right, privilege, duty, entitlement, obligation or other event or activity of any kind or nature whatsoever that occurred

prior to the Effective Date.

7.25.   <u>Indemnification and Insurance</u>.  The Trustee, the Plan Committee and its members, and the Reorganized Debtors, shall be indemnified by the Estate with respect to their implementation of the Plan and their post-Effective Date activities in connection with the administration and implementation of the Plan, but not as to their own gross negligence or intentional misconduct.  To the extent reasonably available and determined to be reasonable by the Plan Committee, the Trustee shall purchase errors and omissions insurance coverage for the Trustee, the Plan Committee and its members, and their respective professionals.

7.26.   <u>Estimation of Claims</u>.  At any time after the Effective Date, the Trustee may request estimation of a Disputed Claim, including without limitation any Claim that is contingent or unliquidated in amount, pursuant to the provisions of Section 502(c) of the Bankruptcy Code.  Such request may be made by motion or complaint, and may seek such estimation for all purposes, including final allowance of the Claim for purposes of distributions under the Plan.

7.27.   <u>Postconfirmation Reports</u>.  Within thirty (30) days following the end of each calendar quarter occurring after the Effective Date and until, the Chapter 11 Case has been closed by the entry of a final decree, converted or dismissed, the Trustee shall file with the Bankruptcy Court, and serve upon the Postconfirmation Recipients, a postconfirmation report, the purpose of which is to explain the progress made toward full administration of the Plan.  The first such report shall be filed for the portion of the calendar quarter from the Effective Date until the end of the calendar quarter in which it occurs.

## ARTICLE VIII

## RETENTION OF JURISDICTION

8.1.   <u>Generally</u>.  Until the Chapter 11 Case has been closed, and thereafter upon a motion to reopen the case, the Bankruptcy Court shall have exclusive jurisdiction of all matters concerning the allowance of Claims and Interests, and the interpretation and implementation of the Plan, pursuant to, and for all purposes of, Sections 105(a) and 1142 of the Bankruptcy Code, including without limitation the following purposes:

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

8.1.1.    to hear and determine applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending on the Effective Date, and the allowance of Claims resulting therefrom;

8.1.2.    to determine any and all claims, causes of action, adversary proceedings, applications and contested matters which are pending on the Effective Date or which are thereafter commenced by or related to the Reorganized Debtors, the Trustee, the Creditors' Trust or the Estate;

8.1.3.    to hear and determine any objection to, or requests for estimation of, Claims;

8.1.4.    to enter and implement such orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

8.1.5.    to issue such orders in aid of execution of the Plan, to the extent authorized by the provisions of Section 1142 of the Bankruptcy Code;

8.1.6.    to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

8.1.7.    to hear and determine all applications for Professional Fees accrued through the Effective Date, and for professional fees incurred thereafter in the event of a timely objection;

8.1.8.    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

8.1.9.    to hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code; and

8.1.10.    to enter a final decrees closing said cases, and orders reopening said cases as appropriate.

**MISCELLANEOUS PROVISIONS**

9.1.    _Exemption from Transfer Taxes_.  Pursuant to the provisions of Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, the sale or other transfer of any assets by the Trustee to a third party, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan (including without limitation any and all transfers to the Creditors' Trust as contemplated by the Plan), shall not be subject to any stamp, sales, transfer, real estate transfer, mortgage recording or other similar tax.

9.2.    _Binding Effect_.  The Plan shall be binding upon and inure to the benefit of each of the Reorganized Debtors and all holders of Claims and Interests and their respective successors and assigns, whether or not they have accepted the Plan.

9.3.    _Ratification_.  Subject to all of the terms of this Plan, the Confirmation Order shall be deemed to ratify all transactions effectuated by the Debtors during the pendency of the Chapter 11 Case to the extent either in the ordinary course of business or pursuant to an order of the Court.

9.4.    _Notices_.  Any notice required or permitted to be provided under the terms of the Plan shall be in writing and shall be served by the quickest practical available method of delivery (which shall be conclusively presumed to be (a) by hand delivery or (b) by facsimile or electronic mail with hard copy to follow by overnight courier, as to the Reorganized Debtors, the Trustee and the Plan Committee).  All notices to the Reorganized Debtors, the Plan Committee or the Trustee shall be delivered as follows (or as otherwise directed by such party by notice given pursuant hereto):

To the Reorganized Debtors:

    Clement and Ann Marie Carinalli
    520 Mendocino Avenue, Suite 250
    Santa Rosa, CA 95401
    Telephone:  (707) 578-1302
    Facsimile:  (707) 525-1206
    Email:  Clemc@sonic.net

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Case: 09-12986    Doc# 510    Filed: 08/17/10    Entered: 08/17/10 16:05:58    Page 82 of 128

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

*With a copy to:*

Merle C. Meyers, Esq.
Edie Walters, Esq.
MEYERS LAW GROUP, P.C.
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515
Email: mmeyers@mlg-pc.com
ewalters@mlg-pc.com

<u>To the Plan Committee</u>: To be determined.

<u>To the Trustee</u>:

Andrea A. Wirum
P.O. Box 1108
Lafayette, CA 94549
Telephone: (415) 294-7710
Facsimile: (415) 294-7710
Email: trustee@wirum.com

*With a copy to:*

John D. Fiero, Esq.
Maxim B. Litvak, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
Email: jfiero@pszjlaw.com
mlitvak@pszjlaw.com

9.5.    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the conflict of laws provisions thereof.

9.6.    <u>Headings</u>.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

9.7.    <u>Exhibits</u>.  Any and all exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

Case: 09-52995    Doc# 510    Filed: 08/17/10    Entered: 08/17/10 16:05:58    Page 83 of 128

9.8.    Closing Case.  At such point as the Bankruptcy Court determines, upon a motion of the Trustee, and following twenty (20) days' notice and an opportunity for hearing to all Postconfirmation Recipients, that all pending claims objections, contested matters and adversary proceedings have been resolved, or that the Chapter 11 Case need remain open no longer despite the pendency of such objections, matters or proceedings, the Chapter 11 Case may be closed by the terms of a final decree of the Bankruptcy Court, *provided* that such case may be reopened thereafter if necessary in order to facilitate any of the actions contemplated by the terms of this Plan.

DATED:  August 17, 2010


    /s/ Clement C. Carinalli                              /s/ Ann Marie Carinalli
    CLEMENT C. CARINALLI, Debtor            ANN MARIE CARINALLI, Debtor

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS

By:    /s/ Robert W. Sinai
            Robert W. Sinai, Co-Chairperson

Approved and submitted by:

MEYERS LAW GROUP, P.C.                   PACHULSKI STANG ZIEHL & JONES LLP
Merle C. Meyers, Esq., CA Bar #66849     John D. Fiero, Esq., CA Bar #136557

By:    /s/ Merle C. Meyers                      By:    /s/ John D. Fiero
            Merle C. Meyers, Esq.                          John D. Fiero, Esq.
            Attorneys for Debtors                           Attorneys for Committee

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

80

As used herein or in the Plan, the following terms have the meanings specified below, unless the context otherwise requires:

1.     1002 Orchard Property means that certain real property and improvements located at 1002 Orchard Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 180-610-032.

2.     104 Shiloh Property means that certain real property and improvements located at 104 Shiloh Road, Windsor, California 95492, Sonoma County assessor's parcel no. 059-310-057.

3.     1064 Santa Rosa Property means that certain real property and improvements located at 1064 Santa Rosa Avenue, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 038-101-001.

4.     1120-15th Property means that certain real property and improvements located at 1120-15th Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 180-680-003.

5.     11961 Bitney Springs Property means that certain real property and improvements located at 11961 Bitney Springs Road, Nevada City, California 95959, Nevada County assessor's parcel no. 052-070-006.

6.     120 Scenic Property means that certain real property and improvements located at 120 Scenic Avenue, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 045-033-034.

7.     1207 College Property means that certain real property and improvements located at 1207 College Avenue, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 180-810-027.

8.     12760 Sulphur Property means that certain real property and improvements located at 12760 Sulphur Bank Drive, Clearlake, California 95422, Lake County assessor's parcel nos. 010-002-611, 010-002-612, 010-004-270, 010-004-280, 010-004-290, 010-004-300 and 010-019-130.

9.     13019 Crest Property means that certain real property and improvements located at 13019 Crest Street, Clearlake, California 95422, Lake County assessor's parcel no. 038-263-320.

10.     13193 Lakeshore Property means that certain real property and improvements located at 13193 Lakeshore Drive and 13194 Lakeshore Drive, Clearlake, California 95422, Lake County assessor's parcel nos. 037-282-270 and 037-284-180.

11.     1375 West Property means that certain real property and improvements located at 1375 West Avenue, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 125-341-008.

12.     1466 Hearn Property means that certain real property and improvements located at 1466 Hearn Avenue, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 043-071-026.

DEBTORS' AND COMMITTEES' AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

Case 09:52986    Doc# 510    Filed: 08/17/10    Entered: 08/17/10 16:05:58    Page 85 of 128

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

13.  1500 Hearn Property means that certain real property and improvements located at 1500 Hearn Avenue, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 043-071-030.

14.  1550 Hearn Property means that certain real property and improvements located at 1550 Hearn Avenue, Santa Rosa, California, 95407, Sonoma County assessor's parcel no. 043-072-014 and 043-072-015.

15.  15815-23rd Property means that certain real property and improvements located at 15815 23rd Avenue, Clearlake, California 95422, Lake County assessor's parcel no. 042-163-040.

16.  15825-23rd Property means that certain real property and improvements located at 15825 23rd Avenue, Clearlake, California 95422, Lake County assessor's parcel no. 042-163-050.

17.  15873-27th Property means that certain real property and improvements located at 15873 27th Avenue, Clearlake, California 95422, Lake County assessor's parcel no. 042-152-290.

18.  15883-27th Property means that certain real property and improvements located at 15883 27th Avenue, Clearlake, California 95422, Lake County assessor's parcel no. 042-152-350.

19.  15885-27th Property means that certain real property and improvements located at 15885 27th Avenue, Clearlake, California 95422, Lake County assessor's parcel no. 042-152-340.

20.  15893-27th Property means that certain real property and improvements located at 15893 27th Avenue, Clearlake, California 95422, Lake County assessor's parcel no. 042-152-330.

21.  1615 Fulton Property means that certain real property and improvements located at 1615 Fulton Road, Santa Rosa, California 95403, Sonoma County assessor's parcel no. 157-020-009.

22.  16214-33rd Property means that certain real property and improvements located at 16214 33rd Avenue, Clearlake, California 95422, Lake County assessor's parcel no. 041-213-370.

23.  170 Shiloh Property means that certain real property and improvements located at 170 Shiloh Road, Windsor, California 95492, Sonoma County assessor's parcel no. 059-310-039.

24.  1701 Santa Rosa Property means that certain real property and improvements located at 1701 Santa Rosa Avenue, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 037-180-028.

25.  1745 West Lake Property means that certain real property and improvements located at 1745 West Lake Drive, Kelseyville, California 95451, Sonoma County assessor's parcel nos. 044-161-230, 044-161-240 and 044-161-250.

26.  180 Shiloh Property means that certain real property and improvements located at 180 Shiloh Road, Windsor, California 95492, Sonoma County assessor's parcel no. 059-310-038.

27.  1899 Mendocino Property means that certain real property and improvements located at 1899 Mendocino Avenue, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 180-310-012.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

MEYERS LAW GROUP, P.C.

LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

28. <u>19297 East Highway Property</u> means that certain real property and improvements located at 19297 East Highway 20, Clearlake Oaks, California 95423, Lake County assessor's parcel nos. 006-019-120, 010-009-180 and 010-009-210.

29. <u>199 Calistoga Property</u> means that certain real property and improvements located at 199 Calistoga Road, Santa Rosa, California 95409, Sonoma County assessor's parcel no. 183-410-046.

30. <u>2036 Linwood Property</u> means that certain real property and improvements located at 2036 Linwood Avenue, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 038-254-002.

31. <u>2074 Armory Property</u> means that certain real property and improvements located at 2074 and 2076 Armory Drive, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 180-270-044.

32. <u>21000 Santa Clara Property</u> means that certain real property and improvements located at 21000 Santa Clara Road, Middletown, California 95461, Lake County assessor's parcel no. 014-380-090.

33. <u>2107 Wood Brooks Property</u> means that certain real property and improvements located at 2107 Wood Road, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 059-050-006.

34. <u>2125 W. College Property</u> means that certain real property and improvements located at 2125 and 2131 W. College Avenue, Santa Rosa, California 95401, Sonoma County assessor's parcel nos. 152-133-003 and 152-133-004.

35. <u>213 Willow Property</u> means that certain real property and improvements located at 213 Willow Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 125-051-080.

36. <u>2136 Franklin Property</u> means that certain real property and improvements located at 2136 Franklin Avenue, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 180-200-017.

37. <u>2137 Dennis Property</u> means that certain real property and improvements located at 2137 Dennis Lane, Santa Rosa, California 95403, Sonoma County assessor's parcel no. 059-010-009.

38. <u>21837 Geyserville Property</u> means that certain real property and improvements located at 21837 Geyserville Avenue Geyserville, California 95441, Sonoma County assessor's parcel no. 140-180-035.

39. <u>2225 Burbank Property</u> means that certain real property and improvements located at 2225 Burbank Avenue, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 125-511-018.

40. <u>2390 San Miguel Property</u> means that certain real property and improvements located at 2390 San Miguel, Santa Rosa, California 95403, Sonoma County assessor's parcel no. 034-043-

005.

41.    2420 San Miguel Property means that certain real property and improvements located at 2420 San Miguel Avenue, Santa Rosa, California 95403, Sonoma County assessor's parcel no. 034-043-039.

42.    2488 Fulton Property means that certain real property and improvements located at 2488 Fulton Road, Santa Rosa, California 95403, Sonoma County assessor's parcel no. 034-030-071.

43.    2601 Francisco Property means that certain real property and improvements located at 2601 Francisco Avenue, Santa Rosa, California 95403, Sonoma County assessor's parcel no. 034-030-013.

44.    2611 Fulton Property means that certain real property and improvements located at 2611 Fulton Road, Santa Rosa, California 95439, Sonoma County assessor's parcel no. 059-030-010.

45.    2621 Guerneville Property means that certain real property and improvements located at 2621 Guerneville Road, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 157-010-020.

46.    2633 Guerneville Property means that certain real property and improvements located at 2633 Guerneville Road, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 157-010-019.

47.    2727 Dutton Property means that certain real property and improvements located at 2727 Dutton Meadow, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 043-072-018.

48.    2728 Sonoma Property means that certain real property and improvements located at 2728 Sonoma Avenue, Santa Rosa, California 95405, Sonoma County assessor's parcel no. 013-121-013.

49.    2729 Stony Point Property means that certain real property and improvements located at 2729 Stony Point Road, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 134-022-049.

50.    2800 Francisco Property means that certain real property and improvements located at 2800 Francisco Avenue, Santa Rosa, California 95403, Sonoma County assessor's parcel no. 059-020-014.

