UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

CLEMENT and ANN MARIE CARINALLI,    No. 09-12986

　　　　　　　　　　　　　　　　Debtor(s).
_____/

Memorandum on Liquidating Trustee's Motion to Quitclaim Property
_____

At one time, Chapter 11 debtors Clement and Ann Carinalli were among the largest property owners in Sonoma County. After considerable negotiations, a plan of reorganization was confirmed on November 16, 2010, which provides for the orderly liquidation of their holdings. The motion now before the court, and opposed by secured creditor Summit State Bank, requires the court to interpret and apply the terms of the plan.

The motion is brought by Andrea Wirum, the Trustee named by the plan to effectuate the liquidation. She seeks leave to quitclaim to Summit the estate's interest in real property at 3771 and 3765 Lakeville Highway, Petaluma, California. As part of the motion she asks the court to disallow Summit's unsecured claim for any deficiency.

Summit objected to the plan and its rights under the plan were the subject of considerable negotiations before the plan was confirmed. The parties agreed on the following language:

> (a) under the provisions of Section 5.3(iii), Summit Bank shall prosecute and complete its judicial or nonjudicial foreclosure rights **promptly, diligently and without undue delay**, absent which, upon an order of the Bankruptcy Court granting a motion brought by the Trustee demonstrating that Summit Bank has failed to do so, **the Trustee shall quitclaim to Summit Bank the 3771 Lakeville Property pursuant to the terms of said Section 5.3(iii);** [emphasis added]

Wirum's motion is made pursuant to this plan term.

Promptly after confirmation, Summit commenced state court judicial foreclosure proceedings on the Lakeville Property, which is owned 50% by the bankruptcy estate and 50% by a third party. Things went fine until March 21, 2012, when, evidently to the shock of Summit, the state court denied its motion for summary judgment. The state court found that the co-owner of the property had created a triable issue of fact as to whether or not he was in default. A few days later, Summit decided to "re-group." It dismissed its state court action without prejudice and did nothing thereafter, prompting Wirum to bring this motion on September 21, 2012. Finally, on October 16, 2012, Summit filed an adversary proceeding in this court again seeking to foreclose judicially.

Summit advances no explanation for the seven-month hiatus between the dismissal of the state court action and the commencement of the same action here. It explains that it re-filed the action here in bankruptcy court because it feels that the state court judge got the law wrong in denying its summary judgment motion and that this court, with its expertise in commercial law, can be relied upon to correct the state court's mistake.

The court is horrified at the presumption of Summit's counsel that it will re-hear the case and correct the "mistake" of the state court. This court is not an appellate court. The undersigned is a member of the local legal community despite being a federal judge. The undersigned also has the utmost respect for his state court colleagues and their most difficult work. While the issue is not now before the court, in the fullness of time the court will almost certainly abstain from exercising jurisdiction over Summit's adversary proceeding. Anything less would approve of Summit's blatant forum shopping.

It was a serious error in judgment for Summit to dismiss its state court action. It thereby wasted 18 months of litigation in state court and another seven months thereafter. Thus, after two years, it is now no closer to completion of its foreclosure than it was on the day the plan was confirmed. The court accordingly finds that Summit has not proceeded promptly or diligently, and has caused undue delay. Under the terms of the plan, Wirum is entitled to quitclaim the Lakeville property to Summitt.

In desperation, Summit argues that Wirum cannot comply with the plan because she only owns

2

as 50% interest. This argument would have merit if Wirum were obligated to give Summit a grant deed with its associated covenants, but that is not what the plan provides. A quitclaim deed merely conveys whatever rights the grantor has in the property. Wirum's partial ownership is not an impediment to her ability to give a quitclaim deed.

Summit argues that the issuance of a quitclaim deed pursuant to the plan does not terminate its unsecured claim for any deficiency. However, the agreed language of the plan quoted above specifically incorporates Section 5.3(iii). That section provides that when a quitclaim deed is issued "such holders shall not hold or assert an Unsecured Claim against the Creditors' Trust or the Estate for any deficiency or guarantee claim related to such Allowed Secured Claim, regardless of whether applicable bankruptcy or non-bankruptcy law would otherwise permit or recognize such claim[.]"

Summit's final argument is that the special provision it negotiated above only refers to "the 3771 Lakeville Property" and therefore does not include 3765 Lakeville Highway. The court finds no merit to this argument for two reasons. First, a review of the extensive litigation between Summit and the bankruptcy estate clearly establishes that by "the 3771 Lakeville Property" both Summit and the plan proponents meant the property at both addresses. Second, even though the plan deals with each secured claim separately and has dozens of secured classes, there is no separate treatment for a security interest in 3765 Lakeville Highway.

For the foregoing reasons, the court will grant Wirum's motion. Her counsel shall submit an appropriate form of order.

Dated: November 12, 2012

_____
Alan Jaroslovsky
U.S. Bankruptcy Judge

3