51.    2803 Dutton Property means that certain real property and improvements located at 2803 Dutton Meadow, Santa Rosa, California 95405, Sonoma County assessor's parcel no. 043-111-001.

52.    2804 Beth Property means that certain real property and improvements located at 2804 Beth Court (lot #6), Santa Rosa, California 95403, Sonoma County assessor's parcel no. 036-037-049.

53. <u>28365 Old Redwood Property</u> means that certain real property and improvements located at 28365 Old Redwood Highway, Cloverdale, California 95425, Sonoma County assessor's parcel no. 115-240-005.

54. <u>2859 Linwood Property</u> means that certain real property and improvements located at 2859 Linwood Avenue, Santa Rosa, California 95404, Sonoma County assessor's parcel nos. 044-200-016 and 044-200-017.

55. <u>2863 West Steele Property</u> means that certain real property and improvements located at 2863 West Steele Lane, Santa Rosa, California 95403, Sonoma County assessor's parcel no. 015-533-046.

56. <u>2860 Stony Point Property</u> means that certain real property and improvements located at 2860, 2872, 2882 and 2894 Stony Point Road, Santa Rosa, California 95407, Sonoma County assessor's parcel nos. 134-042-043, 134-042-042, 134-042-011, 134-042-048 and 134-042-049.

57. <u>2882 Stony Point Property</u> means that certain real property and improvements located at 2882 Stony Point Road, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 134-042-049.

58. <u>2957 Dutton Property</u> means that certain real property and improvements located at 2957 Dutton Meadow, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 043-121-001.

59. <u>2960 Stony Point Property</u> means that certain real property and improvements located at 2960 Stony Point Road, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 134-042-041.

60. <u>2967 Dutton Property</u> means that certain real property and improvements located at 2967 Dutton Meadow, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 043-121-011.

61. <u>3096-15th Property</u> means that certain real property and improvements located at 3096 15th Street, Clearlake, California 95422, Lake County assessor's parcel no. 038-141-430.

62. <u>3109 Montgomery Property</u> means that certain real property and improvements located at 3109 Montgomery Drive, Santa Rosa, California 95405, Sonoma County assessor's parcel no. 013-221-009.

63. <u>3130 Piner Property</u> means that certain real property and improvements located at 3130 Piner Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 034-081-059.

64. <u>3131 Primrose Property</u> means that certain real property and improvements located at 3131 Primrose Avenue, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 134-076-008.

65. <u>3136 Edgewood Property</u> means that certain real property and improvements located at 3136 Edgewood Drive, Kelseyville, California 95451, Lake County assessor's parcel no. 045-233-040.

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

66.    3222 Piner Property means that certain real property and improvements located at 3222 Piner Road, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 034-081-024.

67.    3310 Santa Rosa Property means that certain real property and improvements located at 3310 Santa Rosa Avenue, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 044-101-078.

68.    3364 Coffey Property means that certain real property and improvements located at 3364 Coffey Lane and 1701 Furia Place, Santa Rosa, California 95403, Sonoma County assessor's parcel nos. 034-650-011, 034-650-012, 034-650-013, 034-650-014, 034-650-015, 034-650-016 and 034-650-017.

69.    3422 Santa Rosa Property means that certain real property and improvements located at 3422 Santa Rosa Avenue, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 134-132-070.

70.    3470 Santa Rosa Property means that certain real property and improvements located at 3470 Santa Rosa Avenue, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 134-132-016.

71.    3524 Mendocino Property means that certain real property and improvements located at 3524 Mendocino Avenue, Santa Rosa, California 95403, Sonoma County assessor's parcel nos. 173-040-012 and 173-040-013.

72.    3548 Brooks Avenue means that certain real property and improvements located at 3548 Brooks Avenue, Santa Rosa, California, Sonoma County assessor's parcel no. 044-141-005.

73.    3579 Brooks Property means that certain real property and improvements located at 3579 Brooks Avenue, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 134-132-036.

74.    3615 Vista Property means that certain real property and improvements located at 3615 Vista Street, Clearlake, California 95422, Lake County assessor's parcel no. 039-653-250.

75.    3708 Barnes Property means that certain real property and improvements located at 3708 Barnes Road, Santa Rosa, California 95403, Sonoma County assessor's parcel nos. 034-480-052, 034-480-053, 034-480-054, 034-480-055, 034-480-056, 034-480-057, 034-480-058, 034-480-060, 034-480-063, 034-480-064, 034-480-065, 034-480-066, 034-480-067, 034-480-068, 034-480-069, 034-480-070 and 034-480-071.

76.    3765 Lakeville Property means that certain real property and improvements located at 3765 Lakeville Highway, Petaluma, California 94954, Sonoma County assessor's parcel no. 017-150-018.

77.    3771 Lakeville Property means that certain real property and improvements located at 3771 Lakeville Highway, Petaluma, California 94954, Sonoma County assessor's parcel no. 017-150-017.

78.    3917 Stony Point Property means that certain real property and improvements located at 3917 and 3227 Stony Point Road, Santa Rosa, California 95407, Sonoma County assessor's parcel

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

nos. 134-151-034 and 134-151-036.

79. <u>3990 Wallace Property</u> means that certain real property and improvements located at 3990 Wallace Road, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 029-050-041.

80. <u>4000 Wallace Property</u> means that certain real property and improvements located at 4000 Wallace Road, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 029-050-040.

81. <u>403 Chinn Property</u> means that certain real property and improvements located at 403 Chinn Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-101-005.

82. <u>408 Calistoga Property</u> means that certain real property and improvements located at 408 Calistoga Road, Santa Rosa, California 95409, Sonoma County assessor's parcel no. 153-430-032.

83. <u>409 College Property</u> means that certain real property and improvements located at 409 College Avenue, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 180-760-064.

84. <u>411-E Property</u> means that certain real property and improvements located at 411 "E" Street and 747 Fifth Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-055-007.

85. <u>416 King Property</u> means that certain real property and improvements located at 416 King Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-053-002.

86. <u>416 Macklyn Property</u> means that certain real property and improvements located at 416 Macklyn Avenue, Santa Rosa, California 95405, Sonoma County assessor's parcel no. 014-092-003.

87. <u>420 Brookwood Property</u> means that certain real property and improvements located at 420 Brookwood Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-342-008.

88. <u>420 King Property</u> means that certain real property and improvements located at 420 King Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-053-001.

89. <u>4235 Miles Property</u> means that certain real property and improvements located at 4235 Miles Avenue, Santa Rosa, California 95407, Sonoma County assessor's parcel nos. 035-082-076 and 035-082-077.

90. <u>438 Orchard Property</u> means that certain real property and improvements located at 438 Orchard Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-021-009.

91. <u>4407 Petaluma Property</u> means that certain real property and improvements located at 4407 Petaluma Hill Road, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 044-220-008.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

92.     <u>4494 Todd Property</u> means that certain real property and improvements located at 4494 Todd Road, Sebastopol, California 95472, Sonoma County assessor's parcel no.060-070-005.

93.     <u>4600 Todd Property</u> means that certain real property and improvements located at 4600 Todd Road, Sebastopol, California 95472, Sonoma County assessor's parcel nos. 063-180-043 and 063-180-044.

94.     <u>461 Todd Property</u> means that certain real property and improvements located at 461 Todd Road, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 134-101-006.

95.     <u>4728 Snyder Property</u> means that certain real property and improvements located at 4728 Snyder Lane, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 045-222-019.

96.     <u>483 Scenic Property</u> means that certain real property and improvements located at 483 Scenic Avenue, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 134-223-001.

97.     <u>5000 Highway 12 Property</u> means that certain real property and improvements located at 5000 Highway 12, Santa Rosa, California 95409, Sonoma County assessor's parcel no. 031-240-020.

98.     <u>5000 Llano Property</u> means that certain real property and improvements located at 5000 Llano Road, Sebastopol, California 95472, Sonoma County assessor's parcel nos. 046-011-020, 046-011-021, 062-240-001, 062-240-012, 062-240-026, 062-240-027, and 062-240-028.

99.     <u>5038 Sonoma Property</u> means that certain real property and improvements located at 5038 Sonoma Highway, Santa Rosa, California 95409, Sonoma County assessor's parcel no. 031-250-027.

100.     <u>506 Morgan Property</u> means that certain real property and improvements located at 506 Morgan Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 010-041-011.

101.     <u>507-E Property</u> means that certain real property and improvements located at 507 "E" Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-041-025.

102.     <u>510-A Property</u> means that certain real property and improvements located at 510 "A" Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 010-033-018.

103.     <u>5146 Old Redwood Property</u> means that certain real property and improvements located at 5146 Old Redwood Highway, Santa Rosa, California 95403, Sonoma County assessor's parcel no. 039-320-051.

104.     <u>518 Riley Property</u> means that certain real property and improvements located at 518 Riley Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-024-004.

105.     <u>521-A Property</u> means that certain real property and improvements located at 521 "A" Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 010-031-006.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

106.   525 Roseland Property means that certain real property and improvements located at 525 Roseland Avenue, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 125-091-020.

107.   537-A Property means that certain real property and improvements located at 537 "A" Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 010-031-009.

108.   5327 Tewa Property means that certain real property and improvements located at 5327 Tewa Court, Kelseyville, California 95451, Lake County assessor's parcel no. 430-151-080.

109.   542 College Property means that certain real property and improvements located at 542 and 544 College Avenue, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-031-032.

110.   600 College Property means that certain real property and improvements located at 600 College Avenue, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-031-038.

111.   615 Maple Property means that certain real property and improvements located at 615 Maple Avenue, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-331-015.

112.   6215 Gold Dust Property means that certain real property and improvements located at 6215 and 6229 Gold Dust Drive, Kelseyville, California 95451, Sonoma County assessor's parcel nos. 017-001-010 and 017-001-030.

113.   629 Fourth Property means that certain real property and improvements located at 629 Fourth Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-011-011.

114.   6235 Dry Creek Property means that certain real property and improvements located at 6235 Dry Creek Road, Napa, California 94558, Napa County assessor's parcel no. 027-330-005.

115.   7-10th Property means that certain real property and improvements located at 7-10th Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 010-102-003.

116.   707 Bellevue Property means that certain real property and improvements located at 707 Bellevue Avenue, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 134-042-010.

117.   7151 Bodega Property means that certain real property and improvements located at 7151 Bodega Avenue, Sebastopol, California 95472, Sonoma County assessor's parcel nos. 004-202-001, 04, 11, 12 and 14.

118.   7170 Burnett Property means that certain real property and improvements located at 7170 Burnett Street, Sebastopol, California 95472, Sonoma County assessor's parcel no. 004-202-013.

119.   7800 Hembree Property means that certain real property and improvements located at 7800 Hembree Lane, Windsor, California 95492, Sonoma County assessor's parcel no. 163-080-062.

120.   801 Benton Property means that certain real property and improvements located at

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

801 Benton Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 180-700-073.

121. <u>812-3rd Property</u> means that certain real property and improvements located at 812 Third Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-062-003.

122. <u>816-3rd Property</u> means that certain real property and improvements located at 816 and 818 Third Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-062-004.

123. <u>818 Fifth Property</u> means that certain real property and improvements located at 818 Fifth Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-054-034.

124. <u>819 Fourth Property</u> means that certain real property and improvements located at 819 and 823 Fourth Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-054-023.

125. <u>820 Fifth Property</u> means that certain real property and improvements located at 820 Fifth Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-054-004.

126. <u>8262 Peninsula Property</u> means that certain real property and improvements located at 8262 Peninsula Drive, Kelseyville, California 95451, Sonoma County assessor's parcel nos. 044-331-023 and 044-331-024.

127. <u>829 Davis Property</u> means that certain real property and improvements located at 829 Davis Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 010-103-011.

128. <u>830-3rd Property</u> means that certain real property and improvements located at 830 Third Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-062-007.

129. <u>836 Ripley Property</u> means that certain real property and improvements located at 836 Ripley Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-054-009.

130. <u>838 Fifth Property</u> means that certain real property and improvements located at 838 Fifth Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-054-009.

131. <u>840 Third Property</u> means that certain real property and improvements located at 840 Third Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-062-009.

132. <u>840 Fifth Property</u> means that certain real property and improvements located at 840 Fifth Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-054-010.

133. <u>841 Fifth Property</u> means that certain real property and improvements located at 841-847 Fifth Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-053-005.

134. <u>849 Fifth Property</u> means that certain real property and improvements located at 849 Fifth Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-053-006.

135. <u>850 Fourth Property</u> means that certain real property and improvements located at 850 Fourth Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-061-009.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

136.    858 Fourth Property means that certain real property and improvements located at 858 Fourth Street, Santa Rosa, California 95404, Sonoma County assessor's parcel no. 009-061-010.

137.    8590 Alden Property means that certain real property and improvements located at 8590 Alden Lane, Windsor, California 95492, Sonoma County assessor's parcel no. 164-060-019.

138.    8602 Alden Property means that certain real property and improvements located at 8602 Alden Lane, Windsor, California 95492, Sonoma County assessor's parcel no. 164-060-028.

139.    895 Yuba Property means that certain real property and improvements located at 895 Yuba Drive, Santa Rosa, California 9540, Sonoma County assessor's parcel no. 037-053-002.

140.    904 Kingwood Property means that certain real property and improvements located at 904 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-053-002.

141.    905 Kingwood Property means that certain real property and improvements located at 905 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-054-035.

142.    906 Kingwood Property means that certain real property and improvements located at 906 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-053-003.

143.    909 Saracen Property means that certain real property and improvements located at 909 Saracen Road, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 010-432-005.

144.    913 Kingwood Property means that certain real property and improvements located at 913 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-054-031.

145.    914 Kingwood Property means that certain real property and improvements located at 914 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-053-007.

146.    915 Yuba Property means that certain real property and improvements located at 915 Yuba Drive, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 134-022-041.

147.    918 Kingwood Property means that certain real property and improvements located at 918 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-053-009.

148.    919 Kingwood Property means that certain real property and improvements located at 919 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-054-028.

149.    920 Kingwood Property means that certain real property and improvements located at 920 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-053-010.

150. <u>925 Kingwood Property</u> means that certain real property and improvements located at 925 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-054-025.

151. <u>925 Yuba Property</u> means that certain real property and improvements located at 925 Yuba Drive, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 134-022-017.

152. <u>929 Kingwood Property</u> means that certain real property and improvements located at 929 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-054-023.

153. <u>935 Kingwood Property</u> means that certain real property and improvements located at 935 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-054-020.

154. <u>936 Kingwood Property</u> means that certain real property and improvements located at 936 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-053-018.

155. <u>947 Yuba Property</u> means that certain real property and improvements located at 947 Yuba Drive, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 134-022-016.

156. <u>948 Kingwood Property</u> means that certain real property and improvements located at 948 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-053-024.

157. <u>950 Boyes Property</u> means that certain real property and improvements located at 950 Boyes Boulevard, Sonoma, California 95476, Sonoma County assessor's parcel nos. 052-173-008, 052-173-009, 052-173-010, 052-173-011, 052-173-012, 052-173-013, 052-173-014 and 052-173-015.

158. <u>950 Kingwood Property</u> means that certain real property and improvements located at 950 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-053-025.

159. <u>9515 Graton Property</u> means that certain real property and improvements located at 9515 Graton Road, Graton, California 95444, Sonoma County assessor's parcel no. 130-310-021.

160. <u>961 Kingwood Property</u> means that certain real property and improvements located at 961 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-054-007.

161. <u>969 Kingwood Property</u> means that certain real property and improvements located at 969 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-054-003.

162. <u>972 Kingwood Property</u> means that certain real property and improvements located at 972 Kingwood Street, Santa Rosa, California 95401, Sonoma County assessor's parcel no. 037-053-036.

163.    9810 Berry Property means that certain real property and improvements located at 9810 Berry Lane, Windsor, California 95492, Sonoma County assessor's parcel no. 066-420-007.

164.    9828 Berry Property means that certain real property and improvements located at 9828 Berry Lane, Windsor, California 95492, Sonoma County assessor's parcel no. 066-420-006.

165.    9850 Berry Property means that certain real property and improvements located at 9850 Berry Lane, Windsor, California 95492, Sonoma County assessor's parcel no. 066-420-005.

166.    9870 Berry Property means that certain real property and improvements located at 9870 Berry Lane, Windsor, California 95492, Sonoma County assessor's parcel no. 066-420-004.

167.    674 Sunnyslope Property means that certain real property and improvements located at 674 Sunnyslope Road, Petaluma, California 94952, Sonoma County assessor's parcel no. 130-261-008.

168.    Acciari Trust means Victoria Acciari as trustee for the Victoria Acciari Revocable Living Trust of 1999.

169.    Acciari Trust/5327 Tewa Secured Claim means the Secured Claim held by Acciari Trust in the approximate amount of $225,000 and secured by a lien encumbering the 5327 Tewa Property.

170.    Anderson/3524 Mendocino Secured Claim means the Secured Claim held by Anderson/Martin in the approximate amount of $150,000 and secured by a first lien encumbering the 3524 Mendocino Property.

171.    Administrative Bar Date shall have the meaning ascribed to it in Section 3.2 of the Plan.

172.    Administrative Expense Claim means any Claim arising before the Effective Date under Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate, any actual and necessary expenses of operating the business of the Estate, all compensation or reimbursement of expenses allowed by the Court under the provisions of Sections 330, 331 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate under the provisions of Section 1930 of chapter 123 of title 28 of the United States Code, except for Claims that are also Secured Claims.

173.    Agnese Trust means Petro Agnese Trust.

174.    Agnese Trust/3579 Brooks Secured Claim means the Secured Claim held by Agnese Trust in the approximate amount of $30,000 and secured by a lien encumbering the 3579 Brooks Property.

175.    Agnese Trust/Brooks Avenue Secured Claim means the Secured Claim held by Agnese Trust in the approximate amount of $30,000 and secured by a lien encumbering the Brooks Avenue Property.

176.    Allowed means, with respect to a Claim, any Claim that is neither a Disputed Claim nor a Disallowed Claim, and proof of which was timely and properly filed or, if no proof of claim

was filed, which has been or hereafter is listed by the Debtor on the Schedules as liquidated in amount and not disputed or contingent. "Allowed Administrative Expense Claim" or "Allowed Claim" shall not include interest on such Administrative Expense Claim or Claim from and after the applicable Petition Date except as expressly specified in the Plan.

177. <u>American AgCredit FLCA</u> means American AgCredit, FLCA.

178. <u>American AgCredit PCA</u> means American AgCredit, PCA.

179. <u>American AgCredit FLCA/5000 Llano Secured Claim</u> means the Secured Claim held by American AgCredit FLCA in the approximate amount of $3,150,000 and secured by a first lien encumbering the 5000 Llano Property.

180. <u>American AgCredit FLCA/6215 Gold Dust Secured Claim</u> means the Secured Claim held by American AgCredit FLCA in the approximate amount of $439,000 and secured by a lien encumbering the 6215 Gold Dust Property

181. <u>American AgCredit PCA/5000 Llano Secured Claim</u> means the Secured Claim held by American AgCredit PCA in the approximate amount of $1,000,000 and secured by a second lien encumbering the 5000 Llano Property.

182. <u>American AgCredit FLCA/Stony Point Alpha Secured Claim</u> means the Secured Claim held by American AgCredit FLCA in the approximate amount of $1,050,000 and secured by a lien encumbering the Stony Point Alpha Property.

183. <u>American AgCredit FLCA/Stony Point Beta Secured Claim</u> means the Secured Claim held by American AgCredit FLCA in the approximate amount of $770,000 and secured by a lien encumbering the Stony Point Beta Property.

184. <u>American AgCredit FLCA/Stony Point Gamma Secured Claim</u> means the Secured Claim held by American AgCredit FLCA in the approximate amount of $840,000 and secured by a lien encumbering the Stony Point Gamma Property.

185. <u>Anderson/Martin</u> means Edwin C. Anderson, Jr., as successor trustee of the Testamentary Trust created under paragraph 7, subparagraph B, of the Last Will and Testament of Donald E. Martin, deceased.

186. <u>Anderson/3524 Mendocino Secured Claim</u> means the Secured Claim held by Anderson/Martin in the approximate amount of $150,000 and secured by a first lien encumbering the 3524 Mendocino Property.

187. <u>Arata Lane Property</u> means that certain real property and improvements located on Arata Lane, Windsor, California 95492, Sonoma County assessor's parcel nos. 161-020-064 and 161-020-065.

188. <u>Assistance Efforts</u> shall have the meaning ascribed to it in Section 7.7 of the Plan.

189. <u>Assistance Period</u> shall have the meaning ascribed to it in Section 7.7 of the Plan.

190. <u>Atlas-Hamilton</u> means, collectively, Jeffrey G. Hammond and Atlas Peak Equipment,

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

94

Inc.

191. <u>Atlas-Hamilton/Sage Creek Secured Claim</u> means the Secured Claim held by Atlas-Hamilton in a disputed amount and alleged to be secured by mechanics' liens encumbering the Sage Creek Properties.

192. <u>BAC</u> means BAC Home Loans Servicing, L.P., as servicer.

193. <u>Ballot</u> means each of the voting forms to be distributed with the Plan and the Disclosure Statement to holders of Claims or Interests in Classes that are impaired under the terms of the Plan and are entitled to vote in connection with the solicitation of acceptances of the Plan.

194. <u>Bankruptcy Code</u> means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

195. <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the Northern District of California, Santa Rosa Division, or such other court having competent jurisdiction over the Chapter 11 Case.

196. <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, including the Local Rules of the Bankruptcy Court.

197. <u>Barbieri-Lindberg</u> means, collectively, Robert I. Barbieri, as trustee for the Barbieri Family Trust, as to an undivided 55.556% interest; Robert I. Barbieri, as trustee of the Marital Trust under the Barbieri Living Trust Agreement dated 8/29/90, as to an undivided 33.333% interest; and Michelle D. Lindberg, an unmarried woman, as to an undivided 11.111% interest.

198. <u>Barbieri-Lindberg/Ciwa-Kakul Secured Claim</u> means the Secured Claim held by Barbieri-Lindberg in the approximate amount of $275,000 and secured by a lien encumbering the Ciwa-Kakul Property.

199. <u>Barbieri-Opperman</u> means, collectively, Robert I Barbieri, as trustee of the Marital Trust under the Barbieri Living Trust Agreement dated 8/29/90, as to an undivided 36.842% interest; Pensco Trust Company as custodian for the benefit of Gloria Opperman, IRA #OP1AB, as to an undivided 29.474% interest; Michael J. LeBrett, as trustee of the Michael J. LeBrett Revocable Trust, as to an undivided 15.789% interest; Ramona L. Barbieri, a married woman, as her sole and separate property, as to an undivided 12.632% interest; and Michelle D. Lindberg, an unmarried woman, as to an undivided 5.263% interest.

200. <u>Barbieri-Opperman/3470 Santa Rosa Secured Claim</u> means the Secured Claim held by Barbieri-Opperman in the approximate amount of $950,000 and secured by a lien encumbering the 3470 Santa Rosa Property.

201. <u>Barbosa Trust</u> means, collectively, Arnold P. Barbosa and Maria E. Barbosa, as trustees for the Barbosa Family Living Trust executed on September 14, 1985.

202. <u>Barbosa Trust/13019 Crest Secured Claim</u> means the Secured Claim held by Barbosa Trust in the approximate amount of $185,000 and secured by a lien encumbering the 13019 Crest Property.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

203.  <u>Bertolone/Huppert</u> means, collectively, Larry E. Bertolone and Sandra J. Bertolone, as trustees for the Bertolone Family 1993 Trust, as to an undivided 73.754% interest; Larry E. Bertolone, as trustee for Bertolone Realty Profit Sharing Plan, as to an undivided 22.808% interest; Sandra J. Bertolone, a married woman, as her sole and separate property, as to an undivided 2.292% interest; and Robert H. Huppert and Bette S. Huppert, as trustees of The Robert H. Huppert and Bette S. Huppert Revocable Trust, as to an undivided 1.146% interest.

204.  <u>Bertolone/3524 Mendocino Secured Claim</u> means the Secured Claim held by Bertolone/Huppert in the approximate amount of $872,500 and secured by a third lien encumbering the 3524 Mendocino Property.

205.  <u>Birne-Swanson</u> means, collectively, Tim Birne and Betty Vess, as successor trustees of the Wallace Swanson 2001 Trust.

206.  <u>Birne/909 Saracen Secured Claim</u> means the Secured Claim held by Birne-Swanson in the approximate amount of $50,245 and secured by a lien encumbering the 909 Saracen Property.

207.  <u>BNYMellon</u> means The Bank of New York Mellon.

208.  <u>BNYMellon/2225 Burbank Secured Claim</u> means the Secured Claim held by BNYMellon, as serviced by BAC, in the approximate amount of $579,000 and secured by a lien encumbering the 2225 Burbank Property.

209.  <u>BNYMellon/409 College Secured Claim</u> means the Secured Claim held by BNYMellon, as serviced by BAC, in the approximate amount of $358,000 and secured by a lien encumbering the 409 College Property.

210.  <u>BNYMellon/4235 Miles Secured Claim</u> means the Secured Claim held by BNYMellon, as serviced by BAC, in the approximate amount of $331,000 and secured by a lien encumbering the 4235 Miles Property.

211.  <u>BNYMellon/838 Fifth Secured Claim</u> means the Secured Claim held by BNYMellon, as serviced by BAC, in the approximate amount of $369,000 and secured by a lien encumbering the 838 Fifth Property.

212.  <u>Brekke Pension</u> means Carmann L. Brekke, as trustee for Burpee & Brekke Inc., Defined Pension Plan.

213.  <u>Brekke Pension/3136 Edgewood Secured Claim</u> means the Secured Claim held by Brekke Pension in the approximate amount of $130,000 and secured by a lien encumbering the 3136 Edgewood Property.

214.  <u>Brooks Avenue Property</u> means that certain real property and improvements located on Brooks Avenue, Santa Rosa, California 95407, and described as Sonoma County assessor's parcel no. 134-132-057.

215.  <u>Burmeister/Martin</u> means Robert N. Burmeister, as trustee for Barbara H. Martin under the Testamentary Trust created under paragraph 7, subparagraph B, of the Last Will and Testament of Donald E. Martin, deceased.

216.  <u>Burmeister/3524 Mendocino Secured Claim</u> means the Secured Claim held by Burmeister/Martin in the approximate amount of $150,000 and secured by a second lien encumbering the 3524 Mendocino Property.

217.  <u>Business Day</u> means any day on which commercial banks are generally open for business in Santa Rosa, California, other than a Saturday, Sunday or legal holiday in the State of California.

218.  <u>Carinalli</u> means Clement C. Carinalli, one of the Reorganized Debtors.

219.  <u>Cash</u> means the legal tender of the United States of America.

220.  <u>Chapter 11 Case</u> means the chapter 11 case entitled *In re Clement C. and Ann Marie Carinalli*, case no. 09-12986, commenced by the filing of the Petition on the Petition Date (as to which an order for relief was entered on September 29, 2009) and presently pending in the Bankruptcy Court.

221.  <u>Chase</u> means J.P. Morgan Chase Bank, National Association.

222.  <u>Chase Manhattan</u> means JP Morgan Chase Bank, National Association.

223.  <u>Chase/170 Shiloh Secured Claim</u> means the Secured Claim held by Chase in the approximate amount of $258,000 and secured by a lien encumbering the 170 Shiloh Property.

224.  <u>Chase/180 Shiloh Secured Claim</u> means the Secured Claim held by Chase in the approximate amount of $252,000 and secured by a lien encumbering the 180 Shiloh Property.

225.  <u>Chase/2036 Linwood Secured Claim</u> means the Secured Claim held by Chase in the approximate amount of $283,000 and secured by a lien encumbering the 2036 Linwood Property.

226.  <u>Chase/213 Willow Secured Claim</u> means the Secured Claim held by Chase in the approximate amount of $193,000 and secured by a lien encumbering the 213 Willow Property.

227.  <u>Chase/2136 Franklin Secured Claim</u> means the Secured Claim held by Chase in the approximate amount of $172,000 and secured by a lien encumbering the 2136 Franklin Property.

228.  <u>Chase/2728 Sonoma Secured Claim</u> means the Secured Claim held by Chase in the approximate amount of $220,000 and secured by a lien encumbering the 2728 Sonoma Property.

229.  <u>Chase/2804 Beth Secured Claim</u> means the Secured Claim held by Chase in the approximate amount of $248,000 and secured by a lien encumbering the 2804 Beth Property.

230.  <u>Chase/3109 Montgomery Secured Claim</u> means the Secured Claim held by Chase in the approximate amount of $231,000 and secured by a lien encumbering the 3109 Montgomery Property.

231.  <u>Chase/3765 Lakeville Secured Claim</u> means the Secured Claim held by Chase in the approximate amount of $90,000 and secured by a lien encumbering the 3765 Lakeville Property.

232.  <u>Chase/3917 Stony Point Secured Claim</u> means the Secured Claim held by Chase in

the approximate amount of $275,000 and secured by a lien encumbering the 3917 Stony Point Property.

233. Chase/3990 Wallace Secured Claim means the Secured Claim held by Chase in the approximate amount of $1,252,000 and secured by a lien encumbering the 3990 Wallace Property.

234. Chase/408 Calistoga Secured Claim means the Secured Claim held by Chase in the approximate amount of $251,000 and secured by a lien encumbering the 408 Calistoga Property.

235. Chase/416 King Secured Claim means the Secured Claim held by Chase in the approximate amount of $146,000 and secured by a lien encumbering the 416 King Property.

236. Chase/416 Macklyn Secured Claim means the Secured Claim held by Chase in the approximate amount of $231,000 and secured by a lien encumbering the 416 Macklyn Property.

237. Chase/420 Brookwood Secured Claim means the Secured Claim held by Chase in the approximate amount of $175,000 and secured by a lien encumbering the 420 Brookwood Property.

238. Chase/438 Orchard Secured Claim means the Secured Claim held by Chase in the approximate amount of $114,000 and secured by a lien encumbering the 438 Orchard Property.

239. Chase/506 Morgan Secured Claim means the Secured Claim held by Chase in the approximate amount of $184,000 and secured by a lien encumbering the 506 Morgan Property.

240. Chase/510-A Secured Claim means the Secured Claim held by Chase in the approximate amount of $140,000 and secured by a lien encumbering the 510-A Property.

241. Chase/521-A Secured Claim means the Secured Claim held by Chase in the approximate amount of $191,000 and secured by a lien encumbering the 521-A Property.

242. Chase/525 Roseland Secured Claim means the Secured Claim held by Chase in the approximate amount of $202,000 and secured by a lien encumbering the 525 Roseland Property.

243. Chase/537-A Secured Claim means the Secured Claim held by Chase in the approximate amount of $181,000 and secured by a lien encumbering the 537-A Property.

244. Chase/615 Maple Secured Claim means the Secured Claim held by Chase in the approximate amount of $148,000 and secured by a lien encumbering the 615 Maple Property.

245. Chase/7-10th Secured Claim means the Secured Claim held by Chase in the approximate amount of $145,000 and secured by a lien encumbering the 7-10th Property.

246. Chase/7170 Burnett Secured Claim means the Secured Claim held by Chase in the approximate amount of $230,000 and secured by a lien encumbering the 7170 Burnett Property.

247. Chase/7800 Hembree Secured Claim means the Secured Claim held by Chase in the approximate amount of $193,000 and secured by a lien encumbering the 7800 Hembree Property.

248. Chase/829 Davis Secured Claim means the Secured Claim held by Chase in the approximate amount of $146,000 and secured by a lien encumbering the 829 Davis Property.

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

249.   Chase/840 Fifth Yuba Secured Claim means the Secured Claim held by Chase in the approximate amount of $312,000 and secured by a lien encumbering the 840 Fifth Property.

250.   Chase/895 Yuba Secured Claim means the Secured Claim held by Chase in the approximate amount of $258,000 and secured by a lien encumbering the 895 Yuba Property.

251.   Chase/904 Kingwood Secured Claim means the Secured Claim held by Chase in the approximate amount of $184,000 and secured by a lien encumbering the 904 Kingwood Property.

252.   Chase/905 Kingwood Secured Claim means the Secured Claim held by Chase in the approximate amount of $185,000 and secured by a lien encumbering the 905 Kingwood Property.

253.   Chase/906 Kingwood Secured Claim means the Secured Claim held by Chase in the approximate amount of $193,000 and secured by a lien encumbering the 906 Kingwood Property.

254.   Chase/913 Kingwood Secured Claim means the Secured Claim held by Chase in the approximate amount of $185,000 and secured by a lien encumbering the 913 Kingwood Property.

255.   Chase/914 Kingwood Secured Claim means the Secured Claim held by Chase in the approximate amount of $185,000 and secured by a lien encumbering the 914 Kingwood Property.

256.   Chase/915 Yuba Secured Claim means the Secured Claim held by Chase in the approximate amount of $326,000 and secured by a lien encumbering the 915 Yuba Property.

257.   Chase/918 Kingwood Secured Claim means the Secured Claim held by Chase in the approximate amount of $188,000 and secured by a lien encumbering the 918 Kingwood Property.

258.   Chase/919 Kingwood Secured Claim means the Secured Claim held by Chase in the approximate amount of $160,000 and secured by a lien encumbering the 919 Kingwood Property.

259.   Chase/920 Kingwood Secured Claim means the Secured Claim held by Chase in the approximate amount of $184,000 and secured by a lien encumbering the 920 Kingwood Property.

260.   Chase/925 Kingwood Secured Claim means the Secured Claim held by Chase in the approximate amount of $190,000 and secured by a lien encumbering the 925 Kingwood Property.

261.   Chase/925 Yuba Secured Claim means the Secured Claim held by Chase in the approximate amount of $323,000 and secured by a lien encumbering the 925 Yuba Property.

262.   Chase/929 Kingwood Secured Claim means the Secured Claim held by Chase in the approximate amount of $184,000 and secured by a lien encumbering the 929 Kingwood Property.

263.   Chase/935 Kingwood Secured Claim means the Secured Claim held by Chase in the approximate amount of $192,000 and secured by a lien encumbering the 935 Kingwood Property.

264.   Chase/936 Kingwood Secured Claim means the Secured Claim held by Chase in the approximate amount of $178,000 and secured by a lien encumbering the 936 Kingwood Property.

265.   Chase/948 Kingwood Secured Claim means the Secured Claim held by Chase in the approximate amount of $184,000 and secured by a lien encumbering the 948 Kingwood Property.

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

266. <u>Chase/950 Kingwood Secured Claim</u> means the Secured Claim held by Chase in the approximate amount of $178,000 and secured by a lien encumbering the 950 Kingwood Property.

267. <u>Chase/961 Kingwood Secured Claim</u> means the Secured Claim held by Chase in the approximate amount of $174,000 and secured by a lien encumbering the 961 Kingwood Property.

268. <u>Chase/969 Kingwood Secured Claim</u> means the Secured Claim held by Chase in the approximate amount of $192,000 and secured by a lien encumbering the 969 Kingwood Property.

269. <u>Chase/972 Kingwood Secured Claim</u> means the Secured Claim held by Chase in the approximate amount of $185,000 and secured by a lien encumbering the 972 Kingwood Property.

270. <u>Chase/9828 Berry Secured Claim</u> means the Secured Claim held by Chase in the approximate amount of $29,000 and secured by a lien encumbering the 9828 Berry Property.

271. <u>Cinque</u> means Cinque Terre Vineyards, LLC.

272. <u>Ciraulo</u> means, collectively, Paul L. Ciraulo, an unmarried man, as to an undivided 50% interest; and Paul L. Ciraulo, as trustee of the Lois Ciraulo Residuary Trust dated 11/12/92, as to an undivided 50% interest.

273. <u>Ciraulo/28365 Old Redwood Secured Claim</u> means the Secured Claim held by Ciraulo in the approximate amount of $700,000 and secured by a lien encumbering the 28365 Old Redwood Property.

274. <u>Ciwa-Kakul Property</u> means that certain real property and improvements located on Ciwa Street and Kakul Street, Clearlake, California 95422, Lake County assessor's parcel nos. 039-641-020, 039-641-160, 039-641-170, 039-641-180, 039-641-190, 039-641-210, 039-641-220, 039-642-050, 039-642-060, 039-642-070, 039-642-080, 039-642-090, 039-642-100, 039-642-110, 039-642-120, 039-642-130, 039-642-140, 039-642-150, 039-642-160, 039-642-170, 039-642-180, 039-642-190, 039-642-200, 039-642-210, 039-642-220, 039-642-230, 039-642-240, 039-642-250, 039-642-260, and 039-643-160.

275. <u>Claim</u> means (a) any right to payment from the Debtors or the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtors or the Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, or (c) any claim as defined by the provisions of Section 101(5) of the Bankruptcy Code.

276. <u>Claimant</u> means a person asserting a Claim against either of the Debtors or the Estate.

277. <u>Class</u> means a category of holders of Claims or Interests as established by the terms of Article II of the Plan, including designated subclasses within a designated Class.

278. <u>Class B Protocols</u> means the following:  With respect to an Allowed Secured Claim within the scope of Class B Protocols, the collateral underlying such Allowed Secured Claim shall be transferred to the Creditors' Trust as of the Effective Date, and beginning on the tenth (10th) day of the first full calendar month that commences after the thirtieth (30th) day following the Effective

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

Date, and continuing on the tenth (10th) day of each calendar month thereafter until the earlier of (a) the tenth (10th) day of the last calendar month within the Selling Period designated for such Allowed Secured Claim, or (b) the date of sale or surrender of the collateral underlying such Allowed Secured Claim, the Trustee shall (i) pay to the holder of such Allowed Secured Claim from the Creditors' Trust or from income, profits or proceeds of such collateral, in arrears monthly interest accruing on the Allowed Secured Claim (calculated as of the Effective Date) at the Plan Interest Rate designated for such claim, (ii) make timely payments of real property taxes coming due with respect to such collateral, (iii) maintain reasonable insurance coverage for such collateral, and (iv) care for and maintain such collateral in a prudent and reasonable manner, all subject to the following:

       (a)   <u>Surrender</u>.  At any time on or after the Effective Date, if the Trustee determines that the collateral property is overly burdensome or of inconsequential value to the Creditors' Trust, the Trustee may surrender such property by written notification to the holder of such Allowed Secured Claim.  Upon such notification, such holder shall be permitted to exercise the Release Option (*provided* that if such holder has elected the Release Option, such holder's general unsecured claim within Class H will be reduced by the fair market value of the collateral property as of the date of such the Trustee's notification, which value shall be determined either by the Trustee or, upon motion by such holder within fifteen (15) days following the Trustee's determination, by an order of the Bankruptcy Court) or foreclose upon its security interest in or lien upon the property in accordance with applicable non-bankruptcy law, and the Trustee shall have no further responsibility with respect to such collateral property; *provided* that the notification of surrender of such collateral property shall constitute a waiver by the Trustee and the Creditors' Trust of the protections and provisions of Section 2924 *et seq.* of the California Civil Code as and to the extent set forth in subpart (e) below, and *provided further* that the Trustee shall reasonably cooperate in, and stipulate to, the appointment of a receiver for the collateral property, upon request by such holder.  In the event that such holder has not exercised the Release Option by written confirmation received by the Trustee within thirty (30) days following such notification, and has not completed foreclosure upon the subject property within one hundred twenty (120) days following such notification, then the Trustee may transfer such collateral property to the holder of the Allowed Secured Claim within Class B or to any nominee designated by such holder, by way of a quitclaim deed executed by the Trustee, subject to all existing exceptions, encumbrances and liens affecting the Trustee's title to such collateral property and without representation or warranty of any kind.  The holder of such Allowed Secured Claim shall accept such quitclaim deed, shall cooperate fully in such transfer of the collateral property, and shall execute such documents as reasonably necessary in order to facilitate such transfer. In the event of such notification of surrender, such holder may file and serve on the Trustee a Claim within Class H for any deficiency to which it is entitled under enforceable and applicable law resulting from such surrender on or before the Deficiency Claim Deadline.  If no such claim is filed by the Deficiency Claim Deadline, then any such claim shall be permanently and fully barred, and such holder shall have no claim for any deficiency without regard to any Claim that has been filed or scheduled prior to the Effective Date.  As soon as practicable following transfer of title to the collateral property, whether by foreclosure sale or quitclaim deed as set forth above, but in no event later than thirty (30) days thereafter, the Trustee shall pay to such holder of the Allowed Secured Claim all income, profits or proceeds of such collateral property received by the Trustee on or after the Effective Date until the date of such transfer, after deduction for interest paid by the Trustee to such holder and reasonable expenses paid or incurred by the Trustee on account of the management,

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

preservation, care, repair, insuring or enhancement of the collateral property (the "Protocols Net Income"). If the Trustee receives additional Protocols Net Income after the date of such payment, the Trustee shall hold such Protocols Net Income in trust for the benefit of such holder and deliver such additional Protocols Net Income to such holder within thirty (30) days after such receipt.

(b)  <u>Lien Retention</u>.  Such holder shall retain its lien encumbering the collateral property to secure the Allowed Secured Claim, until and unless paid in full in accordance with the terms of the Plan, and such lien shall continue to encumber any related personal property described in the security documents of the applicable secured lender, to the same extent, priority and enforceability as pertained to such lien prior to the Effective Date.

(c)  <u>Documentation</u>.  Such holder shall execute such amendments or modifications of applicable deeds of trust and other loan and security documents as reasonably presented by the Trustee in order to evidence, memorialize and record all modifications provided by these protocols.

(d)  <u>End of Selling Period</u>.  At the end of the Selling Period for a collateral property within the scope of these protocols, unless such property has earlier been disposed of by the Trustee in accordance with these protocols, the Trustee shall either satisfy in full the Allowed Secured Claim encumbering such collateral property or provide notification of surrender in accordance with the provisions of subpart (a) above.

(e)  <u>Waiver of Foreclosure Protections</u>.  The Trustee's written notification of surrender of collateral property pursuant to the provisions of subpart (a) above shall constitute the following waivers by the Trustee and the Creditors' Trust with respect to such collateral property:  (i) waiver of the necessity of the three-month notice requirements for a notice of default otherwise required by Section 2924 of the California Civil Code as a prerequisite to a non-judicial foreclosure sale (but not a judicial foreclosure sale), to the extent necessary to permit such notice of default to be provided on seven (7) days' notice; and (ii) waiver of the notice requirements of Section 2924 of the California Civil Code, to the extent necessary to permit a non-judicial foreclosure sale (but not a judicial foreclosure sale), upon seven (7) days' published notice, rather than upon 20 days' notice, as otherwise required.

279.  <u>Class D Protocols</u> means the following:  With respect to an Allowed Secured Claim within the scope of Class D Protocols, the collateral underlying such Allowed Secured Claim shall be transferred to the Creditors' Trust as of the Effective Date, and the Trustee shall maintain, insure and preserve such property until the date of sale or surrender of such property, but the Trustee shall not make any interest payments on account of such Claim, subject to the following:

(a)  <u>Surrender</u>.  At any time on or after the first anniversary of the Effective Date, if the Trustee determines that the collateral property is overly burdensome or of inconsequential value to the Creditors' Trust, the Trustee may surrender such property by written notification to such holder.  As soon as practicable following such notification, the Trustee shall transfer such collateral property to the holder of the Allowed Secured Claim within Class D, by way of a quitclaim deed executed by the Trustee, subject to all existing exceptions, encumbrances and liens affecting the Debtors' title to such collateral property and without representation or warranty of any kind.  The holder of such Allowed Secured

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

LAW OFFICES

MEYERS LAW GROUP, P.C.

44 MONTGOMERY STREET, SUITE 1010

SAN FRANCISCO, CALIFORNIA 94104

Claim shall accept such quitclaim deed, shall cooperate fully in such transfer of the collateral property, and shall execute such documents as reasonably necessary in order to facilitate such transfer. As soon as practicable following the Trustee's surrender of the collateral property to such holder, the Trustee shall transfer to such holder all income, profits or proceeds of such collateral property received by the Trustee on or after the Effective Date, after deduction for expenses paid, incurred or reserved by the Trustee on account of the management, preservation, care, repair, insuring or enhancement of the collateral property.

(b)     No Deficiency Claim or Election. Such holder shall not hold or assert an Unsecured Claim against the Creditors' Trust or the estate herein for any deficiency or guarantee claim related to such Allowed Secured Claim, regardless of whether applicable bankruptcy or non-bankruptcy law would otherwise permit or recognize such claim, and said holder shall not make the election otherwise permitted by the provisions of Section 1111(b) of the Bankruptcy Code.

(c)     Lien Retention. Such holder shall retain its lien encumbering the collateral property to secure the Allowed Secured Claim, *provided, however*, that at any time during the Selling Period, the Trustee may sell such collateral property free and clear of such lien for any sale price that equals or exceeds the Release Price designated for such property (without taking into account any costs or expenses of sale or maintenance of the property), and in such event, such holder shall reconvey and release its lien encumbering such property upon the request of the Trustee, and *provided, further*, that there shall be no restrictions upon the Trustee's use of rents, profits or proceeds of collateral property prior to a default hereunder or a sale of the collateral property. Such holder shall execute such amendments or modifications of applicable deeds of trust and other loan and security documents as reasonably presented by the Trustee in order to evidence, memorialize and record all modifications provided by these protocols, including without limitation such holder's obligation to reconvey its lien in the event of a sale for a price that equals or exceeds the Release Price.

(d)     Sale Proceeds. In the event of a sale by the Trustee of such collateral property pursuant to subpart (c) above, all proceeds, to the extent available, shall be disbursed as follows: (i) first, to payment of any senior liens, including liens for accrued property taxes; (ii) second, to payment of the costs of sale, including without limitation transfer taxes, commissions, escrow fees, title insurance and reasonable attorneys' fees incurred by the Trustee; (iii) third, to payment to the Trustee to reimburse all interest payments made to the holder of any senior lien on or after the Effective Date in accordance with the terms of the Plan, and all expenditures made by the Trustee on or after the Effective Date in order to preserve, maintain, insure, repair or enhance the collateral property, including without limitation reasonable management fees and payments, if any, of property taxes, and also including without limitation costs of consultants, experts or other third parties retained in an effort to improve the collateral property or to obtain additional permits or entitlements with respect to the collateral property; (iv) fourth, to payment of the Allowed Secured Claim up to the Release Price designated for such claim after reduction by each of the payments described in subparts (i) through (iii) above; and (v) fifth, payment on a 50/50 shared basis to the Trustee and such holder of any remaining proceeds, until such holder's claim secured by such collateral property has been paid in full, with interest accruing after the Effective Date at the Plan Interest Rate, after which all remaining net proceeds of sale shall belong to the Creditors' Trust.

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

(e)  <u>End of Selling Period</u>.  At the end of the Selling Period for a collateral property within the scope of these protocols, unless such property has earlier been disposed of by the Trustee in accordance with these protocols, the Trustee shall either satisfy in full the Allowed Secured Claim encumbering such collateral property or provide notification of surrender in accordance with the provisions of subpart (a) above.

(f)  <u>Documentation</u>.  Such holder shall execute such amendments or modifications of applicable deeds of trust and other loan and security documents as reasonably presented by the Trustee in order to evidence, memorialize and record all modifications provided by these protocols.

280.  <u>Class E Protocols</u> means the following.  With respect to an Allowed Secured Claim within the scope of Class E Protocols, the collateral underlying such Allowed Secured Claim shall be transferred to the Creditors' Trust as of the Effective Date, and beginning on the tenth (10th) day of the first full calendar month that commences after the thirtieth (30th) day following the Effective Date, and continuing on the tenth (10th) day of each calendar month thereafter until the earlier of (a) the tenth (10th) day of the last calendar month within the Selling Period designated for such Allowed Secured Claim, or (b) the date of sale or surrender of the collateral underlying such Allowed Secured Claim, the Trustee shall pay to the holder of such Allowed Secured Claim from the Creditors' Trust or from income, profits or proceeds of such collateral, in arrears monthly interest accruing on the Allowed Secured Claim (calculated as of the Effective Date) at the Plan Interest Rate designated for such claim, up to the limit set forth in subpart (b) below, subject to the following:

(a)  <u>Surrender</u>.  At any time on or after the Effective Date, if the Trustee determines that the collateral property is overly burdensome or of inconsequential value to the Creditors' Trust, the Trustee may surrender such property by written notification to the holder of such Allowed Secured Claim.  Upon such notification, such holder shall be permitted to foreclose upon its security interest in or lien upon the property in accordance with applicable non-bankruptcy law, and the Trustee shall have no further responsibility with respect to such collateral property; *provided* that the notification of surrender of such collateral property shall constitute a waiver by the Trustee and the Creditors' Trust of the protections and provisions of Section 2924 *et seq*. of the California Civil Code that require a 90-day notice of default, pursuant to the provisions of Section 3513 of the California Civil Code.  In the event that such holder has not completed foreclosure upon the subject property within one hundred twenty (120) days following such notification, then the Trustee may transfer such collateral property to the holder of the Allowed Secured Claim within Class B, by way of a quitclaim deed executed by the Trustee, subject to all existing exceptions, encumbrances and liens affecting the Trustee's title to such collateral property and without representation or warranty of any kind.  The holder of such Allowed Secured Claim shall accept such quitclaim deed, shall cooperate fully in such transfer of the collateral property, and shall execute such documents as reasonably necessary in order to facilitate such transfer.  As soon as practicable following transfer of title to the collateral property, whether by foreclosure sale or quitclaim deed as set forth above, but in no event later than thirty (30) days thereafter, the Trustee shall pay to such holder of the Allowed Secured Claim the Protocols Net Income.  If the Trustee receives additional Protocols Net Income after the date of such payment, the Trustee shall hold such Protocols Net Income in trust for the benefit of such holder and deliver such additional Protocols Net Income to such holder within thirty (30) days after such receipt.

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

LAW OFFICES

MEYERS LAW GROUP, P.C.

44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

(b) <u>Cash Collateral and Interest</u>.  Interest paid to such holder pursuant to the terms of these Class E Protocols shall not exceed the rents and other income produced and received by the Trustee from the collateral property encumbered by the Allowed Secured Claim, net of the following costs and expenditures by the Trustee:  (i) the Trustee's reasonable and allocable costs of maintaining, insuring, managing (including a reasonable management fee), repairing and preserving the collateral property; (ii) the Trustee's payment or reserves for real property taxes owing or accruing with respect to the collateral property; and (iii) the Trustee's reasonable costs of consultants, experts or other third parties retained in an effort to improve the collateral property or to obtain additional permits or entitlements with respect to the collateral property, but as to sub-subpart (iii) hereof, only to the extent approved in advance by such holder, which consent shall not be unreasonably withheld.  Interest that accrues upon such Allowed Secured Claim at the Plan Interest Rate that exceeds the limitations of this subpart shall be paid to the extent of available sale proceeds pursuant to sub-subpart (v) of subpart (e) below.

(c) <u>No Deficiency Claim or Election</u>.  Such holder shall not hold or assert an Unsecured Claim against the Creditors' Trust or the estate herein for any deficiency or guarantee claim related to such Allowed Secured Claim, regardless of whether applicable bankruptcy or non-bankruptcy law would otherwise permit or recognize such claim, and said holder shall not make the election otherwise permitted by the provisions of Section 1111(b) of the Bankruptcy Code.

(d) <u>Lien Retention</u>.  Such holder shall retain its lien encumbering the collateral property to secure the Allowed Secured Claim, *provided, however*, that at any time during the Selling Period, the Trustee may sell such collateral property free and clear of such lien for any sale price to which such holder consents.  Such holder's consent will not be unreasonably withheld, and will be determined upon a review of whether the proposed sale is arms' length and in good faith, and whether the marketing and solicitation process that preceded such sale was reasonable and complete.   In the event of such consented-to sale, such holder shall reconvey and release its lien encumbering such property upon the request of the Trustee at the closing of the proposed sale.   Such holder shall execute such amendments or modifications of applicable deeds of trust and other loan and security documents as reasonably presented by the Trustee in order to evidence, memorialize and record all modifications provided by these protocols.

(e) <u>Sale Proceeds</u>.  In the event of a sale by the Trustee of such collateral property pursuant to subpart (d) above, all proceeds, to the extent available, shall be disbursed as follows:  (i) first, to payment of any senior liens, including liens for accrued property taxes; (ii) second, to payment of the costs of sale, including without limitation transfer taxes, commissions, escrow fees, title insurance and reasonable attorneys' fees incurred by the Trustee; (iii) third, to payment to the Trustee to reimburse all expenditures made by the Trustee as permitted under the provisions of subpart (b) above; (iv) fourth, to payment of the Allowed Secured Claim up to the Release Price designated for such claim after reduction by each of the payments described in subparts (i) through (iii) above; and (v) fifth, payment on a 50/50 shared basis to the Trustee and such holder of any remaining proceeds, until such holder's claim secured by such collateral property has been paid in full, with interest accruing after the Effective Date at the Plan Interest Rate, after which all remaining net proceeds of sale shall belong to the Creditors' Trust.

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

(f)     End of Selling Period.   At the end of the Selling Period for a collateral property within the scope of these protocols, unless such property has earlier been disposed of by the Trustee in accordance with these protocols, the Trustee shall either satisfy in full the Allowed Secured Claim encumbering such collateral property or provide notification of surrender in accordance with the provisions of subpart (a) above.

281.   Combs Trust means, collectively, Thomas F. Combs and Sandra L. Combs, as trustees of The Thomas F. Combs and Sandra L. Combs Revocable Trust Agreement.

282.   Combs Trust/13193 Lakeshore Secured Claim means the Secured Claim held by Combs Trust in the approximate amount of $300,000 and secured by a lien encumbering the 13193 Lakeshore Property.

283.   Committee means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case pursuant to the provisions of Section 1102 of the Bankruptcy Code.

284.   Confirmation Date means the date on which the Bankruptcy Court enters the Confirmation Order.

285.   Confirmation Hearing means the hearing before the Bankruptcy Court held for the purpose of determining whether the Plan will be confirmed by the Bankruptcy Court pursuant to the provisions of Section 1129 of the Bankruptcy Code.

286.   Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of Section 1129 of the Bankruptcy Code.

287.   Cooper Trust means Charles V. Cooper and Norma L. Cooper, as trustees of the Charles V. and Norma L. Cooper Trust.

288.   Cooper Trust/2727 Dutton Meadow Secured Claim means the Secured Claim held by the Cooper Trust in the approximate amount of $1,500,000 and secured by a second lien encumbering the 2727 Dutton Meadow Property (also cross-collateralized by a second lien encumbering the 2729 Stony Point Property).

289.   Cooper Trust/2729 Stony Point Secured Claim means the Secured Claim held by the Cooper Trust in the approximate amount of $1,500,000 and secured by a second lien encumbering the 2729 Stony Point Property (also cross-collateralized by a second lien encumbering the 2727 Dutton Meadow Property).

290.   Corsi-Noonan means, collectively, Corsi, Hoey & Pearson, DDS Inc., 401K Profit Sharing Plan, as to an undivided 40.000% interest; Alan S. Johnson, as trustee for the Alan S. Johnson Trust dated 12/13/93, as to an undivided 29.600% interest; James H. Noonan Drywall, Inc. Profit Sharing Plan, as to an undivided 16.000% interest; and Alan S. Johnson, as trustee for the Alan S. Johnson DDS, PC Employees Pension and Profit Sharing Plan, as to an undivided 14.400% interest.

291.   Corsi-Noonan/21000 Santa Clara Secured Claim means the Secured Claim held by Corsi-Noonan in the approximate amount of $1,250,000 and secured by a lien encumbering the 21000 Santa Clara Property.

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

MEYERS LAW GROUP, P.C.

LAW OFFICES

44 MONTGOMERY STREET, SUITE 1010

SAN FRANCISCO, CALIFORNIA 94104

292. <u>Countrywide Bank</u> means Countrywide Bank, or BAC Home Loans Servicing, LP, as successor-in-interest to, or servicer for, Countrywide Bank, as applicable.

293. <u>Countrywide/1002 Orchard Secured Claim</u> means the Secured Claim held by Countrywide Bank in the approximate amount of $350,000 and secured by a lien encumbering the 1002 Orchard Property.

294. <u>Countrywide/1745 West Lake Secured Claim</u> means the Secured Claim held by Countrywide Bank, in the approximate amount of $1,127,000 and secured by a lien encumbering the 1745 West Lake Property.

295. <u>Countrywide/600 College Secured Claim</u> means the Secured Claim held by Countrywide Bank in the approximate amount of $416,000 and secured by a lien encumbering the 600 College Property.

296. <u>Countrywide/8590 Alden Secured Claim</u> means the Secured Claim held by Countrywide Bank in the approximate amount of $366,000 and secured by a lien encumbering the 8590 Alden Property.

297. <u>Countrywide/8602 Alden Secured Claim</u> means the Secured Claim held by Countrywide Bank in the approximate amount of $366,000 and secured by a lien encumbering the 8602 Alden Property.

298. <u>Court</u> means the Bankruptcy Court.

299. <u>Creditor</u> means a Claimant.

300. <u>Creditors' Trust</u> means a liquidating trust created by the Debtors as of the Effective Date, in accordance with the Creditors' Trust Agreement and this Plan, into which the Transfer Assets will be transferred as of such date pursuant to Section 7.3 of the Plan.

301. <u>Creditors' Trust Agreement</u> means the liquidating trust agreement attached as an exhibit to the Disclosure Statement.

302. <u>Cure</u> means the distribution of Cash as and to the extent required for the cure and assumption of an unexpired executory contract pursuant to the provisions of Section 365(b) of the Bankruptcy Code, or for the cure and reinstatement of a secured obligation pursuant to the provisions of Section 1124(2) of the Bankruptcy Code.

303. <u>Debtors</u> means, collectively, Clement C. Carinalli and Ann Marie Carinalli, the debtors-in-possession in the Chapter 11 Case.

304. <u>Deficiency Claim Deadline</u> means the thirtieth (30th) calendar day following the Effective Date, or, in the case of Allowed Claims within Class B, the thirtieth (30th) calendar day following notification of surrender of the collateral property pursuant to subpart (a) of the Class B Protocols.

305. <u>Disallowed Claim</u> means:

　　　　i.　　　Any Claim, proof of which was not timely and properly filed and, in the case

of a Claim other than an Administrative Expense Claim, which is listed in the Schedules as unliquidated, disputed or contingent, or is not listed in the Schedules; and

      ii.      Any Claim, or portion of a Claim, that has been disallowed by a Final Order.

306.    <u>Disclosure Statement</u> means the disclosure statement relating to the Plan, as approved by the Bankruptcy Court pursuant to the provisions of Section 1125 of the Bankruptcy Code, together with any supplements or amendments thereto approved by the Court.

307.    <u>Disputed Claim</u> means any Claim that is not a Disallowed Claim and that has not been allowed by an earlier order of the Court or by the terms of the Plan and as to which the Trustee, the Reorganized Debtors or any other party with authority to file objections to Claims, has filed an objection or request for estimation, except to the extent that such objection or request for estimation has been withdrawn or determined by a Final Order.

308.    <u>Early Option Unsecured Claims</u> means those Allowed Unsecured Claims for which a timely election is made by holders to be treated within Class G, rather than within Class H, pursuant to the provisions of Section 5.5 of the Plan.

309.    <u>Effective Date</u> means the effective date of the Plan, which shall be a date jointly designated by the Debtors and the Committee, but which date shall be no less than fourteen (14) days, and no more than thirty (30) days, following the Confirmation Date or, in the event that effectuation of the Plan is enjoined or stayed by a court of competent jurisdiction for any period of time, no later than thirty (30) days following expiration of such stay or injunction.

310.    <u>Election Notice</u> shall have the meaning ascribed to it in Section 5.2 of the Plan.

311.    <u>Equity Interests</u> means the rights and interests of the Debtors in and to property of their respective Estate immediately before the Effective Date.

312.    <u>Estate</u> means the estate of the Debtors and all property thereof, as provided by Sections 541 and 1115 of the Bankruptcy Code as of the Effective Date.

313.    <u>Exchange Bank</u> means Exchange Bank.

314.    <u>Exchange/1701 Santa Rosa Secured Claim</u> means the Secured Claim held by Exchange Bank in the approximate amount of $1,268,000 and secured by a lien encumbering the 1701 Santa Rosa Property.

315.    <u>Exchange/1899 Mendocino Secured Claim</u> means the Secured Claim held by Exchange Bank in the approximate amount of $2,385,000 and secured by a lien encumbering the 1899 Mendocino Property.

316.    <u>Exchange/3310 Santa Rosa Secured Claim</u> means the Secured Claim held by Exchange Bank in the approximate amount of $500,000 and secured by a lien encumbering the 3310 Santa Rosa Property.

317.    <u>Excluded Assets</u> means, collectively, the following assets of the Estate:

      (a)      All of the Debtors' household goods and furnishings located at the 3990

Wallace Property or the 1745 West Lake Property, including without limitation all furniture, televisions, computers, peripheral equipment, other household equipment, kitchenware, artwork, linens, radios, and the like;

(b)     All of the Debtors' clothing, furs and jewelry;

(c)     All of the Debtors' firearms (two non-operative rifles), sports equipment, and photographic and recording equipment;

(d)     All of the Debtors' life insurance policies, subject to existing security interests;

(e)     The following vehicles:  2004 GMC Sierra, 2007 GMC Denali, 2003 Mercedes, 2004 Honda ATV, and 2004 Yamaha ATV;

(f)     Funds of approximately $12,325 maintained in account no. 1015049370 at the Exchange Bank, constituting proceeds of Social Security payments; and

(g)     A John Deere tractor.

318.     <u>Final Order</u> means an order or judgment of a court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargument or rehearing shall have been waived, or, in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

319.     <u>Five Star</u> means Five Star Bank.

320.     <u>Five Star/1375 West Secured Claim</u> means the Secured Claim held by Five Star in the approximate amount of $264,000 and secured by a lien encumbering the 1375 West Property.

321.     <u>Five Star/199 Calistoga Secured Claim</u> means the Secured Claim held by Five Star in the approximate amount of $313,000 and secured by a lien encumbering the 199 Calistoga Property.

322.     <u>Five Star/2863 West Steele Secured Claim</u> means the Secured Claim held by Five Star in the approximate amount of $246,000 and secured by a lien encumbering the 2863 West Steele Property.

323.     <u>Foreclosure Option</u> shall have the meaning ascribed to it in Section 5.2 of the Plan.

324.     <u>Garaventa</u> means, collectively, Dorothea Garaventa, as trustee of the 1980 Luigi Garaventa and Dorothea Garaventa Trust dated December 2, 1980-Trust A, as to an undivided 79.902% interest; Dorothea Garaventa, as trustee of the 1980 Luigi Garaventa and Dorothea Garaventa Trust dated December 2, 1980-Trust B, as to an undivided 17.299% interest; and Dorothea Garaventa, as trustee of the 1980 Luigi Garaventa and Dorothea Garaventa Trust dated December 2, 1980-Trust, as to an undivided 2.799% interest.

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

325.  Garaventa/3990 Wallace Secured Claim means the Secured Claim held by Garaventa in the approximate amount of $1,194,632 and secured by a junior lien encumbering the 3990 Wallace Property.

326.  Hada PSP means, collectively, Harry E. Polley and David R. Madsen, as co-trustees of The Hada Real Estate Company, Inc. Profit Sharing Retirement Plan.

327.  Hada PSP/11961 Bitney Springs Secured Claim means the Secured Claim held by Hada PSP in the approximate amount of $540,000 and secured by a lien encumbering the 11961 Bitney Springs Property.

328.  Haskins means, collectively, Alan S. Johnson, as trustee for the Alan S. Johnson DDS, PC Employees Pension and Profit Sharing Plan, as to an undivided 34.783% interest; Robert Oliver, as trustee for Delta Lodge, LLC Pension Plan, as to an undivided 16.148% interest; Exchange Bank, as custodian for David M. Schaal I.R.A. Rollover, as to an undivided 15.528% interest; Robert W. Oliver, as trustee for the Sven G. Nordmark 1990 Trust, as to an undivided 14.907% interest; Alan S. Johnson, as trustee for the Alan S. Johnson Trust dated 12/13/93, as to an undivided 9.938% interest; and Robert W. Oliver, as trustee for the Charitable Remainder Trust, as to an undivided 8.696% interest.

329.  Haskins/104 Shiloh Secured Claim means the Secured Claim held by Haskins in the approximate amount of $750,000 and secured by a lien encumbering the 104 Shiloh Property.

330.  Hayward Trust means the Harry A. Hayward Living Trust.

331.  Hayward Trust/836 Ripley Secured Claim means the Secured Claim held by Hayward Trust in the approximate amount of $590,000 and secured by a lien encumbering the 836 Ripley Property.

332.  Henig PSP means Lawrence C. Henig, D.D.S., Inc. Age-Based Profit Sharing Plan.

333.  Henig PSP/3615 Vista Secured Claim means the Secured Claim held by Henig PSP in the approximate amount of $185,000 and secured by a lien encumbering the 3615 Vista Property.

334.  Hindley-Scheibel means, collectively, Ron Hindley and Bonnie Lagier-Hindley, husband and wife as community property, as to an undivided 28.571% interest; Robert L. Scheibel, as trustee for the Robert L. Scheibel M.D. Pension and Profit Sharing Plan, as to an undivided 21.429% interest; James R. Palleschi, as to an undivided 17.857% interest; James S. Mitchell, as trustee of the James S. Mitchell Profit Sharing Plan, as to an undivided 17.857% interest; and Freeman W. Born, M.D., Profit Sharing Plan, as to an undivided 14.286% interest.

335.  Hindley-Scheibel/6235 Dry Creek Secured Claim means the Secured Claim held by Hindley-Scheibel in the approximate amount of $700,000 and secured by a lien encumbering the 6235 Dry Creek Property.

336.  Hunter means Dennis Hunter, an individual.

337.  Hunter/1550 Hearn Secured Claim means the Secured Claim held by Hunter in the approximate amount of $500,000 and secured by a lien encumbering the 1550 Hearn Property.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

110

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

338. <u>Incentive Fee</u> shall have the meaning ascribed to it in Section 7.8.3 of the Plan.

339. <u>Interest</u> means Equity Interest.

340. <u>Johnson 1993 Trust</u> means Alan S. Johnson, as trustee for the Alan S. Johnson Trust dated 12/13/93.

341. <u>Johnson 1993 Trust/15825-23rd Secured Claim</u> means the Secured Claim held by Johnson 1993 Trust in the approximate amount of $165,000 and secured by a lien encumbering the 15825-23rd Property.

342. <u>Johnson PSP</u> means Alan S. Johnson as trustee for the Alan S. Johnson DDS, PC Employees Pension And Profit Sharing Plan.

343. <u>Johnson PSP/15873-27th Secured Claim</u> means the Secured Claim held by Johnson PSP in the approximate amount of $140,000 and secured by a lien encumbering the 15873-27th Property.

344. <u>Johnson PSP/2800 Francisco Secured Claim</u> means the Secured Claim held by Johnson PSP in the approximate amount of $300,000 and secured by a lien encumbering the 2800 Francisco Property.

345. <u>Johnson-Henig</u> means, collectively, Alan S. Johnson, as trustee for the Alan S. Johnson DDS, PC Employees Pension and Profit Sharing Plan, as to an undivided 27.647% interest; Alan S. Johnson, as trustee for the Alan S. Johnson Trust dated 12/13/93, as to an undivided 18.235% interest; Robert W. Oliver, as trustee for Delta Lodge LLC Pension Plan, as to an undivided 14.707% interest; Robert W. Oliver, as trustee for the Oliver Family Trust of 1989, as to an undivided 12.647% interest; Lawrence C. Henig, as trustee of the Lawrence C. Henig Revocable Trust dated June 21,1999, as to an undivided 7.647% interest; William E. Geary and Therese E. Geary, husband and wife, as community property, as to an undivided 5.882% interest; Lawrence C. Henig, D.D.S., Inc., Aged-Based Profit Sharing Plan, as to an undivided 5.882% interest; James Madsen and Roselia Madsen, husband and wife, as community property, as to an undivided 3.824% interest; and Robert W. Oliver, as trustee for the Charitable Remainder Trust, as to an undivided 3.529% Interest.

346. <u>Johnson-Henig/21837 Geyserville Secured Claim</u> means the Secured Claim held by Johnson-Henig in the approximate amount of $1,700,000 and secured by a lien encumbering the 21837 Geyserville Property.

347. <u>Johnson-Schaal Trusts</u> means, collectively, Alan S. Johnson, as trustee for the Alan S. Johnson DDS, PC Employees Pension and Profit Sharing Plan, as to an undivided 19.834% interest; Robert W. Oliver, DDS Pension Plan, as to an undivided 29.699% interest; David Schaal, as trustee for the David Schaal Pension Plan, as to an undivided 28.557% interest; Alan S. Johnson, as trustee for the Alan S. Johnson Trust dated 12/13/93, as to an undivided 18.276% interest; and Robert W. Oliver, as trustee for the Charitable Remainder Trust, as to an undivided 3.634% interest.

348. <u>Johnson-Schaal Trusts/104 Shiloh Secured</u> means the Secured Claim held by Johnson-Schaal Trusts in the approximate amount of $438,000 and secured by a third-priority lien encumbering the 104 Shiloh Property, and cross-collateralized with third-priority liens encumbering the 170 Shiloh Property and the 180 Shiloh Property.

349. <u>Johnson-Schaal Trusts/170 Shiloh Secured</u> means the Secured Claim held by Johnson-Schaal Trusts in the approximate amount of $438,000 and secured by a third-priority lien encumbering the 170 Shiloh Property, and cross-collateralized with third-priority liens encumbering the 104 Shiloh Property and the 180 Shiloh Property.

350. <u>Johnson-Schaal Trusts/180 Shiloh Secured</u> means the Secured Claim held by Johnson-Schaal Trusts in the approximate amount of $438,000 and secured by a third-priority lien encumbering the 180 Shiloh Property, and cross-collateralized with third-priority liens encumbering the 104 Shiloh Property and the 170 Shiloh Property.

351. <u>Johnson Sons</u> means, collectively, Todd S. Johnson, a single man, as to an undivided one-third interest; Mark F. Johnson, a single man, as to an undivided one-third interest; and Gregory A. Johnson, a single man, as to an undivided one-third interest.

352. <u>Johnson Sons/507-E Secured Claim</u> means the Secured Claim held by Johnson Sons in the approximate amount of $75,000 and secured by a lien encumbering the 507-E Property.

353. <u>Keegan-Coppin</u> means the Keegan and Coppin Company, Inc. Profit Sharing Plan.

354. <u>Keegan-Coppin/819 Fourth Secured Claim</u> means the Secured Claim held by Keegan-Coppin in the approximate amount of $125,500 and secured by a junior lien encumbering the 819 Fourth Property.

355. <u>Keegan-Keegan</u> means, collectively, Diane E. Keegan, a married woman as her sole and separate property as to an undivided 55.555% interest; James B. Keegan and Edith J. Keegan as to an undivided 44.445% interest.

356. <u>Keegan-Keegan/1120-15th Secured Claim</u> means the Secured Claim held by Keegan-Keegan in the approximate amount of $150,000 and secured by a lien encumbering the 1120-15th Property.

357. <u>Klemco</u> means Klemco Investment Company, a general partnership in which the Debtors and their children are general partners.

358. <u>Klemco/8262 Peninsula Secured Claim</u> means the Secured Claim held by Klemco in the approximate amount of $770,000 and secured by a junior lien encumbering the 8262 Peninsula Property.

359. <u>LBS</u> means Luther Burbank Savings.

360. <u>LBS Additional Protocols</u> means the following: With respect to an Allowed Secured Claim within the scope of the LBS Additional Protocols (each, an "LBS Additional Protocols Claim"), the note and deed of trust underlying each of such LBS Additional Protocols Claims shall be modified as follows:

(a) to add as additional events of default (each, an "LBS Additional Event of Default") (i) the failure of the Trustee to make any payments required under the Plan as and when required under the Plan, (ii) the failure of the Trustee to make any insurance payment as and when required as to the applicable property, and (iii) notification by the Trustee of the surrender of the property securing the applicable LBS Additional Protocols Claim (the "LBS

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

Additional Protocols Property");

       (b)    to change the interest rate as set forth in applicable Sections of the Plan;

       (c)    to modify the maturity date to be the earliest to occur of (i) the date when the Selling Period terminates for the applicable LBS Additional Protocols Claim, (ii) the date on which the Trustee sells the applicable LBS Additional Protocols Property pursuant to the terms of the Plan, or (iii) the date on which the Trustee surrenders the applicable LBS Additional Protocols Property as set forth in the Class B Protocols; and

       (d)    to provide that as of the Effective Date, the principal amount of the note evidencing the applicable LBS Additional Protocols Claim shall be the sum of (i) the outstanding principal amount of such note as of the Effective Date, plus (ii) all interest accrued and unpaid under such note as of the Effective Date, plus (iii) all reasonable attorneys' fees and costs incurred by the holder of such Claim in connection with the applicable loan (in the case of LBS, to be determined by multiplying the full amount of reasonable attorneys' fees incurred for all loans by LBS to the Debtors, the Estate or the Creditors' Trust (other than the attorneys' fees and costs provided for in subsection (iv) below), by a fraction (x) the numerator of which is the outstanding principal amount of such note, and (y) the denominator of which is the aggregate outstanding principal amount of all LBS loans; plus (iv) all reasonable attorneys' fees and costs incurred in connection with modification of the existing loan documents related to the applicable loan, including, without limitation, title insurance endorsements with respect thereto.

Notwithstanding anything to the contrary in the LBS Additional Protocols, to the extent that an event of default occurs under the LBS Additional Protocols as to an LBS Additional Protocols Claim, the holder of such Claim shall be limited to foreclosing upon its security interest in or lien upon the property in accordance with applicable non-bankruptcy law and, to the extent that the Class B Protocols apply, filing and serving on the Trustee a Claim within Class H for any deficiency to which such holder is entitled under enforceable and applicable law. The holder of the LBS Additional Protocols Claim shall have no other rights or recourse against the Debtors, the Trustee or the Creditors' Trust.

    361.   <u>LBS Additional Protocols Claim</u> shall have the meaning ascribed to it in the definition of "LBS Additional Protocols" in this Exhibit "A."

    362.   <u>LBS Additional Protocols Property</u> shall have the meaning ascribed to it in the definition of "LBS Additional Protocols" in this Exhibit "A."

    363.   <u>LBS/1466 Hearn Secured Claim</u> means the Secured Claim held by LBS in the approximate amount of $455,000 and secured by a lien encumbering the 1466 Hearn Property.

    364.   <u>LBS/1500 Hearn Secured Claim</u> means the Secured Claim held by LBS in the approximate amount of $496,000 and secured by a lien encumbering the 1500 Hearn Property.

    365.   <u>LBS/2107 Wood Secured Claim</u> means the Secured Claim held by LBS in the approximate amount of $1,174,000 and secured by a lien encumbering the 2107 Wood Property.

    366.   <u>LBS/2137 Dennis Secured Claim</u> means the Secured Claim held by LBS in the approximate amount of $682,000 and secured by a lien encumbering the 2137 Dennis Property.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

367.   LBS/2390 San Miguel Secured Claim means the Secured Claim held by LBS in the approximate amount of $414,000 and secured by a lien encumbering the 2390 San Miguel Property.

368.   LBS/2488 Fulton Secured Claim means the Secured Claim held by LBS in the approximate amount of $782,000 and secured by a lien encumbering the 2488 Fulton Property.

369.   LBS/2611 Fulton Secured Claim means the Secured Claim held by LBS in the approximate amount of $1,223,000 and secured by a lien encumbering the 2611 Fulton Property.

370.   LBS/2621 Guerneville Secured Claim means the Secured Claim held by LBS in the approximate amount of $598,000 and secured by a lien encumbering the 2621 Guerneville Property.

371.   LBS/2633 Guerneville Secured Claim means the Secured Claim held by LBS in the approximate amount of $439,000 and secured by a lien encumbering the 2633 Guerneville Property.

372.   LBS/2803 Dutton Secured Claim means the Secured Claim held by LBS in the approximate amount of $1,018,000 and secured by a lien encumbering the 2803 Dutton Property.

373.   LBS/2859 Linwood Secured Claim means the Secured Claim held by LBS in the approximate amount of $637,000 and secured by a lien encumbering the 2859 Linwood Property.

374.   LBS/2882 Stony Point Secured Claim means the Secured Claim held by LBS in the approximate amount of $462,000 and secured by a lien encumbering the 2882 Stony Point Property.

375.   LBS/2957 Dutton Secured Claim means the Secured Claim held by LBS in the approximate amount of $323,000 and secured by a lien encumbering the 2957 Dutton Property.

376.   LBS/2967 Dutton Secured Claim means the Secured Claim held by LBS in the approximate amount of $516,000 and secured by a lien encumbering the 2967 Dutton Property.

377.   LBS/3364 Coffey Secured Claim means the Secured Claim held by LBS in the approximate amount of $454,000 and secured by a lien encumbering the 3364 Coffey Property.

378.   LBS/3708 Barnes Secured Claim means the Secured Claim held by LBS in the approximate amount of $384,000 and secured by a lien encumbering the 3708 Barnes Property.

379.   LBS/420 King Secured Claim means the Secured Claim held by LBS in the approximate amount of $314,000 and secured by a lien encumbering the 420 King Property.

380.   LBS/4494 Todd Secured Claim means the Secured Claim held by LBS in the approximate amount of $734,915 and secured by a lien encumbering the 4494 Todd Property.

381.   LBS/4600 Todd Secured Claim means the Secured Claim held by LBS in the approximate amount of $1,102,000 and secured by a lien encumbering the 4600 Todd Property.

382.   LBS/461 Todd Secured Claim means the Secured Claim held by LBS in the approximate amount of $660,000 and secured by a lien encumbering the 461 Todd Property.

383.   LBS/4728 Snyder Secured Claim means the Secured Claim held by LBS in the approximate amount of $471,000 and secured by a lien encumbering the 4728 Snyder Property.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

384. <u>LBS/483 Scenic Secured Claim</u> means the Secured Claim held by LBS in the approximate amount of $660,000 and secured by a lien encumbering the 483 Scenic Property.

385. <u>LBS/5000 Highway 12 Secured Claim</u> means the Secured Claim held by LBS in the approximate amount of $627,000 and secured by a lien encumbering the 5000 Highway 12 Property.

386. <u>LBS/5038 Sonoma Secured Claim</u> means the Secured Claim held by LBS in the approximate amount of $421,000 and secured by a lien encumbering the 5038 Sonoma Property.

387. <u>LBS/518 Riley Secured Claim</u> means the Secured Claim held by LBS in the approximate amount of $460,000 and secured by a lien encumbering the 518 Riley Property.

388. <u>LBS/812-3rd Secured Claim</u> means the Secured Claim held by LBS in the approximate amount of $282,000 and secured by a lien encumbering the 812-3rd Property.

389. <u>LBS/816-3rd Secured Claim</u> means the Secured Claim held by LBS in the approximate amount of $295,000 and secured by a lien encumbering the 816-3rd Property.

390. <u>LBS/819 Fourth Secured Claim</u> means the Secured Claim held by LBS in the approximate amount of $954,000 and secured by a senior lien encumbering the 819 Fourth Property.

391. <u>LBS/830-3rd Secured Claim</u> means the Secured Claim held by LBS in the approximate amount of $323,000 and secured by a lien encumbering the 830-3rd Property.

392. <u>LBS/841 Fifth Secured Claim</u> means the Secured Claim held by LBS in the approximate amount of $672,000 and secured by a lien encumbering the 841 Fifth Property.

393. <u>LBS/950 Boyes Secured Claim</u> means the Secured Claim held by LBS in the approximate amount of $638,000 and secured by a lien encumbering the 950 Boyes Property.

394. <u>LBS Secured Claims</u> means Secured Claims hold by LBS.

395. <u>Losee Trust</u> means Norene A. Losee, as trustee of the Norene A. Losee Revocable Living Trust dated January 2, 2002.

396. <u>Losee Trust/16214-33rd Secured Claim</u> means the Secured Claim held by Losee Trust in the approximate amount of $175,000 and secured by a lien encumbering the 16214-33rd Property.

397. <u>Mead Clark PSP</u> means, collectively, the Mead Clark 401K Profit Sharing Plan, as to an undivided 54.286% interest; Robert L. Scheibel, as trustee of the Robert L. Scheibel M.D. Pension and Profit Sharing Plan, as to an undivided 11.429% interest; Jolene M. Heckerman, a married woman as her sole and separate property, as to an undivided 11.429% interest; Keegan & Coppin Company, Inc., as to an undivided 10.856% interest; William E. Geary and Therese H. Geary, husband and wife, as community property, as to an undivided 6.286% interest; and Keven Frederick Brown and Jeri Yamashiro Brown, as to an undivided 5.714% interest.

398. <u>Mead Clark PSP/Sage Creek Alpha Secured Claim</u> means the Secured Claim held by Mead Clark PSP in the approximate amount of $1,750,000 and secured by a lien encumbering the Sage Creek Alpha Property.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

399.  <u>Napa Community</u> means Napa Community Bank.

400.  <u>Napa Community/2960 Stony Point Secured Claim</u> means the Secured Claim held by Napa Community in the approximate amount of $2,102,000 and secured by a lien encumbering the 2960 Stony Point Property.

401.  <u>Napa Community/707 Bellevue Secured Claim</u> means the Secured Claim held by Napa Community in the approximate amount of $1,000,000 and secured by a lien encumbering the 707 Bellevue Property.

402.  <u>Nonclassified Priority Claim</u> means a Priority Claim that is either a Priority Tax Claim, a Priority Gap Period Claim or an Administrative Expense Claim.

403.  <u>Noonan/12760 Sulphur Secured Claim</u> means the Secured Claim held by Noonan/Wand in the approximate amount of $2,250,000 and secured by a lien encumbering the 12760 Sulphur Property.

404.  <u>Noonan/Wand</u> means, collectively, James H. Noonan Drywall, Inc., Profit Sharing Plan, as to an undivided 11.112% interest; Joseph S. Wand, M.D., a married man, as his sole and separate property, as to an undivided 22.222% interest; Robert I. Barbieri, as trustee for the Barbieri Family Trust, as to an undivided 21.111% interest; Corrick L. and Norma Brown, as trustees for the benefit of Corrick L. and Norma R. Brown Trust Agreement Dated 12/13/90, as to an undivided 20.000% interest; Michael K. Feeney, as trustee of the Michael K. Feeney Living Trust dated March 21, 1997, as to an undivided 15.556% interest; Keven Frederick Brown and Jeri Yamashiro Brown, husband and wife, as community property, as to an undivided 4.444% interest; Ryan C. Brown and L. Christine Healey, husband and wife, as Joint Tenants, as to an undivided 2.222% interest; Naomi W. Reddert, as trustee of the Naomi Winifred Reddert Revocable Trust, as to an undivided 2.222% interest; and Robert I. Barbieri, as trustee for The Barbieri Appointment Tax Deferral Trust dated 8/29/90 as to an undivided 1.111% interest.

405.  <u>North Channel</u> means, collectively, Edward D. Ahrens and Mark C. McBride, as trustees of the North Channel Trust #7, U/T/A dated April 6, 2006.

406.  <u>North Channel/2125 W. College Secured Claim</u> means the Secured Claim held by North Channel in the approximate amount of $77,500 and secured by a lien encumbering the 2125 W. College Property.

407.  <u>North Channel/818 Fifth Secured Claim</u> means the Secured Claim held by North Channel in the approximate amount of $77,500 and secured by a lien encumbering the 818 Fifth Property.

408.  <u>North Channel/820 Fifth Secured Claim</u> means the Secured Claim held by North Channel in the approximate amount of $77,500 and secured by a lien encumbering the 820 Fifth Property.

409.  <u>North Coast</u> means North Coast Bank, a division of American River Bank.

410.  <u>North Coast/2074 Armory Secured Claim</u> means the Secured Claim held by North Coast in the approximate amount of $747,000 and secured by a lien encumbering the 2074 Armory Property.

DEBTORS' AND COMMITTEE'S AMENDED JOINT PLAN OF REORGANIZATION
23809_2.DOC

LAW OFFICES

MEYERS LAW GROUP, P.C.

44 MONTGOMERY STREET, SUITE 1010

SAN FRANCISCO, CALIFORNIA 94104

411.     North Coast/850 Fourth Secured Claim means the Secured Claim held by North Coast in the approximate amount of $710,000 and secured by a lien encumbering the 850 Fourth Property.

412.     North Coast/Sunnyslope Secured Claim means the Secured Claim held by North Coast in the approximate amount of $1,300,000 and secured by a lien encumbering the Sunnyslope Property.

413.     North Valley means North Valley Bank.

414.     North Valley/1615 Fulton Secured Claim means the Secured Claim held by North Valley in the approximate amount of $1,558,150 and secured by a lien encumbering the 1615 Fulton Property.

415.     North Valley/2601 Francisco Secured Claim means the Secured Claim held by North Valley in the approximate amount of $3,600,000 and secured by a lien encumbering the 2601 Francisco Property.

416.     North Valley/2727 Dutton Secured Claim means the Secured Claim held by North Valley in the approximate amount of $3,096,000 and secured by a first lien encumbering the 2727 Dutton Property.

417.     North Valley/2729 Stony Point Secured Claim means the Secured Claim held by North Valley in the approximate amount of $2,174,250 and secured by a first lien encumbering the 2729 Stony Point Property.

418.     North Valley/2860 Stony Point Secured Claim means the Secured Claim held by North Valley in the approximate amount of $5,856,500 and secured by a first lien encumbering the 2860 Stony Point Property.

419.     North Valley/5146 Old Redwood Secured Claim means the Secured Claim held by North Valley in the approximate amount of $1,157,000 and secured by a lien encumbering the 5146 Old Redwood Property.

420.     Oliver/4000 Wallace Secured Claim means the Secured Claim held by Robert Oliver in the approximate amount of $456,000 and secured by a lien encumbering the 4000 Wallace Property.

421.     Opperman Group means Union Bank of California, N.A., as custodian FBO Steve Opperman (IDA), as to an undivided 75.707% interest; Union Bank of California, N.A., as custodian FBO David S. Opperman, III (IDA), as to an undivided 15.686% interest; Union Bank of California, N.A., as custodian FBO Marc S. Opperman, as to an undivided 5.730% interest; and Union Bank of California, N. A., as custodian FBO Susan D. Johnson, as to an undivided 2.877% interest.

422.     Opperman Group/2860 Stony Point Secured Claim means the Secured Claim held by Opperman Group in the approximate amount of $1,668,400 and secured by a second lien encumbering the 2860 Stony Point Property.

423.     Palleschi-Brown means, collectively, James R. Palleschi, M.D., Inc., Profit Sharing Plan, as to an undivided 50.000% interest; Pamela C. Rankin, as trustee of the Pamela C. Rankin Trust, utd 1/8/97, as to an undivided 17.857% interest; Riley Carr Rankin, as trustee of the Riley

Carr Rankin Revocable Living Trust Dated June 4, 2008, as to an undivided 10.714% interest; Corrick L. and Norma Brown, as trustees for the benefit of the Corrick L. and Norma R. Brown Trust under Agreement dated 12/13/90, as to an undivided 8.571% interest; Ramona L. Barbieri, a married woman, as her sole and separate property, as to an undivided 7.143% interest; and Klemco Investment Co., as to an undivided 5.715% interest.

424. <u>Palleschi-Brown/3131 Primrose Secured Claim</u> means the Secured Claim held by Palleschi-Brown in the approximate amount of $660,000 and secured by a lien encumbering the 3131 Primrose Property.

425. <u>Palleschi PSP</u> means the James R. Palleschi, M.D. Inc., Profit Sharing Plan.

426. <u>Palleschi PSP/3096-15th Secured Claim</u> means the Secured Claim held by Palleschi PSP in the approximate amount of $126,000 and secured by a lien encumbering the 3096-15th Property.

427. <u>Pensco-Opperman</u> means, collectively, Pensco Trust Company, as custodian for the benefit of David S. Opperman, Jr., IRA #OP1AC, as to an undivided 68.149% interest; Pensco Trust Company, as custodian for the benefit of: James R. Johnson, IRA #JO1CB, as to an undivided 17.883% interest; and Pensco Trust Company, as custodian for the benefit of: Gloria Opperman IRA #OP1AB, as to an undivided 13.968% interest.

428. <u>Pensco-Opperman/120 Scenic Secured Claim</u> means the Secured Claim held by Pensco-Opperman in the approximate amount of $1,034,000 and secured by a lien encumbering the 120 Scenic Property.

429. <u>Petition</u> means the involuntary petition filed against Clement C. Carinalli with the Bankruptcy Court on September 14, 2009.

430. <u>Petition Date</u> means September 14, 2009, the date of filing of the Petition.

431. <u>Plan</u> means this Debtors' And Committee's Amended Joint Plan Of Reorganization (Dated August 17, 2010) (including all exhibits and schedules annexed hereto or filed separately), either in its present form or as it may be legally altered, amended or modified from time to time.

432. <u>Plan Committee</u> means the committee of creditors established pursuant to the provisions of Section 7.6 of the Plan.

433. <u>Plan Interest Rate</u> means the interest rate designated in the Plan with respect to a particular Secured Claim as of the Effective Date.

434. <u>Polley</u> means, collectively, Harry E. Polley and Jean E. Polley, as trustees under the Harry E. Polley and Jean E. Polley Revocable Trust dated July 20, 1992, as to an undivided 33.333% interest; David R. Madsen and Carleen M. Madsen, as trustees under the David r. Madsen and Carleen M. Madsen Revocable Trust dated February 20, 1997, as to an undivided 33.333% interest; and the Hada PSP as to an undivided 33.334% interest.

435. <u>Polley/3130 Piner Secured Claim</u> means the Secured Claim held by Polley in the approximate amount of $600,000 and secured by a lien encumbering the 3130 Piner Property.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

MEYERS LAW GROUP, P.C.

LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

436. <u>Postconfirmation Recipients</u> means the United States Trustee, the Reorganized Debtors, the Plan Committee, the Trustee and those parties who, subsequent to the Confirmation Date, file with the Bankruptcy Court and serve upon the parties named above written requests for special notice as provided by the terms of the Plan, *provided*, that any such requesting party may be eliminated from the list of Postconfirmation Recipients from time to time by consent of such party or by order of the Bankruptcy Court on notice to the then-constituted Postconfirmation Recipients, upon a showing that such party no longer holds a Claim in the Chapter 11 Case.

437. <u>Priority Claim</u> means a Claim entitled to priority treatment under the provisions of Section 507(a) of the Bankruptcy Code.

438. <u>Priority Gap Period Claim</u> means a Priority Claim entitled to priority under Sections 502(f) and 507(a)(3) of the Bankruptcy Code.

439. <u>Priority Tax Claim</u> means a Priority Claim of a governmental unit entitled to priority treatment pursuant to the provisions of Sections 502(i) and 507(a)(8) of the Bankruptcy Code, other than Secured Claims.

440. *<u>Pro Rata</u>* means, regarding Claims, the ratio of the amount of an Allowed Claim in a particular Class (or designated group of Claims) to the aggregate amount of all Allowed Claims (together with reserves for Disputed Claims) in such Class or designated group.

441. <u>Professional Fees</u> means a Claim for compensation or reimbursement of expenses earned prior to the Effective Date by a professional retained in either of the Chapter 11 Case in accordance with the provisions of Sections 327 *et seq.* of the Bankruptcy Code.

442. <u>Protocols Net Income</u> shall have the meaning ascribed to it in the definition of "Class B Protocols" in this Exhibit "A."

443. <u>Protocols Option</u> shall have the meaning ascribed to it in Section 5.3 of the Plan.

<u>R.W. Oliver Trust</u> means the Trust Company of America, FBO: 25470/Robert W. Oliver.

444. <u>R.W. Oliver Trust/104 Shiloh Secured Claim</u> means the Secured Claim held by R.W. Oliver Trust in the approximate amount of $720,000 and secured by a second-priority lien encumbering the 104 Shiloh Property, and cross-collateralized with second-priority liens encumbering the 170 Shiloh Property and the 180 Shiloh Property.

445. <u>R.W. Oliver Trust/170 Shiloh Secured Claim</u> means the Secured Claim held by R.W. Oliver Trust in the approximate amount of $720,000 and secured by a second-priority lien encumbering the 170 Shiloh Property, and cross-collateralized with second-priority liens encumbering the 104 Shiloh Property and the 180 Shiloh Property.

446. <u>R.W. Oliver Trust/180 Shiloh Secured Claim</u> means the Secured Claim held by R.W. Oliver Trust in the approximate amount of $720,000 and secured by a second-priority lien encumbering the 180 Shiloh Property, and cross-collateralized with second-priority liens encumbering the 104 Shiloh Property and the 170 Shiloh Property.

447. <u>Rankin</u> means, collectively, Riley Carr Rankin, as trustee of the Riley Carr Rankin Revocable Living Trust dated June 4, 2008, as to an undivided 54.546% interest; and Robert W.

Oliver, as trustee of the Robert W. Oliver, DDS PST, as to an undivided 45.454% interest.

448. <u>Rankin Trust</u> means, collectively, Riley Carr Rankin, as trustee of the Riley Carr Rankin Revocable Living Trust Dated June 4, 2008, as to an undivided 82.282% interest; and Pamela C. Rankin, as trustee of the Pamela C. Rankin Trust, utd 1/8/97, as to an undivided 17.718% interest.

449. <u>Rankin/4407 Petaluma Secured Claim</u> means the Secured Claim held by Rankin in the approximate amount of $275,000 and secured by a lien encumbering the 4407 Petaluma Property.

450. <u>Rankin Trust/15883-27th Secured Claim</u> means the Secured Claim held by Rankin Trust in the approximate amount of $130,000 and secured by a lien encumbering the 15883-27th Property.

451. <u>Release Option</u> shall have the meaning ascribed to it in Section 5.2 of the Plan.

452. <u>Release Price</u> means the release price designated by the Plan with respect to a particular property of the Creditors' Trust as of the Effective Date.

453. <u>Reorganized Debtors</u> means the Debtors at all times on or after the Effective Date.

454. <u>Robert Oliver</u> means Robert W. Oliver, a married man, as his sole and separate property.

455. <u>Rubin</u> means Jean Michal Rubin, a single woman.

456. <u>Rubin/3548 Brooks Secured Claim</u> means the Secured Claim held by Rubin in the approximate amount of $50,000 and secured by a lien encumbering the 3548 Brooks Property.

457. <u>Sage Creek Alpha Property</u> means that certain real property and improvements located at the Sage Creek Ranch, Napa, California 94574, Napa County assessor's parcel no. 032-460-007.

458. <u>Sage Creek Beta Property</u> means that certain real property and improvements located at Sage Creek Beta Ranch, Napa, California 94574, Napa County assessor's parcel nos. 032-460-009 and 032-460-011.

459. <u>Sage Creek Properties</u> means, collectively, Sage Creek Alpha Property and Sage Creek Beta Property.

460. <u>Savings Mendocino</u> means Savings Bank of Mendocino County.

461. <u>Savings Mendocino/3422 Santa Rosa Secured Claim</u> means the Secured Claim held by Savings Mendocino in the approximate amount of $2,000,000 and secured by a lien encumbering the 3422 Santa Rosa Property.

462. <u>Schedule 6.2.1</u> means the schedule, if any, to be filed and served pursuant to the provisions of Section 6.2.1 of the Plan.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

463.  <u>Schedules</u> means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors in the Chapter 11 Case, as required by the provisions of Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments or modifications filed with respect thereto.

464.  <u>Secured Claim</u> means a Claim against the Debtors secured by a valid, perfected and enforceable lien that is not subject to avoidance under bankruptcy or non-bankruptcy law, equal to the lesser of: (a) the Allowed amount of such Claim; or (b) the value, as determined by the Bankruptcy Court pursuant to Sections 506(a) and 1129(b) of the Bankruptcy Code and Bankruptcy Rule 3012, of: (i) the interest of the holder of such Claim in the property of the Debtors securing such Claim, or (ii) the amount subject to setoff under Section 553 of the Bankruptcy Code.

465.  <u>Secured Creditor</u> means the holder of a Secured Claim.

466.  <u>Selling Period</u> means the time period for sale jointly designated by the Committee and the Debtors with respect to a particular property of the Creditors' Trust as of the Effective Date.

467.  <u>Smith-Johnson</u> means Jeffrey K. Smith, as trustee of the Residual Trust for the Estate of Clyde P. Smith, as to an undivided 17.371% interest; Alan S. Johnson, as trustee for the Alan S. Johnson DDS, PC Employees Pension and Profit Sharing Plan, as to an undivided 15.924% interest; Michael K. Feeney, as trustee of the Michael K. Feeney Living Trust dated March 21, 1997, as to an undivided 12.160% interest; James Mervyn Daw and Linda Kathleen Daw, as trustees of the James Mervyn Daw and Linda Kathleen Daw Trust dated August 2, 2000, as to an undivided 11.581% interest; Gregory A. Johnson, a unmarried man, as to an undivided 11.581% interest; Clarence Arneson and Joy Arneson, Trustee's U.D.T., dated October 10, 1989, as to an undivided 9.380% interest; Thomas F. Combs and Sandra L. Combs, Trustees of the Thomas F. Combs and Sandra L. Combs Revocable Trust Agreement, as to an undivided 8.107% interest; Feeney Russian River Ranches Limited Partnership, as to an undivided 5.211% interest; Riley Carr Rankin, as trustee of the Riley Carr Rankin Revocable Living Trust Dated June 4, 2008, as to an undivided 2.895% interest; Jeffrey Smith and Maureen Geoghegan, as trustees for the Clyde P. Smith Retirement Plan Trust, as to an undivided 2.895% interest; and Jeffrey Smith, as trustee for the Central Avenue Trust for Grandchildren, as to an undivided 2.895% interest.

468.  <u>Smith-Johnson/Sage Creek Beta Secured Claim</u> means the Secured Claim held by Smith-Johnson in the approximate amount of $1,727,000 and secured by a lien encumbering the Sage Creek Beta Property.

469.  <u>SSUAF</u> means the Sonoma State University Academic Foundation, Inc.

470.  <u>SSUAF/Arata Lane Secured Claim</u> means the Secured Claim held by SSUAF in the approximate amount of $1,250,000 and secured by a lien encumbering the Arata Lane Property.

471.  <u>Sterling Bank</u> means Sterling Savings Bank.

472.  <u>Sterling/1207 College Secured Claim</u> means the Secured Claim held by Sterling Bank in the approximate amount of $179,000 and secured by a lien encumbering the 1207 College Property.

473.  <u>Sterling/403 Chinn Secured Claim</u> means the Secured Claim held by Chase in the approximate amount of $202,000 and secured by a lien encumbering the 403 Chinn Property.

LAW OFFICES

MEYERS LAW GROUP, P.C.

44 MONTGOMERY STREET, SUITE 1010

SAN FRANCISCO, CALIFORNIA 94104

474.     Sterling/542 College Secured Claim means the Secured Claim held by Sterling Bank in the approximate amount of $229,000 and secured by a lien encumbering the 542 College Property.

475.     Sterling/840 Third Secured Claim means the Secured Claim held by Sterling Bank in the approximate amount of $229,000 and secured by a lien encumbering the 840 Third Property.

476.     Sterling/849 Fifth Secured Claim means the Secured Claim held by Sterling Bank in the approximate amount of $179,000 and secured by a lien encumbering the 849 Fifth Property.

477.     Sterling/7151 Bodega Secured Claim means the Secured Claim held by Sterling Bank in the approximate amount of $682,000 and secured by a lien encumbering the 7151 Bodega Property.

478.     Sterling/801 Benton Secured Claim means the Secured Claim held by Sterling Bank in the approximate amount of $229,000 and secured by a lien encumbering the 801 Benton Property.

479.     Stony Point Alpha Property means that certain real property (approximately 42.8 acres) and improvements located at 4088 Stony Point Road, Santa Rosa, California 95407, Sonoma County assessor's parcel no. 046-031-011.

480.     Stony Point Beta Property means that certain real property (approximately 18.7 acres) and improvements located adjacent to the Stony Point Alpha Property, Sonoma County assessor's parcel no. 046-031-013.

481.     Stony Point Gamma Property means that certain real property (approximately 29.2 acres) and improvements located adjacent to the Stony Point Alpha Property, Sonoma County assessor's parcel no. 046-031-014.

482.     Summit/3771 Lakeville Secured Claim means the Secured Claim held by Summit Bank in the approximate amount of $3,185,000 and secured by a lien encumbering the 3771 Lakeville Property.

483.     Summit/8262 Peninsula Secured Claim means the Secured Claim held by Summit Bank in the approximate amount of $533,000 and secured by a first-priority lien encumbering the 8262 Peninsula Property.

484.     Summit Bank means Summit State Bank.

485.     Transfer Assets shall have the meaning ascribed to it in Section 7.3 of the Plan.

486.     Transfer Option shall have the meaning ascribed to it in Section 5.3 of the Plan, subject to modifying terms with respect to particular Allowed Claims as set forth in the designated treatment of certain Subclasses.

487.     Transfer Price means the price jointly designated by the Committee and the Debtors for the transfer of Transfer Assets to the Creditors' Trust as of the Effective Date pursuant to Section 7.3 of the Plan.

488.     Triggering Distribution shall have the meaning ascribed to it in Section 7.15 of the

Plan.

489.    Trustee means the Trustee of the Creditors' Trust, appointed pursuant to Section 7.2 of the Plan.

490.    Unsecured Claim means any Claim that is not a Secured Claim or Priority Claim.

491.    USBank means U.S. Bank, N.A.

492.    USBank/947 Yuba Secured Claim means the Secured Claim held by USBank, as successor in interest to Countrywide Bank, in the approximate amount of $846,000 and secured by a lien encumbering the 947 Yuba Property.

493.    USBank/9515 Graton Secured Claim means the Secured Claim held by USBank, as serviced by BAC, in the approximate amount of $1,000,000 and secured by a lien encumbering the 9515 Graton Property.

494.    Viviani Trust means Roland L. Viviani and Peggy Viviani, as trustees of the Viviani Living Trust.

495.    Viviani Trust/19297 East Highway Secured Claim means the Secured Claim held by Viviani Trust, as serviced by NoteWorld, in the approximate amount of $420,000 and secured by a lien encumbering the 19297 East Highway Property.

496.    Walraven Trust means, collectively, Delores A. Blackman and Rosemary L. Reeves, as successor trustees of the Walraven 1997 Revocable Living Trust dated April 3, 1997.

497.    Walraven Trust/2420 San Miguel Secured Claim means the Secured Claim held by Walraven Trust in the approximate amount of $78,000 and secured by a lien encumbering the 2420 San Miguel Property.

498.    Westamerica Bank means Westamerica Bank.

499.    Westamerica/1064 Santa Rosa Secured Claim means the Secured Claim held by Westamerica Bank in the approximate amount of $852,000 and secured by a lien encumbering the 1064 Santa Rosa Property.

500.    Westamerica/411-E Secured Claim means the Secured Claim held by Westamerica Bank in the approximate amount of $912,000 and secured by a lien encumbering the 411-E Property.

501.    Westamerica/629 Fourth Secured Claim means the Secured Claim held by Westamerica Bank in the approximate amount of $298,000 and secured by a lien encumbering the 629 Fourth Property.

502.    Westamerica/858 Fourth Secured Claim means the Secured Claim held by Westamerica Bank in the approximate amount of $377,000 and secured by a lien encumbering the 858 Fourth Property.

503.    WFB means Wells Fargo Bank, National Association.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

123

504.    <u>WFB/3130 Piner Secured Claim</u> means the Secured Claim held by WFB in the approximate amount of $1,159,816 and secured by a lien encumbering the 3130 Piner Property.

505.    <u>WFB/3222 Piner Secured Claim</u> means the Secured Claim held by WFB in the approximate amount of $309,000 and secured by a lien encumbering the 3222 Piner Property.

506.    <u>WFB/9810 Berry Secured Claim</u> means the Secured Claim held by WFB in the amount of $26,000 and secured by a lien encumbering the 9810 Berry Property.

507.    <u>WFB/9850 Berry Secured Claim</u> means the Secured Claim held by WFB in the amount of $29,000 and secured by a lien encumbering the 9850 Berry Property.

508.    <u>WFB/9870 Berry Secured Claim</u> means the Secured Claim held by WFB in the amount of $28,000 and secured by a lien encumbering the 9870 Berry Property.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

124